## DECLARATION OF VICTORIA JACQMEIN

Pursuant to 28 U.S.C. Section 1746, the undersigned states as follows:

1. My name is Victoria Jacqmein. I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2. I am a Paralegal Specialist at the U.S. Securities and Exchange Commission (the "Commission").

3. Attached as Exhibit A is a true and correct copy of a document that appears in the Commission records and that was produced to the Commission by A Better Financial Plan in response to a subpoena in the Commission matter *In re A Better Financial Plan* (NY-9593).

I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

Executed on this 21st day of July 2020.

*Victoria A. Jacqmein*
VICTORIA JACQMEIN

## MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement (this "Agreement") is made and entered into as of April 24, 2018 ("Effective Date") by and between ABFP MANAGEMENT COMPANY LLC, a Delaware limited liability company ("ManagementCo") and **Fidelis Financial Planning LLC**, a **Delaware** limited liability company ("Company").

### BACKGROUND

ManagementCo is engaged in the business of, among other things, providing management services related to organizing and operating companies formed for the purpose of raising funds from investors and using the proceeds to invest in various asset classes but not in publicly traded securities ("Alternative Asset Classes") and generating a return for the investors.

Company has been organized by **Michael C. Furman** for the purpose of raising funds and using the proceeds to invest in various Alternative Asset Classes. Company desires to hire and engage ManagementCo to perform certain management services necessary for the operation of the Company as more fully described in Section 2 of this Agreement (collectively, the "Services").

ManagementCo agrees to provide the Services to and for the benefit of Company on the terms and conditions set forth in this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and intending to be legally bound by the terms of this Agreement, the parties agree, as follows:

1. Management Services. Company hereby engages exclusively ManagementCo to provide, and Manager hereby agrees to provide, in accordance with the terms and conditions of this Agreement, all of the Services.

2. Scope of Services.

    (a) Services Provided. ManagementCo shall provide the following Services to and for the benefit of Company: (i) advise Company with respect to methods and techniques of raising funds from investors; (ii) adding ManagementCo's CPA to Company's banking account as a signatory only to establish escrow and/or bank accounts for the receipt and disbursement of funds received by Company from persons investing in Company; (iii) calculating amounts to be disbursed to persons investing in and with Company based on the nature of Company's business and documents provided by Company to ManagementCo; (iv) facilitate the making of distributions by Company to its investors; (v) advise Company generally with respect the benefits and risks of various Alternative Asset Classes; (vi) introduce Company to persons and entities from whom Company may acquire assets or in which Company may make investments ("Alternative Asset Sources"); (vii) establish a spreadsheet which lists the names of the

-1-



EXHIBIT A

BFP061442

Confidential Treatment Requested by Better Drums

investors, the amounts invested by each investor, the nature of the investment and the amounts which should be distributed to the investor based on documents provided by Company; and (ix) introduce Company to service providers who may provide legal, accounting, tax or other professional services.

(b) Services Not Provided. ManagementCo is not participating in any securities transactions on behalf, with, or by the Company. Notwithstanding any term or provision in this Agreement to the contrary, ManagementCo shall not, at any time: (i) identify, select or advise Company in connection with the identification and selection of any particular individual asset; meet with any of Company's prospective investors; (iii) provide legal advice; (iv) provide accounting advice; and/or (v) execute any contract or document on behalf of Company.

3. Fees for Services. In consideration of ManagementCo's provision of the Management Services and other undertakings hereunder, from and after the Effective Date, and ending on the date of expiration or termination of this Agreement as set forth herein, the Company shall pay to ManagementCo an amount equal to twenty-five percent (25%) of net revenue generated by the Company (the "Management Fee"). The Management Fee shall be calculated each calendar quarter and shall be due and payable within ten (10) days after the end of each quarter. Upon the request of the ManagementCo, the Company shall deliver to ManagementCo such books, records, documents, bank account statement and financial statements as ManagementCo reasonably may request in order to confirm the amount of the Management Fee for any given period.

4. Term and Termination.

(a) This Agreement shall commence as of the Effective Date and continue in full force and effect at all times during which the Company operates and conducts business (the "Term"), unless terminated earlier as provided herein.

(b) This Agreement shall terminate automatically and without further notice or action of the parties upon the expiration of Term unless otherwise extended by the parties. This Agreement may also be terminated as follows: (i) by written consent signed by ManagementCo and Company; (ii) by a party upon the filing of a petition in bankruptcy with respect to the other Party or the insolvency of the other party, in each case after written notice and a ninety (90)-day opportunity to cure; and (iii) by either party pursuant to the other party's material breach of their obligations under this Agreement, after written notice and a thirty (30) day opportunity to cure any material breach.

5. Independent Contractor. Nothing herein shall be construed to create a joint venture or partnership between ManagementCo and Company or an employee/employer relationship. ManagementCo shall be an independent contractor of the Company pursuant to this Agreement and no party shall have any express or implied right or authority to assume or

BFP061443

Confidential Treatment Requested by Better Donant

create any obligations on behalf of or in the name of any other party or to bind the other party to any contract, agreement or undertaking with any third party.

6. <u>Confidential Information</u>. Company acknowledges that it will receive from ManagementCo certain information with respect to the organization and operation of business entities for the purpose of acquiring and investing in Alternative Asset Classes, including the names of persons and entities engaged in the business of buying, selling, owning and managing Alternative Asset Classes (the "<u>Confidential Information</u>"). Company shall maintain as confidential, and not disclose, any of the Confidential Information, to any third person or entity, either directly or indirectly, except with the express prior written permission of ManagementCo, provided, however, that the confidentiality provisions of this paragraph shall not apply to any part of said information which: (i) was known to Company before the Effective Date, as evidenced by written documentation; (ii) is acquired from a third party that has the right to disclose such information without breaching any duties or obligations of confidentiality to ManagementCo or any other third party; (iii) is or becomes available in the public domain other than by violation of this Agreement.

7. <u>Non-circumvention and Exclusivity</u>.

(a) <u>Non-Circumvention</u>. Company and its members, managers, shareholders, directors, officers, partners and agents, individually and jointly, shall not, directly or indirectly, (i) participate in any attempt to circumvent or interfere with the relationships of ManagementCo, its members and/or its affiliates with any of their existing or potential business contacts, business associates, customers, prospective customers, suppliers, service providers, financing and capital sources, lenders, banks, investors, investment banking sources, professional advisers, or sources of business or referrals, whether or not such relationships with such persons or entities is formalized by a signed written agreement, or arises from or in connection with any entities controlled by the ManagementCo or its sole member ("ABFP Business Contacts"), or (ii) solicit, appropriate, misappropriate, or use (or participate in any attempt to solicit, appropriate, misappropriate, or use) ABFP Business Contacts for their own benefit or financial gain, except after full disclosure to ManagementCo and receipt of ManagementCo's express, prior written consent. Company its members, managers, shareholders, directors, officers, partners and agents shall not enter into any negotiation, transaction or other business relationship with any ABFP Business Contact, except as approved in advance or instructed by ManagementCo in writing.

(b) <u>Exclusivity</u>. Company shall acquire assets solely and exclusively from the Alternative Asset Source identified by ManagementCo and from no other source without the prior written consent of the ManagementCo which consent may be withheld for any reason or no reason. The ManagementCo agrees to the Alternative Asset Sources involved in this agreement ("Merchant Cash Advance" with Parfunding/CBSG) that the Company will have the exclusive territories of Palm Beach County, Miami-Dade County, St. Lucie County, Broward County,

BFP061444

and Martin County. No other person, agent, or advisor will be allowed to create a contractual agreement with The MangementCo or open up an investment or Private Placement Memorandum for this asset class with the ManagementCo in these counties without written permission by the Company.

8. Compliance and Indemnity. Company represents and warrants to ManagementCo that, at all times while this Agreement remains in effect, it will comply with all federal, state or local laws, statutes, regulations or orders related to the offering and sale of its securities (the "Securities Laws"). ManagementCo will not be involved in any securities transactions by the Company. Company shall indemnify and hold harmless ManagementCo from any costs, expenses, damages, losses, fines, penalties, or claims, including but not limited to legal fees, arising from or relating to any Company's violation or alleged violation of any of the Securities Laws expressly including but not limited to claims asserted by Company's members or investors or any investigation, action or proceeding initiated or conducted by and federal or state governmental agency or authority.

9. Arbitration. Any controversies arising under this Agreement, including the assessment, amount of and payment of damages as a result of a claim to breach, of this agreement, shall be decided as set forth herein. Each party shall select their own arbitrator and the third arbitrator out of three is to be determined with consent of both parties under the laws of the commonwealth of Pennsylvania. The arbitration shall take place in King of Prussia, Pennsylvania. The decision of the arbitrator shall be conclusively binding upon the parties and final, and such decision shall be enforceable as a judgment in any court of competent jurisdiction. All costs and expenses incurred by a party in connection with any arbitration proceeding, expressly including legal fees, shall be paid by the party against whom judgment is rendered by the arbitrator.

10. Notices. All notices or other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given if delivered in person or sent by overnight delivery, confirmed telecopy or prepaid first class registered or certified mail, return receipt requested, to the following addresses, or such other addresses as are given to the other parties to this Agreement in the manner set forth herein:

    If to Company:    Fidelis Financial Planning LLC
                                Attention: Michael C. Furman
                                1615 Forum Place #500
                                West Palm Beach, FL 33401

    If to ManagementCo:  ABFP Management Company LLC
                                Attention: Dean Vagnozzi
                                234 Mall Boulevard, Suite 270
                                King of Prussia, Pennsylvania 19406

BFP061445

With a copy to: Eckert Seamans Cherin & Mellott, LLC Two Liberty
Place, 22nd Floor
50 South 16th Street
Philadelphia, Pennsylvania 19102

Any such notices shall be effective when delivered in person or sent by telecopy, one business day after being sent by overnight delivery or three business days after being sent by registered or certified mail. Any of the foregoing addresses may be changed by giving notice of such change in the foregoing manner, except that notices for changes of address shall be effective only upon receipt.

11. <u>Review By Counsel</u>. Company represents and warrants that counsel for Company has reviewed this Agreement and that Company has been informed by counsel that the terms and provisions contained herein are enforceable.

12. <u>Binding Effect</u>. The terms of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective personal representatives, successors and assigns.

13. <u>Integration-Amendment</u>. This Agreement contains the entire agreement between the parties hereto, with respect to the transactions contemplated herein and supersedes all previous representations, negotiations, commitments and writings with respect thereto. No amendment or alteration of the terms of this Agreement shall be valid unless made in writing and signed by all of the parties hereto. This is the Non-Compete and Confidentiality Agreement referred to in the Acquisition Agreement.

14. <u>Counterparts - Facsimile</u>. This Agreement may be executed in one or more counterparts each of which will be deemed an original and all of which together will constitute one and the same instrument. This Agreement may be executed and accepted by facsimile signature and any such signature shall be of the same force and effect as an original signature.

15. <u>Waiver</u>. The failure of either party to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement shall not be construed as a waiver of future performance of any such term, covenant or condition, and the obligations of either party with respect thereto shall continue in full force and effect.

16. <u>Acknowledgements Addendum.</u> ManagementCo acknowledges (i) - Company has prior working knowledge and has offered investments in various similar Alternative Asset Classes prior to this agreement that this agreement does not apply to those. (ii) - Company acknowledges that it will only raise assets for Parfunding/CBSG

BFP061446

through ManagementCo using this agreement. (iii)- ManagementCo and Company both agree that Russell Meyer & Renee Meyer are clients of Company and owned by Company.

*[SIGNATURE PAGE TO MANAGEMENT SERVICES AGREEMENT]*

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the day and year first above written.

ABFP Management Company LLC

By: X_____
Name: Dean Vagnozzi
Title: Sole Member

Company: Fidelis Financial Planning LLC

By: X_____
Name: Michael C. Furman
Title: President

For the purposed of being legally bound by the terms of Sections 6 and 7 of this Agreement, each of the following individuals have executed this Agreement as of this 24th day of May 2018.

[Note: **This signature line is for the person organizing the Company.**]

X_____

BFP061447