UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 10802 / July 14, 2020

SECURITIES EXCHANGE ACT OF 1934
Release No. 89318 / July 14, 2020

ADMINISTRATIVE PROCEEDING
File No. 3-19878

| | |
|---|---|
| In the Matter of<br><br>    Abetterfinancialplan.com,<br>    LLC, d/b/a A Better Financial<br>    Plan and Dean J. Vagnozzi,<br><br>Respondents. | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Abetterfincialplan.com, LLC, d/b/a A Better Financial Plan ("ABFP") and Dean J. Vagnozzi ("Vagnozzi") (collectively, "Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided in Section V herein, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act, Sections 15(b) and 21C of the Exchange Act, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

### Summary

These proceedings arise out of registration violations by Vagnozzi and ABFP, a company he wholly owns. First, during the period from April 2013 through August 2017, Respondents offered and sold securities in five funds. The transactions were neither registered with the Commission under the Securities Act nor satisfied any exemption from registration in violation of Sections 5(a) and 5(c) of the Securities Act. Second, from late May 2018 through early September 2018, Vagnozzi (through ABFP) acted as an unregistered broker and earned transaction-based compensation in connection with raising funds for a separate entity, Fallcatcher, Inc. ("Fallcatcher") without being associated with a registered broker-dealer in violation of Section 15(a) of the Exchange Act. Thus, Respondents' conduct violated Sections 5(a) and 5(c) of the Securities Act and Section 15(a) of the Exchange Act.

### Respondents

1. ABFP is a Pennsylvania limited liability company located in King of Prussia, PA. Vagnozzi is ABFP's president and sole owner. ABFP is not registered with the Commission.

2. Vagnozzi, age 51, resides in Collegeville, PA. He is currently licensed with the Pennsylvania Insurance Department as a resident insurance producer. Vagnozzi held Series 6 and 63 licenses, and was associated with a FINRA-registered broker from February 2008 to February 2009. He is not currently registered with the Commission.

### Other Relevant Entities and Individual

3. ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC ("ABFP Management") is a Delaware limited liability company with an office in King of Prussia, PA. Vagnozzi is the sole owner of ABFP Management.

4. Pillar 4 Life Settlement Fund, L.P. ("Pillar 4") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 4 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $4,155,250 from 50 investors. Pillar 4's Form D filed with the Commission stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D identifies Vagnozzi as Pillar 4's promoter.

5. Pillar 5 Life Settlement Fund, L.P. ("Pillar 5") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 5 is an investment

---

[1] The findings herein are made pursuant to Respondents' Offers of Settlement and are not binding on any other person or entity in this or any other proceeding.

fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $4,912,941 from 40 investors. Pillar 5's Form D filed with the Commission stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D identifies Vagnozzi as Pillar 5's promoter.

6.  Pillar 6 Life Settlement Fund, L.P. ("Pillar 6") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 6 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $6,217,950 from 72 investors. Pillar 6 did not file a Form D with the Commission in connection with this offering.

7.  Pillar 7 Life Settlement Fund L.P. ("Pillar 7") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 7 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $6,620,000 from 78 investors. Pillar 7 did not file a Form D with the Commission in connection with this offering.

8.  Pillar 8 Life Settlement Fund L.P. ("Pillar 8") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 8 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $11,056,600 from 99 investors. Pillar 8's Form D filed with the Commission stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D identifies Vagnozzi as Pillar 8 's promoter.

9.  Henry Ford ("Ford"), age 45, resides in Port St. Lucie, FL. Ford is the founder of Fallcatcher and its predecessor entity and its chief product officer. He led the efforts to solicit funds from investors introduced to him by ABFP and Vagnozzi between late May and early September 2018.

10. Fallcatcher is a Delaware corporation that had its principal place of business in West Palm Beach, Florida, during at least part of 2018. With a predecessor entity organized under Florida law, Fallcatcher purportedly operated for the purpose of creating, marketing, and selling biometric devices and software to track patients receiving treatment for substance addiction. Fallcatcher's stock is privately held.

## Background

### A. Creation and Structure of the Pillar Funds

11. ABFP and Vagnozzi are located near Philadelphia, Pennsylvania. Vagnozzi has branded his business under the name ABFP, his wholly-owned company.

12. Vagnozzi established a series of investment funds named Pillar 1 through 8 for the primary purpose of acquiring, managing, and selling a portfolio of ownership interests of life insurance policies purchased from the secondary market (also known as "life settlements"). Of these investment funds, Pillar 4, Pillar 5, Pillar 6, Pillar 7, and Pillar 8 (collectively, the "Pillar

3

Funds") are at issue in this recommendation. From approximately April 2013 to August 2017 (the "Relevant Period"), Vagnozzi, as President of ABFP and ABFP Management, marketed and sold the Pillar Funds to investors primarily in Philadelphia and the nearby suburbs, New Jersey, and Delaware.

13. The Pillar Funds all have a substantially similar structure, including ABFP Management serving as general partner, Vagnozzi serving as director or promoter, and the fund's investors serving as its limited partners. The offering materials include a confidential private placement memorandum ("PPM"), subscription agreement, and purchaser questionnaire. Investors complete the purchaser questionnaires and provide certain background information on these forms, including net worth and annual income.

14. Respondents raised more than $32 million for the Pillar Funds from 339 investors during the Relevant Period, with each individual investment averaging approximately $97,233. Approximately 46 percent of these investors were non-accredited. Fundraising totals and number of investors, including non-accredited investors, for each of the Pillar Funds are as follows:

| Fund Name | Approximate Amount Raised | # Total Investors | # Non-Accredited Investors |
|---|---|---|---|
| Pillar 4 | $4,155,250 | 50 | 31 |
| Pillar 5 | $4,912,941 | 40 | 14 |
| Pillar 6 | $6,217,950 | 72 | 37 |
| Pillar 7 | $6,620,000 | 78 | 41 |
| Pillar 8 | $11,056,600 | 99 | 33 |

15. The Pillar Funds are not registered with the Commission; instead, each fund's PPM stated that the securities offerings were exempt from registration under Regulation D. Vagnozzi filed Forms D on behalf of Pillar 4, Pillar 5, and Pillar 8 that stated that these offerings were exempt from registration under Rule 506(b) of Regulation D, which, among other things, prohibits the offer or sale of securities through general solicitation and limits the number of non-accredited investors in the offering to 35. Vagnozzi did not file Forms D for Pillar 6 or Pillar 7.

**B. Respondents Offered and Sold the Pillar Funds to Retail Investors Via Radio Advertisements, Mailers, and Websites**

16. As President of ABFP, Vagnozzi encourages the public to "invest like the big boys," and touted ABFP as a place to buy life settlements, claiming they are the "highest yielding, safe" investments in the market.

17. One of Vagnozzi's principal marketing techniques is to broadcast frequent radio advertisements on local Philadelphia radio stations. During the Relevant Period, he recorded multiple variations of these advertisements using his own voice where he, as President of ABFP, promoted "double digit returns without the volatility of Wall Street" and invited listeners to call a toll-free number to learn about "an extremely secure investment that guys like Warren Buffet and other institutional investors have been using for decades."

4

18. In 2016, Vagnozzi also aired a one-hour weekly radio show, the "Better Financial Plan Show," during which Vagnozzi told listeners about "an alternative investment called a life settlement …. the best investment you've never heard of."

19. Vagnozzi also sent direct mass mailers to potential investors using mailing lists purchased from third-party marketing firms. For example, in or around August 2013, Vagnozzi distributed a mass mailer that invited recipients to a free dinner at a steakhouse in order to "Learn about Life Settlements…." During the period April 2013 through June 2018, Vagnozzi hosted at least forty-five similar events.

20. ABFP has a public website, www.abetterfinancialplan.com, which claims that ABFP offers safe, alternative investments and instructs interested potential investors to call ABFP to request an appointment. Vagnozzi also maintains a Vimeo channel to which he has posted dozens of videos, including those titled "Life Settlements FAQ" and "Life Settlements: Under the Hood," which have at least 532 and 1,666 views, respectively. These videos are publicly available via a simple Internet search engine search for Vagnozzi or ABFP, and require no passwords or other verification in order to view. Vagnozzi would also email links to these videos to potential investors, often after a face to face meeting with them.

21. During the Relevant Period, the radio advertisements, mailers, and websites directed interested potential investors to call an 800-number. Upon calling the 800-number, the potential investor heard a pre-recorded message that described ABFP's investment process and asked callers to leave a message including their contact information asked callers to leave a message including their contact information only if they had at least $50,000 "money in hand" and "the ability to invest if you like what you hear." The callers were not asked to provide information about their net worth, income, or investing acumen.

22. After assessing the telephonic responses, an ABFP representative typically followed up with the callers to invite them to attend a free dinner seminar hosted by Vagnozzi and/or an in person meeting at ABFP's offices. As president of ABFP, Vagnozzi held a number of dinner seminars where, in exchange for a meal, attendees received an approximately hour-long pitch by Vagnozzi. During the seminar, Vagnozzi explained how life settlements worked and promoted them as low-risk, high-return investments.

23. During the Relevant Period, Vagnozzi videotaped at least two dinner seminars and posted them online for public viewing on his Vimeo channel. For example, in an April 2013 video, titled "Flemings Steakhouse Presentation," Vagnozzi states that he is paying for dinner "because a bunch of you are going to become clients." He then describes life settlements as "an asset class" and explains that he has a "private placement" opportunity where "the money is all pooled together" and invested across several policies. Vagnozzi did not sell any life settlement policies, but rather, sold limited partnership interests in the Pillar Funds which, in turn, acquired fractionalized interests in life settlement policies, whole life settlement policies or some combination of both.

24. As a result of the conduct described above, Respondents willfully[2] violated Section 5(a) of the Securities Act, which prohibits the sale of securities in interstate commerce unless pursuant to an effective registration statement, and Section 5(c) of the Securities Act, which makes it unlawful to offer to sell securities, through the use or medium of a prospectus or otherwise, unless a registration statement has been filed as to such security.

### C. Vagnozzi's Involvement in the Fallcatcher Capital Raise

25. In late May 2018, Vagnozzi spoke with Ford, whom he met in 2015. During the conversation, Ford explained that he was gathering funding for Fallcatcher, a purported biometric device and software start-up founded by Ford. Vagnozzi asked Ford to send him information about Fallcatcher, which Ford did. And Vagnozzi and Ford discussed Vagnozzi assisting in raising money for Fallcatcher.

26. Ford and Vagnozzi agreed that if Vagnozzi successfully raised $4 million from his contacts, Fallcatcher would pay Vagnozzi (through ABFP) a fee of 15 percent of the funds raised from investors introduced to Fallcatcher by Vagnozzi and Ford would also give Vagnozzi (through ABFP) 5 percent of the issued and outstanding Fallcatcher stock prior to the capital raise. Vagnozzi understood that he would only be paid if he raised at least $4 million from his contacts for Fallcatcher.

27. In advance of reaching out to his contacts, Vagnozzi requested certain materials from Ford, which he planned to "use to fill a room."

28. Shortly after Ford first reached out to Vagnozzi about raising money, Vagnozzi began contacting potential investors for Fallcatcher from among his own contacts, many of whom had invested in prior Pillar Funds. First, based on information sent to him by Ford, Vagnozzi sent a series of emails to over a hundred potential investors inviting them to learn more about Fallcatcher in a series of three dinner presentations that were held on June 19 and 20, 2018, in the Philadelphia area, where Vagnozzi's investor-contacts were located. In these emails, based on the information provided by Ford, Vagnozzi made claims about Fallcatcher's future prospects.

29. Attendees at these presentations each received dinner paid for by Vagnozzi. Vagnozzi videotaped one of these presentations, posted it to Vimeo and made the video available to prospective investors via a link that he shared with them over email. At the videotaped presentation, Vagnozzi introduced Ford, and told attendees that their investment would result in

---

[2] "Willfully," for purposes of imposing relief under Section 15(b) of the Exchange Act, "'means no more than that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)). The decision in *The Robare Group, Ltd. v. SEC*, which construed the term "willfully" for purposes of a differently structured statutory provision, does not alter that standard. 922 F.3d 468, 478-79 (D.C. Cir. 2019) (setting forth the showing required to establish that a person has "willfully omit[ted]" material information from a required disclosure in violation of Section 207 of the Advisers Act).

their owning a piece of the corporation. Before each presentation concluded, Vagnozzi asked each prospective investor to fill out an "indication of interest form" that included the amount each investor expected to invest and to submit the form before leaving the presentation.

30.     After the presentations, Vagnozzi continued to solicit his contacts to advise them concerning their investment in Fallcatcher. Vagnozzi repeatedly forwarded his investor-contacts information concerning Fallcatcher that Ford had sent to him, prefaced by Vagnozzi's own lengthy introductions and explanations. For example, on June 26 2018, Vagnozzi forwarded an email from Ford with an introduction stating, "Anyone who might be on the fence about Fallcatcher… this email/attachment that I received from [Ford] yesterday, should help you make your decision." Vagnozzi sent additional emails including similar content to groups of potential investors on July 2, 13, July 19, 26 and 31, 2018. These emails contained information concerning a sales agreement Fallcatcher entered into, a sales meeting Fallcatcher had set up, information about government efforts relating to the opioid crisis and the investment commitments made by Vagnozzi's investor-contacts.

31.     ABFP staff maintained an internal list of potential Fallcatcher investors and internal directions to "Send More Fallcatcher Info" to this group. ABFP's office staff also maintained a list of Fallcatcher questions from investors that they forwarded to Vagnozzi. On July 23, 2018, Vagnozzi reported to Ford on the then-size of the fundraising, which was approximately $1.5 million.

32.     Vagnozzi advised investors on which funds they could use to make the investment in Fallcatcher, including whether to use cash, funds from their self-directed IRAs or funds from their life insurance policies.

33.     Later, Vagnozzi and Ford re-negotiated ABFP's compensation to a flat fee of $500,000 (so long as Vagnozzi raised at least $4 million from his investor contacts) and increased ABFP's stock allocation to 7.5 percent of the issued and outstanding shares, which amounted to 4 million shares.

34.     From their investor outreach activity, Vagnozzi and ABFP ultimately raised over $4.9 million dollars for Fallcatcher from August through September 2018. These funds accounted for the entirety of Fallcatcher's September 2018 capital raise.

35.     Vagnozzi received the flat fee and 4 million shares as compensation for finding investors. In July 2020, Vagnozzi voluntarily returned the Fallcatcher shares to Fallcatcher.

36.     As a result of the conduct described in paragraphs 1 through 10 and 25 through 34 above, Respondents willfully violated Section 15(a)(1) of the Exchange Act, which makes it unlawful for any broker or dealer "to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security" unless such broker or dealer is registered in accordance with Section 15(b) of the Exchange Act.

**Undertakings**

Provide to the Commission, within 15 days after the end of the 12- month suspension period described below, an affidavit that Vagnozzi has complied fully with the sanctions described in Section IV.B. below.

### IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondents' Offers.

Accordingly, pursuant to Section 8A of the Securities Act and Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A.  Respondents cease and desist from committing or causing any violations and any future violations of Sections 5(a) and 5(c) of the Securities Act and Section 15(a) of the Exchange Act.

B.  Respondent Vagnozzi be, and hereby is, suspended from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization for a period of 12 months, effective on the second Monday following the entry of this Order.

C.  Respondent ABFP is censured.

D.  In connection with the violations of Section 5(a) and (c), Respondent Vagnozzi shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $8,671 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

E.  In connection with the violations of Section 5(a) and (c), Respondent ABFP shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $86,718 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

F.  In connection with the violations of Section 15(a)(1), Respondents shall, within 14 days of the entry of this Order, pay, jointly and severally, disgorgement of $489,491 plus prejudgment interest in the amount of $5,753.33, totaling $495,244.33 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

G.  In connection with the violations of Section 15(a)(1), Respondent Vagnozzi shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $9,472 to the

Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

H.   In connection with the violations of Section 15(a)(1), Respondent ABFP shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $94,713 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment must be made in one of the following ways:

(1)   Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)   Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)   Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Abetterfincialplan.com, LLC, d/b/a A Better Financial Plan and/or Dean J. Vagnozzi as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Lara S. Mehraban, Division of Enforcement, Securities and Exchange Commission, Brookfield Place, 200 Vesey Street, Suite 400, New York, NY 10281-1022.

I.   Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the disgorgement and penalties referenced in paragraphs 4(F)-(H) above. This Fair Fund may receive the funds from and/or be combined with funds paid by other respondents or defendants, including without limitation defendants in SEC v. Fallcatcher, 19-cv-2214 (E.D. Pa.), for conduct arising in relation to the violative conduct at issue in this In the Matter of Abetterfinancialplan.com, LLC, d/b/a/ A Better Financial Plan and Dean J. Vagnozzi proceeding. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondents agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondents' payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondents agree that they

shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the findings in this Order are true and admitted by Respondent Vagnozzi, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent Vagnozzi under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent Vagnozzi of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Vanessa A. Countryman
Secretary