**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 20-cv-81205-RAR**

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, et al,

     Defendants.

_____/

FILED BY___*CBR*___D.C.

*Jul 28, 2020*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. -

**DEFENDANTS' RESPONSE TO PLAINTIFF'S *EX-PARTE***
**MOTIONS FOR APPOINTMENT OF A RECEIVER AND FOR AN ASSET FREEZE**

Defendants, Complete Business Solutions Group, Inc. d/b/a Par Funding, Full Spectrum

Processing, Inc., Lisa Mcelhone, Joseph Cole Barleta and Joseph W. LaForte, and Relief

Defendant, L.M.E 2017 Family Trust (together, the "Defendants"), submit this Response to the

Securities and Exchange Commission's *Ex-Parte* Motions for the Appointment of a Receiver and

for an Asset Freeze of the Defendants, and state as follows:

**Introduction**

As the Court is well aware, this is a fast-moving case with a unique procedural posture.

On July 24, 2020, the Securities and Exchange Commission (the "Commission") filed a Complaint

for Injunctive and Other Relief (the "Complaint") against the Defendants and other named

defendants. ECF No. 1. The Commission alleges that Defendants are engaged in a business of

making "opportunistic" loans to small business owners across America and that they have funded these loans through a "web of unregistered, fraudulent securities offerings."  ECF No. 1 at ¶ 1.

Based on these serious allegations (which the Defendants vigorously dispute), the Commission contended that this Court should impose a temporary restraining order, including the extraordinary relief of appointing a receiver over the Defendants' complete business operations, and a freeze of the Defendants' assets, all on an *ex parte* basis.  (The "TRO Motion")

To be clear, for purposes of this Response, Defendants do to contest the SEC's request for the imposition of a TRO that temporarily restrains Defendants from engaging in activities that would constitute a violation of the federal securities laws.[1]  Defendants also do not oppose the portion of the TRO that requires Sworn Accountings.  *Id.* at Section IV, p. 18, and Records Preservation, *Id.* at Section V, p. 19.  With respect to Expedited Discovery, *Id.*, at Section VI, p. 19, Defendants request that such discovery be deferred until after the preliminary injunction hearing so that undersigned counsel can focus their efforts on protecting the Due Process rights at that hearing that they have not been able to protect at this "temporary" stage of the proceedings. Further, if the SEC contends a right to expedited discovery, Defendants should have the equal right to take depositions of the SEC and non-parties on two days' notice.  Defendants should have a meaningful right to defend this action once the one-sided nature of the SEC's *ex parte* practice ends with the resolution of the TRO Motion.

---

[1] The SEC submitted a proposed TRO to the Court that commences those prohibitions, at Section II, pages 4-11, that Defendants do not contest at this time.  Defendants will contest, at the preliminary injunction hearing, the allegation that Notes that are the subject of the SEC's enforcement action are "securities."  *See Reves v. Ernst & Young*, 494 U.S. 56 (1990) ("[r]ecognizing that not all notes are securities").

FOX ROTHSCHILD LLP

On July 27, 2020, the parties appeared at a telephone status conference before this Court, at which time the Court ordered that Defendants would be allowed to file a response to the SEC's TRO Motion.  As undersigned counsel began to review the SEC's TRO Motion and proposed orders granting extraordinary relief, it was apparent that the SEC was proposing anything but temporary relief.  Instead, the SEC was proposing the imposition of a broad receivership, to take total control of Defendants' businesses.  The SEC was also proposing a total freeze of Defendants assets.

At the July 27 status conference, undersigned counsel expressed our concern that the so-called "temporary" relief that the SEC sought to impose through an all-encompassing receivership and total asset freeze is anything but temporary and is unnecessarily destructive of Defendant's legitimate businesses and their personal rights.   Such action will lead to the liquidation of Defendants' legitimate businesses.   SEC counsel's response was that the SEC does not use its enforcement powers to liquidate legitimate companies.[2]   Nothing could be further from the truth.

The SEC's own Investor Bulletin explains to investors that "Courts typically grant broad powers to receivers, including the authority to sue on behalf of the receivership and to gather, manage and liquidate receivership assets on behalf of potential creditors and harmed investors."[3]

---

[2] SEC counsel referred to the *Mutual Benefits Corp.* enforcement action that has been pending in this District for 16 years, as reflecting that the SEC does not liquidate companies.  The SEC's own press release at the commencement of that proceeding on May 6, 2004, reflected that the SEC complaint was filed simultaneously with the State of Florida, Department of Financial Services, Office of Insurance Regulation's filing of an emergency cease-and-desist order suspending that business's license. *See* https://www.sec.gov/litigation/litreleases/lr18698.htm.  The past 16 years have been a liquidation proceeding.

[3]   *See*   https://www.   Investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins-87, at Section 3.

Fox Rothschild LLP

The proposed receivership order submitted by the SEC, sealed ECF 4-2, can only be viewed as order that would provide total control to the SEC in liquidating Defendants' operating businesses. The proposed order even contained provisions that would restrict investors from pursuing collection of the very security interests that they were provided with the notes that are the subject of this litigation.

The "*imposition of a receivership on a corporation is a drastic measure, the detrimental business effects of which should be carefully considered.*" *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980) (emphasis added).  Courts in this District and elsewhere, have limited the powers of a receiver at the commencement of a case.  Whether called a limited receiver, or a monitor, courts have not allowed the type of expansive, liquidation based receivership outside of the context of a Ponzi scheme or a case of a failed business.  *See e.g., In re The Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182, 207 (S.D.N.Y. 2009) (appointing a Monitor to oversee defendants' operations and protect the interests of investors."); *Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 35 (2d Cir. 1988) (affirming the district court's appointment of a monitor after the court found that a receiver was not appropriate and should only be appointed "in the case of clear necessity.").

In *SEC v. Koenig*, 1972 WL 329, at *1 (S.D.N.Y. June 20, 1972), *aff'd sub nom.*, 469 F.2d 198 (2d Cir. 1972), the Commission requested the Court to impose a receiver "to take all necessary actions to protect the interests of Ecological Science Corporation," based on allegations that the defendants were engaged in, or about to engage in, acts and practices constituting violations of Sections 10(b) and 13(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e)m and 78u(f). After the court conducted a hearing and gave the parties an opportunity to be heard, the court

determined a Receiver with *"limited powers"* should be appointed to "preserve the status quo while an accurate picture of what transpired is obtained." *Id.* at *8-9 (emphasis added).  On appeal, the Second Circuit Court of Appeals upheld the appointment of a limited receiver with powers tailored to the facts of the case. *Koenig*, 469 F.2d at 202.

In *Hofmann v. EMI Resorts, Inc.*, Nos. 1:09-cv-20526-ASG & 1:09-cv-20657-ASG (S.D. Fla. July 17 2009), this Court authorized the appointment of a Special Master (rather than a Receiver) to "MONITOR over the Elliott Defendants and their financial business affairs."  *Id.* at *2 (providing the Monitor with the exclusive power, duty and authority to "examine, review and monitor the business affairs, funds, assets and take necessary action to negotiate (along with defendants) with creditors concerning the preservation or refinance of such assets).  The Eleventh Circuit upheld that order on appeal.  *Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1186 (11th Cir. 2011); *see also SEC v. New Day Atlanta, LLC*, 2010 WL 11440935, at *2 (N.D. Ga. May 3, 2010) (appointing an independent Monitor with powers to protect the interests of all persons who have invested in, purchased securities from, and/or loaned moneys to the investors); *CFTC v. Worth Group, Inc.*, No. 13-cv-80796 (S.D. Fla. Jan. 23, 2014) (appointing an independent corporate Monitor with the ability to, *inter alia*, monitor expenditures and perform an assessment of defendants' current procedures); *SEC v. Bivona*, 2016 WL 9021535 (N.D. Cal. Mar. 25, 2016) (appointing an independent Monitor and providing the monitor with, *inter alia*, complete access to the books and records, principals, officers, employees, and agents of defendant as well as the ability to review and monitor all proposed transfers of money or assets).

The courts have warned the SEC against the type of overreaching proposed by the SEC in this case.  *See SEC v. American Bd. Of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987)("we have

warned that 'the appointment of trustees [or receivers] should not follow requests by the SEC as a matter of course." "We are, however, disturbed by the subsequent use of the receivership to effect the liquidation of the ABT entities." "We have in the past criticized the use of receivers to effect the liquidation of a defendant firm in litigation under the Securities Act or the Securities Exchange Act.")

 The SEC proposed Ryan K. Stumphauzer, Esq. to be the receiver.  Defendants have no objection to the selection of Mr. Stumphauzer to have a role as a neutral party in this case.  On July 27, 2020, the Court entered an Order appointing Mr. Stumphauzer as receiver.  *See* sealed D.E. 36.  That order, while selecting Mr. Stumphaizer to serve, did not at that time authorize him to take any formal action as the receiver.  Instead, the Court provided that "If the Court grants Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining Order and Other Relief," the Receiver will have a list of obligations and duties set out in that Order.  As the Defendants understood and accept the provisions of that Order, which will provide the receiver with a fulsome and meaningful oversight function, while permitting Defendants' businesses to continue to operate, undersigned counsel immediately reached out to the SEC and to Mr. Stumphauzer to begin a dialogue on how the receiver could fulfill the role set out in that Order.

 Most importantly, the Order appropriately did not contain the liquidation provisions in the SEC's proposed TRO order.  If the SEC requests an expansion of the terms of that Order, Defendants will refute, with evidence, any allegation that would support the type of receivership proposed by the SEC in this case.  But, if the SEC accepts the Order, and allows the Defendants to operate their businesses without inappropriate restrictions, then the Parties can move on to the remaining issue in the TRO Motion – the requested asset freeze.

FOX ROTHSCHILD LLP

**The SEC Has Not Met Their Burden for the Imposition of an Asset Freeze in the TRO**

The SEC submitted a proposed TRO that includes a total asset freeze of these Defendants and others. *Is.*, at Section III, pps. 11-13 and 16-18. Defendants submit that the SEC has not met the heightened requirements to be able to impose a total asset freeze on their TRO motion. Further, the SEC has blatantly ignored recent Supreme Court law that limits the disgorgement that they may seek in this case, and thus limits the asset freeze that is predicated on that claim of disgorgement. Section III should be omitted from the TRO and the issue of an asset freeze should be further and more fully addressed at the preliminary injunction hearing.

With respect to the Commission's request for an asset freeze, courts are permitted to freeze assets pending trial "as a means to preserv[e] funds for the equitable remedy of disgorgement." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005). The Commission must prove a reasonable estimate of defendants' ill-gotten gains. *Id.* at 735. When a Court is asked to consider the imposition of an asset freeze over a defendant's assets, each defendant must be considered individually.

The Commission's Complaint alleges that a half billion dollars has been raised over a period of 8 years. ECF No. 1 at ¶ 1. Later, the Commission alleges that as of December 2017, Par Funding raised $97 million through promissory notes. *Id.* at ¶ 61. Then, the Commission alleges that one of the co-Defendants raised $22,309,000 and $6,332,500 since 2018. *Id.* at ¶ 107. Further, the Commission alleges that another co-Defendant raised $5,838,000 since 2018. *Id.* at ¶ 114. Additionally, it is alleged that a separate co-defendant raised $5.5 million since 2018. *Id.* at ¶ 123. In its remedies section, *Id.* at pg. 56, the Commission then lumps all the defendants together in the request for an asset freeze irrespective of the allegations or claims.

7

The SEC's request for a TRO including an asset freeze is set forth at pages 68 -71 of its TRO Motion.  After stating general propositions of law, the SEC requests that Par Funding, Ms. McElhone and Mr. La Forte be jointly and severally ordered to disgorge $492,398,894; that Full Spectrum be ordered to disgorge $4,398,535,; that Mr. Cole be ordered to disgorge $165,159,000; and that Relief Defendant L.M.E. 2017 Family Trust be ordered to disgorge $14.3 million.  The sole support for this claim of disgorgement, and the asset freeze that must be based on this claim of disgorgement, is that this is "the amount raised from investors from July 2015 through the most recent bank statements available to us." *See* p. 69, note 405.  The sole basis to support the amounts set forth by the SEC is a summary Exhibit 13 submitted by a forensic accountant who reviewed bank records.

While the forensic accountant's summary of bank records is a proper "first' step in conducting a disgorgement analysis, what is truly remarkable is that the SEC ignores the Supreme Court's dictates of what they must prove as the additional steps if they seek the equitable remedy of disgorgement, and in this case, an asset freeze to protect a future disgorgement award.  The Commission's practice of making broad claims of disgorgement, in support of broad and total asset freezes against all defendants, is contrary to the Supreme Court's recent decision in *Liu v. SEC*, _ U.S. _, 140 S. Ct. 1936 (2020).

*Liu* addressed a challenge to the Commission's right to employ the equitable remedy of disgorgement.  Without the right to seek disgorgement, the Commission would not have a concomitant right to freeze a defendant's assets at a provisional remedy at the outset of a case. The Supreme Court upheld the Commission's power to seek disgorgement. *Id.* at 1940.  However,

it imposed significant restrictions on that practice.  *Id.*  Those restrictions are highly relevant to the temporary relief sought by the Commission in this case.

In *Liu*, the primary challenge to the Commission was that it did not have the right to seek disgorgement at all.  *Id.*  But, appellants also contended that the Commission's practice of disgorgement was unlawful because it failed to return disgorged funds to investors, improperly imposed disgorgement on a basis of joint and several liability, and failed to deduct business expenses from the award.  *Id.* at 1947.  While the Supreme Court declined to resolve those issues, it provided guidance to the lower courts.  *Id.* at 1947-48

With respect to the first issue, while this case is not at a stage where Defendants have been found liable or a disgorgement award has been entered, the issue of returning funds to investors is relevant to the issue of whether investors are seeking a return of their investment.  Defendants will present to the Court evidence regarding the March 2020 Exchange Offer, including investors who knowingly and voluntarily chose not to redeem their notes and who knowingly and voluntarily chose to continue their business with these Defendants. While the Commission acts of behalf of investors in enforcement proceedings, it cannot ignore the goals and desires of investors.

With respect to the second issue, while Ms. McElhone and Mr. LaForte do not contest the fact that as a married couple, they should be considered as one family unit, any other aspect of joint and several liability between and among the named Defendants in this case would be improper.  *See Liu,* 140 S. Ct. at 1949.  Thus, in seeking an asset freeze that seeks to protect a disgorgement award, each defendant must be considered on an individual basis, and only as to individual amounts of so-called ill gotten gains.

Fox Rothschild LLP

The deduction for business expenses becomes one of the most significant issues in considering an operating business, such as Complete Business Solutions Group, Inc. and Full Spectrum Processing, Inc.  As the Supreme Court held, both receipts and payments must be taken into account.  *Id.* at 1950.  The SEC totally ignored this requirement.  They simply totaled all the money raised by investors, and then traced that money to different sources.  But, the Supreme Court flatly rejected that approach to determining disgorgement.  Defendants will present evidence at the August 4 hearing related to appropriate business expenses and other deductions that must be considered before any asset freeze can be imposed to protect an eventual disgorgement order.

Furthermore, this stage of the proceeding is not an appropriate time to resolve these evidentiary issues.  While the SEC is correct that the Court can properly enter a TRO that enjoins the Defendants from violating the securities laws based solely on a *prima facie* submission, the imposition of an asset freeze requires a heightened evidentiary basis.  In *Winter v Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court set out a heightened standard for a finding a likelihood of suffering irreparable injury before injunctive relief can be granted.  That heightened standard has been applied to the SEC when it seeks an asset freeze.  *See SEC v Schooler*, 902 F.Supp.2d 1341, 1359-1361 (S.D. Cal. 2012)(applying *Winter* and rejecting the SEC's arguments for an asset freeze.)

Applying these legal principles, the appropriate remedy is one that is sufficient to protect the Commission's legitimate interest, while affording the Defendants their Due Process rights, including the right to adequately defend this case, and while preventing the destruction of a viable and lawful business.  The Court has already set forth an appropriate protection in its July 27 Order appointing Mr. Stumphauzer.  Paragraph 4 of that Order authorizes the Receiver to take any other

action as necessary and appropriate … to prevent the dissipation or concealment of … the Receivership Entities' property interests.   Undersigned counsel has reached out to Mr. Stumphauzer and is confident that Defendants can agree to a set of protocols that will protect the interests of all involved in this litigation.  Nothing more is needed and nothing more should be ordered.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Attorneys for Complete Business Solutions Group, Inc. d/b/a Par Funding, Full Spectrum Processing, Inc., Lisa Mcelhone, Joseph Cole Barleta and Joseph W. LaForte and Relief Defendant, L.M.E 2017 Family Trust*

One Biscayne Tower, Suite 2750
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 442-6547

By:   /s/*Joseph DeMaria*
     **Joseph A. DeMaria, B.C.S.**
     Florida Bar No. 764711
     Email: JDeMaria@FoxRothschild.com
     **Robert F. Elgidely**
     Florida Bar No. 111856
     Email: RElgidely@FoxRothschild.com
Sec. Email: mmiller-hayle@foxrothschild.com

     **Brett Berman, Esq.**
     (*pro hac vice pending*)
     2000 Market Street, 20th Floor
     Philadelphia, PA 19103,
     Tel: (215) 299-2000
     Email: bberman@foxrothschild.com

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2020, I electronically filed the foregoing with the Clerk of

the Court using CM/ECF.

/s/*Joseph A. DeMaria*
Joseph A. DeMaria

Fox Rothschild LLP