UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  9:20-cv-81205-RAR

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS GROUP,
INC. d/b/a/ PAR FUNDING, et al.,
_____/

**DEFENDANT DEAN VAGNOZZI'S
BRIEF ON CURRENT SCOPE OF RECEIVERSHIP AND ASSET FREEZE ISSUES**

Defendant DEAN VAGNOZZI (hereinafter "Defendant" or "Vagnozzi"), by and through his undersigned counsel, and pursuant to the Court's paperless Order regarding the Zoom hearing set for Tuesday, August 4, 2020, permitting defendants to file a memorandum of no more than ten pages regarding the current scope of the receivership and asset freeze [Dkt. 74], respectfully states as follows:

**Reservation of Rights**

1.      As an initial matter, Vagnozzi understands that the purpose of the August 4 hearing is not to expand or retract the extent of the receivership or any asset freezes, but rather only to address issues that have arisen under the current scope of the Court's receivership and asset freeze orders.  For the record, Vagnozzi does not consent to the imposition of a receivership, the current scope of the receivership, or any asset freeze, and reserves all of his arguments on those issues. Vagnozzi had no notice of these motions or opportunity to contest their entry because they were entered *ex parte*.  He expressly reserves the right to seek to modify or withdraw the existing orders.

He also expressly denies the SEC's allegations of wrongdoing. No statement below or at the August 4 hearing should be deemed to waive those arguments.

### Factual Background Relevant to Current Issues

2.  The facts in this case will be further developed through discovery and the Court's evidentiary hearings.[1] However, from Vagnozzi's perspective, there are a few key facts that will come out in full, which are relevant to the Court's assessment of the Current scope of the receivership and asset freeze orders:

- The SEC's allegations involve disclosure and registration issues. This is not a Ponzi scheme case. Nor has the SEC ever alleged that it is.

- Vagnozzi and the ABFP defendants with which Vagnozzi is associated are not currently selling any new promissory notes backed by the PAR Funding merchant cash advance business – and have not done so for months. No new money is coming in.

- Here is how the ABFP / PAR Funding promissory note business operated:
    - ABFP clients agreed to purchase promissory notes issued by the ABFP Income Fund (or limited partnership interests in the case of ABFP Income Fund 2) after receipt of a formal private placement memorandum ("PPM") (which does not appear to have been included in the SEC's TRO filing);

---

[1] For some reason, this lawsuit has been proceeding backwards (at least as to Vagnozzi). Normally, as the Court knows, the SEC conducts a thorough investigation and then files suit against people it accuses of violating the federal securities laws. But in this case the SEC decided to sue first, under seal, and now appears to be trying to conduct the investigation it should have done, later. Had the SEC conducted this matter in the ordinary course, the facts would have been revealed and a lot of unnecessary court time could have been avoided. This situation can be contrasted with the recent case filed two weeks ago by a different office of the SEC against Mr. Vagnozzi, which he settled after a normal investigative process.

- o the face amount was transferred into a segregated bank account for the relevant fund, along with a $100 processing fee;
- o the **entire** face amount was in turn promptly transferred to PAR Funding in exchange for a PAR promissory note in equal amount – ABFP deducted nothing;
- o when PAR Funding pays periodic interest payments on notes, that amount is transferred by PAR into the same segregated account at ABFP;
- o the contractually agreed interest payment is then promptly remitted out to the ultimate noteholder from that same account;
- o ABFP keeps the difference between the interest payment paid by PAR and the amount agreed to be paid to the ultimate noteholder, pursuant to the PPM;
- o the PPM clearly stated that, as compensation, "the Manager [ABFP] and Sole Member [Vagnozzi] shall retain the difference between the amount paid to the Company from the MCA Debt Obligations and the amounts payable on the Notes";
- o when PAR Funding repays principal due on its notes, the ABFP fund receives that amount into its same segregated account and promptly remits the entire amount back out to the ultimate noteholder.
- When the ABFP defendants were offering promissory notes, they did so with full involvement and advice of legal counsel (the SEC even alleges this fact repeatedly in its papers).
- With the exception of missed payments on the ABFP promissory notes in March and April 2020 because PAR Funding missed payments on its corresponding promissory notes, all ABFP noteholders have been paid everything due to them. There is no allegation to the contrary.

- The ABFP defendants do not currently (and never did) hold onto any amount of promissory noteholder funds.  As discussed above, payments received from noteholders were promptly remitted to PAR Funding when the ABFP fund promissory notes were issued, and payments from PAR Funding were promptly remitted back out to promissory noteholders.
- The ABFP defendants never commingled funds.  There are separate bank accounts for each entity.  There are multiple accountants and bookkeepers on staff who oversaw these operations.
- In March 2020, after the pandemic hit, PAR Funding advised its noteholders, including the ABFP defendants, that it was experiencing financial difficulties and needed to restructure its note obligations.   PAR Funding would not continue to pay the higher interest rates previously paid, and instead would only pay 5%.  The ABFP defendants sent a formal and detailed exchange offering to existing noteholders, requiring executed exchange agreements.  No new money changed hands at that time.  One note was exchanged for another.  The ABFP funds thereafter only received 5% interest from PAR Funding, and remitted 4% interest to the ultimate noteholders.  The SEC's suggestion that the ABFP defendants are reaping a windfall from the exchange offering is false.
- The ABFP defendants are one of the largest creditors of PAR Funding, and would be one of the largest victims if there was any wrongdoing at PAR Funding.  They have a keen interest in maximizing recovery.
- Vagnozzi's employees are victims here too.  They did not get paid their wages last week despite our requests.  They deserve to get paid. Their money is sitting in the bank account right now.

- It is untrue that Vagnozzi has violated the TRO or the asset freeze. The SEC has suggested that Vagnozzi intends to pay other noteholders (in funds that are not a part of the receivership) on August 7. That is simply untrue.[2] Mr. Vagnozzi vehemently denies that he ever told anyone he would do that. Moreover, it is illogical. As detailed above, the ABFP funds operate essentially as passthroughs and do not have any money to pay other noteholders unless PAR Funding makes good on its obligations, which it cannot do right now due the Court's orders in this case.

- Vagnozzi also operates other, completely unrelated, lines of business out of the ABFP offices that have nothing to do with the PAR Funding merchant cash advance business or the SEC's allegations. He is currently locked out of his offices and cannot perform those other business. As one example, he is not receiving life insurance premium notices that must be paid or else the life insurance may lapse.

- Vagnozzi has cooperated fully with the Receiver, and has made his employees available to them over the weekend to answer questions about the business operations and bank accounts.

- The Court has not entered any order freezing Mr. Vagnozzi's assets.

**"Current Scope" Issues to be Discussed at Today's Hearing by Vagnozzi**

3.  *First*, the Receiver should make the payroll payment that was due to ABFP employees last Friday. We have provided details on the amounts due to employees. The payroll is for work performed in the past, so the employees have already done the work. None of those employees are defendants in this case. Vagnozzi would not get paid himself. Especially in a time

---

[2] The Court should pause for a moment and think about the SEC is really suggesting here... If this were true, why would it be so horrible for Vagnozzi to actually make contractually required payments to noteholders?

of economic downtown and a global pandemic, it is critical that these individuals be paid the amounts they are due.

4.  *Second*, Vagnozzi and his employees need access to the office, files, and servers, to conduct their other unrelated businesses that are not a part of this case. Currently, the Receiver has taken over everything, even though the Receiver has no power or authority over unrelated business operations. Those businesses have payments they must make, including for example making payments on life insurance premiums owned or else the policies will lapse. Those businesses also are receiving payments from outside parties that they need to process. On a related note, defendants ABFP and ABFP Management run these businesses and must pay their business expenses, including future payroll, so need relief from the asset freeze in order to allow them to do so. Defendants ABFP Income Fund and ABFP Income Fund 2 would remain subject to the full asset freeze and Receivership. Vagnozzi would not object to the Receiver monitoring what his employees do in order to ensure that they do not interfere with Receivership assets. Moreover, Vagnozzi and ABFP are subject to the Court's document retention orders, and the Receiver also can oversee that there is no destruction of any documents or files. If Vagnozzi is not permitted to do these other business operations, his employees may end up unemployed with no prospects in the current economic environment to find another job, and he himself will have no way of earning money. Those outcomes would, of course, be inconsistent with protecting the noteholders.

5.  *Third,* Vagnozzi needs to send a communication to his clients regarding what is going on. He also needs to inform noteholders backed by the merchant cash advance business they will not be receiving their August monthly interest payments. Vagnozzi is willing to coordinate the language of this communication with the Receiver. Vagnozzi also needs to be free to

communicate with his employees and clients regarding other business operations that are unrelated to the SEC's case.

6. *Fourth*, this Court should clarify that Vagnozzi himself is not subject to the Court's asset freeze, because he is not.

7. *Fifth*, Vagnozzi should not be subjected to the Court's requirement to provide an accounting. He had no notice of that, nor opportunity to object. Vagnozzi is not subject to any asset freeze, so that extensive and invasive relief is overly burdensome to him, and unjustified. In many SEC cases, the accounting typically accompanies an asset freeze. See, e.g., S.E.C. v. Camarco, No. 17-CV-2027-RBJ, 2018 WL 11025769, at *1 (D. Colo. Sept. 28, 2018) ("Contemporaneously with the filing of the Complaint plaintiff filed an Emergency Motion for an Ex Parte Asset Freeze and Other Emergency Relief. ECF No. 5. As the name implies, plaintiff sought an order freezing Ms. Camarco's and the relief defendants' assets. In addition, and as is particularly germane to one of the two pending motions, plaintiff sought an accounting by Ms. Camarco and the two relief defendants") S.E.C. v. Lane, No. 607-CV-1920-ORL22DAB, 2009 WL 2634484, at *1 (M.D. Fla. Aug. 25, 2009) ("The SEC sought the following relief: 1) a declaration that "Defendants committed the violations of the federal securities laws alleged in this Complaint;" 2) a temporary restraining order, preliminary and permanent injunctive relief; 3) an asset freeze and an order requiring sworn accountings by the Defendants and Relief Defendants"). To the extent the Court requires him to provide an accounting, he needs more time to do so. Undersigned counsel appeared in this case last Thursday July 30, and since then has faced a flurry of discovery to respond to, including approximately 100 requests for admission and a deposition scheduled for tomorrow. Not everything can be accomplished on short notice. The Court should delay the requirement to provide an accounting until after the Court decides next

week if there will be a preliminary injunction, etc., or not.  Undersigned counsel conferred with the SEC on this issue this morning.  The SEC still seeks an accounting from Mr. Vagnozzi, but agreed to provide him until this Friday to provide it.  We still believe he requires more time, as outlined above.

Dated:  August 4, 2020

                                   **AKERMAN LLP**
Three Brickell City Centre, Suite 1100
98 Southeast Seventh Street
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: */s/ Brian P. Miller*
    Brian P. Miller, Esq.
    Florida Bar No. 980633
    E-mail: brian.miller@akerman.com
    E-mail: Kelly.connolly@akerman.com
    Alejandro J. Paz, Esq.
    Florida Bar No. 1011728
    E-mail: Alejandro.paz@akerman.com
    Secondary: marylin.herrera@akerman.com

*Attorneys for Dean Vagnozzi*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2020, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

*/s/ Alejandro J. Paz*
Alejandro J. Paz, Esq.