# EXHIBIT 1

**Name:  WELLEN FUND I**                                                                                     **CONFIDENTIAL**
**Restated Note Amount:  $2,654,100.00**

# COMPLETE BUSINESS SOLUTIONS GROUP, INC.

## EXCHANGE OFFER OF OUTSTANDING NOTES FOR
## AMENDED AND RESTATED NOTES

Complete Business Solutions Group, Inc., a Delaware corporation (the "Company") d/b/a PAR Funding, is offering to exchange all issued and outstanding notes to which the Company granted a security interest in the tangible and intangible personal property of the Company (the "Outstanding Notes") for new notes in the amount of the aggregate and outstanding balance of the Outstanding Note as of the Effective Date (as defined herein) (taking into account the moratorium on interest – See Recent Developments) but with a different term, interest rate and repayment schedule that was applicable to the Outstanding Notes and as to which the Company will grant a similar security interest in its tangible and intangible personal property (the "Restated Notes").

The exchange offerees are all persons who are current holders of the Outstanding Notes.

The exchange offer expires at 5:00 pm, Eastern Daylight Time, on April 24, 2020, unless extended in the sole discretion of the Company (the "Expiration Date").

The exchange offer is <u>not</u> conditioned upon the acceptance of the exchange offer by a minimum number of holders of Outstanding Notes or a minimum aggregate principal amount of Outstanding Notes by the Expiration Date.

In all respects, the information contained herein is qualified in its entirety by reference to the Amended and Restated Note Purchase Agreement appearing in <u>Exhibit A</u> hereto (the "Restated Note Purchase Agreement"), the Amended and Restated Non-Negotiable, Non-Transferable Term Promissory Note appearing in <u>Exhibit B</u> hereto (the "Restated Note") and the Amended and Restated Security Agreement appearing in <u>Exhibit C</u> hereto (the "Restated Security Agreement"), all of which are incorporated by reference herein.  ***Each person receiving this exchange offer is encouraged to read these documents carefully.***

Execution and submission of the above-referenced documents to the Company by the holder of an Outstanding Note constitutes an irrevocable acceptance of the exchange offer and after submitting them to the Company, the holder of the Outstanding Note has no right to withdraw his acceptance of the exchange offer.

Due to the exigencies described under "Recent Developments," the Company intends to counter-sign the Restated Note Purchase Agreement, Restated Note and Restated Security Agreement upon receipt.

Certain risks associated with the exchange offer appear on page 3.

**Neither the U.S. Securities and Exchange Commission ("SEC") nor any state securities commission has passed upon the merits of the exchange offer or the accuracy or adequacy of this document or exhibits thereto.  It is unlawful to make any representation to the contrary.**

**The date of this Exchange Offer is April 8, 2020.**

**The Restated Notes have not been registered under the Securities Act of 1933, as amended ("1933 Act") or any state securities laws in good faith reliance upon an exemption from registration for offerings made in reliance on Rule 506(b) of SEC Regulation D.**

**This Exchange Offer does not constitute an offer of securities in any jurisdiction in which, or to any person to whom, it is not permitted.**

**Neither the delivery of this Exchange Offer nor any sale made pursuant thereto shall create any implication that the information contained herein is correct as of any time subsequent to the date hereof or any supplement thereto.**

**Exchange offerees are not to construe this Exchange Offer or information provided by professionals who have been engaged by the Company to render professional services in connection with the preparation of this Exchange Offer as constituting legal, tax, accounting or investment advice. Exchange offerees should consult their own legal, tax, accounting and financial advisors with respect to acceptance of the exchange offer.**

**This Exchange Offer does not address any resales of Restated Notes during or after completion of the exchange offer and no person is authorized to make use of this document in connection with any resale.**

## FORWARD LOOKING STATEMENTS

This document may contain various forward-looking statements which may include statements about expectations, beliefs, plans, objectives, assumptions or future events which are not historical facts and may be forward-looking. These forward-looking statements often can be, but are not always, identified by the use of words such as "assume," "expect," "intend," "plan," "project," "believe," "estimate," "predict," "anticipate," "may," "might," "should," "could," "goal," "potential" and similar expressions. Should any statement containing these words included herein not materialize or should any or all underlying assumptions prove to be incorrect, actual results or outcomes may vary materially from those described herein as anticipated, believed, estimated, expected or intended. The Company does not promise to update forward looking information to reflect actual results or changes to assumptions or other factors that could affect such information.

## THE COMPANY

The Company provides small and mid-size businesses with various financing options to fund their day-to-day operations and growth. A significant service provided by the Company to these customers is an agreement to advance funds to the customer in exchange for an obligation on the customer to sell future receivables to the Company at stated periods which often is referred to as merchant cash advances ("MCA").

Joe Cole is the Chief Financial Officer of the Company and is the person to whom exchange offerees may ask questions or request additional information concerning this exchange offer. No other person is authorized to give information or make any representation not contained herein.

2

Mr. Cole can be contacted by email at joecole@parfunding.com.  The Company's principal office is located at 2000 PGA Blvd., Suite 4440, Palm Beach Gardens, FL  33408.

## RECENT DEVELOPMENTS

The COVID-19 pandemic in the United States has resulted in government orders in almost all states for non-essential businesses to close and for the population of those states to isolate themselves at home.  These government measures have wiped out the ability of the Company's customer base to satisfy their MCA obligations to the Company.

To address this dramatic loss of revenue to the Company and to preserve its ability to continue as a going concern, the Company has taken several important steps.  The first step was to declare a moratorium on payment of interest on all Outstanding Notes with no exceptions, effective March 16, 2020.

The second step is to restructure the terms of the Outstanding Notes through this exchange offer by lowering the interest rate and lengthening the term.  Although the Restated Note will mature and be payable on the seventh anniversary of the Effective Date as defined in the Restated Note, it offers holders of the Outstanding Notes the opportunity for the return of principal which opportunity would be lost if the Company were to cease operations and declare bankruptcy.  By accepting the exchange offer, the Company believes it will have a path toward repayment of its debt.

The Company's management team remains strong and is committed to continuing the Company as a going concern but this can only happen if the exchange offer is accepted by substantially all of the holders of the Outstanding Notes.  The third step being taken by the Company is to identify potential sources of new capital, primarily from institutional investors.

## RISKS RELATING TO THE EXCHANGE OFFER

***If the exchange offer is not accepted by substantially all of the holders of the Outstanding Notes, the Company likely will not be able to continue as a going concern.***

In order to have any reasonable prospect of continuing as a going concern, the Company must restructure its Outstanding Notes to lower the interest rate and lengthen the repayment period as provided in the exchange offer.  Failure of holders of substantially all of the Outstanding Notes to accept the exchange offer likely would result in the Company seeking the protection of the bankruptcy courts as it would be unable to meet its obligations under the Outstanding Notes as they become due.

***If the Company would file for bankruptcy, holders of the Outstanding Notes most likely would not recover their entire principal amount and interest.***

If the Company would file for bankruptcy, any disbursements to holders of the Outstanding Notes would be subject to approval of the bankruptcy court and there is no assurance that the bankruptcy estate will have sufficient assets to permit holders of the Outstanding Notes to recover

3

either the entire principal amount of the Outstanding Note or any accrued but unpaid interest. In addition, the debt represented by the Restated Notes could be reviewed under the Federal bankruptcy laws and comparable provisions of state fraudulent transfer laws.

***A holder of an Outstanding Note may not withdraw from the exchange offer after the holder has executed the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement and submitted them to the Company.***

Execution and submission of the above-referenced documents to the Company by the holder of an Outstanding Note constitutes an irrevocable acceptance of the exchange offer and after submitting them to the Company, the holder of the Outstanding Note has no right to withdraw his acceptance of the exchange offer.

***The exchange offer is not conditioned upon the acceptance of the exchange offer by a minimum number of holders of Outstanding Notes or a minimum aggregate principal amount of Outstanding Notes by the Expiration Date.***

Due to the exigencies described under "Recent Developments," the Company intends to counter-sign the Restated Note Purchase Agreement, Restated Note and Restated Security Agreement upon receipt. Therefore, at the time of submission of these documents to the Company which constitutes an irrevocable acceptance of the exchange offer, the holder of the Outstanding Notes accepting the exchange offer will not know how many other holders of Outstanding Notes have accepted the exchange offer or the principal amount of such Outstanding Notes and whether a sufficient number of holders of the Outstanding Notes or a sufficient aggregate principal amount of the Outstanding Notes have accepted or will accept the exchange offer by the Expiration Date, all of which will have a material effect on the Company's ability to continue as a going concern.

***The Company may borrow funds from other lenders in the future.***

Nothing in the Restated Note Purchase Agreement or the Restated Notes prohibits the Company from borrowing funds from other lenders at any time in the future and in such amounts and on such terms as it deems appropriate. Absent a corresponding increase in the Company's asset base, such borrowings could result in a reduced collateral pool available to existing lenders. *See Description of Restated Notes and the Restated Note Purchase Agreement*

***The Restated Notes will be subordinate to any New Senior Indebtedness.***

As provided in the Restated Note Purchase Agreement, if the Company enters into a borrowing constituting New Senior Indebtedness, the Restated Notes will be subordinate to any New Senior Indebtedness which is defined generally to include indebtedness incurred for borrowed funds in the amount of $100 million or more from a single lender or a group of a lender and its affiliates.

In the event the Company enters into other borrowings for an amount that does not constitute New Senior Indebtedness, any security interest granted to such new holder of indebtedness in the collateral, as defined in the Restated Security Agreement (the "Collateral"),

4

shall be *pari passu* with the security interest in the Collateral granted under the Restated Security Agreements.  *See Description of Restated Notes and the Restated Note Purchase Agreement.*

***The Restated Notes are non-negotiable and non-transferable.***

The Restated Notes cannot be negotiated, transferred, assigned, pledged or hypothecated. *See Description of Restated Notes and the Restated Note*

***The Company, in its discretion, may pre-pay a Restated Note at any time.***

The Restated Notes do not contain a pre-payment penalty and the Company, in its discretion, may pre-pay a Restated Note at any time.  *See Description of Restated Notes and the Restated Note*

***The terms of the Restated Notes may be amended or waived upon the approval of the holders of a majority of the then-outstanding balances of the Restated Notes.***

The terms of the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement may be amended or waived upon written consent of the Company and the holders of a majority of the then-outstanding balances of the Restated Notes, except that the financial terms of a Restated Note may not be amended or waived without the consent of the holder of such Restated Note.  *See Description of Restated Notes and the Restated Note.*

***The Restated Notes are not guaranteed as to repayment of principal or interest.***

Payment of interest and principal when due on the Restated Notes is not guaranteed by any other entity or individual and the holders of the Restated Notes must look to the Company as the sole source for repayment of the Restated Notes.  The Restated Notes are secured by a security interest in substantially all of the Company's tangible and intangible assets, which security interest is *pari passu* with the other Restated Notes. *See Description of Restated Notes and the Restated Note Purchase Agreement*

***The Restated Notes will not be registered with the SEC or with any state securities commission and will be subject to a restriction on resale.***

The Company is undertaking this exchange offer in good faith reliance on the exemption from registration under Rule 506(b) of SEC Regulation D adopted under the 1933 Act and the Restated Notes to be issued in the exchange offer are deemed to be "restricted securities" under federal securities laws.  Purchasers of such securities are subject to the holding periods described in SEC Rule 144.  Generally, "restricted securities" cannot be resold or transferred for one (1) year from the date of purchase absent compliance with the registration requirements of Section 5 of the 1933 Act or the availability of an exemption from registration.  A legend describing these restrictions will be placed on each Restated Note.  However, the Restated Notes, pursuant to their terms, are non-transferable.

*The Restated Notes are not being issued pursuant to a trust indenture.*

The Restated Notes are being issued in reliance on Rule 506(b) of SEC Regulation D and no indenture in respect of the Restated Notes is required to be qualified under the Trust Indenture Act of 1939, as amended.  *See Description of Restated Notes and the Restated Note*

*The Company has not sought an independent tax opinion on the treatment of the exchange offer under Federal, state or local income tax laws.*

The Company has not sought nor will it seek an independent tax opinion on the treatment of the exchange offer under Federal, state or local income tax laws and exchange offerees are encouraged to seek relevant advice in this regard from their accounting, tax and financial advisors.  *See Description of Restated Notes*

*The nature of its business subjects the Company to litigation.*

The Company is in the business of providing MCAs to small and mid-size businesses.  In connection with its collection efforts against MCA customers and in other similar contexts involving its MCA customers, the Company has been subject to a substantial number of lawsuits.  It is not unusual for MCA customers to resort to litigation against the Company in defense of selling its future receivables when the customer is in default of its MCA obligations and the Company initiates collection efforts.  Although the Company believes that lawsuits of this nature are an ordinary and necessary part of the MCA business, the Company cannot assure that these legal proceedings will not singularly, or in the aggregate, have a material adverse effect on the business of the Company.  *See Restated Note Purchase Agreement.*

## RESTATED NOTE PURCHASE AGREEMENT

To accept the exchange offer, the holders of the Outstanding Notes will be required to execute the Restated Note Purchase Agreement appearing as <u>Exhibit A</u> hereto which contains important information concerning the exchange offer including, without limitation, specific representations, warranties and covenants being made to the Company, certain disclosures, governing law and jurisdiction, provisions relating to subordination and repayment of the Restated Notes, indemnification provisions and a mutual release with respect to any claims arising out of the Outstanding Notes.  *Each person receiving this exchange offer is encouraged to read this document carefully.*

## DESCRIPTION OF RESTATED NOTES

The information set forth below is qualified in its entirety by the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement.  In the event that there is any discrepancy between the information set forth herein and the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement, the terms and conditions of the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement shall govern.

**Principal Amount; Interest and Repayment**

Each Restated Note to be issued in the exchange offer will be in the amount of the aggregate and outstanding balance of the Outstanding Note as of the Effective Date (as defined herein) (taking into account the moratorium on interest – See Recent Developments) as of the date the Company accepts each exchange offeree's irrevocable acceptance of the exchange offer by counter-signing the Restated Note Purchase Agreement (the "Effective Date").  The Restated Note shall mature and be payable on the seventh anniversary of the Effective Date.

Interest accruing on the principal amount of each Restated Note is five percent (5%) per annum calculated on the actual number of days elapsed.  Commencing on the first business day of the month following the Effective Date of the Restated Note, interest will be paid in arrears in eighty-four (84) installments.

Commencing on the first business day of the month following the first anniversary of the Effective Date of the Restated Note, the principal amount shall be paid in seventy-two (72) installments, each in the amounts set forth in in Schedule A to each Restated Note, with the final installment of interest and principal in an amount to fully pay the remaining balance in accordance with the amortization schedule attached as Schedule A to each Restated Note.

 All payments made by the Company will be applied first to accrued interest, then to any and all sums, other than principal, due under the Restated Note, and then to principal.  In no event shall the charges constituting interest under the Restated Note exceed the rate permitted under any applicable law or regulation.

**Subordination**

Nothing in the Restated Note Purchase Agreement or the Restated Notes prohibits the Company from borrowing funds from other lenders after the Effective Date and in such amounts and on such terms as it deems appropriate.  The Restated Notes will be subordinate to New Senior Indebtedness as defined in the Restated Note Purchase Agreement incurred after the Effective Date.  In the event the Company enters into other borrowings after the Effective Date for an amount that is less than $100 million, any security interest granted to such new holder of indebtedness in the Collateral shall be *pari passu* with the security interest in the Collateral granted under the Restated Security Agreements to holders of the Restated Notes.

**Security for the Restated Notes**

To secure the obligations of the Company under the Restated Note, the Company will enter into a Restated Security Agreement set forth in Exhibit C hereto.  Each Restated Note will be secured by a security interest in substantially all of the tangible and intangible assets of the Company, which security interest will be *pari passu* with the other Restated Notes.

**Negotiability, Assignment, Transfer, Pledge, Hypothecation**,

The Restated Notes cannot be negotiated, transferred, assigned, pledged or hypothecated.

**Restrictions on Resale or Transfer**

The Restated Notes are being offered in reliance on an exemption from registration under Section 4(a)(2) of the 1933 Act and Rule 506(b) of SEC Regulation D. Securities sold in reliance on this exemption are deemed to be "restricted securities" under federal securities laws and purchasers of such securities are subject to the holding periods described in SEC Rule 144. Generally, "restricted securities" cannot be resold or transferred for one (1) year from date of purchase absent compliance with the registration requirements of Section 5 of the 1933 Act or the availability of an exemption from registration. A legend to this effect will be placed on each Restated Note. However, the Restated Notes, pursuant to their terms, are non-transferable.

**No Guarantee**

Payment of interest and principal when due on the Restated Notes is not guaranteed by any other entity or individual and the holders of the Restated Notes must look to the Company as the sole source for repayment of the Notes.

**Early Repayment**

The Restated Notes do not contain a pre-payment penalty and the Company, in its discretion, may pre-pay a Restated Note at any time.

**Rights in Event of Default**

The Restated Note sets forth what circumstances constitute an event of default by the Company under the Restated Note. Upon a failure to make any required payment of principal, accrued interest or any other amount under the Restated Note on or before the date on which it shall fall due; or a breach or violation by the Company of any representation, warranty, term, provision or covenant of the Restated Note Purchase Agreement, the Restated Note or the Restated Security Agreement, the holder of the Restated Note, at the holder's option, may declare the unpaid principal balance of, all accrued and unpaid interest on, and all other sums payable with regard to the Restated Note to be immediately due and payable and demand payment therefor, and may exercise any of the holder's rights and remedies for collection of the Restated Note whether set forth in the Restated Note or otherwise.

In the event of filing a voluntary petition in bankruptcy by the Company or the filing of any involuntary petition against the Company in bankruptcy, the unpaid principal balance of, all accrued, unpaid interest on, and all other sums payable with regard to, the Restated Note automatically and immediately become due and payable without any further action by the holder of the Restated Note.

**Amendment**

The terms of the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement may be amended or waived upon the written consent of the Company and the holders of a majority of the then-outstanding balances of the Restated Notes, except that the

financial terms of a Restated Note may not be amended or waived without the consent of the holder of such Restated Note.

## THE EXCHANGE OFFER

The Company is offering to exchange each Outstanding Note for a Restated Note in the amount of the aggregate and outstanding balance of the Outstanding Note as of the Effective Date (taking into account the moratorium on interest – See Recent Developments) but with a different term, interest rate and repayment schedule that was applicable to the Outstanding Note and as to which the Company will grant a similar security interest in its tangible and intangible personal property. The exchange offerees are all persons who are current holders of the Outstanding Notes.

The exchange offer expires at 5:00 pm, Eastern Daylight Time, on April 24, 2020, unless extended in the sole discretion of the Company (the "Expiration Date").

The exchange offer is not conditioned upon the acceptance of the exchange offer by a minimum number of holders of Outstanding Notes or a minimum aggregate principal amount of Outstanding Notes by the Expiration Date.

Execution and submission of the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement to the Company by the holder of an Outstanding Note constitutes an irrevocable acceptance of the exchange offer and after submitting them to the Company, the holder of the Outstanding Note has no right to withdraw his acceptance of the exchange offer.  Due to the exigencies described under "Recent Developments," the Company intends to counter-sign the Restated Note Purchase Agreement, Restated Note and Restated Security Agreement upon receipt.

## ACCEPTING THE EXCHANGE OFFER

To accept the exchange offer, the holder of the Outstanding Notes should follow the process set forth below.

1. Complete the Purchaser Qualification Supplement to the Signature Page and sign the Restated Note Purchase Agreement which appears as <u>Exhibit A</u> hereto.
2. Sign the acknowledgement and agreement as "Payee" on the Restated Note which appears as <u>Exhibit B</u> hereto.
3. Sign as the "Secured Party" the Restated Security Agreement which appears as <u>Exhibit C</u> hereto.
4. Submit the documents specified in #1-3 to the attention of Joe Cole, Chief Financial Officer, Complete Business Solutions Group, Inc.

    BY EMAIL:                              joecole@parfunding.com
    BY OVERNIGHT
    COURIER OR US Mail:      205 Arch Street, Floor 2
                                               Philadelphia, PA 19106

Execution and submission of the Restated Note Purchase Agreement, the Restated Note and the Restated Security Agreement to the Company by the holder of an Outstanding Note

9

constitutes an irrevocable acceptance of the exchange offer and after submitting them to the Company, the holder of the Outstanding Note has no right to withdraw his acceptance of the exchange offer.

The Company intends to counter-sign the Restated Note Purchase Agreement, Restated Note and Restated Security Agreement upon receipt and will return a fully executed copy of the above-referenced documents to the exchange offeree.

## PLAN OF DISTRIBUTION

The exchange offer is being undertaken by employees of the Company under the direction of Joe Cole, Chief Financial Officer of the Company. None of these individuals will receive any compensation, directly or indirectly, in connection with soliciting the exchange offer.

[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

**EXHIBIT C**

**REGULATORY MATTERS**

On November 28, 2018, without or admitting or denying certain allegations of the staff of the Pennsylvania Department of Banking and Securities ("PADOBS"), the Company agreed to issuance of an order wherein PADOBS found that the Company had employed at least one unregistered agent in violation of Section 301(b) of the Pennsylvania Securities Act of 1972 in connection with the offer and sale of its promissory notes in Pennsylvania for which the Company paid a monetary assessment (the "PA Order"). The Company has continued to offer and sell notes in Pennsylvania in compliance with that order.  The order can be found at: www.dobs.pa.gov/Documents/Enforcement%20Orders/2018/112818_CompleteBusinessSolutions.pdf

On December 27, 2018, the New Jersey Bureau of Securities issued a Cease and Desist Order against the Company alleging that the Company sold unregistered securities and employed agents who were not registered under the New Jersey Securities Act (the "NJ Order"). The order did not impose any sanctions or other penalties against the Company. The Company retained New Jersey counsel and made appropriate filings with the New Jersey Bureau of Securities and no further action has been taken against the Company. The order can be found at: www.nj.gov/oag/newsreleases18/CBSG-dba-PAR-Funding-Order.pdf

On February 25, 2020, the Texas State Securities Board ("TSSB") issued a Cease and Desist Order against the Company and several other entities unrelated to the Company alleging that the Company offered and sold unregistered securities, acted as an unregistered dealer and omitted disclosure of the PA Order, the NJ Order and certain information about the Company's ownership and management in violation of the Texas Securities Act. (the "TX Order").  The TX Order did not impose any sanctions or other penalties against the Company.  The Company is complying with the TX Order. The Company has engaged Texas counsel and has requested a hearing on the TX Order.  The TX Order can be found at: www.ssb.texas.gov/sites/default/files/Beasley_ENF_CDO_20_1798.pdf