**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 9:20-CV-81205-RAR**

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

vs.

COMPLETE BUSINESS SOLUTIONS GROUP,
INC. d/b/a/ PAR FUNDING, *et al.*,

       Defendants.

_____/

**DEFENDANTS' AMENDED OPPOSITION TO PLAINTIFF'S**
**EXPEDITED MOTION TO AMEND RECEIVERSHIP ORDER**

       Relief Defendant The LME 2017 Family Trust, as the owner of all issued and outstanding

shares of Complete Business Solutions Group, Inc. d/b/a/ Par Funding, and Lisa McElhone, as the

owner of Full Spectrum Processing, Inc., submit this Joint Amended[1] Response to Plaintiff's

Expedited Motion to Amend Receivership Order, ECF 105, ("Motion to Amend Receivership

Order") and state as follows:[2]

---

[1] The only amendments made to the Defendants' Opposition to Plaintiff's Expedited Motion to Amend Receivership Order, ECF 130, are revisions to the former footnote 1 (now, footnote 2) and the deletion of the former footnote 6.

[2] This afternoon, counsel for Defendants Lisa McElhone, Joseph Laforte and Relief Defendant The LME 2017 Family Trust (the "Trust") conferred during a lengthy call with counsel for the SEC and the Receiver (collectively, "the Parties") to resolve and narrow several issues pending before the Court. Included in those discussions were issues relating to privileged communications and the Receiver's interviews of Complete Business Solutions Group, Inc. d/b/a/ Par Funding ("CBSG") employees, which is consistent with Defendants' desire for the Receiver to rehire CBSG employees immediately.

On July 24, 2020, the SEC commenced this action with the filing of its Complaint, ECF 1, accompanied by its *ex parte* motions for the appointment of a Receiver, ECF 4, and for a temporary restraining order, ECF 6.  The SEC submitted a proposed Receivership Order, ECF 4-2, that it now refers to as its "Model Order."  ECF 105, at p. 2.  However, there is nothing "model" about an action that, on a preliminary basis, deprives the lawful owners of a legitimate business from maintaining their rights of ownership—and, correspondingly, the investors in that business from realizing their promised returns—while the parties litigate whether the SEC can prove the allegations in its Complaint, particularly one it just amended on August 10, 2020.

The owners of Par Funding and Full Spectrum (the "Companies") recognize that the Court might impose temporary relief to address the concerns raised by the SEC and to protect the investor interests.  But, as Defendants submitted in their first substantive response to the SEC's request for temporary relief, the Receivership Order needed to be carefully calibrated to protect the legitimate concerns raised by the SEC without unduly harming the legitimate interests of the owner and managers of the Companies, as well as investors and client merchants.  Defendants cited authority from this District, and from other Federal Courts, in which monitorships, or limited receivers, were appointed under appropriate circumstances, instead of full-blown receiverships.  ECF 43.

There is no "one size fits all" receivership that Federal Courts impose at the preliminary stage of a proceeding brought by federal regulators.  The fact is that a full-blown receivership is often a prelude to liquidation, whereas other procedural mechanisms, such as monitorships, limited receiverships, or conservators, are used to protect the interests of Companies, the people and businesses that rely on them, and their investors, by making sure that they remain "going concerns."  *See e.g. Hennessy v. FDIC*, 58 F.3d 908, 916 (3d Cir. 1995)("A receiver, unlike a

conservator, does not have as its purpose the preservation of an institution as a going concern…Receivers have the power to liquidate and wind up the affairs of an institution.")

The Court rightly rejected the SEC's proposed receivership order and entered a narrower Receivership Order, appropriately tailored to the circumstances presented in this case. ECF 36. The Court, at the August 4, 2020 status conference, reaffirmed its narrower view of the Receiver's authority and its decision to enter the Receivership Order that presently governs this case. The SEC nevertheless insists, in its Expedited Motion, that the substance of the proposed order that was rejected by the Court should now be imposed. The SEC does not claim that the Court committed a legal error in imposing the narrower Receivership Order, nor does the SEC even suggest any materially changed circumstances that should lead the Court to reconsider the scope of the Receivership Order. If anything, the facts as disclosed in recent defense filings show that the SEC and the Receiver misapprehended significant, material facts about the finances and the business and how it was run. These facts confirm this Court's sound decision to issue a Receivership order carefully tailored to the circumstances of this case.

The SEC's first basis for imposing the rejected proposed order is simply because three other Judges in this District in cases with vastly different facts imposed the SEC's preferred Model Order. ECF 105 at p. 2. [3] The SEC prefers its Model Order, not because it is appropriate for this case, but because it gives them total control over their adversaries before the Defendants have even had an opportunity to respond to the allegations. This Court did not wish to take such a drastic step

---

[3] In *SEC v Natural Diamonds Investment Co.*, Case No. 19-Civ-80633, the SEC alleged in its complaint that the Defendants were operating an illegitimate Ponzi scheme. ECF 1 at ¶6. *SEC v Lottonet Operating Corp.*, Case No. 17-Civ-21033 involved an illegal "boiler room" operation. ECF 1. Further, the Defendant who owned that boiler room did not even respond to the complaint and defaulted. ECF 54. In *SEC v TCA Fund Management Group Corp.*, Case No 20-Civ-21964, the Defendants agreed to the entry of that receivership order. ECF 5.

in this case and chose a more measured course. There is simply no reason to change course now

and grant the receivership authority it previously rejected—certainly not before the Defendants

have had a full opportunity to respond to the SEC's motion for preliminary injunction scheduled

for hearing on August 18.

The SEC's second basis for the requested expansion of the Receivership Order is that it

wants the Receiver to hand over to the SEC protected client communications of the Receivership

entities. ECF 105 at pp. 3-5.  But the owners of the Companies do not wish to have their counsel

terminated and have asserted their rights regarding extensive privileged communications that have

occurred with all of its counsel over a number of years. The SEC's request would strip the

Defendants of these protected communications.[4]

For example, Defendants retained counsel for the Companies to handle nationwide

litigation regarding the enforcement of the Merchant Cash Advance ("MCA") funding agreements

that support the *legitimate revenues* that are used to pay investors.  **Exhibit "A"** to this Joint

Response is the Declaration of Norman Valz, who describes the MCA agreements and the

nationwide litigation that had successfully enforced those agreements prior to the commencement

of this proceeding.

One of the crucial issues that this Court must decide is how to allow this litigation to move

forward so that the revenues owed to the Companies, which ultimately is used to pay the investors

---

[4] As the SEC had to recognize, pursuant to binding Fifth Circuit precedent, the Receiver's control over the property of the Companies, pursuant to the Receivership Order, does not lead to the right to terminate counsel, or to take control of privileges. *See NCL Corp. v. Lone Star Bldg. Centers*, 144 B.R. 170 (S.D.Fla. 1992), citing *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83 (5th Cir. 1976); *see also FDIC v. McAtee*, 124 F.R.D. 662 (D. Kan. 1988)(rejecting government's claim that it controlled privilege, citing *In re Yarn Processing*).  As shown below, the SEC's proposed solution, to enter an Amended Order that institutes the change in legal control, under the General Powers and Duties of Receiver, that the Court already rejected, is a seriously flawed proposal.

on their promissory notes, can be effectively collected.  *See* ECF 115, setting forth the Defendants'

Proposed Action Plan.  These cases are filed in federal and state courts across the nation where

local judges, knowledgeable of their state's applicable laws, read the merchant agreements and

hear the arguments of counsel and make decisions.  These judges are fully familiar with the MCA

business and the agreements at issue,[5] and the vast majority have resulted in favorable rulings or

settlements. The SEC's insistence on the immediate termination of counsel who have had lengthy

and positive experience in handling these litigation matters will only lead to more losses for the

Companies and their investors. <u>See</u> Defendants Joint Reply, ECF 115, at p. 5.  There is, for all

practical purposes, no way a new law firm can step into hundreds of state and federal cases and

recommence the litigation process without weeks or months of work.  By then, millions of dollars

in revenue – revenue that would have continued to be collected but for the TRO, will be lost.

Defendants' Proposed Action Plan requests the recommencement of litigation. By seeking its

Expedited Motion to terminate counsel, the SEC is asking this Court to issue an order that will

cause millions of dollars in receivables that will be used to repay investors, and fund businesses

that rely on these funds, to be lost. The SEC's request should be denied.

      The SEC's actions to date have already caused and are continuing to cause significant

economic damage to the Companies.  Based on the unproven allegations of the SEC's Complaint

and its (and the Receiver's) fundamental misunderstanding of how the Companies operate, several

MCA vendors are refusing to repay debts owed to the Companies, seeking to renegotiate their

debts to the Companies, or filing law suits against the Companies.  Counsel for the Companies has

---

[5] Multiple efforts by one law firm to claim that the MCA business is improper or violates state or federal laws have been uniformly unsuccessful and turned away by judges. <u>See</u> Exhibit A, ¶¶ 12-22.

reached out to counsel for the Receiver to stem this tide and repair the damage. There is simply no way new counsel could be brought up to speed in time to handle these issues.

Moreover, the owners and senior management of the Companies, who properly engaged in privileged and confidential communications with counsel to protect the interests of the Companies have the right to protect those communications from an adversary in the SEC who is required to prove its allegations with proper evidence. [6]   The SEC's demand that the privileged communications related to this ongoing legal representation be handed over to the Receiver, ECF 105 at p. 4, n. 6, raises fundamental and complex legal issues that will have to be resolved by this Court if the Parties cannot reach a practical accommodation that protects the interests of the Defendants as well as the Receiver.  Consistent with this Court's directive, Defendants have reached out to the Receiver, and the SEC, to propose a mechanism to resolve this important issue without the need for further contested litigation. Those conversations are ongoing.

The first fundamental legal principle is that the legitimate owners of these Companies have a right to the continued representation by their chosen counsel in these litigation matters. It is a fundamental and long-standing rule that "property is more than economic value."  Possession, control and disposition are valuable rights that inhere in the property. *Phillips v Washington Legal Foundation*, 525 U.S. 156, 163 (1998); *Henneford v. Silas Mason Co.*, 300 U.S. 577, 582 (1937)("The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership."); *Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009)(discussing attributes of ownership, including the right to exclude others from possessing the property).  Even in regulatory actions commenced by the SEC, the fundamental rule applies that: "[t]he Court's

---

[6] On August 6, 2020, counsel for the owner of Par Funding wrote to the Receiver's counsel, asserting Defendants' intention to protect these privileged attorney-client communications. A Copy of that letter is attached as **Exhibit "B"** to this Joint Response.

equitable authority, however, does not extend to abrogating property rights created by state law and protected by due process; equity follows the law." *SEC v Haligiannis*, 608 F.Supp.2d 444, 449 (S.D.N.Y. 2009), citing *Hedges v Dixon County*, 150 U.S. 182, 192 (1893).

The SEC ignores the fundamental difference between companies steeped in unlawful activity such as Ponzi schemes or boiler rooms; cases where companies are insolvent or have filed for bankruptcy protection; and a case involving an ongoing legitimate and solvent company with over 100 employees. Defendants, through their submissions to this Court, and as will be further presented to the Court at the preliminary injunction hearing and through the discovery process, are conducting a lawful business that was absolutely solvent before the SEC commenced this action. The Receivership Order that the Court entered in this case, which protects the interests of the investors and enables the Receiver to perform his legitimate functions, while preserving the owner's rights in this property, is the type of Order that follows the adage, reflected by the Court on August 4, 2020, of "First Do No Harm."  By sharp contrast, the rejected receivership order the SEC now seeks to resuscitate in its Expedited Motion violates Defendants' fundamental rights.[7]

The second fundamental principle that governs the SEC's Expedited Motion is that Defendants' privileged communications cannot be forcibly transferred to the Receiver without adequate Court-ordered protections.  As this Court recognized in *Brown v NCL (Bahamas) Ltd.*,

---

[7] The Due Process rights afforded are not merely procedural.  The owner has a Fifth Amendment right not to have property taken by the Government without just compensation.  Unlike cases where the Courts have upheld a taking of an <u>insolvent</u> institution, *see e.g. Branch v Bank of New England Corporation*, 69 F.3d 1571, 1575 (Fed.Cir. 1995), the SEC has not established that Par Funding and Full Spectrum were insolvent when they commenced this action.  The SEC cannot use this Court to drive the Companies into insolvency, so that the SEC can then turn back to the Defendants and seek to have them fill the massive financial hole that the SEC will create.  Not only would such an action violate the owner's Fifth Amendment Due Process Takings rights, such an action would violate the equitable principles that govern this proceeding.  *See Liu v. SEC*, _ U.S. _, 104 S.Ct. 1936 (2020).

155 F.Supp.3d 1335, 1339 (S.D.Fla. 2015), courts are willing to maintain the privilege where "a disclosure is essentially compelled," citing *Stern v. O'Quinn*, 253 F.R.D. 663, 682 (S.D.Fla. 2008)[8]; *SEC v Roberts*, 254 F.R.D. 371, 378 (N.D.Cal. 2008)(addressing, but not resolving, the question of whether the privilege is maintained when it is disclosed due to coercive government action), citing *Regents of the Univdersity of Calif. Superior Court*, 165 Cal. App.4th 672, 684 81 Cal.Rptr.3d 186, 195 (2008); *Pension Committee of the University of Montreal Pension Plan v Banc of America Securities LLC*, Case No. 05 Civ 9016, 2009 WL 2921302, at *1, and n. 1, citing *Chubb Integrated Systems Ltd. v National Bank of Washington*, 103 F.R.D. 52, 63 and n. 2 (D.D.C. 1984)("Voluntary disclosure means the documents were not judicially compelled").[9]

The SEC and the Receiver have two fundamentally different roles in this litigation. The SEC is the adversary to the Defendants, who has alleged—and must prove—that they violated the securities laws. The Receiver acts under the Court's direction and instructions, ECF 105, at p. 2, n. 1, and therefore should not act as an adversary to the Defendants and as an ally to the SEC trying to prove the SEC's case. From the very commencement of this case, Defendants have expressed a willingness – and a desire – to work with the Receiver to protect not just the assets of this lawful and solvent business, but the revenue stream that is needed to pay investors. To those ends,

---

[8] The SEC seems to believe that if a legal issue has not been directly addressed in an SEC enforcement proceeding, the legal rules are different. ECF 105, at p. 4 and n. 6. The SEC is not such a "special" litigant that it can avoid the legal rules that otherwise apply. Nevertheless, the legal authority relied upon by this Court in *Brown* was also cited in *See United States SEC v. Herrara*, 324 F.R.D. 258 (S.D.Fla. 2017)(upholding certain privileges and finding waiver of other privileges).

[9] The Nationwide litigation handled by various counsel for the Companies also involved the representation of individual defendants in certain actions. Thus, the privileged communications are not simply between counsel and the Companies. They also include communications with individuals, protected by a common interest privilege. *See generally In re: International Oil Trading Company, LLC*, 548 B.R. 825, 832-34 (Bkr. Ct. S.D.Fla. 2016).

8

Defendants have offered to instruct counsel for the Companies to work with the Receiver to manage the nationwide litigation and collect the monies owed to the Companies. This Court has the authority to fashion appropriate relief through which the Defendants, with their shared common interest, can allow the Receiver to have access to the limited/necessary privileged communications to successfully manage the litigation, while preventing the SEC, or any other law enforcement agency, or third party, from having any access to those communications. *See* Fed.R.Civ.P. 26(c); *Farnsworth v Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)(upholding protective order to protect work product in nationwide litigation).[10] The Defendants should not be asked to waive their privileges and simply hand them over to an adversary. This does not have to happen.

By continuing to tailor its orders to the circumstances of *this case*, this Court can protect the lawful interests of the Defendants in their privileged communications, ensure that a legitimate business is not needlessly upended, protect a revenue stream on which investors depend, *and* allow the Receiver to maintain the status quo while the parties litigate the claims in this case.

---

[10] On August 8, 2020, the Receiver's Reply Memorandum in support of his Motion to hire professionals, expressed a need to "pause and consider" the legality of the underlying MCA business of the Companies, ECF 113, at p. 2, n.2, a position many judges have been asked to consider around this nation, and have rejected, finding the MCA business lawful and the agreements enforceable. (*See* page 4, *infra*) Thus, the Receiver appears to be taking the side of the businesses who owe the Companies money pursuant to the MCAs; rather than supporting the numerous court decisions and settlements upholding the enforceability of these agreements under state laws; and collecting monies that inures to the benefit of investors and the benefit of many business that routinely utilize these funding agreements. On August 10, 2010, the Receiver demanded that all counsel for the Companies, present and former, immediately divulge privileged communications related, in part, to the SEC's burden to prove that Defendants were engaged in the sale of "securities," the very jurisdictional foundation of the SEC's Complaint, without which this proceeding cannot continue. If the Receiver has chosen to support the SEC in trying to prove Plaintiff's case against the Defendants, such an improper adversarial position would prevent the Defendants from being able to share privileged communications with the Receiver that are needed to recommence the litigation, to collect the money owed pursuant to the MCAs.

The SEC's third basis for expanding the Receivership Order is a claim that the employees and officers of the Companies have been uncooperative with the Receiver.  ECF 105, at pp. 5-6. That issue was separately addressed in the Receiver's Expedited Motion to Approve Retained Professional, ECF 101, and the Defendants' Cross-Motion, ECF 106, which was resolved on August 9, 2020, with the Court's Order, ECF 116. As that Order requires the Receiver to examine the feasibility of Defendants' Proposed Action Plan and to Report the Court at the August 17 status conference, there is no justification for the SEC to seek the drastic relief they are requesting on an expedited basis.  The Court's most recent Order reflects, again, the Court's reasoned approach to require the Receiver and the Defendants to work towards a solution that will protect the interests of all constituents, while the SEC and the Defendants gear up for the August 18 preliminary injunction hearing.[11]

## Conclusion

The SEC commenced this proceeding on an emergency, *ex parte* basis, and has continued to press the Court to make decisions affecting the Defendants' rights on an expedited basis. Defendants, in this Joint Response, have shown that the SEC's request, to effectively deny

---

[11] Defendant Dean Vagnozzi is not a part of CBSG and never has been, so he lacks firsthand knowledge of the CBSG business operations and what attorney/client privilege issues it may have. Therefore, he takes no position on those matters.  Vagnozzi does agree with the other defendants that this Court should not precipitously expand the scope of the Receivership order and should defer any decision on that issue until after the August 18 preliminary injunction hearing.  Vagnozzi remains extremely concerned that, especially because his businesses appear to be one of CBSG's largest creditors, this Court should allow CBSG to resume its normal business operations as soon as possible with appropriate monitoring by the Receiver.  Every day that goes by costs Vagnozzi and the investors more and more money.  Every day that goes by jeopardizes the SEC and Receiver's goal – as they both stated on the record – that they are not looking to liquidate CBSG. Finally, Vagnozzi does not oppose the SEC's request to add the ABFP Income "parallel" funds (ABFP Income Fund 1 Parallel, ABFP Income Fund 3 Parallel, ABFP Income Fund 4 Parallel, and ABFP Income Fund 6 Parallel) into the existing Receivership, while reserving all of his general objections to receivership.

Defendants' fundamental due process rights, is unnecessary and detrimental to the fundamental adage that the SEC "should do no harm."  As the Court has Ordered, the Defendants are seeking to reach an accommodation with the Receiver on an extremely tight schedule that also requires Defendants to prepare their substantive written response in advance of the preliminary injunction hearing.  Defendants respectfully request that the Court to defer a ruling on the SEC's Expedited Motion until the Court receives additional information from both the Receiver and the Defendants with respect to Defendants' Proposed Action Plan and, certainly, until after Defendants have had the opportunity to present their case in connection with the SEC's motion for a preliminary injunction at the August 18 hearing.

Respectfully submitted,

Law Offices of Alan S. Futerfas
*Attorneys for Lisa McElhone*
565 Fifth Avenue, 7th Floor
New York, New York 10017
(212) 684-8400
asfuterfas@futerfaslaw.com

By: /s/*Alan S. Futerfas*
ALAN S. FUTERFAS
*Admitted Pro Hac Vice*

**GRAYROBINSON, P.A.**
*Attorneys for The LME 2017 Family Trust*
333 S.E. 2d Avenue, Suite 3200
Miami, Florida  33131
Telephone #: (305) 416-6880
Facsimile #: (305) 416-6887
joel.hirschhorn@gray-robinson.com

By: /s/Joel Hirschhorn
JOEL HIRSCHHORN
Florida Bar #104573

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on August 12, 2020, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing

to all counsel of record.


/s/Joel Hirschhorn
JOEL HIRSCHHORN