**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 20-CV-81205-RAR**

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, et al.,

       Defendants.

_____/

**RECEIVER RYAN K. STUMPHAUZER'S MOTION AND**
**MEMORANDUM OF LAW TO EXPAND RECEIVERSHIP ESTATE**

This Court's order appointing Receiver Ryan K. Stumphauzer, Esq. (the "Receiver") over the Receivership Entities[1] included a directive for the Receiver to "use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities…."[2] Over the past three months, the Receiver and his counsel have worked diligently to fulfill the Court's directive and have identified additional entities and properties that should be added to the Receivership Estate.

---

[1]  The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding; Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC;, RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; and ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Fund 2 LP; and MK Corporate Debt Investment Company LLC.

[2] Amended Order Appointing Receiver (the "Amended Order") (ECF No. 141) ¶ 7A.

Through this Motion, the Receiver respectfully requests that the Court add five categories of entities and properties to the Receivership Estate: (1) Capital Source 2000, Inc. ("CS2000") and Fast Advance Funding LLC ("Fast Advance"), two related merchant cash advance ("MCA") entities owned and operated by insiders and which received investment proceeds in connection with the fraud scheme; (2) four "consulting" companies, owned and operated by individual defendants, that received millions of dollars in commingled funds traced to the proceeds of the fraud scheme;        (3) nineteen real estate entities formed to purchase multiple income-producing properties with commingled proceeds of the fraud scheme; (4) a family trust operated by Defendant McElhone (currently designated as the Relief Defendant) that received millions of dollars in commingled funds directly from a Par Funding investor account; and (5) personal real estate in Pennsylvania and Florida purchased by McElhone with commingled proceeds of the fraud scheme (collectively the "Additional Receivership Entities").

For the reasons set forth below, expansion of the Receivership Estate over the Additional Receivership Entities is "necessary and appropriate for the purpose of marshaling and preserving all assets of the Defendants . . . that . . . are attributable to funds derived from investors or clients of the Defendants" and/or "may otherwise be includable as assets of the estates of the Defendants."[3]

## PROCEDURAL HISTORY

On July 24, 2020, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive and Other Relief in the United States District Court for the Southern District of Florida alleging that Defendants committed multiple violations of federal securities laws.[4]  On July 27,

---

[3] *Id.* at 1.
[4] ECF No. 1, the "Complaint."  On August 11, 2020, the SEC filed an Amended Complaint, which corrected a scrivener's error in the name of the Relief Defendant and identified the Trustees of the

2020, the District Court appointed Mr. Ryan K. Stumphauzer as Receiver over the Receivership Entities, their subsidiaries, successors, and assigns.[5]   The Court issued the Amended Order Appointing Receiver over the Receivership Entities on August 13, 2020.[6]

As referenced above, the Amended Order empowers the Receiver to use reasonable efforts to identify "Receivership Property," which includes all "monies, funds, securities, credits, . . . lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest or other income" that is attributable to the Receivership Entities.[7]   The Amended Order further directs the Receiver "to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted . . . ."[8]  Consistent with his investigation, the Receiver may "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property."[9]

## <u>LEGAL STANDARD</u>

Federal courts have the "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (citation omitted).   That includes the appointment of a receiver as part of a court's "broad power to remedy violations of federal securities laws." *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).   Once appointed, the receiver acts as an officer of the court.  *SEC v. Elliott,* 953 F.2d 1560, 1577 (11th Cir. 1992).

---

Relief Defendant (Defendants Lisa McElhone and Joseph La Forte).  (ECF No. 119, the "Amended Complaint").

[5] ECF No. 36, the "Receivership Order".

[6] ECF No. 114, the "Amended Order".

[7] *Id.* ¶ 7A.

[8] *Id.* ¶ 42.

[9] Id. ¶ 7G.

But the appointment of a receiver does not eliminate the district court's ongoing requirement to supervise the receivership.  *Id*. (noting that the receiver continues to operate under the court's supervision); *Safety Finance Srv., Inc*., 674 F.2d at 372-73 (citing the "inherent power of a court of equity to fashion effective relief").  The court's ongoing, supervisory powers extend to determining whether the receivership should be expanded to cover additional parties and property.  *SEC v. Torchia*, Case No. 1:15-cv-3904-WSD, 2016 WL 6212002, at *3 (N.D. Ga. Oct. 25, 2016).

Courts have expanded receiverships in two broad categories of cases.  First, expansion is warranted when the target entity is essentially an "alter ego" of an existing receivership entity – that is, where there is common ownership or control of the entities and/or a commingling or transferring of assets between the receivership entities and the target entities.  *SEC v. Private Equity Mgmt. Grp., Inc.*, No. CV 09–2901 PSG (Ex), 2009 WL 3074604, at *1 (C.D. Cal. Sept. 21, 2009).  The alter ego doctrine, which is applied to avoid inequitable results, may be invoked only if "the party was an actor in the course of conduct constituting the abuse of corporate privilege" – and not an innocent third party.  *Torchia*, 2016 WL 6212002, at *3.  Several courts have adopted the factors set forth in *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 234 (D. Nev. 1985), as relevant to the alter ego analysis. *See Torchia*, 2016 WL 6212002, at *3 (adopting *Elmas* factors); *SEC v. Creative Capital Consortium, LLC*, Case No. 08-81565, 2009 WL 10664430, at *1 (S.D. Fla. Sept. 21, 2009) (same).  The *Elmas* court focused principally on the commingling of assets between the receivership and target entities; the degree of overlapping ownership, management, board control and recordkeeping between the entities; and the use of the target entity by the receivership entity as an instrumentality of the fraud.  *See Elmas*, 620 F. Supp. at 234.

Second, Courts expand receiverships to include property purchased with "scheme proceeds." *SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2013 WL 2291871, at \*2 (M.D. Fla. May 24, 2013) (citing cases).  Most of those cases involve property that has been acquired using commingled proceeds derived substantially from the fraud, either by insiders or by third parties related to insiders.  *See id.* (holding that the receiver could expand the estate over a third party that received $1.1 million in scheme proceeds to purchase oil and gas leases because the "vast majority of the initial funding … was tainted"); *CFTC v. Hudgins*, 620 F.Supp.2d 790, 793 (E.D. Tex. 2009) (authorizing receiver to obtain equitable lien on condominium owned by receivership defendant's girlfriend where the mortgage was satisfied with funds from the fraud scheme).  Under such circumstances, expansion of the receivership is necessary so that ill-gotten assets will not "be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme."  *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981).

## ARGUMENT

As set forth below, there is a basis to expand the Receivership over each of the Additional Receivership entities, either because they are alter egos of Defendants and/or Receivership Entities, or because they were funded with commingled investor proceeds.

### A. The Court Should Expand the Receivership Over CS2000 and Fast Advance, Two MCA Entities That Received Fraudulent Investment Proceeds.

The Receiver seeks to expand the Receivership over two entities that are alter egos to CSBG/Par Funding, an entity in the Receivership Estate:  CS2000 and Fast Advance.  CS2000 and Fast Advance are brokerage entities that sought out clients for Par Funding's MCA business.  All three entities operated out of the same office space in Philadelphia.[10]  Defendant Lisa McElhone,

---

[10] *See* Ex. A, Deposition of Aida Lau (ECF No. 290-6) at 19:17-20:21 (stating that each entity was located at the same address of Philadelphia).

the sole owner of Par Funding, owns a 100% interest in CS2000 and a 70% interest in Fast Advance.[11]  During the relevant period of the Complaint, Defendant Joseph LaForte, McElhone's husband and the *de facto* CEO of Par Funding, acted as the primary broker for CS2000 and Fast Advance.[12]

Since the outset of the Receivership, the Receiver has examined the internal books and records of two Receivership Entities that invested proceeds of the fraud scheme into Par Funding: ABFP Multi-Strategy Investment Fund LP and ABFP Multi-Strategy Investment Fund II LP. Those records reveal that the ABFP Multi-Strategy Funds *also* invested funds derived from the securities fraud scheme into CS2000 and Fast Advance.[13]

For example, records of ABFP Multi-Strategy Investment Fund LP  indicate that the fund invested approximately $1.3 million in investor funds into CS2000 and Fast Advance between May 2018 and July 2020.  That amount included approximately $1,050,000 of investments into Fast Advance and $295,000 of investments into CS2000.[14]  Similarly, records of ABFP Multi-Strategy Investment Fund II LP show that the fund invested approximately $47,499.98 of investor funds into Fast Advance between November 2019 and July 2020.[15]

Based on this information, it is appropriate to expand the Receivership to include CS2000 and Fast Advance.  CS2000 and Fast Advance are interconnected alter egos of Par Funding, as all

---

[11] *See* Ex. B at 3, Lisa McElhone Financial Statement, Ex. 1 to the Receiver's Interim Status Report Dated October 6, 2020 (ECF No. 302-1).  Counsel for CS2000 contacted the Receiver and claimed that the company is jointly owned by a William Bromley and defendant Joseph Cole. This representation conflicts with Ms. McElhone's financial statement. Regardless, investor funds have been commingled with CS2000.

[12] *See* Ex. A at 18:16-20:21.

[13] *See* Ex. C at 1-3 Accounting Records for ABFP Multi-Strategy Investment Fund LP and Multi-Strategy Investment Fund II LP (sorted by investments into those two funds).

[14] *Id*. at 1-2.

[15] *Id.* at 3.

three entities share the same ownership, physical office space, and corporate leadership. Par Funding touted the interconnected relationship between itself and Fast Advance in an investor presentation, referring to Fast Advance as the company's "In-House Broker."[16] This unified nature of the "collective enterprise" weighs in favor of expanding the receivership. *Torchia*, 2016 WL 6212002, at * 4; *see Creative Capital Consortium*, 2009 WL 10664430, at *1 (finding that investment clubs were the alter egos of the defendants where the defendants created the clubs, had the authority to transfer money from them, shared the same principal place of business, and whose registered agents were either receivership defendants or their family members); *United States v. Rapower-3, LLC*, Case No. 2:15-cv-00828-DN, 2019 WL 2195409, at *3 (D. Utah May 3, 2019) (expanding receivership where there the Affiliated Entities were closely associated with the Receivership Entities, including having "common officers, directors, members, and managers;" where they had similar corporate purposes; and where "there have been numerous and substantial financial transactions between them").

Moreover, the entities moved substantial funds between each other. Financial records show that Par Funding received approximately $97.17 million in deposits/credits from CS2000 and made payments totaling $76.67 million to CS2000. Similarly, Par Funding received approximately $12.5 million in deposits/credits from Fast Advance and made payments totaling $17.09 million to Fast Advance.[17] The routine transfer of funds between entities is a hallmark of alter ego status. *See Torchia*, 2016 WL 6212002, at * 4 (expanding receivership to include entities into which the receivership entities "consistently commingled assets in the same collective

---

[16] *See* Ex. D, Investor Presentation (included in subpoena response from former Par Funding CCO Alan Candell). That same presentation listed McElhone as Fast Advance's CEO. *Id.*

[17] *See* Ex. E at 1-2, CBSG accounting records (sorted by payments to and from CS2000 and Fast Advance, respectively).

enterprise," including the "use of Defendants' personnel, loans from Defendants, transfers of money to and from Defendants, and transfers of and sales of policies between" the entities and the defendants); *Rapower-3*, 2019 WL 2195409, at *3 (noting the "numerous and substantial transactions between related entities").

Finally, CS2000 and Fast Advance were used by other Receivership Entities – Par Funding and the ABFP Multi-Strategy Investment Funds – as an instrumentality of the fraud. *Elmas.*, 620 F. Supp. at 234. Although on a lesser scale than Par Funding, CS2000 and Fast Advance each received investor proceeds from the ABFP Multi-Strategy Investment Funds. Given their direct receipt of investor funds, as well as the unified control and interrelated transfer of funds between CS2000, Fast Advance, and Par Funding, there is a sufficient nexus to expand the Receivership over both entities.

**B. The Court Should Expand the Receivership Over "Consulting" Companies Owned and Operated by Individual Defendants That Received Millions of Dollars in Commingled Funds Traced to the Proceeds of the Fraud Scheme.**

The SEC's investigation into the Receivership Entities revealed substantial disbursements from accounts containing commingled proceeds of the securities fraud scheme into entities controlled wholly by Individual Defendants for so-called "consulting fees."

Over a five-year period between July 2015 and July 2020, approximately $424.4 million in investor funds were deposited into fourteen different bank accounts controlled by Par Funding.[18] Of that amount, Par Funding distributed nearly **$99.3 million** dollars of commingled investor funds to four "consulting companies" controlled by insider Defendants: Beta Abigail, LLC ("Beta Abigail"); New Field Ventures, LLC ("New Field"); Heritage Business Consulting, Inc. ("HBC");

---

[18] *See* Ex. F, Melissa Davis Declaration, July 23, 2020 (D.I. 290) ("Davis July 23 Decl."), Ex. 224 at ¶¶ 3-10, attached as Ex. A.

and Eagle Six Consulting,7 Inc. ("Eagle Six") (collectively the "Consultant Entities").  Based on forensic accounting conducted by the SEC, those disbursements included the following:

- Between July 2015 and July 2020, Par Funding transferred approximately $42,334,600.00 in commingled investor funds to HBC,[19] an entity owned and controlled by Defendant Lisa McElhone;[20]

- Between July 2015 and July 2020, Par Funding transferred approximately $42,643,174.00 to Eagle Six,[21] an entity owned and controlled by Defendant Lisa McElhone;[22]

- Between July 2016 and April 2019, Par Funding transferred approximately $4.9 million in commingled investor funds to Beta Abigail,[23] an entity owned and controlled by Defendant Joseph Cole;[24]

- Between February 2017 and November 2019, Par Funding transferred approximately $9.5 million in commingled investor funds to New Field,[25] an entity owned and controlled by Defendant Perry Abbonizio.[26]

HBC and Eagle Six also used the commingled funds for merchant cash advances.  As recently as last month, Eagle Six, using former Full Spectrum Processing Employee Aida Lau, was attempting to collect from a merchant in connection with an advance.[27]

As the SEC's analysis and the documentary evidence demonstrates, Par Funding commingled hundreds of millions of dollars in investor funds and "treated all investor funds as

---

[19] *See* Ex. G, Melissa Davis Declaration, Aug. 4, 2020 (D.I. 177-50) ("Davis Aug. 4 Decl."), Ex. 215 at ¶ 4.

[20] *See* Ex. B at 3.

[21] Ex. G ¶ 4.

[22] Ex. B at 3.

[23] Ex. F ¶ 14.

[24] *See* Ex. H, "The Official Audit Report for Par Funding/CBSG for the year ending December 31, 2017," attached to the Declaration of James Klenk (ECF No. 177, Ex. 52) at pg. 20 of 56.  The Audit Report stated that Beta Abigail was owned in part "by the Company's Chief Financial Officer," who was Joseph Cole.

[25] Ex. F ¶ 15.

[26] *See* Ex. H at pg 20 of 56, stating that New Field Ventures, LLC was owned by the "Company's … Director of Investor Relations," who was Perry Abbonizio.

[27] *See* Ex. I, email from Aida Lau dated Sept. 21, 2020.

fungible," including sham "consulting payments" to insiders of the fraud scheme.  *See Torchia*, 2016 WL 6212002, at *4 (granting a motion to expand a receivership because there was clear evidence that the receivership entity commingled investor funds and transferred those funds to related entities).[28]  Thus, assets belonging to the Receivership Estate have been transferred to or are being held by the Consultant Entities.  Courts have long recognized that a Receivership may be expanded to include other entities – particularly those controlled by insiders, as referenced in Section A, *supra* – that were funded with proceeds from defrauded investors.  *Nadel*, 2013 WL 2291871, at *2 (finding that an entity's "use of scheme proceeds to purchase the oil and gas leases and to profit from the land subjects it to inclusion by virtue of the Receiver's need to take possession of property and assets").

Moreover, expansion of the Receivership over the Consultant Entities is consistent with the purpose of appointing a receiver, which is to avoid the further "diversion and waste" of corporate assets "to the detriment of those who were induced to invest in the corporate scheme and for whose benefit, in some measure, the SEC injunctive action was brought."  *First Fin. Grp. of Tex.*, 645 F.2d at 438.  Such action is particularly necessary here where, as set forth in Section C *infra*, there is substantial evidence that the Receivership Estate and McElhone used millions of dollars in commingled investor funds distributed to HBC and Eagle Six to purchase numerous income-producing properties.

---

[28] In *Torchia*, the court identified as an additional factor supporting expansion of the Receivership that one of the Target Entities had loaned money to a Receivership Entity to fund its operations. 2016 WL 6212002, at * 4.  So too here, Par Funding/CBSG entered into promissory note agreements with HBC in each of 2016, 2017, and 2018 for the annual principal amount of $1,355,000.00 and at an interest rate of 35%.  Ex. H at 23 of 56; 55 of 56.  Per the audit report, Par Funding repaid the principal from the 2016 note, but the notes from 2017 and 2018 were rolled over into new notes that matured the subsequent year.  The existence of the lending arrangement between Par Funding and HBC further justifies the inclusion of HBC as a Receivership Entity.

### C. Expansion of the Receivership is Necessary Over Income-Producing Real Estate Entities Purchased with Commingled Funds.

The Receiver next seeks to expand the Receivership over nineteen (19) real estate entities that purchased twenty-six (26) income-producing properties[29] with commingled proceeds of the fraud scheme (the "Real Estate Entities"). Each of the Real Estate Entities is linked to Par Funding, the LME Trust, and Defendant McElhone. Twenty-five (25) of the twenty-six (26) properties purchased by the Real Estate Entities are located in Philadelphia, and the last property (4309 Old Decatur Road) is located in Fort Worth, Texas. The Real Estate Entities are comprised of the following:

1. **20 North 3rd Street Limited –** The entity was formed on June 26, 2017. Between July 2017 and November 2018, 20 North 3rd Street purchased four units in the building at 20-22 North 3rd Street, Philadelphia, PA 19106, for the total amount of $2,965,000.00[30] McElhone's entity, HBC, transferred a total of $2,139,523.72 to purchase the four units. The LME Trust is listed as the initial member of the grantee LLC at an address associated with Par Funding.[31]

2. **118 Olive PA LLC –** The entity was formed on April 1, 2019, by Lisa McElhone. On April 1, 2019, 118 Olive PA purchased property at 118 Olive Street in Philadelphia for $740,000.00. Property and banking records show that there was a transfer of $180,290.67 from a CBSG account tied to commingled investor funds[32] toward the purchase price. Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[33]

---

[29] For example, the property at 300 Market Street in Philadelphia contains commercial space for a popular Mediterranean restaurant, as well as twelve (12) residential units with projected annual rents exceeding $290,000.00  *See* https://www. coldwellbankerhomes.com/pa/philadelphia/300-market-street/pid_24761336/ (description of property from commercial real estate listing); https://mamouns.com/locations/philadelphia-pa (Website for Mamouns Restaurant, located at 300 Market Street).

[30] *See* Ex. J, Declaration of Raymond Andjich (ECF No. 177-51) at 3.

[31] *Id; see also* Ex. K, Declaration of Timothy Hazel, accompanying spreadsheet exhibit at 1.

[32] *See* Ex. L, Melissa Davis Declaration, Aug. 26, 2020 (D.I. 290) ("Davis Aug. 26, 2020 Decl.") ¶¶ 21, 24 (stating that the Banccorp Bank accounts contained commingled funds which included Investor Funds).

[33] Ex. J at 3; Ex. K at 2. The grantor of the property was James LaForte, the brother-in-law of Lisa McElhone. Ex. K at 2.

3. **135-137 N 3rd Street LLC** – The entity was formed on May 1, 2019, by Lisa McElhone.  On July 30, 2019, 135-137 N 3rd Street purchased property at the same address for $6,575,000.00.  Property and banking records show that there were two transfers from a CBSG account containing commingled investor funds,[34] totaling $6,580,239, to purchase the property.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[35]

4. **205 B Arch Street Management LLC** – The entity was formed on April 7, 2017.  On April 27, 2017, 205 B Arch Street Management purchased property at 104 North 2nd Street, Philadelphia, PA, for $260,000.00.  Property and banking records show that there was a transfer of $273,162.48 from HBC to purchase the property.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[36]

5. **242 S. 21st Street LLC** – The entity was formed on August 1, 2017, by the LME Trust.  On August 31, 2017, 242 S. 21st Street purchased property at the same address for $1,025,000.  Property and banking records show that there were two transfers from HBC, totaling $1,042,643.34, to purchase the property.  The LME Trust is listed as the initial member of the grantee LLC at an address associated with Par Funding.[37]

6. **300 Market Street LLC** – The entity was formed on June 22, 2018, by Lisa McElhone.  On August 15, 2018, 300 Market Street purchased property at the same address for $4,400,000.  Property and banking records show that a cashier's check remitted by Lisa McElhone totaling $4,297,571.31 and two HBC transfers totaling $216,250.00 were utilized to purchase the property.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[38]  Section D, *infra*, describes in detail the transfer of $13.5 million in funds from CBSG to the LME Trust between July 2018- August 2018.  These transfers occurred in or around the same time as the property purchases of 300 Market Street and 1427-35 Melon Street in August 2018.

7. **627-629 E. Girard LLC** – The entity was formed on February 19, 2019, by Lisa McElhone.  On March 15, 2019, 627-629 E. Girard purchased property at the same address for $2,950,000.00.  Property and banking records show that there were three transfers from entities related to McElhone to purchase the property: (1) a $550,000.00 transfer from Eagle Six; (2) a $2,194,213.15 transfer from a CBSG account tied to commingled investor funds;[39] and (3) a $875,903.86 transfer from HBC.  The total

---

[34] Ex. L ¶¶ 21, 24.

[35] Ex J at 3; Ex. K at 2.  The CBSG bank account used to purchase the property contained commingled funds of the fraud scheme.  *See* Ex. L ¶¶ 21, 24.

[36] Ex. J at 3; Ex. K at 2.

[37] Ex. J at 3; Ex. K at 2.

[38] Ex. J at 3; Ex. K at 3.

[39] Ex. L ¶¶ 21, 24.

amount of insider transfers was $3,620,117.01.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[40]

8. **715 Sansom Street LLC** – The entity was formed on January 14, 2019, by Lisa McElhone.  On February 12, 2019, 715 Sansom Street purchased property at the same address for $2,885,000.  Property and banking records show that there were three transfers from entities related to McElhone to purchase the property: a transfer of $1,067,898.58 from a CBSG account tied to commingled investor funds,[41] and two transfers totaling $959,958.73 from Eagle Six.  The total amount of insider transfers was $2,027,857.31.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[42]

9. **803 S. 4th Street, LLC** – The entity was formed on February 18, 2014, by the McElhone Family Trust, by Sole Member Lisa McElhone.  In February 2016 and February 2018, respectively, 803 S. 4th Street purchased two properties.  First, on February 12, 2016, the entity purchased the property at 142 N. 2nd Street, Unit 1A, in Philadelphia for $170,000.00, which was funded with a $60,000.00 transfer from HBC.  Second, on February 18, 2017, the entity purchased the property at 803 S. 4th Street for $349,000.00, which was funded by a $166,205.32 transfer from HBC.  Lisa McElhone is listed as the manager of the grantee LLC for each purchase at an address associated with Par Funding.[43]

10. **861 N. 3rd St LLC** – The entity was formed on April 3, 2019, by Lisa McElhone.  On April 30, 2019, 861 N. 3rd purchased property at the same address for $1,800,000.00.  Property and banking records show that there were two transfers from Eagle Six, totaling $1,952,164.08, to purchase the property.  Lisa McElhone is listed as the manager of the grantee at an address associated with Par Funding.[44]

11. **915-917 South 11th LLC** – The entity was formed on August 17, 2018.  On September 13, 2018, 915-917 South 11th Street purchased property at the same address for $1,860,000.00.  Property and banking records show that there were three transfers from the LME Trust, totaling $1,885,098.05, to purchase the property.  Lisa McElhone is listed as the manager of the grantee LLC at an address associated with Par Funding.[45]

12. **1250 N. 25th St. LLC** – The entity was formed on June 12, 2018, by the LME Trust, with Lisa McElhone as Trustee and LLC Manager.  On August 3, 2018, 1250 N. 25th St. purchased the properties at 1250 N. 25th Street in Philadelphia (Units A, B, and C)

---

[40] Ex. J at 3; Ex. K at 3.
[41] Ex. L ¶¶ 21, 24.
[42] Ex. J at 3; Ex. K at 4.
[43] Ex. J at 4; Ex. K at 4.
[44] Ex. J at 4; Ex. K at 4.
[45] Ex. J at 4; Ex. K at 5.

for \$600,000.00.  Property and banking records show that there was a transfer of \$607,020.41 from HBC to purchase the properties.  Lisa McElhone is listed as the manager of the grantee LLC at an address associated with Par Funding.[46]

13. **1427 Melon St. LLC** – The entity was formed on July 9, 2018, by the LME Trust, with Lisa McElhone as the Trustee and LLC Manager.  On or about August 10, 2018, 1427 Melon St. purchased the property at 1427-1435 Melon Street in Philadelphia, PA, for \$7,600,000.00.  Property and banking records show that there were three transfers, totaling \$7,788,503.17, to purchase the property, which included a cashier's check remitted by Lisa McElhone totaling \$7,408,503.17 and two transfers from HBC totaling \$380,000.00.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[47]  As referenced in the description of 300 Market Street LLC above, and in Section D, *infra*, McElhone remitted the \$7.4 million cashier's check in connection with the purchase of 1427-35 Melon Street in or around the same month in which the LME Trust received \$13.5 million in fund transfers from a CBSG account containing commingled proceeds of the fraud scheme.

14. **1530 Christian Street LLC** – The entity was formed on September 27, 2018, by Lisa McElhone.  On October 3, 2018, 1530 Christian Street purchased property at the same address for \$870,000.00.  Property and banking records show that there were two transfers, totaling \$890,336.35, to purchase the property, which included one transfer of \$885,336.35 by Eagle Six and a \$5,000.00 transfer by the LME Trust.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[48]

15. **1635 East Passyunk LLC** – The entity was formed on January 9, 2018, by the LME Trust, with Lisa McElhone as the Trustee and LLC Manager.  On February 1, 2018, 1635 East Passyunk purchased property at the same address for \$825,000.00.  Property and banking records show that there was a transfer of \$833,728.65 from HBC to purchase the property.  The LME Trust is listed as the member of the grantee LLC at an address associated with Par Funding.[49]

16. **1932 Spruce St. LLC** – The entity was formed on April 12, 2018, by the LME Trust, with Lisa McElhone as the Trustee and LLC Manager.  On April 30, 2018, 1932 Spruce St. purchased property at the same address for \$2,125,000.00.  Property and banking records show that there were two transfers from HBC, totaling \$2,159,347.90, to purchase the property.  Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[50]

---

[46] Ex. J at 4; Ex. K at 5.  The grantor of the property was James LaForte, the brother-in-law of Lisa McElhone.  Ex. K at 5.
[47] Ex. J at 4; Ex. K at 6.
[48] Ex. J at 4; Ex. K at 6.
[49] Ex. J at 4; Ex. K at 6.
[50] Ex. J at 4; Ex. K at 7.

17. **4633 Walnut St. LLC** – The entity was formed on May 3, 2018, by the LME Trust, with Lisa McElhone as the Trustee and LLC Manager. On or about May 2, 2018, 4633 Walnut St. purchased property at the same address for $650,000.00. Property and banking records show that there was a transfer of $656,882.81 from HBC to purchase the property. Lisa McElhone is listed as the member of the grantee LLC at an address associated with Par Funding.[51]

18. **1223 N.25th Street, LLC** –On or about April 3, 2018, 1232 N. 25th Street purchased three units (Units A, B, and C) at the same Philadelphia address for a total of $1,099,999.00. Property and banking records show that there was a transfer of $377,356.00 from HBC to purchase the property. The grantee LLC lists an address associated with Par Funding.[52]

19. **Liberty Eighth Avenue, LLC** – The entity was formed on January 28, 2019, by Lisa McElhone. On or about April 18, 2019, Liberty Eighth Avenue purchased land located at 4309 Old Decatur Road for $4,600.000. Property and banking records show that there was a transfer of $2,323,372.14 from a CSBG account containing commingled investor funds to purchase the property.[53] Liberty Eighth is listed as the grantee.

As set forth above, <u>each</u> Real Estate Entity was formed by an insider of the fraud scheme (and/or at an address associated with Par Funding) and utilized commingled proceeds of the fraud scheme to purchase the properties. Twenty-five (25) of the twenty-six (26) properties listed one of two addresses associated with Par Funding as the address of the grantee LLC.[54] Lisa McElhone, or an entity formed by Lisa McElhone, was listed as the grantee for all but one of the Real Estate Entities. The Real Estate Entities are thus properly considered to be an alter ego of McElhone and her related entities (Par Funding, Eagle Six, and HBC). *Elmas*, 620 F. Supp. at 234; *Torchia*, 2016 WL 6212002, at *4; *Rapower-3*, 2019 WL 2195409, at *3. In addition, the purchase of each of the properties by the Real Estate Entities is traceable to scheme proceeds. *Nadel*, 2013 WL 2291871, at *2; *Lauer*, 2009 WL 812719, at *3; *SEC v. Aquacell Batteries*, No. 6:07–cv–608, 2008

---

[51] Ex. J at 4; Ex. K at 8.
[52] Ex. K at 8.
[53] Ex. J at 4; Ex. K at 7.
[54] *See* Ex. K (listing the address at 205 Arch Street, 2d Floor, for seventeen of the properties, and the address at 141 N. 2nd Street for eight of the properties).

WL 2915064, at *1 (July 24, 2008) (allowing equitable lien when home was purchased by the daughters of a receivership defendant with fraudulently obtained funds and was rightfully part of the receivership estate).  Thus, each of the Real Estate Entities should be added to the Receivership Estate.[55]

### D. The Court Should Convert the Relief Defendant into a Receivership Entity.

The LME 2017 Family Trust, a/k/a LME 2017 Family Trust (the "LME Trust"), is currently a Relief Defendant in this action.  The LME Trust "owns Par Funding and McElhone is the Grantor of the Trust."[56]

In the context of an SEC enforcement action, a "relief defendant 'is a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.'" *SEC v. World Capital Market, Inc.*, 864 F.3d 996, 1004 (9th Cir. 2017) (*quoting SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)).  Relief defendants are viewed as "non-violating third parties," and the court may order disgorgement from a relief defendant who has received ill-gotten gains only if the relief defendant lacks a legitimate claim to those funds.  *Id.*

Here, however, the investigation has revealed that the LME Trust is not simply a "non-violating third part[y]," but instead was an active participant in the fraud scheme.  The Amended Complaint recognized that "Par Funding transferred at least $14.3 million, which included investor funds, to the LME Trust for no legitimate purpose."[57]  Further investigation has revealed that those proceeds – which were derived from the two primary accounts into which Par Funding received

---

[55] Many of the Philadelphia properties contain commercial space and rental units. These properties are overseen by an experienced Philadelphia property manager. If the Court grants the instant motion, the Receiver anticipates maintaining the property manager's oversight as opposed to directly managing the properties himself.

[56] *See* Amended Complaint (ECF No 119) ¶ 36.

[57] *Id.*

funds from and made payments to Investors[58] – were utilized as a conduit to effectively launder proceeds of the fraud scheme through real estate purchases.

The SEC's analysis demonstrates that there were four transfers from a CBSG account containing commingled investor funds totaling $13,500,000 between July 19, 2018, and August 9, 2018.[59]  Almost immediately after those transfers, Lisa McElhone was involved in two significant purchases of income producing properties, as set forth in Section C, *supra*.  First, on August 10, 2018, McElhone completed the purchase of 1427-35 Melon Street in Philadelphia for the price of $7,600,000.00.  In connection with that purchase, McElhone submitted a cashier's check in the amount of $7,408,503.17.  Second, on August 18, 2018, McElhone completed the purchase of 300 Market Street in Philadelphia for the price of $4,400,000.00.  McElhone submitted a cashier's check in the amount of $4,290,571.31 in connection with that purchase.  Thus, in or around a one-month period in which CBSG transferred $13.5 million to the LME Trust from an account containing commingled investor funds, McElhone submitted cashier's checks totaling $11,699,074.48 to purchase multi-million-dollar properties in Philadelphia.

Given such evidence, the LME Trust should be properly included as a Receivership Entity, rather than a Relief Defendant.  The LME Trust, which owns the primary Receivership Entity, Par Funding, is McElhone's alter ego.  McElhone utilized the LME Trust in connection with the purchase of multiple income producing properties.  Based on the evidence uncovered to date, the LME Trust utilized commingled investor funds, over which McElhone has no independent, legitimate ownership interest, to enable fraudulent transfers of investor proceeds.  *See Torchia*,

---

[58] *See* Ex. L, Melissa Davis Declaration, Aug. 26, 2020 (D.I. 290) ("Davis Aug. 26, 2020 Decl.) ¶¶ 7-18.
[59] *Id.* ¶ 7.  The transfers were as follows: (1) $5,000,000.00 on July 19, 2018; (2) $5,500,000.00 on August 1, 2018; (3) $1,380,000.00 on August 8, 2018; and (4) $1,620,000.00 on August 9, 2018.  There was an additional transfer in the amount of $800,000.00 on September 20, 2018.

2016 WL 62112002, at 4 (examining the distinction between a receivership defendant, which is involved in the wrongdoing, and a relief defendant, which "is not accused of wrongdoing"). Further, the significant transfer of commingled funds out of the LME Trust to purchase property and other businesses makes it necessary to include the LME Trust as a Receivership Entity.  The LME Trust seeded the purchase of numerous properties, and McElhone's personal financial statement indicates that the trust currently contains assets subject to the Receivership,[60] which may be subject to further dissipation.  *See First Fin. Grp. of Tex.*, 645 F.2d at 438.  Accordingly, expansion of the Receivership Estate to include the LME Trust is necessary and appropriate.

### E. Expansion of the Receivership is Required Over Personal Property Purchased by Defendant McElhone with Commingled Funds.

Finally, the Receiver seeks to expand the Receivership over three personal properties purchased by Defendant Lisa McElhone with commingled proceeds of the fraud scheme.

The first property is 568 Ferndale Lane, Haverford, PA 19041 (the "Haverford Property"). The Haverford Property was purchased by Blue Valley Holdings, LLC in or around August 2016 for the price of $2,445,000.00.  Blue Valley Holdings was formed on February 26, 2007, by Lisa McElhone.  The SEC traced $2,119,554.15 in funds used to purchase the Haverford property to HBC.[61]

The second property is 105 Rebecca Court, Paupack, PA 18451 (the "Paupack Property"). The Paupack Property was purchased by LWP North, LLC, in or around August 2017 for the price of $2,600,000.00.[62]  Pennsylvania Department of State records list the address for LWP North as 141 N. 2nd Street in Philadelphia – the same address listed for CSBG on one of its bank accounts

---

[60] *See* Ex. B at 3 (listing $115,000 in liquid assets in the LME Trust).
[61] Ex. J at 5; Ex. K at 8.
[62] *Id.*

and used for multiple income-producing LLCs addressed in Section C, *supra*.[63]   Property and banking records further reveal that there was a wire transfer from HBC in the amount of $2,546,887.42 toward the purchase price.[64]   The LME Trust is listed as the member of the grantee LLC, at the same address as LWP North and CSBG.[65]

The third property is 107 Quayside Dr., Jupiter FL 33477 (the "Jupiter Property").   The Jupiter Property was purchased by Lisa McElhone in or around December 2019 for the price of $5,800,000.[66]   Bank and property records show the interrelationship between CBSG, HBC, and McElhone relating to this transaction.   For example, on February 20 and 21, 2018, respectively, CBSG submitted two wires in the amounts of $275,000.00 and $325,000.00 to HBC.[67]   On February 21, 2018, HBC transferred $600,000 to Lisa McElhone.[68]   That same day, McElhone submitted an initial deposit on the property in the amount of $600,000.[69]   In addition, banking records show that there were at least two additional transfers from HBC toward the purchase of the property totaling $342,470.00.   Thus, HBC transferred a total of $942,470.00 in connection with the Jupiter Property.[70]

Expansion of the Receivership is appropriate where, as here, the Defendant purchased property with proceeds that were tainted by the fraud scheme.  *Nadel*, 2013 WL 2291871, at *2 (stating that a receiver may be authorized "to take possession and sell land and residences purchased or improved with scheme proceeds").   The Haverford property was purchased entirely

---

[63] Ex. K at 8.  *See* note 54, *supra*, summarizing the use of 141 N. 2nd Street in Philadelphia for 8 of the income-producing properties.
[64] Ex. K at 8.
[65] *Id.*
[66] *Id.*
[67] *Id*.
[68] *Id.*
[69] *Id*.
[70] *Id*.

with funds from HBC and the LME 2017 Family Trust.  The Paupack property was purchased almost entirely with funds from HBC.  And, to date, the Receiver has traced $942,470.00 in payments to the Jupiter Property from the HBC account.

Given that these properties were purchased using significant proceeds of the fraud scheme, the Court may expand the Receivership over each property. *See id.* at \*2, (holding that the receiver could expand the estate over a third party that received $1.1 million in scheme proceeds to purchase oil and gas leases because the "vast majority of the initial funding … was tainted"); *SEC v. Lauer*, No. 03-80612-Civ, 2009 WL 812719, at \*3 (S.D. Fla. Mar. 26, 2009) (finding that a single-purpose entity used to purchase a condominium for a receivership defendant – through a 100% interest-only loan, and for which the defendant had invested no personal equity – was tainted by the fraud and part of a receivership freeze order).

Such relief is particularly necessary here to guard against further dissipation of Receivership assets due to Defendant McElhone's pervasive involvement in the overall fraud scheme and her brazen diversion of corporate assets to purchase numerous properties with scheme proceeds. *First Financial Grp. of Texas*, 645 F.2d at 438.

## CONCLUSION

For the reasons set forth herein, the Receiver respectfully requests that the Court enter an order expanding the Receivership over each of the Additional Receivership Entities.  A proposed order is attached.

## CERTIFICATION REGARDING PRE-FILING CONFERENCE

The undersigned counsel has conferred with all counsel of record in this matter regarding the relief sought through this motion and certifies that: (1) the Securities and Exchange Commission does not object to the requested relief; (2) Defendants John Gissas, Michael Furman, and Dean Vagnozzi take no position with respect to the requested relief; (3) Defendant Perry

Abbonizio objects to the Motion to the extent it seeks to add New Field Ventures, LLC as one of the Receivership Entities, but takes no position with respect to the remaining requested relief; and (4) counsel for Lisa McElhone, Joseph LaForte, and Joseph Cole Barletta initially opposed the requested relief, and thereafter withdrew their opposition pending meet and confer discussions that the Receiver engaged in with counsel for The L.M.E. 2017 Family Trust on October 29 and October 30, 2020, but the parties have been unable to reach an agreement on the requested relief.

Dated: October 30, 2020                              Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN
ROSS & KOLAYA, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400

By: */s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA
Florida Bar No. 056140
tkolaya@sfslaw.com

*Co-Counsel for Receiver*

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200

By: */s/ Gaetan J. Alfano*
GAETAN J. ALFANO
Pennsylvania Bar No. 32971
*(Admitted Pro Hac Vice)*
GJA@Pietragallo.com

DOUGLAS K. ROSENBLUM
Pennsylvania Bar No. 90989
*(Admitted Pro Hac Vice)*
DKR@Pietragallo.com

*Co-Counsel for Receiver*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 30, 2020, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA