IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.*,

      Defendants.
_____/

**RECEIVER RYAN K. STUMPHAUZER'S QUARTERLY
STATUS REPORT DATED FEBRUARY 1, 2021**

Ryan K. Stumphauzer, Esq., Court-Appointed Receiver ("Receiver") of the Receivership Entities,[1] pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141], hereby files this Quarterly Status Report dated February 1, 2021. By way of summary, the

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"); Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC;, RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; and ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Fund 2 LP; MK Corporate Debt Investment Company LLC; Capital Source 2000, Inc.; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consulting, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; Liberty Eighth Avenue LLC; and The LME 2017 Family Trust; and also include the properties located at 568 Ferndale Lane, Haverford PA 19041; 105 Rebecca Court, Paupack, PA 18451; and 107 Quayside Dr., Jupiter FL 33477.

Receivership Estate consists of, among other things, Par Funding's and the other Receivership Entities' portfolios of accounts receivable, the value of which are not yet determined, as well as approximately $130 million of tangible assets, including approximately $63 million of real property and over $67 million in cash ($29.5 million of which the Receiver has recovered through collections and other recovery efforts since the receivership was established).

I.     **Communications and Overall Administration of Receivership Estate**

   A.     **Website / Communications with Interested Parties**

The Receiver continues to receive many e-mails, telephone calls, and other inquiries from investors, merchants, administrators of agent funds, and other interested parties. The Receiver and his professionals have returned phone calls and emails from thousands of investors, merchants, and others. Since the Receiver established the receivership website on August 16, 2020, which is available at parfundingreceivership.com, there have been more than 46,159 visitors and 141,741 pageviews to the website. The Receiver will continue to update this website with court filings, news and updates, reports from the Receiver, answers to frequently asked questions, important dates and deadlines (including Zoom or telephone dial-in information for hearings before the Court), and other pertinent information.

   B.     **Quarterly Report of Receivership Estate**

Pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141], attached as Exhibit 1 is a full report and accounting reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates (the "Quarterly Report"). The Quarterly Report contains the following information: (1) summary of the operations

of the Receiver; (2) the amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate; (3) a schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership; (4) a description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; (5) a description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments); (6) a list of all known creditors with their addresses and the amounts of their claims; (7) the status of Creditor Claims Proceedings, after such proceedings have been commenced; and (8) the Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations, as required pursuant to Paragraphs 53 and 54 of the Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141].

    **C.**    **Pending Motions**

As of the filing of this report, the following motions / applications remain pending:

1.    <u>Receiver's First Application for Allowance and Payment of Professionals' Fees and Reimbursement of Expenses for July 27, 2020 - September 30, 2020 [ECF No. 438], filed on December 16, 2020</u>.  Through this application, the Receiver has requested the Court's approval for the allowance and payment of professionals' fees and reimbursement of expenses incurred by the Receiver, his attorneys, his consultants, and his operations team at DSI, for the period of July 27, 2020, through September 30, 2020.  On December 22, 2020, the Court referred this application

to United States Magistrate Judge Bruce Reinhart to take all action as required by law on the application [ECF No. 451]. As reflected in the application, the Securities and Exchange Commission has reviewed and does not oppose the relief requested through the application, which remains pending as of the filing of this Report.

2. <u>Motion to Compel Receiver's Production of Documents Responsive to Defendant Lisa McElhone's Requests for Production [ECF No. 459], filed on January 5, 2021</u>. Through this Motion, Defendants Perry S. Abbonizio, Joseph W. LaForte, and Dean J. Vagnozzi asked the Court to compel the Receiver to produce certain documents the Receiver previously agreed to produce to the Defendants, but only upon Defendants Joseph Cole Barleta and Lisa McElhone's agreement to return to the Receiver various documents and information belonging to the Receivership Entities. On January 11, 2021, the Receiver filed a Response to the Motion [ECF No. 464], indicating that the Motion was moot as a result of (i) Cole and McElhone's eventual compliance with the Receiver's requests to return these documents and records, and (ii) the Receiver's production of the agreed-upon documents. On January 15, 2021, the Court entered a Paperless Order directing the Defendants to file a reply regarding whether, based on the Receiver's representations in his Response [ECF No. 464], the Motion to Compel was now moot. As of the filing of this Report, the Defendants have not filed the reply as directed by the Court.

3. <u>Receiver's Third Motion to Expand Receivership Estate and Motion to Correct Scrivener's Errors [ECF No. 468], filed on January 14, 2021</u>. Through this Motion, the Receiver seeks to include as additional Receivership Entities two (2) limited liability companies that serve as the record owners for the residences of Defendants Lisa McElhone and Joseph LaForte in Haverford, Pennsylvania (Blue Valley Holdings, LLC) and Paupack, Pennsylvania (LWP North LLC) (the properties are already included as part of the Receivership Estate), and one (1) additional

real estate entity that Ms. McElhone formed to purchase an income-producing property with commingled proceeds of the Par Funding fraud scheme (500 Fairmount Avenue, LLC). The Receiver also requests the Court to correct scrivener's errors in the names of two entities that were previously included within the scope of the receivership through the Court's prior Orders. Specifically, the correct name of Eagle Six Consulting, Inc. is Eagle Six Consultants, Inc., and the correct name of ABFP Multi-Strategy Fund 2 LP is ABFP Multi-Strategy Investment Fund 2 LP. This Motion is unopposed, except with respect to the inclusion of 500 Fairmount Avenue, LLC. On January 15, 2021, the Court entered a Paperless Order [ECF No. 471], directing the Defendants to file a response to the Motion on or before January 22, 2021, should they wish to challenge the inclusion of 500 Fairmount Avenue, LLC as an additional Receivership Entity. The Defendants did not file a response.

4.  <u>Wilmington Savings Fund's Motion to Intervene and for Relief from the Amended Order Appointing Receiver [ECF No. 476], filed on January 21, 2021</u>.  Non-Party Wilmington Savings Fund filed a Motion requesting the Court to lift the litigation injunction so as to allow it to proceed with a foreclosure sale involving certain property on which Par Funding holds a junior lien.  On January 22, 2021, the Court entered a Paperless Order directing Wilmington Savings Fund to meet and confer with the Receiver and the SEC in an effort to determine whether the Receiver and SEC object to the relief it is requesting in the Motion.  The Receiver anticipates that Wilmington Savings Fund will be filing a notice in the near future advising the Court that it will be withdrawing this Motion.

**II.**     **<u>Operations of Par Funding and DSI's Collection Activities</u>**

The Receiver and his professionals recommenced collection efforts, with the return of some previous collection staff, on September 8, 2020.  Under the Receiver's supervision, collection

protocols were revised to ensure that the Receivership's collection practices comply with applicable laws and are consistent with best practices. The collections team previously contacted merchants to inform them about the receivership and the restart of the periodic, direct debits from their bank accounts. Once they reestablished these lines of communication, the collections team started and continues contacting merchants regarding payment plans and compelling compliance with the factoring agreement, as well as obtaining new bank account information when needed.

Collection efforts have been significantly impacted by the pandemic and its effect on the merchants' ability to conduct their business. Indeed, the collections staff are continuing to work with the merchants to establish performing payment plans and settlements as needed. In addition, the Receiver's professionals have been provided with modification or settlement agreements, as well as bankruptcy information, that were not included within the Par Funding books and records at the time of the establishment of the receivership, despite these events taking place prior to the Receiver's appointment. These developments have required extensive investigation and research.

The Receiver has filed eight (8) motions to lift the litigation stay affecting dozens of merchants. The requested stay relief allowed the Receiver to resolve confessions of judgement and liens where the merchant had fully repaid its advance or otherwise resolved the receivable account. The stay also was lifted in circumstances where the liens or judgments were incorrect or where the merchant filed for bankruptcy. The Receiver anticipates filing a ninth motion shortly.

The Receiver has not yet sought to lift the stay to institute collection actions, but that will be required shortly to resolve certain of the larger receivables, including anticipated collection actions against merchants in the Exception Portfolio, discussed below. Where appropriate, the Receiver has filed UCC-1s to secure his position on merchants' assets.

The Receiver is aware of the suggestion by certain investors that certain Defendants should be returned to control of the operations, supervised by a monitor. Based on the findings outlined in the Sharp Declaration [ECF No. 426], returning control of operations to the Defendants would result in a further reduction in the assets available to repay investors. Specifically, as discussed in the Sharp Declaration:[2]

1. Under the Defendants' management, the Par Funding merchant cash advance ("MCA") business generated only $6.6 million in net cash from its inception through the end of 2019. During this same timeframe, the Defendants and other Par Funding insiders utilized at least $144 million of commingled investor proceeds.

2. As a result of the Defendants' management, the receivable portfolio is heavily concentrated, with 50% of the total portfolio due from 16 merchants in five (5) related groups, referred to as the "Exception Portfolio." Several of the merchants in the Exception Portfolio have used funds advanced by Par Funding to make the required payments back to Par Funding, with no net return to Par Funding. The Defendants' use of "reloads" escalated the receivables in the Exception Portfolio and the receivables have now grown significantly larger than supportable by the individual merchant's business. Collection of many of these receivables is questionable. If Defendants are allowed to return to control, this exposure would likely increase, resulting in substantially greater losses to investors.

3. As a result of the Defendants' poor underwriting and management of the portfolio, the Par Financial model utilized by the Defendants requires significant additional cash investments to fund additional receivables, as the current portfolio does not generate sufficient cash. If the

---

[2] A corrected copy of the Sharp Declaration, which includes, among other non-substantive revisions, an attachment that was inadvertently omitted from the original draft, is attached as Exhibit 2.

Defendants are returned to control, an additional source of capital would be required. Additional investments likely would not lead to profits and would result in significant additional losses to investors.

The Receiver's ongoing investigations have confirmed that the Defendants used comingled investor funds to acquire: (i) personal real estate, including a $6 million waterfront property in Jupiter, Florida; (ii) more than two dozen income-producing properties in and around Philadelphia; (iii) a multi-million dollar financial portfolio at Charles Schwab; and (iv) other luxury personal assets, including a jet  Although acquired with investor funds, these assets were placed in numerous LLCs and other corporate structures controlled exclusively by the Defendants and their nominees. Moreover, as discussed below, the Defendants have continued to transfer and conceal property even after the Receiver was appointed and while a motion to expand the receivership was pending before the Court. It would be difficult, if not impossible, for a monitor to prevent this type of self-dealing activity, and to work cooperatively with the Defendants, who have steadfastly refused to provide basic document and information to the Receiver, even though they are required to do so by this Court's Orders.

Certain investors have also suggested that the Receiver aggressively collect merchant cash advance ("MCA") balances from all merchants using all viable methods that the business is able to perform under the terms of these agreements (including liens against the personal assets of the owners of these merchant businesses). The Receiver is utilizing practices that are lawful and consistent with the characterization of the Par Funding receivables as merchant cash advances. Many merchants have demanded discounts, or even total forgiveness, due to the Defendants' previous collection tactics. Collection actions similar to some of those previously undertaken by the Defendants could provide the merchants a defense to their repayment obligations.

DSI also has reviewed the available information regarding Eagle Six Consultants, Inc. ("ESC") and Heritage Business Consulting, Inc. ("HBC"), which have been included in the receivership through this Court's December 16, 2020 Order [ECF No. 436]. This information included data located on the Par Funding/Full Spectrum servers, as well as information from a software program used to track account balances, MCA Suites, and the available QuickBooks files for ESC and HBC. The amounts presented are as reported in the QuickBooks files for ESC and HBC and have been updated through July 2020. Par Funding accounting employees that the Receiver has rehired are in the process of updating the QuickBooks files for the remainder of 2020, which may affect the balances presented here. DSI is also in the process of reviewing these balances and contacting counterparties to determine their accuracy and collectability.

DSI has located $91.6 million in loans or receivables due to ESC, of which $47.6 million is due from other Receivership Entities. The summary breakdown as follows:

|  | Amount ($000) | Number of Accounts |
|---|---|---|
| Due from Receivership Entities | $47,605 | 22 |
| Due from related parties not under Receiver control | $15,509 | 13 |
| Due from third parties | $28,486 | 24 |
| **TOTAL** | $91,600 | 59 |

The amounts due to ESC "from Receivership Entities" include amounts ESC advanced to allow Defendants McElhone and LaForte to acquire real estate that was titled under the name of distinct single-purpose LLCs formed for the sole purpose of holding this property. As discussed throughout this report, these properties are now under the Receiver's control as additional Receivership Entities. The amounts "due from related parties not under Receiver control" include amounts that ESC loaned to entities that also entered into MCA agreements with Par Funding, such as Kingdom Logistics and Colorado Homes. The amounts "due from third parties" include

loans that ESC advanced to a variety of other companies using commingled investor funds from Par Funding. Through these transactions, Defendants McElhone and LaForte diverted money to ESC, and then operated ESC like a bank, extending traditional loans. Notably, some of the borrowers under these transactions have disputed the amounts due, or even the existence of these obligations. The Receiver and his professionals continue to communicate with these third parties and will update the Court as additional information is available.

DSI has located $22.3 million in loans or receivables due to HBC, of which $8.2 million is due from other Receivership Entities. The summary breakdown is as follows:

|  | Amount ($000) | Number of Accounts |
|---|---|---|
| Due from Receivership Entities | $8,284 | 5 |
| Due from related parties not under Receiver control | $6,630 | 4 |
| Due from third parties | $7,361 | 16 |
| **TOTAL** | $22,275 | 25 |

The majority of the approximately $8.3 million "due from Receivership Entities" is a transfer of approximately $7.4 million from HBC to ESC. The remaining amounts due to HBC from "related parties not under Receiver control" include amounts owed by Blue Valley Holdings LLC (the entity that owns the Haverford property) and LWP North, LLC (the entity that owns the Paupack property) that were utilized for the purchase of those properties. Finally, the amounts "due from third parties," similar to the amounts due to ESC, include loans HBC advanced to a variety of other companies using commingled investor funds.

### III. Expansion of Receivership / Issues Relating to Additional Receivership Entities

#### A. Status of Properties Subject to Expansion Order

As a result of this Court's December 16, 2020 Order expanding the receivership, the Receiver was provided with possession of and control over 26 properties at 23 separate property

locations, with a cumulative value of in excess of approximately $63 million based upon purchase price. The Receiver has attached to this report as Exhibit 3 a chart identifying each property, its purchase price, and any monthly income attributed to that property. The Receiver has recorded, or is in the process of recording, *lis pendens* against all the properties, as illustrated on the chart.

Nineteen (19) of the subject property locations are in the City of Philadelphia.  Two (2) of the property locations are the former business offices of Par Funding/FSP and are managed by DSI.  The remaining 17 Philadelphia property locations are either commercial, residential, or mixed use. The Receiver has retained the services of the legacy property manager in Philadelphia, OCF Realty, to continue to manage these 17 locations.

The Receiver also has taken possession and control of Defendants McElhone's and LaForte's residences at 105 Rebecca Court, Paupack, Pennsylvania and 107 Quayside Drive, Florida.  The Receiver has prepared a residential lease for 568 Ferndale Lane, Haverford, Pennsylvania, where Defendants McElhone and LaForte continue to reside, and has requested that they execute it.  After more than two (2) weeks, counsel for Defendant LaForte indicated that McElhone and LaForte will not sign the lease agreement and otherwise refuse to pay any amounts to the Receiver for their continued occupancy of that home.

The Receiver has learned, as discussed in more detail below, that Defendant McElhone has transferred the property at 4309 Old Decatur Road, Fort Worth, Texas to a Par Funding merchant, Kingdom Logistics, despite her previous representation to the Court that none of the properties subject to the Receiver's Motion to Expand had been sold.

As referenced above in Section I.C.3, on January 14, 2021, the Receiver also moved the Court to expand the Receivership to include an additional property at 500 Fairmount Avenue, Philadelphia, Pennsylvania which was acquired with commingled investor proceeds [ECF No.

468]. The property was purchased for $1.64 million in January 2020. On January 15, 2021, the Court issued an Order requiring Defendants to respond to the Motion by January 22, 2021, should they wish to explain their position with respect to the Receiver's request to include this entity as an additional Receivership Entity [ECF No. 471]. Defendants have not filed a response.

### B. Ms. McElhone's Transfer of 4309 Old Decatur Road, Fort Worth, Texas

As noted above, Ms. McElhone executed a series of undisclosed transactions to transfer the property at 4309 Old Decatur Road, Fort Worth, Texas. By way of background, on August 28, 2020, the Receiver through counsel, inquired whether Ms. McElhone and/or the LME 2017 Family Trust (the "Trust") would agree to the filing of *lis pendens* against 21 properties identified in the affidavit of SEC Investigator Raymond Andjich [ECF No. 177, Ex. 51]. The Receiver requested the *lis pendens* at the time to maintain the status quo and to prevent the dissipation of assets.

One property included in Andjich's declaration was a 34.88-acre tract of land located at 4309 Old Decatur Road, Fort Worth, Texas, 76102 (also known as 3950 Angle Avenue, Fort Worth, TX). It was purchased by Liberty Eighth Avenue LLC on April 19, 2019, with $4.6 million of commingled investor funds. On September 1, 2020, the Receiver obtained a title commitment report reflecting that this property was owned by Liberty Eighth Avenue LLC. Thereafter, the Receiver sent follow-up emails regarding the requested *lis pendens* on September 2, 2020 and October 8, 2020, but was unable to reach agreement with Ms. McElhone and the Trust, as they declined the Receiver's request to agree to a *lis pendens*. Consequently, the Receiver filed a motion to expand the receivership on October 30, 2020. That motion sought to expand the Receivership to include, among others, the Decatur Road property.

On September 30, 2020, however, Ms. McElhone caused Liberty Eighth Avenue LLC to deed the Decatur Road property to Kingdom Logistics, LLC. Specifically, by deed dated

September 30, 2020, Liberty Eighth Avenue LLC conveyed title to the Old Decatur Property to Kingdom Logistics, LLC, a Wyoming limited liability company. The consideration recited on the Deed reflects a "$10.00" transfer price. The Deed was signed by Lisa McElhone, as President, Liberty Eighth Avenue LLC with Lisa McElhone's signature notarized by her sister, Jamie McElhone. The Deed is recorded in the Deed Records of Tarrant County, Texas at County Clerk's Document No. D220266852.

On October 14, 2020, DEF Capital LLC was formed as a New Jersey limited liability company with an address of 3 Marys Way, Jackson, NJ 08527. By Deed dated October 22, 2020, Kingdom Logistics, LLC conveyed title to the Old Decatur Property to DEF Capital. The consideration recited in the Deed also reflects a "$10.00" transfer price. The Deed is recorded in the Deed Records of Tarrant County, Texas at County Clerk's Document No. D220276660.

Although certain Defendants repeatedly have represented to the Court that Kingdom Logistics is a legitimate, independent merchant with a collectable MCA balance, the Receiver has determined that Lisa McElhone and Joseph LaForte obtained a 40% ownership interest in Kingdom Logistics in August 2019 through a series of transactions involving Anthony Zingarelli and Eagle Six. In fact, in her June 2020 personal financial statement, Ms. McElhone lists an ownership interest in Kingdom Logistics valued at $100 million.

On November 4, 2020, Ms. McElhone, Mr. LaForte, and the Trust filed a Motion to Stay Briefing on the Receiver's Motion to Expand the Receivership or, In the Alternative, to Enlarge the Time to Response [ECF No. 367]. In that Motion, those Defendants represented to the Court that:

> The Receiver has not suggested in the Motion to Expand that any asset at issue has been or is being dissipated. <u>To the contrary, the Defendants have scrupulously maintained the status quo regarding the assets at issue in the Expansion Motion since these proceedings began and have</u>

>> neither withdrawn nor transferred for their personal benefit nor sold any assets at issue. What's more, in an effort to demonstrate their transparency and confirm that there is no urgency to rule on the Motion to Expand, the undersigned agreed to produce bank statements to the Receiver to verify the same.

ECF No. 367 at p. 3 (emphasis added). The property at 4309 Old Decatur Road, Fort Worth, Texas was an "asset at issue in the Expansion Motion." The representation that no asset had been transferred or sold was untrue when made. Even more remarkably, Ms. McElhone eventually opposed the Expansion Motion on the ground that a *lis pendens* against the real property assets at issue would be sufficient to maintain the status quo, without notifying the Receiver or the Court that Ms. McElhone already had transferred the Old Decatur Road property.

The Receiver has requested that Ms. McElhone provide him with a detailed explanation of the transactions involving the Old Decatur Road property, as well as copies of all documents, emails, contracts and other records evidencing the transfer of the property from Liberty Eighth LLC to Kingdom Logistics, and from Kingdom Logistics to DEF Capital LLC. The Receiver has yet to receive any response and anticipates taking appropriate action before this Court to set aside the transfer of 4309 Old Decatur Road.

### C. Defendants McElhone's and LaForte's Attempt to Establish *In Rem* Jurisdiction over the Trust's Assets Through a Nevada State Court

On December 11, 2020, while the Receiver's Motion to Expand the Receivership was pending, Premier Trust as the Independent Trustee of The LME 2017 Family Trust, filed a petition in the District Court, Clark County, Nevada for that Court to assume *In Rem* jurisdiction over the Trust, to confirm Defendants McElhone and LaForte as Co-Family Trustees, and to confirm Premier Trust as the Independent Trustee of the Trust. Although the Petition, in a footnote, stated that the request "was subject to the jurisdiction of the receiver" in the case before this Court, neither the Trustee nor Defendants McElhone or LaForte served the Receiver with the Petition. A copy

of the "Statement of Assets" for the Trust, as of August 3, 2020, is attached as Exhibit 4.  This statement reflects that nearly all of the assets—with the exception of the Tradewinds South LLC account (*see infra* at p. 18) and 500 Fairmount Avenue LLC (*see supra* at p. 5)—were either already Receivership Entities or the subject of the Receiver's Motion to Expand.

On December 15, 2020, the Trust, McElhone and LaForte appeared through counsel at this Court's Status Conference, but failed to mention the filing of this Petition.  Additionally, they opposed the relief sought by the Receiver in his Motion to Expand, including the Receiver's request to add the Trust as a Receivership Entity, as opposed to remaining as a Relief Defendant. Only after the Court granted the Receiver's Motion to Expand did the Trust's former counsel notify the Court and the Receiver of the pendency of the Nevada action [ECF No. 439].

Upon learning of the Trustee's and Defendant McElhone's and LaForte's actions in filing the *In Rem* Petition, the Receiver contacted the Trustee's counsel in Nevada and demanded that the Trustee withdraw the Petition. The Trustee balked, claiming that the filing of the December 11, 2020 *In Rem* Petition had vested the Nevada state court with "prior exclusive jurisdiction" over the Trust's assets.  The Trustee maintained this position even though this Court, in its August 13, 2020 Amended Order Appointing the Receiver, acquired subject matter jurisdiction over any assets held by the Trust attributable to investor funds. Further, even assuming the viability of the "prior exclusive jurisdiction" doctrine, the Receiver filed the Motion to Expand with this Court on October 30, 2020, predating the December 11, 2020 *In Rem* Petition in Nevada state court.

Although the Trustee subsequently agreed to vacate a scheduled February 5, 2021 hearing on his Petition, he did not agree to withdraw the Petition at that time.  Accordingly, the actions of the Trustee and Defendants McElhone and LaForte required the Receiver to retain counsel in Nevada and to file a Motion to Stay the proceedings.  After failing to respond to the Receiver's

Motion to Stay on January 22, 2021, the Trustee eventually withdrew the *In Rem* Petition on January 28, 2021, but only after the Receiver's repeated requests for the Trustee to do so. The Receiver believes this was a misguided attempt by certain Defendants to usurp this Court's jurisdiction over assets these Defendants acquired with commingled investor proceeds. This is another instance where the Receivership Estate, and the investors by extension, unnecessarily incurred additional fees because of the Defendants' ongoing misconduct and refusal to cooperate with the Receiver's requests.

### D. Defendants' Compliance with the Receivership Orders

The Receiver has made other demands on certain Defendants for compliance with this Court's Receivership Orders. These demands are all time-sensitive and impact the Receiver's ability to preserve the assets of the Receivership Estate and to perform his duties under the Court's various Receivership Orders. The Receiver has not yet received satisfactory responses to many of these requests, including the following:

1. A demand that Joseph LaForte and/or Lisa McElhone agree to pay the 2020 property taxes at 107 Quayside Drive, Florida in the amount of $74,104.11. The total bill for 2020 is $77,501.43, which reflects a discount from the Tax Collector for payment prior to January 31, 2021. The amount requested is prorated for January 1 through December 16, 2020, the date this property was brought within the Receivership Estate.

2. A demand that Joseph LaForte and/or Lisa McElhone pay the owners' assessment at 20-22 N. 3rd Street, Philadelphia in the amount of $331,398.68, exclusive of interest and attorneys' fees. Although those Defendants claim that they "contested" the assessment, the

Receiver has confirmed that Anthony Zingarelli,[3] acting on behalf of the entity through which Defendants McElhone and LaForte own the property, 20 N. 3rd Street Limited, attended the Board meeting for the condominium association, voted to approve the assessment, and voted to approve the selection of one contractor for the window replacements and another contractor for the façade repairs. Moreover, Mr. Zingarelli personally negotiated with one of the contractors to obtain more favorable terms. The assessment was approved by the owner's board and imposed before the Court established this receivership.

3. A demand that Ms. McElhone and Mr. LaForte execute the lease for the residence at 568 Ferndale Lane, Haverford, Pennsylvania. As noted above, Defendants McElhone and LaForte have thus far refused to enter into a lease, or otherwise agree to pay any amounts to the Receiver, for their continued occupancy of this residence.

The Receiver also has requested several categories of documents that remain outstanding, as follows:

1. Bank account information and bank records from Joseph Cole Barleta for Capital Source 2000, Inc. and Beta Abigail, LLC, both of which are Receivership Entities that Defendant Cole previously controlled.

2. Bank account information and bank records for the Trust, a Receivership Entity. The only document Defendants McElhone and LaForte have provided to the Receiver regarding the Trust's assets is a "Statement of Assets," which is attached hereto as Exhibit 4.

---

[3] Based on the Receiver's investigation, including interviews of former Par Funding employees, merchants, and others, Mr. Zingarelli is a close business associate of Joseph LaForte, and has been described as a "utility player" who served as Defendant LaForte's "right hand." Mr. Zingarelli maintained a Par Funding email address, conducted business on behalf of Par Funding and related entities, and also served as the nominee owner when Lisa McElhone took undisclosed equity interests in merchant companies—including Vision Solar and Kingdom Logistics—that fell behind on their MCA balances.

Notably, with the exception of a single "bank deposit program" at an unidentified financial institution valued at $115,845.50, this statement contains no detail regarding the value of or the transactions involving any accounts or assets listed on the statement.

3.  The Receiver also has determined that Defendant McElhone transferred commingled investor funds totaling approximately $10.35 million into an investment account at Charles Schwab denominated as "Tradewinds South LLC." Accordingly, the Receiver has requested account documents and statements from Ms. McElhone for the Tradewinds South LLC account at Charles Schwab. Counsel for Mr. LaForte has indicated that the Defendants do not have any statements for this account.

## IV. Conclusion

WHEREFORE, Ryan K. Stumphauzer, as Court-Appointed Receiver, by and through his undersigned counsel, respectfully files this Quarterly Status Report dated February 1, 2021.

Dated: February 1, 2021

Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425

By: */s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA
Florida Bar No. 056140
tkolaya@sfslaw.com

*Co-Counsel for Receiver*

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

By: */s/ Gaetan J. Alfano*
    GAETAN J. ALFANO
    Pennsylvania Bar No. 32971
    *(Admitted Pro Hac Vice)*
    GJA@Pietragallo.com
    DOUGLAS K. ROSENBLUM
    Pennsylvania Bar No. 90989
    *(Admitted Pro Hac Vice)*
    DKR@Pietragallo.com

*Co-Counsel for Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 1, 2021, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA