# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 20-CV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, et al.,

        Defendants.

_____/

### RECEIVER RYAN K. STUMPHAUZER'S MOTION TO EXPAND THE RECEIVERSHIP TO INCLUDE RECRUITING AND MARKETING RESOURCES, INC., CONTRACT FINANCING SOLUTIONS, INC., STONE HARBOR PROCESSING LLC, AND LM PROPERTY MANAGEMENT LLC

    Ryan K. Stumphauzer, Esq., Court-Appointed Receiver, (the "Receiver") of the Receivership Entities,[1] by and through his undersigned counsel, files the instant motion to expand

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"); Full Spectrum Processing, Inc. ("Full Spectrum"); ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC; RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Investment Fund 2 LP; MK Corporate Debt Investment Company LLC; Capital Source 2000, Inc.; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consultants, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; Liberty Eighth Avenue LLC; The LME 2017 Family Trust; Blue Valley Holdings, LLC; LWP North LLC; and 500 Fairmount Avenue, LLC and the Receivership also includes the properties located at 568 Ferndale Lane, Haverford PA 19041; 105 Rebecca Court, Paupack, PA 18451; 107 Quayside Dr., Jupiter FL 33477; and 2413 Roma Drive, Philadelphia, PA 19145.

1

the Receivership to include Recruiting and Marketing Resources, Inc. ("RMR"), Contract Financing Solutions, Inc. ("CFS"), Stone Harbor Processing LLC ("SHP"), and LM Property Management LLC ("LMP"). This Court's Amended Order Appointing the Receiver included a directive for the Receiver to "use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities."[2] The Receiver, his counsel, and his consultants have worked diligently to fulfill the Court's directive and have identified these additional entities that should be added to the Receivership.

For the reasons set forth below, the expansion of the Receivership Estate over RMR, CFS, SHP, and LMP is "necessary and appropriate for the purpose of marshaling and preserving all assets of the Defendants . . . that . . . are attributable to funds derived from investors or clients of the Defendants" and/or "may otherwise be includable as assets of the estates of the Defendants."[3]

## PROCEDURAL HISTORY

On July 24, 2020, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive and Other Relief in the United States District Court for the Southern District of Florida alleging that Defendants committed multiple violations of federal securities laws.[4] On July 27, 2020, the District Court appointed Mr. Ryan K. Stumphauzer as Receiver over the Receivership Entities, their subsidiaries, successors, and assigns.[5] The Court issued the Amended Order Appointing Receiver over the Receivership Entities on August 13, 2020.[6]

---

[2] Amended Order Appointing Receiver (the "Amended Order") (ECF No. 141) ¶ 7A.
[3] *Id.* at 1.
[4] ECF No. 1, the "Complaint." On August 11, 2020, the SEC filed an Amended Complaint, which corrected a scrivener's error in the name of the Relief Defendant and identified the Trustees of the Relief Defendant (Defendants Lisa McElhone and Joseph La Forte). (ECF No. 119, the "Amended Complaint").
[5] ECF No. 36, the "Receivership Order."
[6] ECF No. 114, the "Amended Order."

The Amended Order empowers the Receiver to use reasonable efforts to identify "Receivership Property," which includes all "monies, funds, securities, credits, . . . lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest or other income" that is attributable to the Receivership Entities.[7] The Amended Order further directs the Receiver "to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted . . . ."[8] Consistent with his investigation, the Receiver may "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property."[9]

## **LEGAL STANDARD**

Federal courts have the "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (citation omitted). That includes the appointment of a receiver as part of a court's "broad power to remedy violations of federal securities laws." *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). Once appointed, the receiver acts as an officer of the court. *SEC v. Elliott,* 953 F.2d 1560, 1577 (11th Cir. 1992).

But the appointment of a Receiver does not eliminate the district court's ongoing requirement to supervise the Receivership. *Id*. (noting that the receiver continues to operate under the court's supervision); *Safety Finance Srv., Inc.*, 674 F.2d at 372-73 (citing the "inherent power of a court of equity to fashion effective relief"). The court's ongoing, supervisory powers extend to determining whether the Receivership should be expanded to cover additional parties and

---

[7] *Id*. ¶ 7A.
[8] *Id*. ¶ 42.
[9] Id. ¶ 7G.

property. *SEC v. Torchia*, Case No. 1:15-cv-3904-WSD, 2016 WL 6212002, at *3 (N.D. Ga. Oct. 25, 2016).

Courts have expanded Receiverships in two broad categories of cases. First, expansion is warranted when the target entity is essentially an "alter ego" of an existing Receivership entity – that is, where there is common ownership or control of the entities and/or a commingling or transferring of assets between the Receivership entities and the target entities. *SEC v. Private Equity Mgmt. Grp., Inc.*, No. CV 09–2901 PSG (Ex), 2009 WL 3074604, at *1 (C.D. Cal. Sept. 21, 2009). The alter ego doctrine, which is applied to avoid inequitable results, may be invoked only if "the party was an actor in the course of conduct constituting the abuse of corporate privilege"–and not an innocent third party. *Torchia*, 2016 WL 6212002, at *3. Several courts have adopted the factors set forth in *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 234 (D. Nev. 1985), as relevant to the alter ego analysis. *See Torchia*, 2016 WL 6212002, at *3 (adopting *Elmas* factors); *SEC v. Creative Capital Consortium, LLC*, Case No. 08-81565, 2009 WL 10664430, at *1 (S.D. Fla. Sept. 21, 2009) (same). The *Elmas* court focused principally on the commingling of assets between the Receivership and target entities; the degree of overlapping ownership, management, board control and recordkeeping between the entities; and the use of the target entity by the Receivership entity as an instrumentality of the fraud. *See Elmas*, 620 F. Supp. at 234.

Second, Courts expand Receiverships to include property purchased with "scheme proceeds." *SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2013 WL 2291871, at *2 (M.D. Fla. May 24, 2013) (citing cases). Most of those cases involve property that has been acquired using commingled proceeds derived substantially from the fraud, either by insiders or by third parties related to insiders. *See id.* (holding that the receiver could expand the estate over a third party that received $1.1 million in scheme proceeds to purchase oil and gas leases because the "vast majority

4

of the initial funding … was tainted"); *CFTC v. Hudgins*, 620 F.Supp.2d 790, 793 (E.D. Tex. 2009) (authorizing receiver to obtain equitable lien on condominium owned by Receivership defendant's girlfriend where the mortgage was satisfied with funds from the fraud scheme). Under such circumstances, expansion of the Receivership is necessary so that ill-gotten assets will not "be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981).

## ARGUMENT

As set forth below, there is more than sufficient bases upon which to expand the Receivership over RMR, CFS, and SHP either because they are alter egos of Defendants and/or Receivership Entities, or because they were funded with commingled proceeds of the fraud scheme that is the subject of the SEC's claims against the Defendants in this action.

### A. The Court Should Expand the Receivership Over RMR

RMR purportedly provided sales and marketing services to Receivership Entities Par Funding, Capital Source 2000, Inc., and Fast Advance Funding LLC. RMR's employees operated out of Par Funding's offices at 22 N. 3rd Street in Philadelphia, Pennsylvania. Their activities purportedly included sales calls with merchants and procuring paperwork necessary to complete merchant cash advance agreements. Attached as **Exhibit 1** to this motion is an "Independent Sales Organization Agreement" between Par Funding and RMR, executed by Defendant Joe Cole and Defendant Lisa McElhone, respectively. According to her personal financial statement, Defendant McElhone owns 100% of RMR (*see* **Exhibit 2**, attached hereto, which was previously filed of record with this Court as ECF No. 305-1). Ms. McElhone describes RMR as a merchant cash advance broker and values the business at $5,000,000. According to her personal financial

statement, there was no "purchase price" for RMR, as it originated and operated using commingled proceeds of the fraud scheme. RMR acted as an alter ego of Par Funding in all respects.

As of December 31, 2019, the total amount transferred from Par Funding to RMR totaled $7,672,449.07. During the same period, RMR paid Par Funding $714,895. Attached as **Exhibit 3** is a detailed accounting of these payments. These transfers are comprised of commingled proceeds of the fraud scheme.

### B. The Court Should Expand the Receivership Over CFS

CFS is a merchant cash advance business operating out of 2000 PGA Boulevard, Suite 4440 in Palm Beach Gardens, Florida – the very same address as Par Funding's now defunct Florida location. It is a shared workspace where Par Funding maintained a mailbox; it had no employees or operational activities at that location. Defendant McElhone's personal financial statement reveals that she owns 100% of CFS (**Exhibit 2**). There was no "purchase price" listed for CFS, as it originated and operated using commingled proceeds of the fraud scheme. Ms. McElhone describes CFS as part of her "MCA Portfolio" and values the company at $17,000,000.

In addition to its own merchant cash advance agreements, CFS acted as a syndicate for Par Funding. In other words, Par Funding sold, transferred, or otherwise shared a percentage of its merchant cash advance agreements with CFS. CFS acted as an alter ego of Par Funding in all respects. Attached as **Exhibit 4** to this motion is a list of syndicate deals for which CFS and Par Funding entered into Split Deal Funding Agreements. Examples of these agreement are attached as **Exhibit 5**. Defendant Cole appears on the signature line for CFS, and Defendant McElhone appears on the signature line for Par Funding in these agreements. As of December 31, 2019, the total amount transferred from Par Funding to CFS was $13,143,014.68. During the same period,

CFS paid Par Funding $9,657,088.81. Attached as **Exhibit 7** is a detailed accounting of these payment. These funds represent commingled proceeds of the fraud scheme.

In addition, as with several of Defendant McElhone's related companies, many merchants transacted business with both Par Funding and other entities that were part of McElhone's "MCA Portfolio." For example, a company by the name of Anitsa Inc. ("Anitsa") entered into a MCA agreement with Par Funding in September 2019. Anitsa still has a pending balance it owes to Par Funding under that MCA agreement, and the Receiver is in discussions with Anitsa about trying to resolve this account. One complication, however, is that the former Par Funding employees also attempted to provide Anitsa with additional funding under a MCA agreement with CFS in December 2019. That second agreement was never finalized, but CFS nevertheless recorded a Deed of Trust in California against the personal residence of Anitsa's owner, which was intended to serve as collateral under this CFS agreement that never materialized. A copy of this Deed of Trust is attached as **Exhibit 6**.

Because the Receiver does not currently control CFS, the Receiver is unable to take action with respect to this improperly recorded Deed of Trust. Additionally, the Defendants who previously managed CFS are no longer operating that company. As a result, the Receiver is unable to assist the merchant with resolving this issue, which complicates the Receiver's collection efforts. By obtaining control over CFS, the Receiver will be able to work more efficiently in his efforts to collect from merchants, such as Anitsa, and bring additional investor funds back into the Receivership Estate.

### C. The Court Should Expand the Receivership Over SHP

SHP is ostensibly owned by Anthony Fazio, the former Director of Collections of one of the Receivership Entities, Full Spectrum. Full Spectrum operated out of Par Funding's offices on

North Third Street in Philadelphia, Pennsylvania. On the day this Court appointed the Receiver to oversee operations, Mr. Fazio was the individual in possession of all security codes for alarms and keys to Par Funding's headquarters in Philadelphia. He interacted with Receiver's counsel and had actual notice of the Receivership.

Prior to the Receivership, SHP acted as a collection firm for Par Funding, Capital Source 2000, Inc., Fast Advance Funding LLC, and CFS. By way of example, attached as **Exhibit 8** is a Statement of Work between SHP and Par Funding, executed by Mr. Fazio and Defendant McElhone, respectively.[10] SHP acted through employees of Full Spectrum, and the Receiver believes that SHP functioned primarily as a means to supplement the compensation Mr. Fazio received from Full Spectrum. A review of the Receivership Entities' books and records revealed, as of July 28, 2020, that SHP owed Par Funding $110,061.69.

The Receiver has communicated with several merchants who claim that they have paid SHP and Fazio on merchant cash advance agreements with Par Funding *after* appointment of the Receiver. The Receiver has attempted to contact Fazio and to instruct him to cease and desist from his activities, but he has declined the Receiver's communication despite knowledge of the Receiver's appointment. Specifically, Fazio declined delivery of the letter attached as **Exhibit 9** that the Receiver's consultant, DSI, sent to Fazio by certified mail on February 22, 2021.

On the morning of March 30, 2021, the Federal Bureau of Investigation ("FBI") executed a search warrant at one of the properties included within the Receivership Estate, located at 803 S. 4th Street in Philadelphia, Pennsylvania. The FBI notified the Receiver of the execution of the warrant. When the FBI entered the premises, they found Fazio squatting in one of the units of the

---

[10] There is a similar agreement attached to this exhibit between SHP and CFS, also executed by Mr. Fazio and Defendant McElhone, respectively.

building. Upon the FBI's arrival, Fazio left the property and the Receiver secured it against further intrusion. Fazio obviously retained unlawful possession of a key to the unit, and the Receiver promptly directed the property management company to change the locks. The Receiver confiscated numerous books and records belonging to the Receivership Entities that were within Fazio's possession at this property. Among these books and records, the Receiver found bank account statements revealing that Fazio has continued to collect from Par Funding merchants after the Receiver's appointment and has transferred funds to an entity associated with another alleged former Par Funding employee.

Attached hereto as **Exhibit 10** are TD Bank statements and notifications for SHP showing payments from Par Funding merchants to SHP in August and September 2020, well after the Receiver's appointment. The statements and notifications also reveal a payment from SHP to BG Sky Trade LLC in the amount of $120,000 on September 18, 2020. Attached hereto as **Exhibit 11** is a letter from a former Par Funding executive administrative assistant dated March 2, 2020, confirming that an individual identified as John R. Mulvihill was employed as the Vice President of Business Development of "BG Skytrade/PAR Funding," with an annual compensation package valued at $615,000. The Receiver has notified merchants not to pay SHP or Fazio. Attached as **Exhibit 12** is a form letter used by the Receiver's consultant, DSI, for this purpose. Following execution of the search warrant, the Receiver reiterated his demand that Fazio cease and desist from all collection activities and has demanded that he return all funds he collected. The Receiver's counsel provided a copy of the letter attached as Exhibit 8 to Fazio's newly retained counsel, but the Receiver has yet to receive a response.

SHP, through Fazio, has been acting as an alter ego of Par Funding – even after establishment of the Receivership. Bank records confirm that SHP has received commingled proceeds of the fraud scheme. For these reasons, the Receivership should be expanded over SHP.

**D. The Court Should Expand the Receivership Over LMP**

LMP is an alter ego of Defendant McElhone. It routinely received transfers of funds from the various income producing properties – now Receivership Entities – in the Philadelphia region. These transfers represent commingled proceeds of the fraud scheme.

The Receiver has identified $279,994.32 in transfers to LMP from the various Philadelphia-based properties that are now Receivership Entities (see **Exhibit 13** attached hereto). These transfers all occurred after the Receiver's initial appointment on July 27, 2020. Notably, in Defendants' Joint Response to the Receiver's Motion to Expand Receivership Estate filed on November 18, 2020 (Doc. 401 at p. 20), Defendants stated:

> All of the Defendants are already subject to an asset freeze which prohibits them from transferring or disbursing any assets for their personal benefit. The Defendants have offered the Receiver access to bank statements for each of the non-party entities dating back to the inception of this case (July 28, 2020), to prove that no funds generated by the non-parties listed in the Motion to Expand have been spent for anything other than the maintenance of the business and properties. There is no evidence that any of the subject properties have been sold or that any money has been dissipated.

This statement was not true. Despite the Defendants' representations that: (1) the asset freeze "prohibits them from transferring or disbursing any assets for their personal benefit" and (2) "that no funds generated by the non-parties listed in the Motion to Expand have been spent for anything other than the maintenance of the businesses and properties," the Receiver has analyzed LMP's bank records and identified multiple instances where Defendant McElhone used funds from the properties for her own personal benefit and/or for purposes other than the maintenance of the properties. For instance, the Receiver has identified various payments directly for the benefit of

Defendant McElhone, including $36,051.92 to Admiral's Cove for the payment of the homeowners' assessment at Defendant McElhone's personal Jupiter, Florida residence; $1,686.05 for payment of swimming pool maintenance at Defendant McElhone's personal Haverford, Pennsylvania residence; payments to various restaurants and a smoke shop in Philadelphia; as well as $14,010 in payments to "MBFS," which the Receiver believes represents automobile payments to Mercedes Benz Financial Services. It is of note that the Receiver located a Mercedes Benz G-Wagon stored at the Jupiter, Florida property. There are other substantial payments and transfers, including $11,000 to Venmo, for which the Receiver has not been provided any detail.

Additionally, LMP's bank statement as of December 31, 2020 – shortly after this Court ordered expansion of the Receivership Estate over the Philadelphia-based property entities – showed an account balance of $47,403.94. The Receiver has demanded that Ms. McElhone remit this balance to the Receiver, but Ms. McElhone has refused. For the above reasons, the Receivership should be expanded over LMP.

## CONCLUSION

For the reasons set forth herein, the Receiver respectfully requests that the Court enter an order expanding the Receivership over RMR, CFS, SHP, and LMP. A proposed order is attached as **Exhibit 14**.

## CERTIFICATION REGARDING PRE-FILING CONFERENCE

The undersigned counsel has conferred, or attempted to confer, with all counsel of record in this matter regarding the relief requested through this motion. Defendants Joseph LaForte and Lisa Mcelhone oppose the requested relief and stated their position that there is no reason for the appointment of a Receiver over these entities for the same reasons they stated in connection in opposition to the Receiver's October 30, 2020, motion to expand the receivership. Counsel of record for all other Defendants and for non-party Anthony Fazio have either confirmed that their

clients do not oppose or take no position with respect to the relief sought, or otherwise have not responded to the Receiver's conferral efforts. The SEC does not object to the requested relief.

Dated: April 28, 2021                                    Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425

By: */s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA
Florida Bar No. 056140
tkolaya@sfslaw.com

*Co-Counsel for Receiver*

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

By: */s/ Gaetan J. Alfano*
GAETAN J. ALFANO
Pennsylvania Bar No. 32971
*(Admitted Pro Hac Vice)*
GJA@Pietragallo.com

DOUGLAS K. ROSENBLUM
Pennsylvania Bar No. 90989
*(Admitted Pro Hac Vice)*
DKR@Pietragallo.com

*Co-Counsel for Receiver*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on April 87, 2021, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                               */s/ Timothy A. Kolaya*
                                               TIMOTHY A. KOLAYA