UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

 Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.*,

 Defendants.
_____/

**MOTION OF FOX ROTHSCHILD LLP TO STRIKE SEC'S MOTION
[ECF No. 757] FOR ORDER TO SHOW CAUSE WHY DEFENDANT
LISA MCELHONE AND HER FORMER COUNSEL SHOULD NOT BE HELD
IN CONTEMPT OF COURT AND INCORPORATED MEMORANDUM OF LAW**

 Fox Rothschild LLP ("Fox"), a non-party in this action, by its undersigned counsel, moves to strike the Motion of the Securities and Exchange Commission ("SEC") requesting that the Court issue an order to show cause ("OSC") as to why Fox should not be held in contempt. The SEC's motion is deficient and fails as a matter of clear law for several glaring reasons:

 (1) first, the orders the SEC claims were violated were entered *after* the conduct at issue;

 (2) second, there was absolutely no need to seek extraordinary relief, in the form of a contempt order, and the fact that such relief was even requested suggests an improper motive— either to embarrass Fox or prejudice Fox in the eyes of the Court;

 (3) third, the SEC lacks standing to seek this relief—the Receiver was vested by the Court with the exclusive right to seek the recovery of alleged estate assets;

(4) fourth, the SEC has improperly combined, in a single motion, a request for an OSC covering wholly unrelated conduct by Fox and its former client, Lisa McElhone, in an apparent effort to prejudice Fox; and

(5) fifth, the SEC, acting with unnecessary haste and carelessly, filed exhibits contain confidential information about Fox's bank account, information that should have been redacted.

Because this is a motion to strike, Fox will not address at any length the merits of the underlying substantive issues concerning ownership of the funds sought in the SEC's motion. Those issues should be addressed in response to an appropriate complaint by the Receiver, should the Receiver decide that such a filing would be well-founded.

## **INTRODUCTION**

The SEC has sought extraordinary, unnecessary, and unsupported relief—a contempt order—against a well-respected national law firm that, at all times, has conducted itself honorably, openly and reasonably. The issue is a legal one: whether the Fox firm can keep a payment it received from CBSG before the Receiver was appointed, and before any asset freeze, for actual attorney time that was spent pre-receivership on legitimate and valuable legal services consisting mostly of efforts to collect on defaulted merchant advances.

Fox has been above-board from the beginning. It disclosed the payment to the Receiver early-on; it returned (in September 2020) approximately $910,000 voluntarily, an amount that was for future services; Fox explained its legal and factual position regarding the remainder (approximately $630,000) at length to the Receiver's counsel; Fox told the Receiver's counsel that, consistent with the Pennsylvania Rules of Professional Conduct, it would hold these funds in the law firm's IOLTA attorney trust account under the matter was resolved; Fox has maintained the

funds safely in that account; Fox was—at all times—completely candid and above-board in every respect.

There was absolutely no need to surprise Fox with a motion requesting contempt and sanctions. The parties have a dispute concerning issues affecting the disposition of funds that are safe and secure in an attorney trust account. The issues need to be resolved by a court though because the parties respectfully disagree with each other's positions. But, the issues should be resolved in a proper, orderly and transparent manner that will allow all parties to enjoy full due process, not through a legally unsupportable contempt motion.

Inexplicably, the SEC—which was not even a party to the prior discussions between Fox and the Receiver—fired off a contempt motion that is facially and fatally flawed because the actions that the SEC claims Fox should not have taken occurred before the Court entered any asset freeze and even before the Court's initial order appointing the Receiver. To be sure, Fox saw the SEC's complaint. But, contempt requires a conscious violation of an existing court order. The facts admitted by the SEC, and set forth in its motion, disprove that notion. For this reason, and other reasons set forth herein, the Court should strike the SEC's motion.

## FACTUAL BACKGROUND

1. Fox represented Complete Business Solutions Group, Inc. (a/k/a Par Funding ("CBSG") prior to the appointment of the Receiver and for a short time thereafter.[1] Fox's primary role was litigation counsel for CBSG in its efforts to recover merchant advances following defaults by merchants. Fox was extremely successful in its litigation efforts on behalf of CBSG.

---

[1] In addition to serving as litigation counsel for CBSG, Fox, in limited matters, also served as corporate counsel, but not as securities counsel. After this legal action was filed, Fox briefly represented CBSG and certain related parties as defendants in this action, but Fox withdrew from that representation very early in this action.

2.      Post-receivership, Fox was retained by the Court-appointed Receiver, Ryan Stumphauzer, to assist in the transition of the pending litigation matters to the Receiver.  Fox performed valuable services for CBSG prior to the appointment of the Receiver, and it performed valuable services for the Receiver as well.

3.      As alleged in the SEC's motion, the sequence of relevant procedural events in this action is as follows:  (a) on July 24, 2020, the SEC file the original Complaint [ECF No. 1] herein alleging securities law violations and seeking preliminary injunctions and an asset freeze, among other relief, (b) on July 24, 2020, the SEC also filed an *ex parte* emergency motion for a temporary restraining order seeking, among other relief, an asset freeze against Defendants CBSG, Lisa McElhone and Joseph LaForte [ECF No. 14], (c) on July 27, 2020, the Court entered the initial Receivership Order [ECF No. 36], and Fox became aware of the Receivership Order, (d) on July 28, 2020, the Court granted the SEC's *ex parte* motion for a temporary restraining order [ECF No. 42] (referred to by the SEC as the "Asset Freeze Order") and (e) on August 13, 2020, the Court amended the Receivership Order [ECF No. 141] to expand the scope of the Receivership and to freeze "Receivership Assets" and "Recoverable Assets."  SEC Motion, pp. 2-3 & 5.

4.      The SEC alleges that Fox took the following actions for which it should be held in contempt—all of which, based on the SEC's own assertions, took place after the SEC filed its initial Complaint but, importantly, before any of the above-reference orders were entered and known to Fox.  The SEC alleges, in its present motion:

> On Friday, July 24, 2020, the Defendants learn about the SEC's Complaint against them and LaForte makes arrangements for an immediate payment to Fox Rothschild.
>
> On July 24, Berman [a Fox partner] spoke with LaForte and requested fees for work Fox Rothschild had done and would do in the future. Berman discussed the SEC case with LaForte and advised him that the monies would be needed to pay for

> ongoing legal work, and LaForte and Berman agreed to the "immediate payment" of funds to Fox Rothschild.
>
> At 4:48pm that same day [July 24], Berman emailed a copy of the Complaint seeking an asset freeze in this case to Cole and LaForte, "Here is the filing. Let's talk." [Exhibit 1]. About two hours later, at 6:53pm, Aida Lau of Par Funding emailed Berman to confirm the ACH transfer of $1.5 million from Par Funding to Fox Rothschild.
>
> On Sunday, July 26 and Monday, July 27, 2020, Fox Rothschild tells Cole and LaForte to backup emails, financials, and computers and to take the download away from Par Funding.
>
> At 12:39pm on July 26, Berman emailed Cole and LaForte to ask if anyone could backup the financials, emails, and computers, and Cole responded the next day with a status update on that process.
>
> At 7:13am on July 27, Joseph DeMaria, also a law partner at Fox Rothschild, emailed Cole: "Bottom line if a receiver is appointed, which we are resisting, the receiver takes over your business. That means they get the original ode [sic] documents. You need to take your download away from the business so you have a personal copy in case this happens."

SEC Motion, pp. 4-5 (record citations omitted). Although the SEC alleges that the transfer of funds to Fox was "completed" on July 27, 2020—a date prior to the entry of the Asset Freeze Order[2]—the SEC admits that all of Fox's potentially relevant actions and conversations took place from July 24 to July 26, 2020. Incredibly, the SEC seeks to hold Fox in contempt for actions it took *before* this Court entered the relevant orders.

5.   On Friday, July 24, 2020, Brett Berman spoke with Joseph LaForte and requested that CBSG pay Fox monies for fees Fox had already incurred—attorney time that was already in Fox's billing system--and for anticipated additional work moving forward.  Mr. Berman advised

---

[2] The initial Receivership Order, entered on July 27, 2020 [ECF No. 36] did not include an asset freeze.  But, regardless, the actions Fox took that the SEC complains about took place before even the entry of the initial Receivership Order.

Mr. LaForte that Fox had incurred substantial attorney time charges for work already performed for CBSG.

6. On July 24, 2020, Mr. Berman and Joseph LaForte agreed that CBSG would make immediate payment to Fox and that Fox could use the money to pay for work already performed and to establish a retainer for future work. On the same day, July 24, 2020, CBSG initiated an ACH payment to Fox in the amount of $1,500,000.

7. At the time of the payment, Fox had $633,270.95 in earned but unbilled attorney time entered in its time-keeping system. Fox earned these fees through its services, and its client agreed to pay these fees. However, knowing of the filing of the SEC's complaint, Fox chose not to immediately transfer the funds to its operating account, but, rather, to hold both the earned and unearned funds in its attorney trust account pending the resolution of any adverse claims to the funds. Fox deposited the entire $1.5 million in its attorney trust account.

8. After the Receiver was appointed by this Court, Fox disclosed the payment it had received from CBSG to the Receiver's counsel. The Receiver's counsel and Fox's counsel had cordial and professional telephone discussions about the $1.5 million in funds, and they exchanged correspondence about the subject. After discussing the matter with the Receiver's counsel, Fox decided to voluntarily refund the amount of $912,521.05 because that was the balance after deduction of the amount contractually due to Fox for recorded attorney hours and costs incurred prior to the entry of the Receivership Order.

9. On September 4, 2020, over a year ago, Fox hand-delivered a check to the Receiver's counsel in the amount of $912,521.05, and the Receiver's counsel accepted the check while also reserving the right to assert a claim to the remaining funds.

10. Thereafter, further discussions took place between Fox's counsel and the Receiver's counsel concerning the monies Fox retained for its pre-receivership work. Unfortunately, the parties could not reach an agreement. The Receiver requested that the remaining funds be turned over to the Receiver, and Fox asserted that Fox had earned and been paid the fees pre-receivership, and, therefore, the monies were not part of the receivership estate. Fox also asserted that it held a valid attorney retaining lien on the funds under Pennsylvania law. The Receiver asserted, among other things that funds held in an attorney trust account are client property, and, therefore, the funds should be returned to the Receiver as successor-in-interest to Fox's former client, CBSG.

11. Neither the SEC nor its counsel were party to the discussions that took place in the fourth quarter of 2020 between the Receiver's counsel and Fox's counsel. During that time period, Fox's counsel advised the Receiver's counsel in writing that Fox would continue to hold the remaining funds in its IOLTA attorney trust account pending the resolution of the dispute. For many months, Fox and its counsel heard nothing further about this matter. Fox continued to hold the retained funds in its trust account.

12. On Monday, September 13, 2021, Fox's counsel received an email from the SEC's counsel, Amie Berlin, asking about the status of the fees retained by Fox. The next morning, September 14, 2021, Ms. Berlin sent another email requesting a telephone conference concerning "a filing we are making today." A telephone conference ensued shortly thereafter, and Ms. Berlin asked whether Fox had changed its position about returning the funds. Counsel for Fox advised that, to his knowledge, Fox had not changed its position. Ms. Berlin did not mention that the SEC had prepared and was about to file a motion to hold the Fox law firm in contempt. Before any

further discussion could took place, the SEC, in the afternoon of September 14, filed the instant motion.

## ARGUMENT

**I.   CONTEMPT IS NOT AVAILABLE FOR CONDUCT OCCURRING *BEFORE* THE ENTRY OF A COURT ORDER OR INJUNCTION.**

The SEC, with almost no notice whatsoever, fired off an inflammatory and baseless contempt motion seeking to hold one of the nation's preeminent firms in contempt for conduct that is reasonable and certainly not in violation of any court order in effect at the time of the conduct. Fox voluntarily returned nearly $1 million in fees and did so over a year ago. Fox has retained only the amount it earned for legal services rendered prior to the appointment of the Receiver, and the payment was made to Fox by CBSG before this Court entered any asset freeze order.

On its face, the SEC's motion is obviously and fatally flawed. Federal courts throughout the country have ruled that a court cannot hold a party in contempt for actions taken before the entry of the order that arguably forbids the action. As the Eleventh Circuit has explained, "[i]f the court finds that the conduct as alleged <u>would violate the prior order</u>, it enters an order requiring the defendant to show cause why he should not be held in contempt and conducts a hearing on the matter." *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990) (underscoring added).

> "[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner." *Mercer*, 908 F.2d at 768. A petitioner "must [first] establish by clear and convincing evidence that the alleged contemnor violated [a] court's earlier order." *United States v. Roberts*, 858 F.2d 698, 700 (11th Cir.1988) (citation omitted). Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor "to produce evidence explaining his noncompliance" at a "show cause" hearing. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir.1991); *see Mercer*, 908 F.2d at 768; *Roberts*, 858 F.2d at 701.

*Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998).

Before a court will issue a show cause order in connection with a motion to hold a party in civil contempt, the entity seeking the contempt order must establish by clear and convincing evidence, among other things, that the alleged contemnor knew of the entry of a valid order, and, after entry of that order, knowingly engaged in acts violative of the order. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

A party cannot violate an injunction or other order "which has not yet been issued." *Haendel v. Clark*, No. 7:17-CV-00135, 2019 WL 1373656, at *6 (W.D. Va. Jan. 22, 2019), report and recommendation adopted, No. 7:17-CV-00135, 2019 WL 1372166 (W.D. Va. Mar. 26, 2019). As one federal court aptly expressed the point,

> To find the respondents in civil contempt, the Court must find by clear and convincing evidence that each respondent violated the December 5 and 18 Orders. NOW v. Operation Rescue, 747 F. Supp. 772, 774 (D.D.C.1990). The Court may consider only the respondents' actions after the entry of the TRO and its freeze order; conduct prior to the Court's Orders could not have violated them and therefore could not constitute contempt. *United States v. Landsberger*, 692 F.2d 501, 503 (8th Cir.1982). The Court must conclude that respondents had notice of the terms of the Orders to reach a finding of contempt.

*S.E.C. v. Current Financial Services, Inc.*, 798 F. Supp. 802, 806 (D.D.C. 1992). *See also United States v. Landsberger*, 692 F.2d 501, 504 (8th Cir. 1982) ("Obviously, if the act was committed before the injunction was entered, it could not have violated the injunction."); *In re Res. Tech. Corp.*, No. 08 C 4040, 2009 WL 1873529, at *2 (N.D. Ill. June 29, 2009) ("[A]s best as the Court can determine, there is no such thing as anticipatory contempt. . . . Contempt may be based only on conduct that occurs after the court order allegedly violated."); *Nykcool A.B. v. Pac. Fruit Inc.*, No. 10 CIV. 3867 LAK AJP, 2012 WL 1255019, at *9 (S.D.N.Y. Apr. 16, 2012) (same).[3]

---

[3] *See also In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) ("Civil contempt is an appropriate sanction if we can point to an order of this Court [that] sets forth in specific detail an unequivocal command which a party has violated." (alterations and quotation marks omitted)); *N.W. Controls, Inc. v. Outboard Marine Corp.*, 349 F. Supp. 1254, 1256 (D. Del. 1972) ("Before

The SEC's motion, on its face, alleges that the relevant orders it says were violated were entered after Fox requested payment from CBSG, after CBSG's officer agreed to make the payment and after CBSG made the payment. Fox firmly believes, and will demonstrate, that the fees it earned and was paid for pre-receivership work are not an asset owned by the receivership estate. Rather, the funds are the property of Fox, and, even if that was not true, Fox has a valid attorney retaining lien under Pennsylvania law. Fox understands that reasonable attorneys can hold different views on an issue such as this. But this is not a matter that even arguably approaches a contempt of court issue.

Fox communicated frequently with the Receiver's counsel regarding this matter, voluntarily repaid the monies (nearly $1 million) that were not earned pre-receivership, and expressed its good faith and reasoned belief in its position that the remaining monies are not part of the receivership estate. Any dispute over this matter should be resolved in the normal, usual and orderly manner—through the filing by the appropriate party—the Receiver—of a complaint seeking a determination of the issue by the Court. Sadly, the SEC has attempted to short-circuit due process and bully Fox through an ill-advised and baseless contempt motion.

When the Receiver or Fox seeks appropriate relief, or in the unlikely event that this Court denies this motion to strike and issues an OSC, Fox will address the merits of its claim and present its legal authorities.[4] However, one contention of the SEC should be dismissed out-of-hand—the

---

a court initiates a contempt proceeding or permits extensive discovery of suspected violations of its judgment, there should be at least a prima facie showing by the aggrieved party of disobedience of the order.").

[4] The SEC cites *SEC v. Credit Bancorp, Ltd.*, 109 F. Supp. 2d 142 (S.D.N.Y. 2000). However, *Credit Bancorp* is distinguishable because the court relied on a fee agreement which the court stated required the law firm to apply the funds in order to establish ownership of the funds. Here, the Fox firm was not required by any fee agreement with its client to maintain these funds in its trust account. The client agreed to pay the amount due and pay an advance for future services, and Fox voluntarily deposited all of the funds to its trust account pending the resolution of potential

notion that two Fox partners acted wrongfully in advising CBSG to make back-up copies of important documents or to retain copies of documents. Those recommendations were made before any order was entered by this Court, and, in any event, there is nothing wrong in making copies for defense purpose or to assist a future receiver. No one advised CBSG to destroy, remove or conceal any documents or data. It is not clear if the SEC is seeking to hold Fox in contempt for giving this advice, but, if so, that contention is beyond the realm of reasonableness and should not be reasserted in any future filing.

**II.   THE SEC'S MOTION WAS WHOLLY UNNECESSARY AND INAPPROPRIATE IN VIEW OF THE UNDISPUTED FACTS.**

As discussed earlier, the SEC knows that the funds at issue are safe and secure in Fox's attorney trust account. Fox made that very clear to the Receiver in writing. The SEC also knows that Fox was paid the money prior to any asset freeze entered by this Court. The SEC also knows that Fox has asserted that the payment was for services it performed prior to the appointment of the Receiver. The SEC also knows that Fox and the Receiver have had substantial professional and respectful discussions concerning the legal and factual issues. The SEC also know that the

---

adverse claims (not because of any agreement with its client to do so). Moreover, *Credit Bancorp* was not decided under Pennsylvania law and did not address any issue concerning an attorney retaining lien under Pennsylvania law. The SEC also cites *SEC v. Princeton Economic Int'l Ltd.*, 84 F. Supp. 2d 443 (S.D.N.Y. 2000), but, in that case, there was no evidence that the fees were earned by services rendered before the relevant court orders, and one firm transferred monies after an asset freeze order was entered. *Princeton* also did not involve an assertion of a Pennsylvania attorney retaining lien. The SEC's remaining cases merely state a general proposition that funds in an attorney trust account are usually considered client property. As noted, Fox will address this authority, and other case authority, in more depth at the appropriate time. In particular, Fox will provide case law holding that law firms may have property rights and lien rights in funds held in attorney trust accounts. This is a fact-specific issue that should be fully and fairly litigated through an appropriate procedural mechanism. Fox is prepared to address these and other issues through a process that affords adequate due process to all parties.

Fox firm expected that this issue, if not settled, would be litigated fairly, calmly, and appropriately, in a professional manner.

Despite this knowledge, the SEC chose to file, without warning, an extremely inflammatory contempt motion that will likely damage Fox's national reputation. This was a completely over-the-top and inappropriate way to bring the issues before the Court.[5] It is not clear what motivated this effort, and, hopefully, it was not done to prejudice Fox in the eyes of the Court or embarrass Fox publicly or to intimidate Fox as a potential witness for the Defendants in this case.

The SEC did not even comply fully with the Local Rule "meet and confer" requirement before filing this motion.[6]

### III. THE RECEIVER IS THE PROPER PARTY TO ASSERT THIS CLAIM, NOT THE SEC.

As this Court observed in its Receivership Order [ECF No. 36], the SEC sought "a Receiver with full and **exclusive** power, duty, and authority to: administer and manage the Receivership Entities' business affairs, funds, assets, causes of action, and any other property; marshal and

---

[5] In a similar vein, the SEC, knowing Fox did not violate any court order concerning CBSG's documents, suggests that Fox attorneys acted inappropriately by advising CBSG to make copies of important CBSG documents before the possible appointment of a receiver. It appears that the SEC's tack, in raising this unrelated and inconsequential matter, is to attempt to portray the Fox firm as a bad actor.

[6] Counsel for the SEC contacted counsel for Fox very shortly before filing this motion and did not advise counsel for Fox that a contempt motion would be filed, only that some "court filing" would be made. That omission deprived counsel for Fox of the opportunity to discuss with SEC counsel why contempt is not a form of relief that is appropriate here, in view of the timing of events and many other factors. Local Rule 7.1(a)(3) provides that parties or non-parties who may be affected by the relief sought must confer in a "good faith" effort "to resolve by agreement the issues to be raised in the motion." Counsel for the SEC did not seek a discussion of any of the "issues raised in the motion"; indeed, counsel for the SEC did not identify the type of motion that would be filed, let alone discuss the nature of the allegations that would be made. Counsel for the SEC did not even mention the word "contempt" or the word "sanctions." Instead, counsel for the SEC merely asked if the Fox firm had "changed its position" on the retention of the remaining funds.

safeguard all of the assets of the Receivership Entities; and take whatever actions are necessary for the protection of the investors." *Id*. at p. 2 (emphasis supplied).

As provided in paragraph 7(a) of the Amended Receivership Order [ECF No. 141], the Receiver was granted the power and duty to "use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, "Receivership Estates").

As provided in paragraph 7(b) of the Amended Receivership Order, the Receiver was charged with the duty to "take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto."

This Court charged the Receiver, not the SEC, with the obligation to sue to recover any assets believed to be part of the Receivership Estate. Fox disputes that the cash it is holding is part of the Receivership Estate, but, without question, it is the Receiver whose responsibility it is to pursue any claim against Fox if the Receiver decides to do so. Consistent with this notion, all of the Fox firm's communications on this matter—until September 14, 2021—were with the Receiver. For reasons unknown, the SEC, which is merely a party litigant in this case and not an arm of the Court or a *de facto* receiver, has decided to pursue this matter and to do so in an inappropriate manner.

As provided in 28 U.S.C.A. § 754, "a receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof. He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title." These duties are codified by the terms of 28 U.S.C.A. § 959(b), which requires receivers to manage and operate the receivership property in the same manner that the owner or possessor of the property would be bound to do if in possession of it.

Notwithstanding this Court's orders, and two federal statutes, the SEC seeks to undermine the very purpose of a receiver and circumvent the exclusive powers granted to the Receiver by pursuing the recovery or putative receivership assets. Not only does this violate the Court's Receivership Orders and federal law, but it creates a conflict of interest. The Receiver is a neutral party, an arm of the Court. The SEC is a party litigant intent on prevailing in contentious securities litigation. *See Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) ("[a] receiver is a neutral court officer appointed by the court, usually to "take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of ... undertaking any [ ] appropriate action.").

Fox is not aware of any provision in the federal securities laws or regulations that divests the Receiver of the exclusive authority to pursue the recovery of potential estate assets, and certainly nothing in this Court's orders vests the SEC with that authority.

Accordingly, although the relief sought by the SEC—the return of fees earned by Fox and paid pre-receivership, is not well-supported, the Receiver is the proper party to pursue such a claim, and the SEC's motion should be denied because it lacked standing or authority to bring it.

### IV. THE SEC HAS IMPROPERLY COMBINED UNRELATED MATTERS INVOLVING DIFFERENT PARTIES IN ITS CONTEMPT MOTION IN AN EFFORT TO PREJUDICE FOX.

The SEC's motion addresses two entirely unrelated actions committed by parties who previously had a lawyer-client relationship but were not jointly involved in either action. The SEC alleges that Fox violated court orders that had not yet been entered by receiving payment for pre-receivership services. Fox's alleged actions occurred in the July 24-26, 2020 timeframe.

In the same motion, the SEC complains that Lisa McElhone, in October 2020, allegedly caused the transfer of land in Texas from one entity she controlled to another. The Texas property was owned by an entity that was not subject to the original Receivership Order. The SEC complains that Ms. McElhone caused the transfer while knowing that the Receiver was investigating this asset and pursuing an expansion of the Receivership Order to include the ownership entity. These allegations, whether true or false, and whether grounds for contempt or not, have nothing whatsoever to do with the allegations the Receiver is making against Fox. The two matters involve different events and different parties. There is no allegation that Fox was involved in the Texas land transfer.

Federal Rule of Civil Procedure 11(b)(1) provides: "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ." The present motion appears designed to prejudice Fox by combining two unrelated and entirely different matters, one involving an alleged post-receivership transfer allegedly made to conceal an asset and the other involving a pre-receivership transfer made to

obtain payment of legitimate, hard-earned legal fees.  By combining these matters and emphasizing that Fox is "*former counsel*" to Ms. McElhone, the SEC is attempting to create a form of "guilt by association" or to create the false appearance that Ms. McElhone and the Fox firm are colluding to avoid complying with the Court's orders.  The Court should deny the motion on this basis alone.

**V.      IN ITS HASTE TO FILE THIS MOTION, THE SEC NEGLECTED TO REDACT CONFIDENTIAL INFORMATION AND HAS EXPOSED FOX TO NEEDLESS RISK.**

Exhibit 4 [ECF No. 754-4] is an ACH confirmation showing the Fox firm's bank account number and the routing number of its bank.  The SEC withdrew ECF 754 because of a "redaction problem" but then almost immediately thereafter refiled the motion with the same Exhibit 4 [ECF No. 757-4] showing the Fox firm's bank account number and the routing number of its bank— unredacted.

Local Rule 5.3(b)(2) provides:  "Before the electronic filing and service of such exhibits, the filer must review each exhibit and redact any sensitive, confidential, or private information in accordance with Fed. R. Civ. P. 5.2, Fed. R. Crim. P. 49.1, and CM/ECF Administrative Procedures, Section 6, Redaction of Personal Information, Privacy Policy, and Inappropriate Materials, or seek an order from the Court either to seal . . . ."  Fed. R. Civ. P. 5.2(a) specifically requires the redaction of bank account numbers.  Section 6(a) of the CM/ECF Procedures expressly requires redaction of bank account numbers.

There is no excuse for the SEC, not once but twice, filing an exhibit with the Fox firm's bank account number and the routing number of its bank unredacted.  For reasons unknown, and without any need for emergency action, the SEC rushed the filing of its motion and did not bother to review the few exhibits it filed in order to assure the redaction of confidential information.

The motion should be denied for this reason alone.

## CONCLUSION

For all of the above reasons, the Court should strike the SEC's motion without prejudice to the Receiver, if he so chooses, pursuing a claim for the recovery of the retained funds through an appropriate complaint or motion rather than an inappropriate and procedurally defective motion for an OSC to hold the Fox firm in contempt.

Dated: September 15, 2021          Respectfully submitted,

> /s/ Peter H. Levitt
> Peter H. Levitt
> Fla. Bar No. 650978
> SHUTTS & BOWEN LLP
> 200 S. Biscayne Boulevard, Suite 4100
> Miami, Florida 33131
> Tel.: (305) 425-9447
> Fax: (305) 415-9847
> plevitt@shutts.com
> ATTORNEYS FOR FOX ROTHSCHILD LLP

## CERTIFICATE OF CONFERRAL

**I HEREBY CERTIFY** that, on September 14, 2021, pursuant to Local Rule 7.1(a)(3)(A), I conferred by email exchange with counsel for the SEC in a good faith effort to resolve the issues presented by this motion. On the morning of September 15, 2021, I conferred again, this time by telephone, with counsel for the SEC. I advised counsel for the SEC of the Fox firm's positions concerning the contempt motion and the reasons for this motion. Counsel for the SEC requested more time to consider a possible resolution. However, because the SEC filed a motion seeking an order to show cause, a matter that is normally acted upon very promptly by this Court, I am concerned that the Court will act before the Fox firm has the opportunity to advise the Court of the grounds set forth herein for striking the SEC's motion (and not issuing a show cause order). I advised the SEC's counsel that, because of this factor, I could not delay filing the instant motion. However, if counsel for the parties reach an agreement concerning the instant motion, I will immediately advise the Court. I intend to continue a dialog with SEC counsel in an effort to resolve this motion.

> /s/ Peter H. Levitt
> Peter H. Levitt

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on September 15, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Peter H. Levitt
Peter H. Levitt