UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.*,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' JOINT MOTION
## FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendants' Joint Motion for Partial Summary Judgment and Incorporated Memorandum of Law [ECF No. 804] ("Motion") and accompanying Statement of Facts [ECF No. 805] ("DSOF"), filed on October 4, 2021. The Motion is made on behalf of Defendants Joseph LaForte, Lisa McElhone, and Joseph Cole Barleta, Mot. at 2, and Defendants Perry Abbonizio and Dean Vagnozzi filed Notices of Joinder to the Motion on October 6, 2021 and October 20, 2021, respectively, [ECF Nos. 819, 849].

Plaintiff filed a Response in Opposition [ECF No. 894] ("Response"), and Opposition to Defendants' Joint Statement of Undisputed Facts [ECF No. 887-1] ("PRSOF"), on October 28, 2021. In addition, Plaintiff filed a Statement of Undisputed Facts [ECF No. 816-1] ("PSOF"), and Defendants filed a Joint Statement of Facts in Support of their Response to the SEC's Motion for Partial Summary Judgment [ECF No. 895] ("DRSOF"). Defendants filed a Reply in support of their Motion [ECF No. 947] ("Reply") on November 15, 2021. Having reviewed all the pleadings, and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that the Motion is **DENIED** as set forth herein.

**BACKGROUND**

As the parties are familiar with the underlying facts in this case and the Court extensively covered such background in its Order Denying Motion to Dismiss [ECF No. 583] ("Order Denying Motion to Dismiss"), only a summary is warranted.[1]

### I. Factual Background

This case is an enforcement action brought by the Securities and Exchange Commission ("SEC") alleging that Defendants issued, marketed, and sold unregistered, fraudulent securities to fund short-term loans to small businesses—known as "merchant cash advances." Par Funding—a company founded in 2011 by husband-wife duo McElhone and LaForte—was engaged in the business of making "opportunistic loans" to small businesses across the country. *See* Am. Compl. ¶ 1. From approximately August 2012 through mid-2020, to fuel these merchant cash advances (MCAs), Defendants raised nearly half a billion dollars through unregistered securities sold to over a thousand investors nationwide. *Id*. The SEC describes the alleged scheme as consisting of two primary phases. During the first phase, from August 2012 until around December 2017, Par Funding primarily issued promissory notes and offered them to the investing public directly and through a network of sales agents ("Phase I"). *Id*. ¶ 2.

Then, in early January 2018—after learning it was under investigation by the Pennsylvania Department of Banking and Securities for violating state securities laws through the use of unregistered agents—Par Funding implemented a new way to raise funds for the MCAs ("Phase II"). *Id*. ¶¶ 3-4. Par Funding began relying on "Agent Funds" that were "created for the purpose of issuing their own promissory notes, selling the notes to the investing public through unregistered security offerings, and funneling investor funds to Par Funding." *Id*. ¶ 4. Par Funding would

---

[1] The Court sets forth the facts as described in the SEC's Amended Complaint, many of which Defendants vehemently dispute.

compensate the Agent Funds by offering them promissory notes that had higher rates of return than the notes the Agent Funds sold to investors. *Id.* ¶ 4.

The Amended Complaint states that McElhone and LaForte "orchestrate[d] the scheme" through Par Funding and McElhone's company, Full Spectrum Processing, Inc., whose employees operated Par Funding. LaForte, Cole (Full Spectrum's CFO), and Abbonizio (Par Funding's investment director and partial owner) solicited investors to invest in the securities. Am. Compl. ¶ 5. Vagnozzi, through his company ABetterFinancialPlan.com d/b/a A Better Financial Plan ("ABFP"), recruited individuals to create the Agent Funds and provided them training and other materials to assist them with the creation and operation of the funds. *Id.* ¶ 6. Vagnozzi, along with Michael Furman and John Gissas, operated Agent Funds that raised money for Par Funding through unregistered securities offerings. *Id.* ¶ 7.

The SEC avers that in addition to violating the federal securities laws by selling unregistered securities, Defendants also made false or misleading statements and omissions concerning the Par Funding offering in violation of the antifraud provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* at 29-50. These misleading statements and omissions included misrepresentations regarding Par Funding's underwriting process, loan default rate, and insurance offered on the MCAs; omissions as to LaForte's background to investors, specifically that he is a twice-convicted felon; and omissions regarding Defendants' regulatory history.

## II. Procedural Background

The SEC filed this action on July 24, 2020, seeking—among other things—a temporary restraining order and preliminary injunction, an asset freeze, appointment of a receiver, a permanent injunction, disgorgement, and penalties. *See* Compl. [ECF No. 1]. The Court entered an order appointing a receiver over certain Defendant entities, as well as several subsequent orders

expanding the scope of the receivership [ECF Nos. 141, 238, 436, 484, 517]. The Court also granted the SEC's request for a temporary restraining order and asset freeze [ECF No. 42] and held a two-day preliminary injunction hearing [ECF Nos. 170, 192]. Following the hearing, each Defendant consented to a preliminary injunction [ECF Nos. 173, 176, 187, 200, 201, 221, 255, 336]. On October 27, 2020, the Court stayed this case as to Defendant Gissas, who reached a tentative settlement with the SEC [ECF No. 349]. On November 2, 2020, Defendants filed a Motion to Dismiss, seeking dismissal of the Amended Complaint that the SEC filed on August 10, 2020. [ECF No. 363] ("Motion to Dismiss"). The Court denied the Motion to Dismiss on May 11, 2021. Defendants filed the instant Motion on October 4, 2021, seeking partial summary judgment regarding certain claims in the Amended Complaint.

## **LEGAL STANDARD**

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252. If there are any factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan*

*v. Royal Caribbean Cruises Ltd.*, No. 12-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

Defendants move for partial summary judgment on claims under Section 17(a)(1)-(3) of the Securities Act, Section 10(b) of the Exchange Act, and SEC Rule 10b-5(a)-(c). Defendants contend that the SEC cannot prove the necessary elements to establish a violation under each statute or rule—namely, that Defendants made certain material misrepresentations or omissions to investors and in doing so, acted with scienter.[2] Mot. at 2. But contrary to Defendants' assertions, discovery has, in fact, revealed the existence of genuine issues of material fact barring partial summary judgment in their favor. *Id*.

To allege claims under Section 17(a)(1)-(3), Section 10(b), and Rule 10b-5(a)-(c), the SEC must show: (1) a device, scheme, artifice to defraud; a material misrepresentation or omission; *or* an act, practice, or course of business which would operate as a fraud or deceit; (2) in the offer of or in connection with the purchase or sale of a security; and (3) in interstate commerce. *See S.E.C. v. Quiros*, No. 16-21301, 2016 WL 11578637, at *12 (S.D. Fla. Nov. 21, 2016). For claims under Section 17(a)(1) and Rule 10b-5, the SEC must also allege facts supporting scienter. *S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). The SEC need only demonstrate negligence for claims under Sections 17(a)(2) and (3). *Id.* There is "considerable overlap among the subsections of the Rule and related provisions of the securities laws"—*i.e.*, they prohibit some

---

[2] Defendants do not challenge that the promissory notes offered by Par Funding are securities. In its Order Denying Motion to Dismiss, the Court previously found that, based on the *Reves* factors, Defendants had not overcome the presumption that the promissory notes are securities. Order Denying Motion to Dismiss at 19. Therefore, the Court proceeds under the assumption that these notes are securities and will focus its analysis on whether Defendants made material misrepresentations or omissions to investors and in doing so, acted with scienter.

of the same conduct. *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1102 (2019). However, Rule 10b-5(b) and Section 17(a)(2) specifically require misrepresentation.

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004) (internal quotations and citation omitted). Scienter can be established by a showing of knowing misconduct or severe recklessness. *S.E.C. v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014). To show severe recklessness, the SEC must demonstrate "that the defendant's conduct was an extreme departure of the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (quoting *S.E.C. v. Carriba Air*, 681 F.2d 1318, 1324 (11th Cir. 1982)). Circumstantial evidence may be used to support a strong inference of scienter. *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1360 (S.D. Fla. 2013). Typically, scienter is an issue left to the trier of fact. *Monterosso*, 756 F.3d at 1335. For the Court to make any finding on scienter in a motion for summary judgment, there must be no doubt that a reasonable jury would make the same finding. *See S.E.C. v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008).

With the applicable law in mind, the Court proceeds to address each argument advanced by Defendants in turn—while noting the presence of genuine issues of material fact sufficient to defeat partial summary judgment.

### I. Whether Defendants made materially misleading omissions regarding the cease-and-desist orders issued by Pennsylvania and New Jersey is disputed.

Here, Defendants present two arguments: (1) the SEC cannot prove that failing to disclose three Cease-and-Desist Orders to investors constituted a material omission; and (2) in failing to disclose the Cease-and-Desist Orders, Defendants acted with scienter. A statement or omission is material where "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable shareholder as having significantly altered the 'total mix of

information available.'" *S.E.C. v. Monterosso*, 768 F. Supp. 2d 1244, 1263 (S.D. Fla. 2011), aff'd, 756 F.3d 1326 (11th Cir. 2014) (quoting *S.E.C. v. DCI Telecommunications, Inc.*, 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000)). Materiality is a mixed question of law and fact. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000). Summary judgment on the issue of materiality is only appropriate if the established omissions are "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).

In their Motion, Defendants contend that the "SEC failed to present any evidence that Par Funding's regulatory history has any connection to or impact on its financial performance." Mot. at 3. Simply put, Defendants argue that Par Funding's regulatory history is not material to its financial performance; thus, failing to disclose such history is not a material omission.[3] In response, the SEC points to the undisputed fact that LaForte touted the success of Par Funding at a November 2019 investor presentation without disclosing the Pennsylvania and New Jersey cease-and-desist orders that had been entered against Par Funding. PSOF ¶ 94; DRSOF ¶ 94; PRSOF ¶ 87. Therefore, the SEC argues, by failing to disclose Par's regulatory history, LaForte's statements touting Par Funding's success were materially misleading. Mot. at 3. Applying the standard laid out in *TSC Indus., Inc.* to LaForte's statements, the Court finds that reasonable minds could differ as to whether failing to disclose Par Funding's regulatory history was a material omission in the context of a statement asserting that Par Funding was a successful company.[4]

---

[3] Defendants cite to *Fries v. Oil & Gas, Inc.* for support. 285 F. Supp. 3d 706, 719 (S.D.N.Y. 2018). However, the Court agrees with the SEC that *Fries* is inapposite to the instant case. In *Fries*, the court was focused on whether Defendants misled investors by emphasizing the importance of the CEO to the company while failing to disclose his uncharged criminal behavior—misconduct wholly different from the case at hand. *Id*. at 718–719.

[4] In Reply, Defendants argue that where "the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense." Reply at

Because summary judgment on an issue related to materiality is only appropriate when reasonable minds could *not* differ as to the omission's importance, the entry of summary judgment is unwarranted here.

Next, Defendants argue the SEC cannot prove that Defendants acted with scienter[5] in failing to disclose the Pennsylvania and New Jersey cease-and-desist orders to investors because there is no evidence that Defendants knew or had reason to know that such disclosures were required. Mot. at 3. For instance, Defendants claim that their counsel, Phillip Rutledge ("Rutledge"), who was aware of Par Funding's regulatory history, never advised them to make such disclosures. Mot. at 4; DSOF ¶ 43. This assertion is directly at odds with facts set forth by the SEC.[6] Mr. Rutledge testified that in 2018, he advised Defendants in writing that if Pennsylvania regulators entered an Order against Par Funding, that may give rise to a disclosure requirement. Resp. at 5; Rutledge Tr., Vol. II at 316:18-21. Further, Rutledge testified that he recommended, several times, that Defendants prepare a private placement memorandum for the

---

2. They are correct. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1984). However, Defendants have not established the nonexistence of a genuine issue of material fact as to any essential element of the SEC's claims. Notably, the Eleventh Circuit has noted that "[t]he existence of a state cease and desist order against identical instruments is clearly relevant to a reasonable investor, who is naturally interested in whether management is following the law in marketing the securities." *See Merch. Cap., LLC*, 483 F.3d at 766. Therefore, LaForte's omission of Par Funding's regulatory history creates a genuine issue of material fact as to whether LaForte's proclamation of Par Funding's success was a material misrepresentation as contemplated by Section 10(b) of the Exchange Act, SEC Rule 10b-5(a)-(c), and Section 17(a)(1)-(3) of the Securities Act.

[5] The SEC must prove that Defendants acted with scienter to find a violation of both Section 17(a)(1) and Rule 10b-5.

[6] In Reply, Defendants repeatedly argue that the SEC has failed to put forth evidence that Defendants knew or understood they may have an obligation to disclose the cease-and-desist orders to investors. Reply at 5. Defendants argue that the SEC has erroneously represented that paragraphs 37, 47, and 61-75 of their Opposition to Defendants' Statements of Facts [ECF No. 887-1] support the proposition that Rutledge told Defendants "that if Pennsylvania entered an Order against Par Funding, it could give rise to a disclosure requirement." Resp. at 5, n.5. This is true. However, the Court presumes that this was an inadvertent scrivener's error by the SEC and instead relies on its review of the entire record. And upon said review, the Court has found that Rutledge *did* tell Defendants that a Pennsylvania Order could give rise to a disclosure requirement. *See* [ECF No. 896-13] ("Rutledge Tr., Vol. II") at 316:18-21.

offer and sale of the promissory notes. Rutledge Tr., Vol. II at 316:25-317:10. If Defendants had heeded his advice, he would have advised Defendants to disclose the Pennsylvania Order in the memorandum. *Id*. Rutledge's testimony alone denotes a genuine issue of material fact—whether Defendants knew or had reason to know that the disclosures should have been made. The Court need not delve deeper into this argument as Rutledge's testimony alone bars summary judgment.

### II. *Defendants cannot establish that the undisputed facts show they did not engage in a scheme to defraud Pennsylvania Securities Regulators.*

Defendants argue that the undisputed facts show they did not intend to mislead Pennsylvania regulators as to the nature and pay structure of their business. Mot. at 3-4. Pennsylvania Securities Regulators began investigating Par Funding in 2018. DSOF ¶ 26; [ECF No. 805-2] at 74–83 ("Rutledge Letter").[7] At the time the Pennsylvania investigation was announced, Defendants had been paying commissions to those responsible for finding investors (*i.e.*, compensating finders in connection with the offer and sale of securities). *Id*. In 2018, Par Funding adopted a different business structure, referred to as the "Agent Fund" structure. Resp. at 6; DSOF ¶ 37; PRSOF ¶ 37. The SEC alleges that Par Funding would compensate the Agent Funds by offering them promissory notes that had higher rates of return than the notes the Agent Funds sold to investors. *See* Am. Compl. ¶ 4. After Par Funding adopted the Agent Fund structure, Rutledge wrote to Pennsylvania regulators that Par Funding was no longer compensating finders in connection with the offer and sale of securities. Rutledge Letter at 77. As a result of that representation, the SEC contends that Defendants engaged in a scheme to deceive Pennsylvania Securities Regulators into believing that Par Funding was no longer paying commissions to find investors. Am. Compl. ¶ 62-69.

---

[7] The Court notes that this fact is disputed by the SEC because it is not supported by the evidence cited. The SEC is correct; the record citations provided by Defendants do not support DSOF ¶ 26. However, the Court has found support in the record for the proposition cited. *See* Rutledge Letter at 74.

In their Motion, Defendants argue (1) that they could not have intended to defraud the Pennsylvania regulators because the new structure they adopted, the Agent Fund structure, was one Defendants had been aware of for years, and therefore, Defendants did not create this structure to deceive regulators; and (2) that Defendants vetted the Agent Fund structure with both Vagnozzi's counsel and Rutledge, asking Rutledge to disclose as much as possible to regulators to ensure they were in compliance with the law. Mot. at 3-5.

On a motion for summary judgment, the Court is required to draw inferences in favor of the non-moving party. *See Allen,* 121 F.3d at 646. It is undisputed that Defendants were aware of the Agent Fund structure as early as 2016. Mot. at 5. Based on this undisputed fact, Defendants ask the Court to infer that because Defendants' knowledge of the Agent Fund structure predated the Pennsylvania investigation, Defendants could not have been attempting to deceive regulators by adopting the Agent Fund structure *after* the Pennsylvania regulators commenced their investigation. Mot. at 4-5. But, pursuant to *Allen*, the Court finds that this same undisputed fact readily lends itself to the inference propounded by the SEC—that Defendants adopted the Agent Fund structure as the result of Pennsylvania regulators sanctioning Par Funding for paying commissions to finders in connection with the sale of promissory notes. Resp. at 6. Based on this inference alone, Defendants fail to show the absence of any genuine issue of material fact. Nonetheless, the Court will address Defendants' second argument.

Defendants assert that they sought legal advice from Rutledge with respect to their decision to sell notes to the Agent Funds and whether this structure was compliant with the law. Mot. at 5. Therefore, they argue, they could not have intended to deceive regulators when Rutledge represented to Pennsylvania regulators that Par Funding was no longer compensating individuals in connection with the sale of promissory notes. Mot. at 5. They contend that Rutledge was aware of this structural change prior to the resolution of the Pennsylvania investigation—and before

Rutledge drafted his November 14, 2018 letter to Pennsylvania regulators stating that Par Funding was no longer compensating individuals in connection with the sale of promissory notes. Mot. at 5; DSOF ¶ 47.

However, Rutledge's knowledge of the specifics of this structural change is directly disputed by the SEC. PRSOF ¶ 47. The SEC contends that Rutledge was not aware that as part of the new structure, Par Funding was still compensating individuals for raising investor funds through the offer and sale of securities; further, the SEC notes that Defendants provide no evidence that before March 2020, they sought any assurances about the conduct in question. Mot. at 7; PRSOF ¶¶ 47, 48. Because Rutledge's knowledge is disputed, the Court cannot grant summary judgment as to this issue.

### III. *Genuine issues of material fact exist as to whether Defendants misled investors regarding the Default Rate.*

Defendants argue that the SEC cannot establish they made false or misleading representations regarding Par Funding's default rate because Par Funding's default rate is accurate. Mot. at 5. They also posit the SEC cannot show that any alleged misrepresentations about the default rate were material, nor that Defendants acted with scienter. *Id*. at 7.

First, the accuracy of Par Funding's default rate is a disputed fact. DSOF ¶¶ 4–12; PRSOF ¶¶ 4–12. For instance, the SEC and Defendants dispute the accuracy of their respective experts' findings as to the data contained in the Funding Analysis Report. DSOF ¶¶ 9–10; PRSOF ¶¶ 9–10. These disputed facts are at the center of whether the default rate represented by Defendants was accurate—a key issue for the jury to decide.

Next, Defendants attempt to argue the SEC cannot establish that a misrepresentation related to the default rate would be material. Mot. at 7–8. In support, Defendants cite findings by their expert, Joel Glick, who posits that if the default rate is calculated in the way suggested by the SEC's expert, it would only change by .03%—an immaterial amount. Mot. at 7; DSOF ¶¶ 18–19.

In direct dispute, the SEC states that any analysis conducted by Defendants' expert presupposes that the underlying numbers in Par Funding's Financial Analysis Report were accurate; therefore, the calculations are unreliable. PRSOF ¶¶ 18–19. Given this expert witness dispute, the Court cannot find that any alleged misrepresentation related to the default rate was immaterial because there is a genuine issue of material fact as to the underlying default rate itself—as well as questions surrounding the accuracy of representations made in the Financial Analysis Report. And, as previously noted by this Court, "[g]iven that borrowers defaulting on the MCA loans affects Par Funding's ability to repay investors, a reasonable investor would likely attach importance to the default rate being ten times higher than what was represented to investors." Order Denying Motion to Dismiss at 27. Even a finding that the default rate was a mere percentage point higher could lead reasonable minds to differ as to the importance of such a misrepresentation.

Lastly, Defendants argue that the SEC has failed to show that Defendants acted with the requisite level of scienter required to establish a violation under Section 10(b) and 17(a). Mot. at 9. Defendants' main contention is that they could not have acted with scienter because they worked alongside professional accountants to implement the policies and procedures at issue in this litigation. Mot. at 9. In support, Defendants assert that their public accounting firm, Rod Ermel Associates ("Ermel"), had full and complete access to Par Funding's books and records and that very same firm conducted a review of Par Funding's Financial Analysis Report in 2016. DSOF ¶¶ 20–21. The SEC disputes that the evidence cited by Defendants shows that Ermel was given full access to the books and records; rather, the evidence shows he was given access to Quickbooks. PRSOF ¶ 20. However, it is undisputed that Ermel, in 2016, conducted a one-time review of Par Funding's Financial Analysis Report. *Id*. at ¶ 21. That being said, there are still insufficient facts to establish that Defendants acted without scienter. For example, if the underlying Financial Analysis Report reviewed by Ermel contained faulty numbers, Defendants'

request that Ermel audit a faulty report may very well show that Defendants acted with scienter. Resp. at 9. Based on these facts, summary judgment as to Defendants' scienter, or lack thereof, is precluded.

### IV. *Whether or not Par Funding performed vigorous underwriting is a disputed fact.*

Contrary to Defendants' assertion that "there is no genuine issue of material fact that Par Funding did conduct vigorous underwriting," the record is riddled with factual disputes. Mot. at 10. The SEC alleges that Par Funding made material misrepresentations as to its underwriting processes by (1) representing that Par Funding always conducted onsite inspections before funding merchant cash advances; and (2) representing that Par Funding took 48–72 hours to complete its vigorous underwriting process. Am. Comp. ¶¶ 159-161, 165-180.

As to the first allegation—whether Par Funding always conducted onsite inspections before funding merchant cash advances—it is undisputed that they did not. DSOF ¶ 58; PRSOF ¶ 58. However, the parties do dispute the materiality of this misrepresentation. But as explained above, the issue of materiality is a question of fact for the jury. As to the second allegation, Defendants assert that they did not make any type of misrepresentation when telling investors that underwriting was completed within 48–72 hours because that statement, without more, is not a promise that Defendants took at least 48 hours to complete their underwriting process. Mot. at 11. Again, the materiality of this distinction is at issue here. Mot. at 11; Reply at 8. And the Court is not in a position to determine materiality as a matter of law, which would invade the province of the jury. Thus, based on the set of facts presented, summary judgment on this point is unwarranted.

### V. *Whether Defendants made any materially false or misleading statements regarding Par Funding's insurance in connection with the purchase or sale of a security is a disputed fact.*

Defendants argue the SEC cannot show that alleged material misrepresentations regarding insurance to cover merchant defaults were made in connection with the purchase or sale of

securities. Mot. at 13.[8]  But the Court is not persuaded that the SEC is unable to produce evidence to establish this element. *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1046 (11th Cir. 1986) (citations omitted) (cleaned up) ([f]or the "in connection with" requirement to be satisfied it is enough that the fraud "touch" the sale in some manner . . . the requirement is satisfied, for example, if the purchase or sale of a security and the proscribed conduct are "part of the same fraudulent scheme").  For example, LaForte's statements to investors related to Par Funding's insurance coverage were made to attract investors to purchase the securities offered by Par Funding, and in the view of the SEC, made in furtherance of the fraudulent scheme. Am. Comp. ¶ 205; Mot. at 13.

Next, Defendants cite to the Declaration of Anthony Bernato [ECF No. 804-25] ("Bernato's Declaration") to show that there is no genuine issue of material fact as to whether Defendants made materially false or misleading statements regarding Par Funding's insurance. Mot. at 12–13; DSOF ¶¶ 23–24. In actuality, however, Bernato's Declaration highlights several issues of material fact. Resp. at 13.; PRSOF ¶¶ 78–79. The SEC alleges that LaForte, on June 5, 2018, told potential investors that if a merchant defaulted on his loan, Par Funding had insurance to back up their investor funds. Am. Comp. ¶ 205. But Bernato did not obtain any type of insurance coverage for Defendants until the fall of 2018. Bernato Declaration ¶ 8. And Defendants do not point to any other evidence that Par Funding had insurance of the type touted by LaForte prior to the coverage obtained by Bernato. This discrepancy alone represents an issue of material fact. Further, this discrepancy undermines Defendants' claim that the SEC cannot prove that Defendants acted with scienter. Mot. at 13. If proven by the SEC, LaForte's statement could show

---

[8] The Court's prior finding that Par Funding's promissory notes qualify as securities is not challenged—or even addressed—by Defendants in their Motion. Order Denying Motion to Dismiss at 19. Thus, Defendants' reliance on *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012) is misplaced. In *Goble*, the Court found that the money market fund account at issue did not meet the definition of a security under the Exchange Act. *Id*. at 945.

an "intent to deceive, manipulate, or defraud investors" or that Defendants acted with reckless disregard upon touting insurance coverage to investors that they did not carry. *See Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008).

Accordingly, summary judgment as to whether Defendants made any materially false or misleading statements regarding Par Funding's insurance in connection with the purchase or sale of a security is not warranted.

### VI. The Court declines to entertain summary judgment on claims that are not at issue.

Defendants seek summary judgment on the SEC's allegations that Par Funding engaged in unlawful loan practices. Mot. at 15. However, as repeatedly noted by this Court and the SEC, the nature and legality of the Merchant Cash Advance business is not a feature of this case. Thus, the Court declines to breathe life into a non-existent cause of action.

Similarly, Defendants seek summary judgment on an alleged claim by the SEC that Defendants misled investors when they represented that Par Funding was at risk of defaulting on then-existing notes or entering bankruptcy before the exchange note offering. Mot. at 19. Upon careful review of the Amended Complaint, it is clear that the SEC did not make this allegation and the paragraphs cited by Defendants do not allege any misrepresentation or omission. Therefore, the Court, again, refuses to weigh in on an illusory cause of action.

### VII. Genuine issues of material fact exist as to Defendants' advice of counsel defense.

Defendants argue the SEC cannot prove they acted with scienter in failing to disclose LaForte's criminal history to investors because Defendants relied on the advice of counsel, who advised them that disclosure was not necessary under Rule 502(b).[9] Mot. at 18. To establish an advice of counsel affirmative defense, Defendants must show that: (1) they fully disclosed all relevant facts to their counsel; and (2) that they relied in good faith on counsel's advice. *S.E.C. v.*

---

[9] Rule 502(b) governs required disclosures for offerings of securities to non-accredited investors.

*Huff*, 758 F. Supp. 2d 1288, 1348 (citing *United States v. Parker*, 839 F.2d 1473, 1486 n.6 (11th Cir. 1988)). Because it is an affirmative defense, Defendants bear the burden of proving these elements. *U.S. v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013). Here, Defendants fail to even address these elements in their Motion.

Moreover, summary judgment is precluded by the record. Squarely at issue here is whether Defendants disclosed all relevant facts to their counsel. Defendants state that Rutledge, in 2018, advised them that they did not have to make certain disclosures under 502(b). Mot. at 17. These disclosures included matters pertaining to management. Rutledge provided this advice based on the information available to him at the time. PSOF ¶ 73. However, at the time Rutledge provided counsel, he was not aware that LaForte was involved in Par Funding—nor that he had a criminal history. PRSOF ¶ 74; [ECF No. 896-12] ("Rutledge Tr., Vol. I") at 36:16–39:22. Regardless of whether Defendants were required to make certain disclosures under 502(b), LaForte's role in the business is likely a relevant fact that should have been disclosed to counsel. Indeed, Rutledge testified that LaForte's involvement and criminal history were facts he would have wanted to know. Rutledge Tr., Vol. II at 393:7–21.

In sum, the Court finds that summary judgment is precluded as to Defendants' advice of counsel affirmative defense because they have failed to meet their burden as to the elements required to establish such a defense—namely, that they fully disclosed all relevant facts to counsel.

### VIII. *Whether or not Defendants failed to disclose that the Texas Securities Regulators had entered an Emergency Cease-and-Desist Order is disputed.*

Defendants contend that the Cease-and-Desist Order entered by Texas was disclosed to investors in the 2020 exchange offering. In support, they cite the deposition testimony of Rutledge. Mot. at 19; Rutledge Tr., Vol. II at 319–320. However, Defendants do not provide any evidence regarding the exchange offering itself, or whether investors received or were aware of such disclosures. In opposition, the SEC contends they have provided record evidence disputing

Defendants' purported disclosure, nebulously citing to paragraph 138 of the Amended Complaint and the Temporary Restraining Order (without directing the Court to any specific page in which such evidence might be found). The SEC further maintains that "paragraph [138] is supported by a different exhibit that does not include that language." Resp. at 16.

Based on these inadequate citations, and even after extensive review of the record, the Court is unable to discern what exhibit the SEC may be referring to. However, during the Court's review, it came across Exhibit 109 to the SEC's Temporary Restraining Order. [ECF No. 41-25] at 67–101. Exhibit 109 appears to contain the exchange note materials provided to investors in 2020. Within these materials, the Court does not see any disclosures related to the Texas Emergency Cease-and-Desist Order. Therefore, the Court finds that this is a disputed issue of material fact and summary judgment is not appropriate.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment [ECF No. 804] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of November, 2021.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**