**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CV-81205-RAR**

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.,*

        Defendants.
_____/

**RECEIVER RYAN K. STUMPHAUZER'S
QUARTERLY STATUS REPORT DATED OCTOBER 31, 2022**

Ryan K. Stumphauzer, Esq., Court-Appointed Receiver ("Receiver") of the Receivership Entities,[1] pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141],

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding; Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC; RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Investment Fund 2 LP; MK Corporate Debt Investment Company LLC; Capital Source 2000, Inc.; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consultants, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; Liberty Eighth Avenue LLC; The LME 2017 Family Trust; Blue Valley Holdings, LLC; LWP North LLC; 500 Fairmount Avenue, LLC; Recruiting and Marketing Resources, Inc.; Contract Financing Solutions, Inc.; Stone Harbor Processing LLC; LM Property Management LLC; and ALB Management, Inc., and the Receivership also includes the properties located at 568 Ferndale Lane, Haverford PA 19041; 105 Rebecca Court, Paupack, PA 18451; 107 Quayside Dr., Jupiter FL 33477; and 2413 Roma Drive, Philadelphia, PA 19145.

hereby files this Quarterly Status Report dated October 31, 2022.  By way of summary, the Receivership Estate consists of, among other things, approximately $55 million of real property, $3 million in other tangible assets the Receiver has brought into the Receivership Estate (including boats, cars, artwork, and luxury watches), and $116,513,918 in cash (as of September 30, 2022). As of October 28, 2022, the current cash balance was $118,158,801.  The report attached as Exhibit 1 includes a schedule reflecting the net tangible assets contained within the Receivership Estate.

## I. Overall Administration of Receivership Estate

### A. Quarterly Report of Receivership Estate

Pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141], attached as Exhibit 1 is a full report and accounting reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates (the "Quarterly Report"). The Quarterly Report contains the following information: (1) summary of the operations of the Receiver; (2) the amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate; (3) a schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership; (4) a description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; (5) a description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in:

(i) reducing the claims to judgment; and, (ii) collecting such judgments); (6) a list of all known creditors with their addresses and the amounts of their claims; (7) the status of Creditor Claims Proceedings, after such proceedings have been commenced; and (8) the Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations, as required pursuant to Paragraphs 53 and 54 of the Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141].

## II.     Update on Other Assets Included within the Receivership Estate

### A.     Accounts Receivable and Collection Activities

At the time of his appointment, the Receiver obtained control over $28,779,570 in cash held by the various original Receivership Entities. As a result of various Orders expanding the Receivership, the Receiver obtained an additional $14,756,649 in cash held by the additional Receivership Entities. The Receiver has also acquired an additional $97,679,643 in cash through collections, settlements, and other recoveries. After accounting for expenses, the total cash balance was $116,513,918 as of September 30, 2022. As of October 31, 2022, the current cash balance was $118,158,801.

### B.     Accounts Receivable – Merchant Cash Advance Accounts

The Receiver, his professionals, and the staff he rehired at Par Funding have been continuing to collect on the accounts receivable for the merchant cash advance ("MCA") accounts that were pending with the company as of the time the Receiver took over the operations of Par Funding. Historically, the Receiver has reported the entire accounts receivable balances that were on Par Funding's books for these MCA accounts, while explaining that these balances did not reflect appropriate reductions or reserves for collectability or bad debt. Beginning with the prior reporting period (April 1, 2022 through June 30, 2022), the Receiver, through his outside

consultants, counsel, and internal collection staff and accountants, has analyzed the collectability of the balances for <u>all</u> MCA companies. Through this reporting period, the Receiver determined that certain amounts should be written off due to closed bankruptcies, circumstances where the merchant is out of business, and circumstances where there is neither viable guarantors nor viable collateral.  In analyzing the MCA balances, the Receiver also determined that a reserve was required for accounts with ongoing bankruptcies and other circumstances where full payment is doubtful.  *See* DSI's Report, attached as Exhibit 1.  At the end of the prior reporting period (April 1, 2022, through June 30, 2022), the net result of these adjustments was a reduction of the total receivable balance from approximately $345 million to $224 million.  At the end of the current reporting period, the total receivable balance was further reduced as a result of these adjustments to a total of $189 million.  The Receiver will continue to analyze this portfolio to determine realistic write-offs and allowances for additional amounts that are not likely to be collected.

      Based upon an analysis of information available to CBSG management as of December 31, 2018, and December 31, 2019, the Receiver, together with his counsel, Full Spectrum Processing staff, and operational consultants from DSI, determined that several merchant balances were uncollectible and should have been written off prior to the filing of the tax returns for those years.  The Receiver considered many factors, including merchants that had declared or been discharged in bankruptcy, merchants that had not paid for several months and were, therefore, uncollectible according to the company's own existing policies, and merchants that had ceased operations and, therefore, had no future revenues to repay MCA balances.  The Receiver believes that CBSG and related entities will not have any taxable income for these prior years and, therefore, may be entitled to substantial tax refunds.

### C.  Collection Efforts Through Outside Collection Company and Litigation

Altus Receivables Management, Inc. ("Altus") is a national collection company that the Receiver has engaged on a contingency fee recovery basis. Altus is seeking to collect judgments previously entered against select non-performing, non-bankruptcy merchants, guarantors, and counterparties that had outstanding balances and/or were otherwise in default at the time of the establishment of the receivership (collectively "merchants"). Thus, these recovery efforts are being pursued in the ordinary course of the administration and operation of the receivership.

The judgments against these merchants are being exemplified under Pennsylvania law and will be domesticated for legal action in the merchant's home state and where assets may be found. The judgments referred to Altus range from low five (5)-figure balance accounts to accounts in excess of one million dollars ($1,000,000), based upon the Receivership Entities' records. Referrals began on January 9, 2022, and 207 exemplified judgments have since been referred to Altus with active collection efforts are underway.  The Receiver has also initiated 49 actions against merchants in the Philadelphia Court of Common Pleas either through civil action complaints or confessions of judgment.  The cases filed in Philadelphia typically have resulted in either legal challenges to the underlying agreements; offers of settlement; or default or confessed judgments.  Thus far, merchant challenges to the underlying agreements have been unsuccessful. The Receivership Estate is receiving offers of settlement through the Receiver's litigation in the Philadelphia Court of Common Pleas and Altus collection activities.  The Receiver is considering and, where appropriate, approving offers when he deems the proposal to be in the best interests of the Receivership Estate.  Finally, as additional judgments become available from the Philadelphia litigation, they will be assigned to Altus for further collection efforts if not resolved by the Receiver directly with the merchant.

### D. Collection Activity and Settlements with ESC and HBC Counterparties

To date, the Receiver has resolved, either through full payoffs of the amount owed or settlements, the account balances of several counterparties to agreements with Eagle Six Consultants, Inc. ("ESC") and Heritage Business Consulting, Inc. ("HBC"). In addition, the Court has entered motions to lift the litigation injunction to allow the Receiver to pursue claims against several counterparties (and their guarantors) to agreements with ESC and HBC. [ECF No. 642; ECF No. 747; ECF No. 879]. The Receiver is in active litigation and/or settlement discussions with several of these counterparties for which the litigation injunction has been lifted.

### E. Life Settlements

Two of the Receivership Entities—ABFP Multi-Strategy Investment Fund LP ("MSIF") and ABFP Multi-Strategy Investment Fund II LP ("MSIF II")—own portfolios of life settlement policies. Since the time of his appointment, the Receiver and his consultants at DSI have been managing these portfolios. These duties have included, among other things, the payment of premiums, corresponding with the insurers and servicers of these policies, and communicating with a potential third party regarding a valuation and potential purchase of these policies. The Receiver has received total death benefits payable for policies owned by MSIF in the amount of $3,032,479. With respect to MSIF II, the Receiver has received total death benefits totaling $5,450,000. These amounts only include the policy face value the Receiver has received on these policies, and exclude any interest or dividends the Receiver has received for these policies.

Additionally, the Receiver has explored a potential sale of the remaining life settlements. Based on the expected valuation of the policies, a sale of these assets would result in a payment of significantly less than the face value of these policies, as well as significantly less than the principal amounts on the books as due to the investors in these two funds. The Receiver continues to explore

options regarding holding and continuing to await the receipt of additional death benefits or a sale of the portfolio.

### III. Receiver-Controlled Real Estate

#### A. The McElhone Properties

As previously noted, the Receiver controls 25 properties, either directly or indirectly owned by Lisa McElhone (collectively, the "Receiver-Controlled Properties"). Three (3) are single-family residential properties previously occupied by Joseph LaForte and McElhone (the "Single-Family Homes"): 107 Quayside Drive, Jupiter Florida (the "Florida Home"); 105 Rebecca Court, Paupack, Pennsylvania (the "Poconos Home"); and 568 Ferndale Lane, Haverford Pennsylvania (the "Haverford Home"). Pursuant to an agreement with the Receiver, McElhone and LaForte may live in the Haverford Home, but may not occupy or otherwise use the Florida Home or Poconos Home. McElhone and LaForte pay the Receiver rent for the Haverford Home and are responsible for paying all carrying costs (taxes, insurance, and maintenance) for all 3 Single-Family Homes.

Two other properties historically have been used for business operations, 20-22 North 3rd Street (4 units) and 205 B Arch Street. The Receiver has consolidated all CBSG business operations within the 20-22 North 3rd Street office suite and directed OCF to market 205 B Arch Street for rent. The remaining 20 Receiver-Controlled Properties are either commercial, residential, or mixed-use rental properties in Philadelphia. Prior to the Receivership, these properties were managed by OCF Realty LLC ("OCF") at McElhone's direction. The Receiver has retained OCF to continue its management services for these properties (the "OCF-Managed Properties"). The 20 OCF-Managed Properties comprise 121 rental units (110 residential units

and 11 commercial units). The Receiver, through OCF, continues to collect rent, pay the necessary expenses, and market units for rent as they become available.

The Receiver recently obtained from OCF a broker's opinion of potential sales values for the OCF-Managed Properties. The estimated value of the OCF-Managed Properties is $44,284,000. The acquisition price for these OCF-Managed Properties, which the Receiver has utilized as the value of these assets in prior reports, was $41,986,900. Additionally, the acquisition price for the three residences is $10,845,000. The Receiver has not yet taken any steps to market the residences for sale and, as a result, has not undertaken to obtain a current appraisal of the market value for those three properties.

### B. Title Clearance Efforts

As previously noted, certain title defects encumber several Receiver-Controlled Properties dating back to McElhone's original acquisition. As reported in the Receiver's prior Status Reports, these title defects, which primarily relate to a failure to terminate prior owner-created liens, were effectively "insured over" through the title insurance policies provided to McElhone at closing. The Receiver is continuing to attempt to resolve these liens.

### C. Abbonizio Properties

Pursuant to the Receiver's settlement with Perry Abbonizio and PCA 159 26th St. Avalon LLC, the Receiver acquired two single family properties located in Cape May County, New Jersey: 159 26th Street, Avalon, NJ (the "Avalon Property") and 164 84th Street, Stone Harbor, NJ (the "Stone Harbor Property"). During the current reporting period, the Receiver entered into agreements to sell these two properties and closed on those sales. The Stone Harbor Property, which appraised for $3,818,000, sold for a price of $4,150,000 and the Avalon Property, which appraised for $4,015,000, sold for a price of $4,025,000. After paying off mortgages that

encumbered these properties and other customary closing costs, the Receiver deposited the remaining sales proceeds and rental income into the bank account of the Receivership Estate.

### IV. Information Regarding Anticipated Claims and Distribution Process

The Receiver continues to receive numerous inquiries from investors and other creditors of the Receivership Entities regarding the timing of a claims and distribution process in this matter, as well as an estimate of the potential amounts that will be distributed to each investor/creditor. With respect to timing, the Receiver continues to assemble information regarding all known investors in and creditors of the Receivership Entities.  Now that the Court has entered its final judgments against Lisa McElhone, Joseph LaForte, Joseph Cole Barleta, and Michael Furman, the Receiver is endeavoring to understand how these Defendants intend to satisfy the judgments entered against them, including the possibility of using funds or other assets (such as the real estate) within the Receivership Estate to satisfy, in part, these judgments.  Once there is further clarity on this point, the Receiver anticipates that the claims and distribution process will begin as soon as possible thereafter.

There still remain a number of questions and uncertainties surrounding the accounts receivable of the Receivership Entities and other claims the Receiver is pursuing or otherwise evaluating.  These additional recoveries would potentially be available to further satisfy portions of the judgments entered against the Defendants.  The Receiver is also formulating a recommendation for a procedure to determine the manner in which various claims will be evaluated and administered.  As a result, it is still too early for the Receiver to provide any estimates of the amounts that may be available—either on an individual level or in total—for distribution to investors and other creditors.

Additionally, given that certain claims or collection efforts from various sources of potential recovery are not likely to be resolved in the near future, the Receiver also anticipates the possibility of recommending a phased distribution process.  Under this phased process, the Receiver would request permission to make an initial distribution from amounts already collected, after the Receiver has further clarity about how much is available for distribution from the cash and other assets currently in the Receivership Estate, as well as any other amounts the Defendants may pay in partial satisfaction of the judgments entered against them.  Then, as the Receiver continues to recover additional funds on behalf of the Receivership Estate and otherwise liquidates assets the Receiver has collected, the Receiver would anticipate making a supplemental distribution (or supplemental distributions, depending on the timing of these future recoveries).  The Receiver and his professional staff will continue to evaluate these issues and provide updates as they are available.  Information regarding the proposed claims and distribution plan will be posted on the Receivership website after the Receiver has filed it with the Court.

V. **Expansion of Receivership Estate**

In total, the Receiver has filed and obtained Orders from the Court granting 10 motions to expand the Receivership Estate. In addition, as the Receiver has previously reported, the Court's Order Granting Motion to Expand Receivership Estate dated December 16, 2020 [ECF No. 436] ("Expansion Order"), through which several entities and properties were included in the Receivership Estate as additional Receivership Entities, was appealed to the United States Court of Appeals for the Eleventh Circuit.  Following oral argument before the Eleventh Circuit in Miami on June 7, 2022, the Eleventh Circuit issued an order dismissing the appeal for lack of jurisdiction.

One of the entities subject to the Expansion Order was Capital Source 2000, a company owned by William Bromley and Defendant Joseph Cole Barleta.  The Securities and Exchange

Commission has informed the Receiver that it does not intend to seek to collect against Defendant Barleta's interest in Capital Source 2000 to satisfy the disgorgement judgment entered against him, and has requested the Receiver to return control of Capital Source 2000 to Mr. Bromley and Defendant Barleta. The Receiver has provided Mr. Bromley and Defendant Barleta with certain information they have requested related to this entity, and anticipates submitting an Agreed Order to the Court for approval of this transfer.

### VI.  Website / Communications with Interested Parties

The Receiver continues to receive many e-mails, telephone calls, and other inquiries from investors, merchants, administrators of agent funds, and other interested parties. The Receiver and his professionals have returned phone calls and emails from thousands of investors, merchants, and others. Since the Receiver established the receivership website on August 16, 2020, which is available at parfundingreceivership.com, there have been more than 129,979 visitors and 604,380 pageviews to the website. The Receiver will continue to update this website with key court filings, news and updates, reports from the Receiver, answers to frequently asked questions, important dates and deadlines (including Zoom or telephone dial-in information for status conferences and other significant hearings before the Court), and other pertinent information. Additionally, the Receiver will utilize this website to provide notice to investors and other claimants regarding the claims and distribution process in this matter, once that information is available.

### VII.  Conclusion

WHEREFORE, Ryan K. Stumphauzer, as Court-Appointed Receiver, by and through his undersigned counsel, respectfully files this Quarterly Status Report dated October 31, 2022.

Dated: October 31, 2022                             Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400

By: */s/ Timothy A. Kolaya*
    TIMOTHY A. KOLAYA
    Florida Bar No. 056140
    tkolaya@sfslaw.com

*Co-Counsel for Receiver*

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200

By: */s/ Gaetan J. Alfano*
    GAETAN J. ALFANO
    Pennsylvania Bar No. 32971
    *(Admitted Pro Hac Vice)*
    GJA@Pietragallo.com
    DOUGLAS K. ROSENBLUM
    Pennsylvania Bar No. 90989
    *(Admitted Pro Hac Vice)*
    DKR@Pietragallo.com

*Co-Counsel for Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2022, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

    */s/ Timothy A. Kolaya*
    TIMOTHY A. KOLAYA