## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 20-cv-81205-RAR

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| COMPLETE BUSINESS SOLUTIONS GROUP, | : |
| INC. d/b/a PAR FUNDING, et. al., | : |
| | : |
| Defendants. | : |
| | : |

**EXPEDITED MOTION FOR LIFT OF LITIGATION STAY AND OTHER RELIEF AND INCORPORATED MEMORANDUM OF LAW ON BEHALF OF NON-PARTY MOVANTS  RADIANT IMAGES, INC., GIANE WOLFE, TOURMAPPERS NORTH AMERICA, LLC, JULIE PAULA KATZ, FLEETWOOD SERVICES, LLC, ROBERT FLEETWOOD, PAMELA FLEETWOOD, GEX MANAGEMENT, INC., CARL DORVIL, KARA DIPIETRO, MH MARKETING SOLUTIONS GROUP, INC., MICHAEL HELLER, SUNROOMS AMERICA, INC., MICHAEL FOTI, PETROPANGEA, INC., JOHNNY HARRISON, SEAN WHALEN AND YNGYIN IRIS CHEN**

**(Pursuant to Local Rule 7.1(d)(2), Movants seek an expedite ruling by 5 p.m. on March 20, 2022 as the Claims Bar date is March 22, 2023 at 11:59 p.m. and the Receiver only refused to consent to the relief herein by email dated March 9, 2023)**

THE HESKIN MARTINEZ LAW GROUP

390 N. Orange Avenue • Suite 1550 • Orlando, Florida 32801

P 407.403.5990 • www.HeskinMartinezLaw.com

**WHITE AND WILLIAMS LLP**

Shane R. Heskin, Esquire (of counsel)
1650 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 864-6329
heskins@whiteandwilliams.com
Attorneys for Non-Party Movants

Non-parties Radiant Images, Inc., Giane Wolfe, Tourmappers North America, LLC, Julie Paula Katz, Fleetwood Services, LLC, Robert Fleetwood, Pamela Fleetwood, Gex Management, Inc., Carl Dorvil, Kara DiPietro, MH Marketing Solutions Group, Inc., Michael Heller, Sunrooms America, Inc., Michael Foti, Petropangea, Inc., Johnny Harrison, Sean Whalen and Yngyin Iris Chen (collectively, the "Movants"), by and through their undersigned attorneys, respectfully submit the within motion (the "Motion") seeking an order: (i) lifting the litigation stay entered in this action to permit Movants to proceed with the litigations or assert counterclaims in proceedings listed in Schedule and (ii) permitting the Movants to file proofs of claim in this action without prejudicing their rights to pursue claims in the litigations and proceedings listed in Schedule A.

An expedited ruling by March 20, 2023 is necessary because the claims bar date is March 22, 2023, and despite exhaustive, good-faith efforts to resolve their claims amicably with the Receiver before the claims bar date, the Receiver informed Movants on March 9, 2023 that it would not agree to lift the litigation stay and that it would not entertain settlement discussions. Copies of the communications with the Receiver are attached as Exhibit 2 to the Declaration of Shane R. Heskin dated March 10, 2023 (the "Heskin Decl.") which is being submitted in connection with the Motion. In support of the Motion, the Movants respectfully state as follows:

## **PRELIMINARY STATEMENT**

The Movants are all merchants who fell victim to the predatory lending and abusive collection tactics of Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"). These tactics, which still continue, include:

a)   On March 2, 2023, at around the same time as the threatening calls to the Abbonizios, government witness K.D. [Movant] received a threatening call in a male voice from the same spoofed number that had called the Abbonizios. The

caller said, "We're coming after you. We're going to split your head open." Heskin Decl., Ex. 1.

b)    Threatening physical harm to merchants if they failed to repay Par Funding, including advising one Movant that failing to pay Par Fund could affect "wives, households and children" and could make widows and telling multiple Movants that Par Funding would "blow up" their house;

c)    Sending thousands of UCC lien notices to merchants' families, friends, neighbors vendors, customers and other business relations including, in one instance, the Movant's niece and to the school of the Movant's child;

d)    Harassing the Movants, their spouses and employees with endless phone calls, email and text messages threatening to destroy their business and/or take everything they have;

e)    Forging and doctoring confessions of judgments to obtain fraudulent judgments in jurisdictions with favorable judgment enforcement laws;

f)    Obtaining hundreds of confessed judgments based upon the admittedly forged signature of an attorney and notary;

g)    Confessing judgments against merchants for amounts that are grossly exaggerated and in instances where there was no breach of the underlying agreements and no basis for the entry of a confessed judgment; and

h)    Claiming its merchant agreements are legitimate purchases of receivables but forcing merchants to sign mortgages that expressly acknowledge the agreements are actually absolutely repayable loans that charge interest at rates exceeding 700% per annum in violation of various state criminal usury laws;

These tactics have given rise to a variety of claims by the Movants sounding in breach of contract, fraud, usury and federal civil RICO charges stemming from wire fraud, mail fraud, the collection of an unlawful debt and extortion. Most of these claims were asserted by the Movants in actions pending *before* the appointment of Ryan Stumphauzer as the Receiver of Par Funding (the "Receiver") on July 27, 2020 [ECF No. 36] and/or the imposition of the initial litigation stay on July 31, 2020 [ECF No. 56], and certain of these actions are asserted as class actions that seek to vindicate the rights not only of the respective Movant but also the rights of potentially thousands of other similarly situated victims whose claims may now be barred by the applicable statute of limitations. Absent the ability to pursue these claims, thousands of Par Funding's

victims may not have any redress. Notably, the class actions include claims against "The John and Jane Doe Investors," which until this SEC action, were previously unidentified.[1]

The Movants have attempted to resolve their claims with the Receiver to no avail. While the Receiver has previously expressed an interest in a global resolution, he has since refused to engage in any good-faith discussions to afford remuneration to Par Funding's many hundreds of merchant victims, while simultaneously providing a mechanism to protect investor exposure. By refusing to engage in good-faith negotiations, which could obtain releases for investors, the Receiver is only increasing investor exposure by continuing to collect upon unlawful debt.

For example, on August 5, 2022, the Receiver commenced an action against Movant GEX Management in Pennsylvania state court and proceeded to obtain a default judgment against both the business and its individual owner. The Receiver did so despite the fact that GEX is a Texas merchant, and is a putative class member in *Fleetwood v. CBSG, infra,*, which asserts RICO claims. *See Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 2022 U.S. Dist. LEXIS 181044, *97 (S.D.N.Y. Sept. 30, 2022) ("The RICO statute of limitations is satisfied so long as an overt act that is part of the violation and injures the plaintiff occurs within the four years prior to the filing of a complaint asserting the RICO claim.") (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188-89, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997)).

Counsel for the Movants has repeatedly advised the Receiver that the continued efforts to collect from one or more of the Movants, among other things, constitutes a continuation of the same predatory and abusive tactics that give rise to the Movants' claims against Par Funding and

---

[1] Many of the Receivership Entities are likely the John and Jane Doe Investors, such as ABetterFinancialPlan.com LLC and the various ABFP Funds, MK Corporate Debt Investment Company LLC, United Fidelis Group Corp., Fidelis Financial Planning LLC, Retirement Evolution Group, LLC, RE Income Fund LLC, RE Income Fund 2 LLC, Capital Source 2000, Inc., Fast Advance Funding LLC, Beta Abigail, LLC, New Field Ventures, LLC, Heritage Business Consulting, Inc. and Eagle Six Consultants, Inc.

has demanded that the Receiver alert this Court to genesis of the Movants' claims, but he has failed and refused to so do, prompting the Movants to make the present application to protect their rights and claims. In so doing, the Movants are merely asking this Court to grant lift-stay relief to pursue a determination of liability with respect to their claims, subject to their later right to seek payment as part of the claims process.

Accordingly, for the reasons set forth more fully below, the Movants seek entry of an order: (i) lifting the stay insofar as it applies to the actions and proceedings listed in schedule A (collectively, the "Proceedings") and (ii) allowing the Movants to file proofs of claims without prejudicing their rights to pursue liquidate their claims in the Proceedings.

## **STATEMENT OF FACTS**

Below is summary of the facts and procedural background of the Proceedings and claims with respect to which the Movants seek lift-stay and other relief.  In considering these facts, the Movants note that Par Funding's enforcer, Renato Gioe a/k/a "Gino", plead guilty to making extortionate threats to merchants, including one or more of the Movants, to collect upon Par Funding agreements and is currently awaiting sentencing. *See* Gino Criminal Information, *U.S. v. Renato Gioe*, EDPA, Case No. 22-cr-00279, Heskin Decl., Ex. 3.  Even more recently, James Laforte, Joseph Laforte's brother, was arrested and charged with physically assaulting the Receiver's attorney on the streets of Philadelphia following a zoom conference with the Court on February 28, 2023. *See* Laforte Criminal Complaint, *U.S. v. James Laforte*, EDPA, Case No. 23-mj-464, Heskin Decl., Ex. 4.

1.     *Complete Business Solutions Group, Inc., Broadway Advance, LLC and Fast Advance Funding, v. Radiant Images, Inc. d/b/a HD Camera Rentals and Giania Wolfe,* 18-cv-04013 (KSM) (the "Radiant Action").  Radiant Images, Inc. ("Radiant") is an award-winning

service provider to the motion picture industry located in Los Angeles California. Between 2015 and January 2018, Radiant entered into a series of so-called "Future Receivable Purchase Agreements" with one or more of Par Funding, Broadway Advance, LLC ("Broadway") and Fast Advance Funding ("Fast Advance"). When Radiant's receivable collections slowed and it could no longer make the $60,000 weekly payments, Par Funding sent Gino to collect. Among other things, Gino told Radiant's owners a story about a borrower who failed to repay Par Funding and ended up in a huge car accident at which time Gino informed Radiant's owners that failing to pay Par Funding is "the kind of thing[] which strongly effect[s] wives and children" and makes widows. *See* Gino Criminal Indictment, ¶ 3 b; Certification of Gianna Wolfe in Support of Motion to Open the Judgment dated September 24, 2018 (the "Wolfe Cert."), ¶¶ 3-16, Heskin Decl., Ex. 5 Thereafter, Par Funding tried to destroy Radiant's reputation by sending UCC notices to members of the American Society of Cinematographers, an invitation only organization, who was not an account debtor of Radiant and with respect to which Par Funding had no reasonable basis to belief its members owed any debts to Radiant that could be collected by Radiant. Wolfe Cert. ¶¶ 17-19. The notices were repeatedly sent solely to damage Radiant's business reputation and force the company to settle.

Radiant was compelled to commence two separate actions against Par Funding before ultimately entering into a settlement agreement dated March 16, 2018, which required Radiant to make certain payments according to a schedule and Par Funding to immediately retract the UCC lien notices that were destroying Radiant's reputation. *See* Radiant Settlement, Heskin Decl., Ex. 6. The settlement agreement also contained a mutual release of all claims arising up and until the date of the settlement agreement. Significantly, the settlement agreement **did not** contain a provision allowing Par Funding to enter a confession of judgment provision upon default or

granting Par Funding a security interest in any collateral.  Par Funding never issued the required retraction letters thereby causing further reputational and economic harm to Radiant's business. Then, in July 2018, Par Funding claimed that Radiant had missed or shorted payments due under the settlement agreement.  This was patently false.   Wolfe Cert., ¶¶ 21-24.  Nevertheless, and notwithstanding that it had no right to do so under the Settlement, Par Funding filed a confessed judgment against Radiant and its owner and sought payment of amounts that not only had already been paid to Par Funding but for claims that had already been released under the settlement agreement. Wolfe Cert., ¶¶ 25-26.

In the Radiant Action, Radiant sought to open the confessed judgment on various grounds.  By order dated July 31, 2019, the EDPA opened the confessed judgment on the grounds that there were issues of fact that precluded its entry.  *See* Order dated July 31, 2019, Heskin Decl., Ex. 7.  Thereafter, the Radiant Action was stayed by the Litigation Injunction. Radiant seeks lift-stay relief to formally and finally vacate the confessed judgment under Pennsylvania law.  Radiant also intends to amend its pleadings to assert claims against Par Funding stemming from its bad-faith faith failure to perform under the settlement agreement and its fraudulent entry of the confessed judgment which damages include not only substantial attorneys' fees, but also the loss of business and reputational damages caused by Par Funding's failure to retract the improperly issued UCC lien notices.

2.      *Complete Business Solutions Group, Inc. d/b/a Par Funding v. Tourmappers North America, LLC d/b/a Tourmappers North America and Julie Paula Katz,* Pennsylvania Court of Common Pleas:  Philadelphia County, Case No. 200401028 (the "Tourmappers Proceeding") and *Tourmappers North America, LLC d/b/a Tourmappers North America LLC and Julie Katz v. Complete Business Solutions Group Inc. d/b/a Par Funding,* JAMS Arbitration

Case No. 01-20-0005-3591 (the "Tourmappers Arbitration"). Tourmappers North American, LLC ("Tourmappers") is a small Massachusetts based travel company that provides travel services to people travelling into the United States from Europe and other international locations. *See* Declaration of Julie Katz dated June 17, 2020 (the "Katz Decl."), ¶¶ 2-3, Heskin Decl., Ex. 8. On January 10, 2020, Tourmappers entered into a so-called "Future Receivables Purchase Agreement" with Par Funding pursuant to which Par Funding advanced funds to Tourmappers allegedly in exchange for the purchase of certain future receivables. *Id.* at ¶ 8. Less than two months later, on March 12, 2020, the Government effectively shut down Tourmappers' business when it elected to close international borders and health travel due to the impending threat of the COVID-19 pandemic. *Id.* at ¶¶ 18-19. Despite the fact that Tourmappers had no income and contrary to the express terms of its agreement, Par Funding continued to demand that Tourmappers make daily payments under its agreement. *Id.* at ¶¶ 20-40. When Tourmappers literally ran out of money, Par Funding called a default, filed a confessed judgment in the Philadelphia County Court of Common Pleas, and started repeatedly peppering Tourmappers' customers, prospective customers, hotels, vendors and other travel agencies with UCC lien notices in an apparent attempt to tarnish Tourmappers' good name and reputation and extort a large lumpsum settlement from the company. *Id.* at ¶¶ 41-61.

Tourmappers moved to strike and/or opened the confessed judgment in the Tourmappers Proceeding and simultaneously commenced the Tourmappers Arbitration seeking, among other things, damages stemming Par Funding's unconscionable and unfair business practices in violation of Massachusetts law. In the arbitration, Tourmappers moved for emergency injunctive relief preventing Par Funding from sending out any further UCC lien notices and ordering Par Funding to retract the notices that had already been sent.

By decision dated July 24, 2020, the JAMS arbitrator determined that: (i) the UCC lien notices violated the UCC and "were not issued in good faith but were rather a campaign of harassment against Tourmappers;" (ii) Tourmappers had suffered irreparable harm due to Par Funding's harassment; and (iii) Tourmappers had no current obligations to Par Funding under the agreement.  As a result, the arbitrator: (i) enjoined Par Funding from sending out any further UCC lien notices and (ii) required that Par Funding issue retraction letters within three (3) business days of the Order.  *See* Order, pp. 4-5, Heskin Decl., Ex. 9.   The motion to open the judgment is still pending but, in light of the arbitrator's findings, it is foregone conclusion that it will be granted.[2] Tourmappers seeks lift-stay relief to pursue both the Tourmappers Proceeding and the Tourmappers Arbitration.  In addition to claims for damages under Massachusetts law, Tourmappers intends to amend its arbitration demand to seek damages for bad-faith conduct under UCC 9-625, including attorneys' fees.

3.      *Fleetwood Services, LLC, Robert Fleetwood and Pamela Fleetwood Complete Business Solutions Group, Inc., d/b/a/ Par Funding; Prime Time Funding LLC and John and Jane Doe Investors*, United states District Court for the Eastern District of Pennsylvania, Case No. 18-cv-00268(JS) (the "Fleetwood Class Action").  This is a Texas usury and RICO class action claim stemming from Par Funding's collection of an unlawful debt wherein plaintiffs allege that Par Funding and others induced merchants to enter into future account receivable purchase agreements that in form, substance and every conceivable were intended by Par Funding to function as absolutely repayable loans that charged interest rates in excess of 300%

---

[2] In his most recent Status Report [ECF No. 1504], the Receiver advised this Court that it had initiated 55 actions against merchants in Philadelphia Count of Common Pleas and that merchant challenges to those judgments have been unsuccessful. [ECF No. 1504, p. 5].  Tellingly, the Receiver has not yet elected to proceed against Tourmappers in either the Tourmappers Proceeding or Tourmappers Arbitration, but plainly in light of the arbitrator's decision, Tourmappes challenge to the confessed judgment will be successful.

per annum.  *See* Second Amended Complaint, ¶ 1, Heskin Decl., Ex. 10. The EDPA denied Par Funding's motion to dismiss and determined that Texas law applied to the plaintiff's claims. *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp.*, 374 F.Supp. 3d 361 (2019).  Class discovery has been completed and a motion for class certification as been fully briefed and remains pending before the EDPA.  The proposed class consists of all merchants and guarantors who are citizens of Texas and entered into a Par Funding agreement on or after January 22, 2015.  *See* Second Amended Complaint, ¶¶ 100-101.

Under Texas law, a borrower subject to usurious rates can recover the principal, interest and multiples of the excess usurious interest.  *See* Tex. Fin Code §§ 306.103 and 305.001(a). Plaintiffs estimates that there are approximately 570 Texas merchants making up the class with potential damages exceeding $50 million.  Notwithstanding his knowledge of this claim, the Receiver continues to seek lift-stay relief and pursue judgment against Texas merchants who would fall with the certified class, thereby exposing the Receiver to liability for collection of an unlawful debt and violations of Texas law.

4.   *Complete Business Solutions Group, Inc., by and through its Court-Appointed Receiver Ryan K. Stumphauzer v. Gex Management, Inc. and Carl Dorvil*, United States District Court for the Eastern District of Pennsylvania, Case No. 22-cv-4043 (the "Gex Action").  This is an example of where the Receiver continues to pursue claims against Texas citizens notwithstanding his awareness of the Fleetwood Class Action and their inclusion within Fleetwood's proposed classes. While the Receiver has obtained a default judgment in the Gex Action, the defendants dispute service and, upon lifting of the stay, they indeed to seek to vacate the default and pursue various remedies.  Among other things, Defendants contend that they have paid their obligations in full and will seek to join the Fleetwood Class Action if the class is

certified or, alternatively, assert their own RICO claims against Par Funding. On March 9, 2023, the Receiver indicated it may conditionally vacate the default judgment.

     5.     *HMC Incorporated and Kara DiPietro v. Complete Business Group, Inc. d/b/a Par Funding and Fast Advance Funding, Inc.*, United States District Court, Eastern District of Pennsylvania, Case No., 19-cv-3285. In this RICO action, plaintiffs allege that Par Funding and others engaged in a scheme to committee mail and wire fraud in the servicing of various agreements and to carry extortionist threats. Among other things, Par Funding is accused of charging plaintiffs hundreds of thousands of dollars in fictitious finance fees, papering plaintiffs' contacts and family members with hundreds of false UCC lien notices and threatening to "blow up" Ms. DiPietro's home if she failed to pay Par Funding. The death threats have continued during this Receivership and as recently as March 2, 2023. Ms. DiPietro seeks leave to pursue her claims against Par Funding.

     6.     *Complete Business Solutions Group Inc. v. MH Marketing Solutions Group, Inc. and Michael Heller*, Philadelphia Court of Common Pleas, Case No. 190606813. Defendants removed this case to the EPDA and filed a Petition to Strike or Open a Confession of Judgment on the grounds that confession was entered without authority and in violation of the agreements' terms and to assert meritorious defenses of unconscionability and applicable criminal usury statutes. *See generally,* Petition, Heskin Decl., Ex. 11. Among other things, Heller only guaranteed performance of the representations and warranties in the applicable Par Funding agreement and Par Funding did not allege any breach of those warranties in filing the confessed judgment. *See CBSG v. NG Consulting Services, LLC*, 2017 Phil. Ct. Pl., LEXIS 14 at *5 (Pa. Ct. Comm. Pl. Feb. 16, 2017) (striking confessed judgment under identical guaranty where Par Funding failed to allege a breach of the representations and warranties). Further, as collateral for

the advance, Par Funding required that Heller mortgage his home in New Jersey and the mortgage expressly describes Par Funding as a "lender," and the applicable Par Funding receivable purchase agreement as a "note" and the transaction as a "loan," not the sale/purchase of receivables. *Id.* at ¶ 11. Under New Jersey law, "lenders" such as Par Funding are prohibited from charge in excess of 50% interest per annum. N.J. Rev. Stat. §2C:21-19.

The matter has been remanded to state court where the motion to strike and/or open the confessed judgment is pending. Upon striking or opening of the confessed judgment, the defendants intend to assert affirmative claims for usury and RICO claims for the collection of an unlawful debt.

7. *Complete Business Solutions Group, Inc. v Sunrooms, Inc. and Michael Foti,* Philadelphia Court of Common Pleas, Case No. 190606813. Defendants removed this case to EDPA and filed a Petition to Strike or Open a Confession of Judgment on the grounds that confession was entered without authority and in violation of the agreements' terms and to assert meritorious defenses of unconscionability and applicable criminal usury statutes. Once again, Par Funding improperly confessed judgment against the guarantor by failing to allege a breach of the guaranteed obligations. Par Funding further engaged in unconscionable behavior including: (i) repeatedly sending UCC lien notices to business contacts, friends and family including a college-age niece; and (ii) threatening to destroy Sunrooms, Inc. business and stating that they hoped its owner, Michael Foti, would get hit by car. *See* Petition, ¶¶ 1-20. Thereafter, the matter was remanded to state court where the motion to strike and/or open the confessed judgment is pending. Upon striking or opening of the confessed judgment, the defendants intend to assert affirmative claims for usury and RICO claims for the collection of an unlawful debt.

8.     *Petropangea, Inc., Johnny Harrison; Volunteer Pharmacy, Inc. and Toby C. Frost v. Complete Business Solutions Group, LLC; Fast Advance Funding LLC; MCA Capital Fund I, LLC; MCA National Fund, LLC, Recruiting and Marketing Resources, Inc. and Full Spectrum Processing, Inc.*, Court of Common Pleas: Philadelphia County, Case No. 200202013 (the "Petropangea Action") and *Complete Business Solutions Group, Inc. d/b/a Par Funding v. Petropangea and Johnny Harrison*, Pennsylvania Court of Common Pleas: Philadelphia County, Case No. 1906067 (the "Petropangea Proceeding"). On July 29, 2020, the plaintiffs commence the Petropangea Action asserting, among other things, class action RICO claims Par Funding and others arising from the collection of an unlawful debt and extortionist tactics in violation of the Hobbs Act. The proposed class included Texas merchants who contracted with Fast Advance[3] and Tennessee merchants who contracted with Par Funding. *See* Complaint, Heskin Decl., Ex. 12. Plaintiffs seek class-wide damages that likely exceed $20 million. Simultaneously with the commencing the class action, Petropangea commenced the Petropangea Proceeding seeking to open or strike a confessed judgment on the grounds, among others, that it was entered without authority and that a meritorious defense exists to the claims.

9.     *Complete Business Solutions Group, Inc. v. Sean Whalen and Yingyin Iris Chen*, United States District Court, Eastern District of Pennsylvania, Case No. 19-cv-06181 (the "Whalen Action"). CBSG initially commenced this action against Whalen and Chen in the Court of Common Pleas: Philadelphia County, and the action was removed by the defendants to the EDPA. Thereafter, the Whalen and Chen removed the case to the EDPA. Whalen, Chen and their company, Flexogenix Group, Inc., on behalf of themselves and other similarly situated California merchants and owners, assert RICO claims against Par Funding and others based upon

---

[3] The proposed class in the Fleetwood Class Action only includes those Texas citizens who had agreements with Complete Business Solutions Group, LLC, not Fast Advance.

the collection of an unlawful debt. *See* Answer and Counterclaims, Heskin Decl., Ex. 13. The counterclaim plaintiffs each filed motions to dismiss which have been fully briefed and are pending before the EDPA.

## LEGAL ARGUMENT

### I.      THE STAY SHOULD BE LIFTED.

Courts consider three factors commonly referred to as the *Wencke* factors: (i) whether refusing to lift the stay genuinely preserves the status quo or result in substantial injury to the moving party if not permitted to proceed; (ii) when in the course of the receivership the motion for stay relief is made; and (iii) the merits of the moving party's underlying claim. *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ("*Wencke II*"). Evaluating these factors requires the court to "balance the interests of the Receiver and the moving party." *Id.* (internal quotations and citations omitted). If the balance of these factors tips in favor of the moving party, the stay should be lifted. *See e.g., SEC v. One Equity Corp.*, 2010 U.S. Dist. LEXIS 124013 at *19-24, 2010 WL 4878993 (S.D. Ohio Nov. 23, 2010) (lifting stay where *Wencke* factors weighed in favor of moving party). Here, each of these factors weighs heavily in favor of the Movants and lifting the stay to assert their claims and counterclaims (collectively, the "Claims").

### A.      Lifting the stay will not disrupt the status quo, but the Movants will suffer substantial injury if the stay is not lifted.

A stay of the Claims is not necessary to preserve the status quo because the Claims do not seek to obtain possession of estate assets or disrupt the priority of distribution of any estate assets. The Claims seek to establish the liability of Par Funding and/or the Receiver to the Movants. The United States Supreme Court has "distinguished between liquidating a claim, which does not interfere with the receivership court's authority, and distributing assets, which is the essence of the receivership court's authority." *Riehle v. Margolies*, 270 U.S. 218, 224 (1929).

This distinction means that "the establishment of the existence and amount of a claim against [a Receivership Entity] in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." *Morris v. Jones*, 329 U.S. 545, 549 (1947). Relying upon this distinction between a liquidating claim and a claim that effects estate assets, the *One Equity* court lifted a broad litigation stay imposed in an SEC receivership to permit the creditor to liquate pending claims against receivership entities and/or assert counterclaims in a state court action commenced by the receiver. *One Equity*, 2010 U.S. Dist. LEXIS 124013 at *19-24. The same result is warranted.

While lifting the stay will not upset the status quo in the Receivership, subjecting the Claims to the stay will substantially injure the Movants. Many Claims are in advanced stages of litigations or are to be asserted in cases commenced in other courts by the Receiver.[4] Substantial time and money have already been spent litigating the Claims in other jurisdictions and before other courts who are familiar with the relevant issues and parties. Compelling the Movants to essentially relitigate these issues and/or defend against the Receiver's claims in one court and pursue claims in this Court is both prejudicial and a waste of judicial resources. For that reason, the first *Wencke* factor weighs heavily in favor of granting the Movants lift-stay relief.

**B.    The Receivership has reached a point where lifting the stay is appropriate.**

The timing factor is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341; *see*

---

[4] Movants seek stay relief to assert counterclaims out of an abundance of caution. In *Klein v. Johnson,* Case No. 2:19-cv-00625, 2019 WL 6700245 (D. Utah Dec. 9, 2019), the court dismissed a defendants' counterclaims against an SEC receiver, in part, because the defendant had not first obtained lift-stay relief, and in a pending SEC receivership proceeding, the receiver has similarly sought to dismiss counterclaims asserted by a defendant in an action commenced by the receiver. *See Kent v. Galvin*, Case No. 2:21-cv-13105, ECF No. 25 (Motion to Dismiss All Counterclaims).

*also SEC v. Wing*, 599 F.3d 1189, 1197 (10th Cir. 2010) ("the timing factor is case-specific"). As the Ninth Circuit explained:

> [w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance.

*S.E.C. v. Wencke* I, 622 F.2d 1363, 1373-74 (9th Cir. 1980) ("*Wencke I*").

Here, the Receivership is nearing an end. A claims procedure process has been approved, a March 22, 2023 claims bar date has been established and in his most recent status report, the Receiver has advised that he expects the distribution process to begin after the conclusion of the claims process [DE 1504 at p. 9]. In short, this Receivership is nearing an end and there is simply no reason to maintain the litigation injunction. *See Wencke II*, 742 F.2d at 1232 (district court abused its discretion in refusing to lift stay preventing commencement of suits against receivership where receiver was ready to distribute assets of the estate, receivership had been in existence for over seven years with no new material facts having been discovered for at least six years, and disgorgement order had been entered requiring transfer of shares to receiver for benefit of public shareholders); *S.E.C. v. Provident Royalties, L.L.C.*, 3:09-CV-1238-L, 2011 U.S. Dist. LEXIS 74304, 2011 WL 2678840 (N.D. Tex. July 7, 2011) (timing factor weighed heavily in favor of lifting stay where receivership was almost two years old, receiver had marshaled almost all receivership assets and had proposed a plan of distribution); *SEC v. Private Equity Mgmt. Grp., LLC*, CV 09-2901 PSG EX, 2010 U.S. Dist. LEXIS 126337, 2010 WL 4794701 (C.D. Cal. Nov. 18, 2010) (second factor cut against receiver where receivership was

well over one year old and receiver had progressed sufficiently in the effort to organize and understand the entities under his control, as evidenced by regular status reports to the court).

### C.     The Claims have merit.

With respect to the third *Wencke* factor, "a district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay." *Acorn,* 429 F.3d at 444 (citing *Wencke II*, 742 F.2d at 1232). "[I]f a claim may have merit - and factual development [through discovery] may be necessary to assess this," the third factor weighs in favor of lifting the stay. *Id.* Such is the case here.

There can be no question that the Movants' claims have merit. First, the court already denied Par Funding's motion to dismiss the Fleetwood Class Action. *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp.*, 374 F.Supp. 3d 361 (2019). Second, Par Funding's enforcer, Gino Renata, has been arrested and pled guilty to making extortionist threats to Radiant's owners and other Par Funding borrowers in violation of federal law. Heskin Decl. Ex. 3, 5. Third, an arbitrator has already determined that Tourmappers did not breach its contract with Par Funding and that Par Funding engaged in harassment and bad-faith conduct that has resulted in real and irreparable damages to Tourmappers' business and reputation. Heskin Decl. Ex. 9. Fourth, a court has already vacated a confessed judgment because Par Funding failed to allege facts demonstrating a breach of Par Funding's form guaranty and Par Funding continued to file confession judgments against guarantors when there was no breach of the guaranteed obligations. *CBSG v. NG Consulting Services, LLC*, 2017 Phil. Ct. Pl., LEXIS 14 at *5 (Pa. Ct. Comm. Pl. Feb. 16, 2017) (striking confessed judgment under identical guaranty where Par Funding failed to allege a breach of the representations and warranties).

Finally, the overwhelming documentary and other evidence demonstrates that Par Funding's agreements in substance and every conceivable way were intended to and did in fact,

-16-

operate as absolute repayable loans giving rise to the Movant's RICO claims for the collection of an unlawful debt. The essential characteristic of a loan is that it be absolutely repayable. *See* Tex. Fin. Code, § 306.001(1) (defining a "loan" under Texas law as "an advance of money that is made to or on behalf of an obligor, the principal amount of which the obligor has an obligation to pay the creditor"); *Rubenstein v. Small*, 273 A.D.2d 102, 104 (1st Dep't 1947) (Under New York law, "[f]or a true loan it is essential to provide for repayment absolutely and at all events of that the principal in some way be secured as distinguished from being put in hazard."); *Eisenhardt v. Schmidt*, 27 N.J. Super. 76, 82 (Ch. Div. 1953) (same under New Jersey law). "To determine whether a transaction is a loan or a sale, courts ascertain the intentions of the parties as disclosed by the contract, attending circumstances, or both." *Korrody v. Miller*, S.W.3d 224, 226 (Tex. App. 4th Dist. 2003); *see also Endico Potatoes, Inc. v. Git Grp./Factoring, Inc.*, 67 F.3d 1063, 1068 (2d Cir. 1995) (Whether an assignment of accounts receivable is a loan "depends on the substance of the relationship" between the parties "and not simply the label attached to the transaction."); *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.3d 538, 543 (3d Cir. 1979) ("Courts will not be controlled by the nomenclature the parties apply to their relationship when it comes to determining whether a transaction is a loan or a true sale.").

Both the terms of the agreements and Par Funding's actions demonstrate that the transactions are loans. A sample form agreement is attached as Exhibit 14 to the Heskin Decl. The following provisions demonstrate, on their face, Par Funding's agreements are loans:

a)  The agreements have set terms and fixed daily payment obligations. Heskin Decl. Ex. 14, p. 1 ("Daily Specific Amount $5000.25 for 110 days."); *Funding Metrics v. NRO Boston, LLC*, 64204/2016, 2019 N.Y. Misc. LEXIS 4878, at *10 (Sup. Ct. N.Y. Cnty., Aug. 28, 2019) (A future receivable purchase agreement with a fixed term is evidence of a loan.)

b)  Merchant is obligated to "ensure that funds adequate to cover the [Daily Specific Amount] to be debited by CBSG remains in the account." Heskin Decl. Ex. 14, p. 1; *Hi Bar Capital LLC v. Parkway Dental Servs., LLC*, 533245/2021, 2022 N.Y. Misc.

LEXIS 5814, *13-14 (Sup. Ct. Kings Cnty. Aug. 25, 2022) (finding agreement like a loan where merchant was required to maintain sufficient funds in the designated account for the fixed daily payments); *Lateral Recovery, LLC v. Capital Merchant Services LLC,* Case No. 21-cv-9336, 2022 WL 4815615, 2022 U.S. Dist. LEXIS 181044 (S.D.N.Y. Sept. 30, 2022) (denying motion to dismiss unlawful debt claims where receivable purchase agreement required the merchant to maintain specific amounts in designated accounts).

c) Violating any term of or covenant of the agreements, including the convent to ensure that sufficient funds are available to cover the Daily Specific Amount, is a breach of the agreements. Heskin Decl., Ex. 14, 3.1(a); *see Parkway*, 2022 N.Y. Mic. LEXIS 5814 at *14 (finding merchant had plead future receivable purchase agreements were loans where there were "virtually no circumstances" under the agreements where purchaser's risk of non-payment was placed at risk);

d) Bankruptcy is an event of default. Heskin Decl., Ex. 14, 3.1(c); *see also Davis v. Richmond Capital Group, LLC,* 194 A.D.3d 516, 517 (1st Dep't 2021) (denying dismissal of merchant's RICO claims where future receivables agreement contained bankruptcy as an event of default).

e) Four insufficient fund notices constitutes an event of default. Heskin Decl., Ex. 14 Appendix A, 3. (NSF Fee) *See CMS*, 73-74 (ruling agreement to be like a loan where it provided for a default after a specific number of missed payments); *Lateral Recovery LLC v. Queen Funding, LLC,* 21-cv-9607-LGS, 2022 U.S. Dist. LEXIS 129032, *16 (S.D.N.Y. July 20, 2022) (same)

f) The agreements do not contain a reconciliation provision by which Par Funding would credit the merchant for any amounts collected in excess of the specified percentage. *See K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 57 N.Y.S.3d 625, 634 (N.Y. Sup. Crt. West. Cty. May 4, 2017) (finding that a receivable purchase agreement may be a loan where it has no reconciliation provision).

g) The merchants could request a reduction in the Daily Specific Amount, but Par Funding was not obligated to grant the request. Heskin Decl., Ex. 14, p. 1. *Fleetwood Servs., LLC v. Ram Capital Funding, LLC,* Case No. 20-cv-5120, 2022 WL 1997207, 2022 U.S. Dist. LEXIS 100837 at *44-45 (S.D.N.Y. June 6, 2022) (finding a future receivables purchase agreement to be a loan as a matter of law where buyer had right to decline a request by a debtor to reduce the daily payments).

The conclusion that Par Funding's agreements are absolutely repayable loans are further supported by Par Funding's conduct with respect to the Movants:

a) Par Funding demanded that Tourmappers continue to make payments under its form agreements even though its business had been shut down by the government in response to the COVID-19 pandemic and it had no receivables. *See* Heskin Decl., Exs. 8 and 9.

b) To secure certain of its agreements, Par Funding obtained mortgages from the merchant's owners which mortgages admitted that Par Funding was a "lender," the agreement was a "Note" and a failure to make any payments under the agreement constituted a default entitling Par Funding to foreclose on the mortgaged property. Heskin Decl., Ex. 11.

c) When merchants were unable to pay because their business revenues had slowed down, Par Funding sent Gino, a convicted felon who has admitted to using extortionists threats to collect upon Par Funding's agreements in violation of federal law. Heskin Decl., Ex. 3.

d) Par Funding routinely filed confessions of judgment against guarantors even though the guaranteed obligations had not been triggered. Heskin Decl. Exs. 8, 11.

e) Par Funding routinely harassed merchants and their guarantors to make payments under their agreements by repeatedly sending UCC lien notices to merchants' customers, potential customers, friends, family and business colleagues solely to tarnish the merchants' business reputations and extort a lumpsum payment from the merchant. Heskin Decl., Exs. 5, 8, 9 and 11.

Plainly, Movant's RICO claims have merit and they should be allowed to pursue them.

## II.  The Movants should be permitted to file proofs of claims.

In lifting the stay, the Movants are not seeking a determination that they are entitled to any Receivership assets or distribution thereof. They are merely seeking to have the issue of liability determined by courts already familiar with the proceedings or before which the Receiver has already commenced a proceeding. Upon determination of liability, the Movants intend to seek distribution of any amounts as part of the established claims procedure. Accordingly, to ensure their participation in those proceedings, the Movants request that in addition to lift-stay relief, the Court permit the Movants to submit proofs of claim without prejudicing their right to pursue their claims in the litigations.

## CONCLUSION

The fraudulent and unlawful scheme perpetrated by the Receivership Entities casts a wide net. On the one hand, numerous innocent investors have been defrauded by the Ponzi scheme orchestrated by a multitude of culpable persons, many of whom have already plead guilty to

extortion, securities fraud, and/or have been recently arrested by law enforcement for federal crimes related to this proceeding. On the other hand, an even wider group of victims have been patiently waiting for their day in court while this proceeding nears a resolution. This latter group of victims have been terrorized by the Receivership Entities and have suffered many millions of dollars in damages to their businesses and their persons. These victims had their claims on file long before this action, and merely seek not to be prejudiced any further.

Notably, the Movants have been pleading with the Receiver to engage in good-faith settlement discussions to no avail. The position taken by the Receiver is putting the investors at risk by further exposing them to individual liability if settlements are not reached. The video of the investor presentation by A Better Financial Plan was originally taken in *Fleetwood* action for a specific reason: The presentation expressly informs investors that the underlying agreements are loans to small businesses with interest rates exceeding 30%. The maximum interest rate in Florida and New York is 25%, and in Texas, it is 28%. Even if these investors were not aware of these usury laws, it is well settled that ignorance of the law is bliss.

In addition to granting the expedited relief requested, Movants also request that the Court direct the Receiver to engage in good-faith settlement negotiations that will also shield investors. If he does not, it will only ensure future litigation over any distribution of Receiver funds to the investors, whether it be in this Court or elsewhere.

## REQUEST FOR EXPEDITED RULING

Pursuant to Local Rule 7.1(d)(2), Movants seek an expedite ruling by 5 p.m. on March

20, 2022 as the Claims Bar date is March 22, 2023 at 11:59 p.m.

## CERTIFICATION REGARDING PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel, Shane R. Heskin, has conferred

with counsel for the Receiver and counsel for the SEC regarding the relief sought by this Motion.

Counsel certifies that the SEC has consented to the relief sought by this Motion but, by email

dated March 9, 2023, the Received refused to consent.

THE HESKIN-MARTINEZ LAW GROUP

KEERSTEN HESKIN MARTINEZ
AVERY F. DAWKINS
Florida Bar No. 104976
SAMANTHA SAUER
Florida Bar No. 124507
**The Heskin Martinez Law Group**
390 N. Orange Ave., Ste. 1550
Orlando, FL 32801
Ph: (407) 403-5990
Primary: office@heskinmartinezlaw.com
Secondary: mail@heskinmartinez.com


WHITE AND WILLIAMS LLP

Shane R. Heskin (underlying counsel)
7 Times Square, Suite 2900
New York, NY 10036
(215) 864-6329
heskins@whiteandwilliams.com

## SCHEDULE A

a) *Complete Business Solutions Group, Inc., Broadway Advance, LLC and Fast Advance Funding, v. Radiant Images, Inc. d/b/a HD Camera Rentals and Giania Wolfe,* United States District Court for the Eastern District of Pennsylvania, Case No. 18-cv-04013 (KSM)

b) *Complete Business Solutions Group, Inc. d/b/a Par Funding v. Tourmappers North America, LLC d/b/a Tourmappers North America and Julie Paula Katz,* Pennsylvania Court of Common Pleas: Philadelphia County, Case No. 200401028.

c) *Tourmappers North America, LLC d/b/a Tourmappers North America LLC and Julie Katz v. Complete Business Solutions Group Inc. d/b/a Par Funding,* JAMS Arbitration Case No. 01-20-0005-3591.

d) *Fleetwood Services, LLC, Robert Fleetwood and Pamela Fleetwood Complete Business Solutions Group, Inc., d/b/a/ Par Funding; Prime Time Funding LLC and John and Jane Doe Investors,* United states District Court for the Eastern District of Pennsylvania, Case No. 18-cv-00268 (JS).

e) *Complete Business Solutions Group, Inc., by and through its Court-Appointed Receiver Ryan K. Stumphauzer v. Gex Management, Inc. and Carl Dorvil,* United States District Court for the Eastern District of Pennsylvania, Case No. 22-cv-4043.

f) *HMC Incorporated and Kara DiPietro v. Complete Business Group, Inc. d/b/a Par Funding and Fast Advance Funding, Inc.,* United States District Court, Eastern District of Pennsylvania, Case No., 19-cv-3285.

g) *Complete Business Solutions Group Inc. v. MH Marketing Solutions Group, Inc. and Michael Heller,* Philadelphia Court of Common Pleas, Case No. 190606813.

h) *Complete Business Solutions Group, Inc. v Sunrooms, Inc. and Michael Foti,* Philadelphia Court of Common Pleas, Case No. 190606813.

i) *Petropangea, Inc., Johnny Harrison; Volunteer Pharmacy, Inc. and Toby C. Frost v. Complete Business Solutions Group, LLC; Fast Advance Funding LLC; MCA Capital Fund I, LLC; MCA National Fund, LLC, Recruiting and Marketing Resources, Inc. and Full Spectrum Processing, Inc.,* Court of Common Pleas: Philadelphia County, Case No. 200202013.

j) *Complete Business Solutions Group, Inc. d/b/a Par Funding v. Petropangea and Johnny Harrison,* Pennsylvania Court of Common Pleas: Philadelphia County, Case No. 1906067.

k) *Complete Business Solutions Group, Inc. v. Sean Whalen and Yingyin Iris Chen,* United States District Court, Eastern District of Pennsylvania, Case No. 19-cv-06181.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-cv-81205-RAR**

| | | |
|---|---|---|
| SECURITIES & EXCHANGE COMMISSION | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | **DECLARATION OF SHANE R.** |
| COMPLETE BUSINESS SOLUTIONS GROUP, | : | **HESKIN IN SUPPORT OF** |
| INC. d/b/a PAR FUNDING, et. al., | : | **EXPEDITED MOTION TO LIFT** |
| | : | **THE LITIGATION STAY AND** |
| Defendants. | : | **FOR OTHER RELIEF** |
| | : | |
| | : | |

SHANE R. HESKIN, pursuant to 28 U.S.C. § 1746, declares under penalties of perjury that the foregoing is true and correct:

1.     I am a member of White and Williams LLC, attorneys for non-parties Radiant Images, Inc., Giane Wolfe, Tourmappers North America, LLC, Julie Paula Katz, Fleetwood Services, LLC, Robert Fleetwood, Pamela Fleetwood, Gex Management, Inc., Carl Dorvil, Kara DiPietro, MH Marketing Solutions Group, Inc., Michael Heller, Sunrooms Group, Inc., Michael Foti, Petropangea, Inc., Johnny Harrison, Sean Whalen and Yngyin Iris Chen (collectively, the "Movants") in various matters involving the Movants and Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding") and/or other receivership entities.

2.     I am admitted to practice law and in good standing before the state courts of Pennsylvania, Massachusetts and New York, the United States District Court for the Southern District of New York and the United States District Court for the Eastern District of Pennsylvania, among other courts. I make this declaration in support of the Movants' Motion to Lift the Litigation Stay and for Other Relief (the "Motion").

3.    In support of the Motion, I hereby state that attached hereto are true and accurate copies of the following documents as the following exhibits:

| EXHIBIT | DESCRIPTION |
|---|---|
| 1. | Jeremy Roebuck and Joseph N. DiSefano, *Witnesses tied to Par probe threatened, feds say; At least to received anonymous calls two days after an attach on a lawyer investigating the company.*, Philadelphia Inquirer, March 10, 2023, |
| 2. | Communications with Receiver concerning offer to conduct settlement discussions and request to consent to lift-stay relief. |
| 3. | Gino Renato Criminal Information *U.S. v. Renato Gioe*, United States District Court for the Eastern District of Pennsylvania, Case No. 22-cr-00279 |
| 4. | James Laforte Criminal Complaint, *U.S. v. James Laforte*, United States District Court for the Eastern District of Pennsylvania, Case No. 23-mj-464 |
| 5. | Certification of Gianna Wolfe in Support of Motion to Open the Judgment dated September 24, 2018 filed in *Complete Business Solutions Group, Inc., Broadway Advance, LLC and Fast Advance Funding, v. Radiant Images, Inc. d/b/a HD Camera Rentals and Giania Wolfe.*, United States District Court for the Eastern District of Pennsylvania, Case No. 18-cv-04013 |
| 6. | Settlement Agreement and Release between CBSG, Broadway Advance, and Fast Advance Funding and Radiant Images, Inc. and Gianna Wolf dated March 16, 2018 |
| 7. | Order dated July 31, 2019 entered in *Complete Business Solutions Group, Inc., Broadway Advance, LLC and Fast Advance Funding, v. Radiant Images, Inc. d/b/a HD Camera Rentals and Giania Wolfe.*, United States District Court for the Eastern District of Pennsylvania, Case No. 18-cv-04013 |
| 8. | Declaration of Julie Katz dated June 17, 2020 submitted in *Tourmappers North America, LLC d/b/a Tourmappers North America LLC and Julie Katz v. Complete Business Solutions Group Inc. d/b/a Par Funding*, JAMS Arbitration Case No. 01-20-0005-3591 |

30398203v.1

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 9. | Order by Arbitrator in *Tourmappers North America, LLC d/b/a Tourmappers North America LLC and Julie Katz v. Complete Business Solutions Group Inc. d/b/a Par Funding*, JAMS Arbitration Case No. 01-20-0005-3591 |
| 10. | Second Amended Complaint, *Fleetwood Services, LLC, Robert Fleetwood and Pamela Fleetwood Complete Business Solutions Group, Inc., d/b/a/ Par Funding; Prime Time Funding LLC and John and Jane Doe Investors*, United states District Court for the Eastern District of Pennsylvania, Case No. 18-cv-00268 (JS) |
| 11. | Michael Heller Petition to Open Judgment filed in *Complete Business Solutions Group Inc. v. MH Marketing Solutions Group, Inc. and Michael Heller*, Philadelphia Court of Common Pleas, Case No. 190606813 |
| 12. | Complaint, *Petropangea, Inc., Johnny Harrison; Volunteer Pharmacy, Inc. and Toby C. Frost v. Complete Business Solutions Group, LLC; Fast Advance Funding LLC; MCA Capital Fund I, LLC; MCA National Fund, LLC, Recruiting and Marketing Resources, Inc. and Full Spectrum Processing, Inc.*, Court of Common Pleas: Philadelphia County, Case No. 200202013 |
| 13. | Answer and Counterclaims, *Complete Business Solutions Group, Inc. v. Sean Whalen and Yingyin Iris Chen*, United States District Court, Eastern District of Pennsylvania, Case No. 19-cv-06181 |
| 14. | Sample Par Funding Factoring Agreement between Fleetwood Services LLC and Complete Business Solutions Group dated January 4, 2017 |

Dated: March 10, 2023

Shane R. Heskin

30398203v.1