**Settlement Amount: $542,500.00**

# SETTLEMENT AGREEMENT ADDENDUM TO NOTEHOLDER AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between CAPITAL SOURCE 2000, INC ("CS 2000") and ▮▮▮▮▮▮ ("Noteholder"). Collectively the above are referred to as the "Parties."

This Agreement is executed with reference to the following facts:

## RECITALS AND REPRESENTATIONS

A. Capital Source 2000, Inc is a corporation registered in the State of Delaware, with an address of 8 The Green Suite # 14196, Dover, Delaware 19901.

B. On July 24, 2020, the Securities and Exchange Commission filed an action against several individuals or entities, primarily Complete Business Solutions group, Inc. d/b/a Par Funding, with a case number of 9:20-cv-81205-RAR in the Southern District of Florida ("Par Funding Case").

C. Capital Source 2000, Inc. was not a subject of litigation in the lawsuit mentioned above. However, the Receiver moved to expand the Receivership estate in October 30, 2020. In Capital Source 2000, Inc.'s opinion, after the Receiver failed to optimally operate Capital Source 2000, Inc., the Receiver agreed to return Capital Source 2000, Inc., and the Court issued an order indicating the same.

D. From the time Capital Source 2000, Inc. was returned, the Receiver will not be involved in any of the decision in Capital Source 2000, Inc. Moreover, because the Securities and Exchange Commission hold the judgment against the various entities involved in the Par Funding case, the Receiver is not processing the claims, but has hired a third-party entity to do that work.

E. Capital Source 2000, Inc. has approximately $30M in outstanding noteholder balances to repay. To date, we received approximately $2.2M in cash back from the Receiver and this amount represents only 6.7% of the outstanding balance. Currently, Capital Source 2000, Inc. has about $2M in old, mostly written off, receivables that we are still able to collect on.

F. Through Q4 2022, the Receiver has collected only about 15% of CBSG's AR balances with the majority of it being written off. So depending on Capital Source's exposure on these deals, we believe that we may optimistically receive a similar proportion on the $2M in old, directly funded AR and the $30M which would yield approximately $4.8M in additional cash.

G. As outlined above, we have no way of knowing how much we would actually receive from the claim but I believe it won't be greater than the estimate provided. They could

as easily give us less or nothing from our claim so the percentage being repaid to noteholders would only be reduced from the 23% repayment estimate from this scenario.

H. Because of the uncertainties involved, and because Capital Source 2000, Inc. wishes to grow the business and repay noteholders a feasible portion of their outstanding note, Capital Source 2000, Inc. is proposing a settlement with the following terms and conditions.

## AGREEMENT – ADDENDUM TO ORIGINAL NOTEHOLDER AGREEMENT

NOW THEREFORE, in consideration of the foregoing facts and mutual covenants and agreements herein contained, the Parties agree as follows:

1. **Recitals and Representations.** The above-mentioned recitals and representations and part and parcel of this agreement and are binding on all Parties.

2. **Terms.** Capital Source 2000, Inc. is offering a repayment option with 35% of the total outstanding note principal to be repaid over 60 months. The Settlement Amount of this agreement equals: $542,500.00 The terms of this agreement supersede all prior terms established under the Original Noteholder Agreement. See Exhibit "A" for an Amortization Schedule based on the face amount of your note as indicated in the Original Noteholder Agreement.

3. **Original Noteholder Agreement.** Please note that this settlement agreement does not create an additional note. This document is not intended to be an investment vehicle. This document is merely an attempt to settle existing claims in an attempt to return profitability to Noteholders. As such, this is not intended to be an issuance of a security. Likewise, Capital Source 2000, Inc. is not intending to profit from the settlement funds being repaid. The purpose is purely to return funds to Noteholders. Finally, the signing of this document does not effectuate in the issuance of a new Note, noteholder agreement, or any other instrument that may be considered a security. In analyzing this document, it should be analyzed as an addendum to the already executed Noteholder Agreement. If any term in this Settlement Agreement, which acts merely as an addendum to the Original Noteholder Agreement, that conflicts with the Original Noteholder Agreement, the term in this Settlement Agreement shall govern and control.

    Based on the above, you agree that the original Noteholder Agreement, with a face amount of: $1,550,000.00 shall remain in large part unchanged, with payments made as indicated in Exhibit "A" in full satisfaction of the Note or any amount owned by Capital Source 2000, Inc.

4. **Release.** The Parties agree that for the consideration set forth above, and the mutual promises herein contained, that they, their officers, directors, employees, agents, attorneys, heirs, representatives, successors, and assigns fully release and discharge each other, from any and all actions, causes of action, judgments, liens, promises, agreements, contracts, obligations, transactions, indebtedness, costs, damages, fines, levies, losses,

lawsuits, arbitrations, appeals, claims, liabilities, indemnifications, debts, restrictive covenants, covenants not to compete, demands, attorney's fees or expenses of any nature whatsoever, as expressly set forth in this Agreement, and rights of any kind or character, which specifically arises out of and/or relates to any claims and/or defenses to the subject of the Action. This release shall not operate to relieve either Party of its respective duties to perform or restrain from specified conduct as agreed herein.

5. **Waiver of Civil Code Section 1542 – CALIFORNIA RESIDENTS ONLY.** Except as excluded and restricted herein, each Party to this Agreement specifically waives the benefit of any policy or provision of law to the effect that a general release does not extend to claims which the Creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the other party. Without limitation on the generality of the foregoing, each party to this Agreement specifically waives the benefit of the provisions of Section 1542 of the California Civil Code as follows:

   **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

   The Parties agree, except as specifically reserved, upon completion of the terms and conditions herein, to abandon, release, waive and relinquish all rights and benefits which they have or might have otherwise acquired against each other under Section 1542 of the Civil Code of the State of California pertaining to the subject matter of this Agreement. The Parties acknowledge that they may hereafter discover claims presently unknown or unsuspected by them, or facts in addition to or different from those which they now know or believe to be true, as to the matters released herein. Nevertheless, it is the Parties' intention, through this release, to fully, finally, and forever release all such matters and all claims relating thereto, which do now exist or may hereafter exist, or may heretofore have existed.

6. **Attorney Fees.** In any action or proceeding at law or in equity to enforce any of the provisions or rights under this Agreement, the prevailing party shall be entitled to recover from the unsuccessful party all costs, expenses and reasonable attorney's fees incurred therein by the prevailing party (including, without limitation, such costs, expenses and fees on any appeals), and if such prevailing party shall recover judgment in any such action or proceeding, such costs, expenses, including those of expert witnesses and attorney fees, shall be included as part of the judgment.

7. **Merger and Integration.** This Agreement contains the entire understanding of the parties; there are no representations, covenants or understandings other than those, either express, implied or referred to herein. Each party acknowledges that there are no conditions to this Agreement other than those expressed or referred to herein. Each party acknowledges that no other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever, express or implied or statutory, not contained or referred to herein, concerning the subject matter hereof, to induce them to execute this Agreement, and they acknowledge that they have not executed this

Agreement in reliance on any such promise, representation or warranty not specifically contained or referred to herein.

8. **Binding on Successors.** This Agreement and covenants and conditions herein contained shall apply to, be binding upon and inure to the benefit of the respective heirs, administrators, executors, legal representatives, assignees, successors and agents of the parties hereto.

9. **Severability.** The provisions of this Agreement are severable, and should any provision for any reason be deemed unenforceable; the balance shall nonetheless be of full force and effect.

10. **Applicable Law.** The Parties agree that jurisdiction over any litigation arising out of this Agreement shall be in Delaware and that venue shall be in the County of Kent. The Parties herein submit to such jurisdiction and venue in the event of any litigation arising out of this Agreement. This Agreement is to be deemed to have been jointly prepared by the parties hereto and any uncertainty and ambiguity existing herein shall not be interpreted against any party hereto, but according to the application of the rules of interpretation of contracts, if any such uncertainty or ambiguity exists.

11. **Advice of Counsel.** Each party hereto has had the opportunity to seek the advice of counsel concerning this settlement and this full and final release of all claims. The parties hereto warrant and acknowledge that prior to execution of this Agreement, they apprised themselves of sufficient relevant data (including information as to all rights and obligations between or among any of the parties hereto), either through experts or through other sources of their own selection, in order that they might intelligently exercise their own judgment in deciding whether to execute, and deciding on the contents of, this agreement. The parties hereto further warrant and acknowledge that their decisions were not based on, influenced by or induced by any declaration or representation whatsoever of any other party, or the officers, directors, employees, agents or attorney in fact or at law, of any other party, and that this agreement was not executed in reliance on any such declaration or representation. The parties hereto further warrant and acknowledge that they executed this agreement with the advice of their legal counsel.

12. **Confidentiality and Non-Disparagement.** The Parties will maintain the confidentiality of this Agreement and will not disclose in any fashion the substance of this Agreement or the contents of any discussions involved in entering into this Agreement, except to its attorneys, accountants, or as otherwise required by law. The Parties mutually agree to not make any negative or disparaging remarks or comments about each other to any person or entity relating to the character, professionalism, reputation or abilities of the Parties, or that are otherwise derogatory of the Parties.

13. **Necessary Documents and Instruments.** The parties hereto agree to execute any and all other documents and instruments in writing which may be reasonably necessary or proper to effectuate and carry out the purposes of this Agreement.

14. **Waiver.** The waiver of any breach of this Agreement by any party shall not be a waiver of any other subsequent or prior breach, including in the case of any ongoing breach, the continuation of such breach after the waiver.

15. **Miscellaneous**
   a. The representation and warranties contained in this Agreement are deemed to and do survive the closing hereof.
   b. This Agreement may not be altered or modified except by a writing signed by each party to this Agreement.
   c. Unless specifically stated to the contrary, nothing contained in this Agreement, whether express or implied, shall confer any rights or remedies under or by reason of this Agreement on any person or entity not a party to this Agreement.
   d. The undersigned have read the foregoing Agreement, fully understand it, and assent to its terms and provisions.
   e. Each party whose signature is affixed hereto in a representative capacity represents and warrants that he/she is authorized to execute this Agreement on behalf of and to bind the entity on whose behalf his/her signature is affixed.

16. **Counterpart.** The Parties agree that this Agreement may be signed in counterparts by the Parties. The original of this Agreement shall be deemed to consist of the Agreement with separate signature pages each with the original signatures of one or more of the Parties. A signature page received via facsimile or electronic mail of any original signature will be deemed effective as an original signature. The Parties further understand and agree that no obligations shall arise under this Agreement unless and until all Parties have signed their respective copy of this Agreement.

17. **Notices:** Any notices to Capital Source 2000, Inc. should be sent to Joseph Cole Barleta at joecole@capitalsourcefunding.com as well as the Legal and Compliance Department of Capital Source 2000, Inc. at legal@capitalsourcefunding.com.

DATED: 05/12/23

_____
Capital Source 2000, Inc.
Joseph Cole Barleta

DATED: 5/11/23

_____
Noteholder – [redacted]
[redacted] Principal

-5-
SETTLEMENT AGREEMENT

## Exhibit A - Repayment Schedule

Noteholder: ▓▓▓▓▓▓▓

Original Agreement Amount:  $ 1,550,000.00

Settlement Amount:  $ 542,500.00

| Month | Amount | Month | Amount |
|---|---|---|---|
| 1 | $ 4,520.83 | 31 | $ 9,041.67 |
| 2 | $ 4,520.83 | 32 | $ 9,041.67 |
| 3 | $ 4,520.83 | 33 | $ 9,041.67 |
| 4 | $ 4,520.83 | 34 | $ 9,041.67 |
| 5 | $ 4,520.83 | 35 | $ 9,041.67 |
| 6 | $ 4,520.83 | 36 | $ 9,041.67 |
| 7 | $ 4,520.83 | 37 | $ 11,302.08 |
| 8 | $ 4,520.83 | 38 | $ 11,302.08 |
| 9 | $ 4,520.83 | 39 | $ 11,302.08 |
| 10 | $ 4,520.83 | 40 | $ 11,302.08 |
| 11 | $ 4,520.83 | 41 | $ 11,302.08 |
| 12 | $ 4,520.83 | 42 | $ 11,302.08 |
| 13 | $ 6,781.25 | 43 | $ 11,302.08 |
| 14 | $ 6,781.25 | 44 | $ 11,302.08 |
| 15 | $ 6,781.25 | 45 | $ 11,302.08 |
| 16 | $ 6,781.25 | 46 | $ 11,302.08 |
| 17 | $ 6,781.25 | 47 | $ 11,302.08 |
| 18 | $ 6,781.25 | 48 | $ 11,302.08 |
| 19 | $ 6,781.25 | 49 | $ 13,562.50 |
| 20 | $ 6,781.25 | 50 | $ 13,562.50 |
| 21 | $ 6,781.25 | 51 | $ 13,562.50 |
| 22 | $ 6,781.25 | 52 | $ 13,562.50 |
| 23 | $ 6,781.25 | 53 | $ 13,562.50 |
| 24 | $ 6,781.25 | 54 | $ 13,562.50 |
| 25 | $ 9,041.67 | 55 | $ 13,562.50 |
| 26 | $ 9,041.67 | 56 | $ 13,562.50 |
| 27 | $ 9,041.67 | 57 | $ 13,562.50 |
| 28 | $ 9,041.67 | 58 | $ 13,562.50 |
| 29 | $ 9,041.67 | 59 | $ 13,562.50 |
| 30 | $ 9,041.67 | 60 | $ 13,562.50 |



Capital Source 2000 Inc. • 8 The Green Suite #14196, Dover, DE 19901
(215) 650-0120 • www.capitalsourcefunding.com

## Noteholder Remittance Instructions

Please indicate your preferred remittance method for your payments coming from Capital Source 2000 Inc below:

Noteholder Name: _____
Legal Address: _____
Phone: _____
Email: _____

Remittance Method (select one):

[ ] Mailed Check

Mailing Address: _____

[✓] Electronic ACH Transfer:

Bank Name: Alpine Bank
Routing Number: 102103407
Account Number: 8910426124
FBO (if applicable): _____

1283
DATE _____
PAY TO THE ORDER OF _____ VOID $ _____
DOLLARS

Alpine Bank

⑆102103407⑆ 8910426124⑈ 1283