# Exhibit 1

*Declaration of Ryan K. Stumphauzer, Esq.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CV-81205-RAR**

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

   v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, et al.,

           Defendants.

_____/

**<u>DECLARATION OF RYAN K. STUMPHAUZER, ESQ.</u>**

I, Ryan K. Stumphauzer, Esq., declare as follows:

    1.    I am the Court-appointed Receiver for certain Receivership Entities and properties,[1]

including the real property located at 107 Quayside Drive, Jupiter, Florida 33477 (the "Quayside

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"); Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC;, RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; and ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Fund 2 LP; MK Corporate Debt Investment Company LLC; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consulting, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; 500 Fairmount Avenue, LLC; Liberty Eighth Avenue LLC; Blue Valley Holdings, LLC; LWP North LLC; The LME 2017 Family Trust; Recruiting and Marketing Resources, Inc.; Contract Financing Solutions, Inc.; Stone Harbor Processing LLC; LM Property Management LLC; and ALB Management, LLC; and the receivership also includes the properties located at 105

Property").  I have personal knowledge of the facts detailed in this Declaration and make this Declaration in support of the proposed sale of the Quayside Property.

2.       Specifically, and as detailed further herein, I have completed my marketing efforts for the Quayside Property in accordance with this Court's prior Orders, and now respectfully request that the Court enter an Order authorizing and approving my proposed sale of the Quayside Property.

3.       As authorized by the Amended Order Appointing Receiver [ECF No. 141] and the Order (1) Authorizing Receiver's Sale of All Real Property Within the Receivership Estate; and (2) Compelling Lisa McElhone and Joseph LaForte to Vacate and Surrender Haverford Home or, in The Alternative, Pay Obligations for Single-Family Homes [ECF 1486], I engaged a licensed real estate broker with decades of experience in Palm Beach County, Florida ("Broker") as the real property broker for the purposes of marketing the Property in anticipation of a sale of the Quayside Property out of receivership.  The Broker has been recognized as the top agent for $5 million-plus listings in Northern Palm Beach County, and the top agent for sales in Admirals Cove, the exclusive waterfront community where the Quayside Property is located.  In fact, the Broker was the listing broker for the sale of the Quayside Property to Lisa McElhone in December 2019.

4.       In conformity with my instructions, the Broker marketed the Quayside Property in a manner consistent with ordinary custom and practice for sales of similar residential properties in Jupiter, Florida, including via a Multiple Listing Service listing, vetting potential purchasers, and showing the Quayside Property to numerous qualified purchasers.  The listing price of the Quayside Property was $10,500,000.00, and the aforementioned marketing efforts resulted in

---

Rebecca Court, Paupack, PA 18451; 107 Quayside Dr., Jupiter FL 33477; and 2413 Roma Drive, Philadelphia, PA 19145.

approximately 25 potential buyers who demonstrated interest in and arranged private buyer showings of the Quayside Property.

5.     Before listing the Quayside Property, I obtained a residential appraisal report of the Quayside Property from a disinterested Certified General Real Estate Appraiser, with a Senior Residential Appraiser (SRA) designation from the Appraisal Institute.  The appraised value of the Quayside Property is $9,800,000.00.[2]  Attached as **Exhibit A** is a copy of the appraisal.

6.     As a result of my marketing efforts, I received 15 offers to purchase the Quayside Property, five (5) of which were below the listing price, one (1) at the listing price, and nine (9) of which were above the listing price.  After careful consideration, I accepted an offer from the R.W. Revocable Trust Agreement,[3] a third party unaffiliated with the Receivership Entities ("Buyer"), to purchase the Quayside Property out of receivership, for the price of $12,100,000.00.   The Buyer's offer substantially exceeds the appraised value and substantially exceeds the listing price for the Quayside Property.  It is an "all cash" offer with no contingencies.  In my reasonable business judgment, I believe Buyer's offer to purchase the Quayside Property for $12,100,000.00 is appropriate, consistent with the Quayside Property's current market value and, of the offers I received, will result in the maximum recovery to the Receivership Estate.  As a result, on or about July 6, 2023, I entered into a contingent As Is Residential Contract for Sale and Purchase (a "Contract") for the Quayside Property with Buyer, a true and correct copy of which is attached hereto as **Exhibit B** to this Declaration, and which has been redacted for security purposes.

7.     Pursuant to the Contract, performance of which is contingent upon an Order from this Court approving the Contract and authorizing the proposed sale of the Quayside Property to

---

[2] For security purposes, the Appraiser's identities have been redacted.
[3] For security purposes, the Buyer's identity has been redacted.

Buyer, the sale of the Quayside Property will be made on an "as-is / where-is basis," with no representations or warranties on my part, individually or on behalf of the Receivership Entities, except as expressly set forth in the Contract.  In the event that the Court authorizes and approves the proposed sale of the Quayside Property as provided for in the Contract, and the sale is consummated, the Broker (and the cooperating broker representing the Buyer) will receive a total commission of 5% of the sales price, consistent with ordinary custom and practice.

8.     Accordingly, I respectfully request that this Court enter an Order approving the sale of the Quayside Property, as provided for in the Contract.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Ryan K. Stumphauzer*
Ryan K. Stumphauzer,
Court-appointed Receiver

Executed on July 10, 2023.

- 4 -

# Exhibit A

*Appraisal*

███████████

Real Estate Appraisers & Consultants

File No. 23-1200

June 6, 2023

Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr
2 South Biscayne Blvd, Ste 1600
Miami, FL, 33131

File Number:   23-1200

In accordance with your request, I have appraised the real property at:

107 Quayside Drive
Jupiter, FL  33477

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   June 2, 2023                          is:

$9,800,000
Nine Million Eight Hundred Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

███████████

██████ , SRA
Cert Gen ██████

Real Estate Appraisers & Consultants

File No. 23-1200

APPRAISAL OF



A Single Family Residence

LOCATED AT:

107 Quayside Drive
Jupiter, FL  33477

CLIENT:

Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr
2 South Biscayne Blvd, Ste 1600
Miami, FL, 33131

AS OF:

June 2, 2023

BY:

, SRA
Cert Gen

Residential Appraisal Report

File No. 23-1200

**PURPOSE**

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User  Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr    E-mail  tkolayla@sknlaw.com

Client Address  2 South Biscayne Blvd, Ste 1600    City  Miami    State  FL    Zip  33131

Additional Intended User(s)  None

Intended Use  Internal Decision-Making Purposes

**SUBJECT**

Property Address  107 Quayside Drive    City  Jupiter    State  FL    Zip  33477

Owner of Public Record  Lisa McElhone    County  Palm Beach

Legal Description  Admirals Cove Lt 49, PB 54, PG 141, Palm Beach County

Assessor's Parcel #  30-43-41-07-09-000-0490    Tax Year  2022    R.E. Taxes $  95,231.00

Neighborhood Name  Admirals Cove    Map Reference  43-41-07    Census Tract  3.01

Property Rights Appraised  [X] Fee Simple    [ ] Leasehold    [ ] Other (describe)

**SALES HISTORY**

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer:  Date  11/29/2019    Price  $5,800,000    Source(s)  P.B.C. Prop. Appraiser

Analysis of prior sale or transfer history of the subject property and comparable sales, if applicable    The Subject was purchased by the current owner on 11/29/2019 for $5,800,000. The comparable sales have not sold over the prior year.

Offerings, options and contracts as of the effective date of the appraisal    To our knowledge, there have no offers options or contracts as of the effective date of this appraisal.

**NEIGHBORHOOD**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban [ ] Rural | Property Values | [ ] Increasing | [X] Stable [ ] Declining | PRICE $(000) | AGE (yrs) | One-Unit | 100 % |
| Built-Up | [X] Over 75% | [ ] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance [ ] Over Supply | 2,000 Low | 0 | 2-4 Unit | % |
| Growth | [ ] Rapid | [X] Stable [ ] Slow | Marketing Time | [X] Under 3 mths | [ ] 3-6 mths [ ] Over 6 mths | 20,000 High | 36 | Multi-Family | % |
| | | | | | | 7,500 Pred. | 15 | Commercial | % |
| | | | | | | | | Other | % |

Neighborhood Boundaries  See Attached Addendum

Neighborhood Description  Admirals Cove is a gated, golf and yacht oriented community offering luxury, single family homes, patio homes and golf villas on deepwater canals, the Intracoastal Waterway (ICW), or the golf course. Homes directly on the ICW often set the upper-limit of value. Supporting businesses are located on Indiantown Road to the north and Donald Ross Road to the south. Area beaches are a short car-ride away.

Market Conditions (including support for the above conclusions)  Marketing times and exposure times are under 3 months. Supply and demand are in balance. Sales prices have stabilized. Financing concessions are uncommon with most homes selling for cash or via conventional financing.

**SITE**

Dimensions  100.51'X181.83'X54.44'(wf)X49.06'(wf)X180.39'    Area  18000    Shape  Irregular    View  Canal

Specific Zoning Classification  R1    Zoning Description  Residential Single Family

Zoning Compliance  [X] Legal    [ ] Legal Nonconforming (Grandfathered Use)    [ ] No Zoning    [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?  [X] Yes  [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street  Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley  None | | |

Site Comments  Site improvements include, professional landscaping and irrigation, paver driveway, electronic entry gate, open pool and spa, patio, deck, dock, seawall, jet ski lift, generator, gas firepit. Flood Map Panel 12099C0189F, Zone X, Date 10/5/2017. The Subject site has 103.50' of canal frontage.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION  materials | INTERIOR  materials |
|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls  N/A-Slab | Floors  Marble/Gd |
| # of Stories  2 | [ ] Full Basement [ ] Partial Basement | Exterior Walls  CBS/Gd | Walls  Drywall/Gd |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area  0 sq. ft. | Roof Surface  Concrete Tile/Gd | Trim/Finish  Wood/Gd |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish  0 % | Gutters & Downspouts  Alum/Gd | Bath Floor  Marble/Gd |
| Design (Style)  European | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type  Impact/Gd | Bath Wainscot  Marble/Gd |
| Year Built  2019 | | Storm Sash/Insulated  None | [X] Driveway  # of Cars  8 |
| Effective Age (Yrs)  2 | | Screens  None | Driveway Surface  Paver |
| Attic [ ] None | Heating [X] FWA [ ] HW | Amenities | [X] Garage  # of Cars  3&Golf |
| [X] Drop Stair [ ] Stairs | [ ] Radiant | [ ] Fireplace(s) # [ ] Fence | [ ] Carport  # of Cars |
| [ ] Floor [ ] Scuttle | Fuel  Elect. | [ ] Patio/Deck [ ] Porch | [X] Att. [ ] Det. [ ] Built-in |
| [ ] Finished [ ] Heated | Cooling [X] Central Air Conditioning | [X] Pool & Spa [X] Other Dock/Lift | |
| Appliances [X] Refrigerator [X] Range/Oven | [ ] Individual [ ] Other | Other (describe) | |
| [X] Dishwasher [ ] Disposal [X] Microwave | [X] Washer/Dryer | | |

Finished area above grade contains:  10 Rooms  5 Bedrooms  5.2 Bath(s)  5,986 Square Feet of Gross Living Area Above Grade

Additional Features  None noted.

Comments on the Improvements    See Attached Addendum



Residential Appraisal Report     File No. 23-1200

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 107 Quayside Drive | 114 Quayside Drive | 300 Eagle Drive | 109 Schooner Lane |
| | Jupiter | Jupiter | Jupiter | Jupiter |
| Proximity to Subject | | 0.10 miles NE | 0.32 miles SW | 0.40 miles NW |
| Sale Price | $ | $ 9,850,000 | $ 9,250,000 | $ 11,000,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 1,268.19 sq. ft. | $ 1,568.59 sq. ft. | $ 1,639.10 sq. ft. |
| Data Source(s) | | MLS RX-10847926 | MLS RX-10868851 | MLS RX- 10837011 |
| Verification Source(s) | | County Tax Roll, Broker | County Tax Roll, Broker | County Tax Roll, Broker |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing | | Cash | | Cash | | Cash | |
| Concessions | | DOM 70 | | DOM29 | | DOM 7 | |
| Date of Sale/Time | | 2/2023-Closed | 0 | 5/2023-Closed | | 11/2022-Closed | 0 |
| Location | Canal | Canal/Similar \ | | Lake/Superior \ | | Canal/Fixed Brdg/Inf \ | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 18582sf/103.50FF | 20028sf/113FF | | 14327sf/90FF | | 21,533/130FF | |
| View | $4,400,000 | $4,800,000 / | -400,000 | $4,400,000 / | 0 | $4,500,000 / | -100,000 |
| Design (Style) | European | Contemporary \ | | Brti.W.Indies \ | 0 | Traditional \ | 0 |
| Quality of Construction | V.Good | $500psf \ | 1,553,000 | $800psf \ | | $700psf \ | -671,000 |
| Actual Age | 4Yrs/Eff2 | New \ | -196,000 | 7Yrs/Eff3 \ | 98,000 | 7Yrs/Eff3 \ | 98,000 |
| Condition | V.Good | New / | | V.Good / | | V.Good / | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 10 / 5 / 5.2 | 12 / 5 / 6.3 | -60,000 | 10 / 5 / 6.2 | -40,000 | 11 / 5 / 6.2 | -40,000 |
| Gross Living Area | 350.00  5,986 sq. ft. | 7,767 sq. ft. | -623,000 | 5,897 sq. ft. | 0 | 6,711 sq. ft. | -254,000 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | Central HVAC | Central HVAC | | Central HVAC | | Central HVAC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 3&Golf Garage | 4 Car Garage | -70,000 | 3&Golf Garage | | 4 Car Garage | -70,000 |
| Porch/Patio/Deck | Patio,Deck,Prch,Terr | Patio,Deck,Prch,Terr | | Patio,Deck,Prch,Terr | | Patio,Deck,Porch | |
| | Pool,Spa,Dock,Lift | Pool,Spa,Dock,Lift | | Pool,Spa,Dock,Lift | | Pool,Spa,Dock | |
| | S.Kit/Generator | S.Kit | 50,000 | S.Kit | 50,000 | S.Kit/Generator | |
| | Elevator | Elevator | | Elevator | | Elevator | |
| Net Adjustment (Total) | | [X] + [ ] - | 254,000 | [X] + [ ] - | 108,000 | [ ] + [X] - | 1,037,000 |
| Adjusted Sale Price | | Net Adj. 2.6% | | Net Adj. 1.2% | | Net Adj. -9.4% | |
| of Comparables | | Gross Adj. 30.0% $ | 10,104,000 | Gross Adj. 2.0% $ | 9,358,000 | Gross Adj. 11.2% $ | 9,963,000 |

*(left margin vertical: SALES COMPARISON APPROACH)*

Summary of Sales Comparison Approach   See Attached Addendum

Indicated Value by Sales Comparison Approach $ 9,800,000

**COST APPROACH TO VALUE**

Site Value Comments   See Attached Addendum

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW   OPINION OF SITE VALUE .................................... = $ 4,400,000

Source of cost data   Local Builders    Dwelling 5,986 Sq. Ft. @ $ 700.00 ........... = $ 4,190,200

Quality rating from cost service   V.God   Effective date of cost data   6/2/2023    Porch 1227 Sq. Ft. @ $ 175.00 ........... = $ 214,725

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

Replacement cost is derived from conversations with local    Garage/Carport 1,384 Sq. Ft. @ $ 350.00 ........... = $ 484,400

builders and appraiser's files. Physical depreciation is based on    Total Estimate of Cost-New ........................ = $ 4,889,325

the economic age/life method of accrued depreciation. Effective    Less 50 Physical Functional External

age is estimated at 2 years, remaining economic life is 38 years    Depreciation $195,573 ............................ = $ ( 195,573)

and total economic life is 50 years. No functional or external    Depreciated Cost of Improvements ................ = $ 4,693,752

obsolescence noted.    "As-is" Value of Site Improvements ............... = $ 750,000

INDICATED VALUE BY COST APPROACH ............... = $ 9,843,800

*(left margin vertical: COST APPROACH)*

**INCOME APPROACH TO VALUE**

Estimated Monthly Market Rent $    X Gross Rent Multiplier    = $    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)   The Income Approach is not developed herein since the Subject is owner occupied.

*(left margin vertical: INCOME)*

Methods and techniques employed: [X] Sales Comparison Approach [X] Cost Approach [ ] Income Approach [ ] Other:

Discussion of methods and techniques employed, including reason for excluding an approach is developed.   The Sales Comparison Approach is considered the best method of estimating the Subject's market value since it offers the most reliable indication of buyer's reactions toward similar properties. The Income Approach is not developed herein as noted directly above. The Cost Approach is developed herein.

Reconciliation comments:   See addendum

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report as of   June 2, 2023  , which is the effective date of this appraisal, is:

[X] Single point $ 9,800,000   [ ] Range $   to $   [ ] Greater than [ ] Less than $

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed [ ] subject to the following:

*(left margin vertical: RECONCILIATION)*



Produced using ACI software. 800.234.8727 www.aciweb.com    This form Copyright © 2005-2016 ACI, a First American Company. All Rights Reserved.
Page 2 of 4    (gPAR™) General Purpose Appraisal Report 3/2017   GPARSUM_17 03272017

Residential Appraisal Report   File No. 23-1200

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Address | 107 Quayside Drive | 177 Commodore Drive | | |
| | Jupiter | Jupiter | | |
| Proximity to Subject | | 0.39 miles NE | | |
| Sale Price | $ | $ 15,000,000 | $ | $ |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 2,070.11 sq. ft. | $ sq. ft. | $ sq. ft. |
| Data Source(s) | | MLS RX-10810094 | | |
| Verification Source(s) | | County Tax Roll, Broker | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sale or Financing | | N/A | | |
| Concessions | | | | |
| Date of Sale/Time | | Under Contract -1,000,000 | | |
| Location | Canal | Canal/Sup View\ | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | |
| Site | 18582sf/103.50FF | 21,013sf/124FF | | |
| View | $4,400,000 | $6,000,000 / -1,600,000 | | |
| Design (Style) | European | Custom 0 | | |
| Quality of Construction | $700psf | $900psf -1,449,000 | | |
| Actual Age | 4Yrs/Eff2 | 8Yrs/Eff3 \ 98,000 | | |
| Condition | V.Good | V.Good / | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 10 5 5.2 | 12 5 5.2 | | |
| Gross Living Area 350.00 | 5,986 sq. ft. | 7,246 sq. ft. -441,000 | sq. ft. | sq. ft. |
| Basement & Finished | No Basement | No Basement | | |
| Rooms Below Grade | | | | |
| Functional Utility | Adequate | Adequate | | |
| Heating/Cooling | Central HVAC | Central HVAC | | |
| Energy Efficient Items | None Noted | None Noted | | |
| Garage/Carport | 3&Golf Garage | 3&2 Golf Garage -35,000 | | |
| Porch/Patio/Deck | Patio,Deck,Prch,Terr | Patio,Deck,Porch | | |
| | Pool,Spa,Dock,Lift | Pool,Dock/Lift | | |
| | S.Kit/Generator | S.Kit/Generator 50,000 | | |
| | Elevator | None 10,000 | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ 4,367,000 | ☐ + ☐ - $ | ☐ + ☐ - $ |
| Adjusted Sale Price | | Net Adj. -29.1% | Net Adj. % | Net Adj. % |
| of Comparables | | Gross Adj. 31.2% $ 10,633,000 | Gross Adj. % $ | Gross Adj. % $ |
| Summary of Sales Comparison Approach | | See addendum | | |

SALES COMPARISON APPROACH



general purpose appraisal report

Residential Appraisal Report    File No. 23-1200

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar "expert", unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions



Residential Appraisal Report                                                   File No. 23-1200

### Appraiser's Certification

The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification.  Significant real property appraisal assistance provided by:

Additional Certifications:

---

Definition of Value: [X] Market Value  [ ] Other Value:

Source of Definition: The Interagency Appraisal and Evaluation Guidelines, Federal Register, Volume 75, No 237 Dec.10, 2010, Pgs 61-62 Section 1110 of Financial Institutions Reform, Recovery and Enforcement Act's "As defined in the Agencies' appraisal regulations, the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgably, and assuming the price is not affected by undue stimulus, implicit in this definition are the consumation of a sale as of a specified date and the passing of title from seller to buter under conditions whereby:

a. Buyer and seller are typically motivated.
b. Both parties are well informed or well advised, and acting in what they consider their own best interests;
c. A reasonable time is allowed for exposure in the opwn market;
d. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
e. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

---

ADDRESS OF THE PROPERTY APPRAISED:
107 Quayside Drive
Jupiter, FL  33477
EFFECTIVE DATE OF THE APPRAISAL: June 2, 2023
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 9,800,000

| APPRAISE | SUPERVISORY APPRAISER |
|---|---|
| Signature: | Signature: |
| Name: ▮▮▮▮ SRA | Name: |
| Company Name: ▮▮▮▮ | Company Name: |
| Company Address: | Company Address: |
| Telephone Number: 561- | Telephone Number: |
| Email Address: | Email Address: |
| State Certification # Cert Gen | State Certification # |
| or License # | or License # |
| or Other (describe): ____ State #: | or Other (describe): ____ State: |
| State: FL | State: |
| Expiration Date of Certification or License: 11/30/2024 | Expiration Date of Certification or License: |
| Date of Signature and Report: 06/06/2023 | Date of Signature: |
| Date of Property Viewing: Jnue 2, 2023 | Date of Property Viewing: |
| Degree of property viewing: | Degree of property viewing: |
| [X] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view | [ ] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view |



Produced by ACI software, 800.234.8727 www.aciweb.com

This form Copyright © 2005-2016 ACI, a First American Company, All Rights Reserved.
(gPAR™) General Purpose Appraisal Report  3/2017
GPARSUM_17  03272017

ADDENDUM

| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 |
|---|---|---|
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |

**Neighborhood Boundaries**

The Subject neighborhood is bordered on the north by Indiantown Road, on the south by Donald Ross Road, on the west by Alternate A1A and on the east by the Intracoastal Waterway (ICW).

**Gross living area Comment**

For consistency, we have used the gross living area as noted in the Property Appraiser's website 5,986sq.ft. not the 5,888sq.ft. noted in our sketch. The 98sq.ft. difference is likely due to the cabana half bathroom near the pool.

**Quality and Condition of Property**

The Subject's interior is described as follows: First Floor: Foyer- marble floor, 2 story ceiling, crown and baseboard moulding, custom front door. Living Room- marble floor, box-coffered ceiling, crown and baseboard moulding. recessed lights, ceiling speakers, bar area with marble top, wood cabinets, and sink. Den- French doors, wood floor, box-coffered ceiling, recessed lights, ceiling speakers, crown and baseboard moulding. Half Bathroom- marble floor and vanity top, wood vanity, crown and baseboard moulding, recessed lights. Primary Bedroom- French entry doors, marble floor, crown and baseboard moulding, recessed lights, ceiling speakers, French doors out. Primary Bathroom- marble floor, wainscot and vanity top, wood vanity, recessed lights, crown and baseboard moulding, 2 walk-in closets. Guest Bedroom- carpet, walk-in closet, recessed lights, ceiling speakers. Bathroom (ensuite)- marble floor, wainscot and vanity top, wood vanity, recessed lights, crown and baseboard moulding. Kitchen- marble floor, backsplash and countertop, gas cooktop, recessed lights, crown and baseboard moulding,. wood cabinets. Pantry- marble countertop, and backsplash, wood cabinets, crown and baseboard moulding. Laundry Room- marble countertop and floor, wood cabinets, crown and baseboard moulding, sink. Dining Room- marble floor, box-coffered ceiling, sliding glass doors, recessed lights, beamed ceiling, breakfront with marble top and wood cabinets. Cabana Half Bathroom near pool- stone floor, pedestal sink, wood ceiling, baseboard moulding. Second Floor: Left Rear Bedroom- carpet, ceiling speakers, crown and baseboard moulding, walk-in closet, door to terrace. Bathroom (ensuite)- marble floor, vanity top, and wainscot, wood vanity, crown and baseboard moulding, recessed lights. Front Left Bedroom- carpet, French entry door, recessed lights, walk-in closet. Bathroom (ensuite)- marble floor, wainscot, and vanity top, crown and baseboard moulding, recessed lights, wood vanity. Loft- wood floor, sliding glass doors to terrace, recessed lights, crown and baseboard moulding, wet bar with marble top and wood cabinets. Right Bedroom- carpet, door to terrace, recessed lights, crown and baseboard moulding, walk-in closet. Bathroom- marble floor, wainscot and vanity top, wood vanity, crown and baseboard moulding, recessed lights.

Other Features- elevator, impact windows and doors, central vacuum, covered front entry, covered rear porch with summer kitchen: tile backsplash, gas grill, sink, refrigerator, wood tongue-in-groove ceiling, recessed lights, ceiling speakers, security cameras.

Overall, the Subject Property is in very good condition.

**Highest and Best Use**

The Subject Property is a legal and permitted use based on the current zoning and land use. The lot is of sufficient size and the fact that the improvements exist, is evidence that it is physically possible. The current use is financially feasible and maximally productive as evidenced by the sales and listings of similar properties nearby. The current use of the Subject Property is therefore the Highest and Best Use in our opinion.

**Comments on Sales Comparison**

Adjustments applied in the Sales Comparison Approach are theoretically made based on Paired Sales Analysis. Paired sales are two sales that are the same in every way except the one factor for which the appraiser is trying to estimate an adjustment. In practice, it is very seldom that we come across paired sales (since homes tend to differ in many ways not just one). In lieu of paired sales we have employed periodic market surveys i.e., conversations with local, active, real estate brokers and agents familiar with buyer reactions for various features in the Subject's market area. Unless otherwise specified herein, we have based our adjustments on these periodic market surveys.

Every effort was made to find recent comparable sales within the Subject's immediate community. The comparable sales used are the best available in our opinion. Typical adjustment guidelines were exceeded where necessary in order to appropriately adjust for dissimilarities.   Adjustments are rounded to the nearest $1,000. An explanation of adjustments is as follows:

Comparable 4 (under contract) is adjusted downward $1,000,000 for sales negotiations (based on a conversation with the listing broker). Location, site and view adjustments are combined and adjusted based on the extracted underlying site values of the comparable sales vs the Subject's estimated underlying site value of $4,400,000. An example of the extraction technique is as follows:

Comparable Sale 1 Sale Price         $9,850,000

```
GLA: 7,767sq.ft. X $500psf =  $3,883,500
Gar: 1,114sq.ft. X $250psf =    $278,500
Prch: 1,351sq.ft. X $125psf=    $168,875
-------------------------------------------------
Tot.Est.Cost New        $4,330,875
Less Depr  0%               (0)
-------------------------------------------------
Depr Cost of Impr       $4,330,875
Plus Site Impr.           $750,000
-------------------------------------------------
Tot.Contr.of Impr.      $5,080,875          ($5,080,875)
```

| Client:  Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.:  23-1200 |
|---|---|---|
| Property Address:  107 Quayside Drive | | Case No.: |
| City:  Jupiter | State:  FL | Zip:  33477 |

Extracted Site Value Comp 1                                    --------------------
$4,769,125 ($4,800,000rnd)

Noe, comparable sale 3 has a fixed bridge which limits the size of the boat that can be stored. We have considered this in our estimation of comparable sale 3's underlying site value. Quality of construction adjustment is made as follows: Subject's estimated quality of construction: $700psf- $500psf (comp 1) =$200psf. Then $200psf X 7,767sq.ft. (comp 1) = $1,553,400 ($1,553,000rnd) hence the adjustment. Age and condition adjustments are combined and adjusted $97,787 per effective year difference as noted in the Cost Approach ($195,573/2years=$97,786.50 ($97,787/yr rnd). Full bathrooms are adjusted $40,000, half bathrooms are adjusted $20,000. Gross living area (GLA) is adjusted 50% of replacement cost new as noted in the Cost Approach ($700psf/2=$350psf). Garages are adjusted $70,000 per 1 car garage. Golf cart garages are adjusted $35,000 Generators are adjusted $50,000. Elevators are adjusted $10,000.

**CONCLUSION**

As adjusted, the 3 closed comparable sales reflect a reasonable range ($9,358,000-$10,104,000) from which to reconcile the Subject' market value. We conclude within the range at $9,800,000 placing approximately equal weight on all 3 closed sales.

**Support for the Opinion of Site Value**

In order to estimate the Subject's underlying site value, we have considered the following land sale in Admirals Cove:

104 Clipper Lane, Jupiter, sold 1/6/2023 for $4,500,000. This canal-front site totals 24,320 sq.ft with 100FF on a navigable waterway. At time of sale, the site was improved with a 5,405 sq.ft. single family dwelling built in 1988. Subsequently, the buyer razed the existing improvements in order to build a new house. This is therefore a land sale in or opinion. The sale price equates to $4,500,000/24,320/sq.ft. = $185.03/sq.ft. and $45,000/FF.

Applying these indicators to the Subject Site:

$185.03/sq.ft. X 18,582sq.ft. = $3,438,227
and
$45,000/FF X 103.50FF = $4,657,500

We reconcile within these 2 indicators (at $4,400,000) with most weight placed on the price per FF since this is most important to boaters. (it impacts the size of the boat that can be docked).

**Extra Comments**
Purpose

The purpose of the appraisal is to develop an opinion of market value of the Subject Property as defined in this report (see limiting conditions attached for definition), as of the effective date of this appraisal, June 2, 2023.

Intended Use

This report was prepared for our client: Ryan Strumphauzer, Court Appointed Receiver for 107 Quayside Drive. The intended use of this appraisal is to assist the client mentioned in this report in the evaluation of the Subject property for internal decision making purposes. The scope of work performed is specific to the needs of the intended user and the intended use. No other use is intended and the scope of work may not be appropriate for other use.

Scope

This is an appraisal report.

I inspected the interior and exterior of the Subject Property located at 107 Quayside Drive, Jupiter, Florida on June 2, 2023.

I inspected the exterior of the comparable sales.

Market research included, but was not limited to contacting local real estate brokers, Palm Beach County Property Appraiser's office (via website), local contractors, researching appraiser's files and consulting the Multiple Listing Service (MLS).

The Sales Comparison, Cost Approach and Income Approaches were considered in this analysis.

The Sales Comparison Analysis was considered the most reliable due to the quality and quantity of the sales data available.

The Cost Approach was considered but not relied upon due to the age of the Subject Property and the subjective nature of the economic age/life method of accrued depreciation.

Due to the non-rental nature of the Subject Property and Subject neighborhood, the Income Approach is not developed herein.

**CONDITIONS OF APPRAISAL**

AS PER USPAP GUIDELINES, THIS IS AN "APPRAISAL REPORT".

1. Personal property is not included in our valuation.

ADDENDUM

| | | | |
|---|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 | |
| Property Address: 107 Quayside Drive | | Case No.: | |
| City: Jupiter | State: FL | | Zip: 33477 |

STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

The reported analysis, opinions and conclusions were developed, and this report has been prepared in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

The use of this report is subject to the requirements of the State of Florida relating to review by the Florida Real Estate Appraisal Board.

As of the date of this report, ███████, SRA has completed the requirements under the continuing education program of the Appraisal Institute.

I have not performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

SUBJECT PROPERTY PHOTO ADDENDUM

| Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: 23-1200 |
|---|---|---|
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: June 2, 2023
Appraised Value: $ 9,800,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

Subject Photographs

| | | |
|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



Foyer



Living Room



Den



Half Bathroom



Bedroom



Bathroom

Subject Photographs

| | | |
|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



Kitchen



Dining Room



Pantry



Laundry



Bedroom



Bathroom

PHT6

| | | |
|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



Terrace



Pool/Spa/Patio/Dock



View



Loft



Bedroom



Bathroom

| | |
|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | Case No.: |
| City: Jupiter | State: FL    Zip: 33477 |



Bedroom



Bathroom



Pool/Spa/PAtio



Covered Porch



Summer Kitchen



Cabana Half Bathroom and Storage Closet

Subject Photographs

| | | |
|---|---|---|
| Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



Cabana Half Bathroom



Firepit



Deck



Dock/Jet Ski Lift



Jet Ski Lift



Canal View

Subject Photographs

| | |
|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | Case No.: |
| City: Jupiter | State: FL    Zip: 33477 |



Canal View



Generator



Front Entry Gate



Blank



Blank



Blank

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: 23-1200 |
| Property Address: 107 Quayside Drive | | Case No.: |
| City: Jupiter | State: FL | Zip: 33477 |



COMPARABLE SALE #1

114 Quayside Drive
Jupiter
Sale Date: 2/2023-Closed
Sale Price: $ 9,850,000



COMPARABLE SALE #2

300 Eagle Drive
Jupiter
Sale Date: 5/2023-Closed
Sale Price: $ 9,250,000



COMPARABLE SALE #3

109 Schooner Lane
Jupiter
Sale Date: 11/2022-Closed
Sale Price: $ 11,000,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Client: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: 23-1200 | |
| Property Address: 107 Quayside Drive | Case No.: | |
| City: Jupiter | State: FL | Zip: 33477 |



COMPARABLE SALE #4

177 Commodore Drive
Jupiter
Sale Date: Under Contract
Sale Price: $ 15,000,000

COMPARABLE SALE #5

Sale Date:
Sale Price: $

COMPARABLE SALE #6

Sale Date:
Sale Price: $

FLOORPLAN SKETCH

| Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: | 23-1200 |
|---|---|---|---|---|
| Property Address: 107 Quayside Drive | | | Case No.: | |
| City: Jupiter | | State: FL | | Zip: 33477 |



| Living Area | | Area Calculation | | | |
|---|---|---|---|---|---|
| First Floor | 4175 ft² | **First Floor** | | | **x 1.00 = 4175 ft²** |
| Second Floor | 1713 ft² | | 2ft x | 32ft x | 1.00 = 64.00 ft² |
| **Nonliving Area** | | | 3ft x | 15ft x | 1.00 = 45 ft² |
| 2 Car Attached | 780 ft² | | 21ft x | 38ft x | 0.50 = 399.00 ft² |
| 1 & Golf Cart | 604.00 ft² | | 5ft x | 10ft x | 1.00 = 50 ft² |
| 1 Story Porch | 614 ft² | | 1ft x | 16ft x | 1.00 = 16 ft² |
| Cabana 1/2 Bth & Stg | 98.00 ft² | | 2ft x | 28ft x | 1.00 = 56 ft² |
| 1 Story Porch | 238.00 ft² | | 5ft x | 30ft x | 1.00 = 150 ft² |
| Terrace | 245 ft² | | 5ft x | 32ft x | 1.00 = 1000 ft² |
| | | | 38ft x | 43.42ft x | 0.24 = 399.00 ft² |
| | | | 10.97ft x | 29.14ft x | 0.46 = 148.08 ft² |
| | | | 8.03ft x | 27ft x | 1.00 = 216.84 ft² |
| | | | 2.03ft x | 5.40ft x | 0.46 = 5.06 ft² |
| | | | 23ft x | 6ft x | 1.00 = 116 ft² |
| | | | 34.54ft x | 32ft x | 0.19 = 208 ft² |
| | | | 5ft x | 13ft x | 1.00 = 65 ft² |
| | | | 27ft x | 13ft x | 0.50 = 175.5 ft² |
| | | | 27ft x | 13ft x | 0.50 = 175.5 ft² |
| | | **Second Floor** | | | **x 1.00 = 1713 ft²** |
| | | | 6ft x | 18ft x | 1.00 = 108 ft² |
| | | | 34ft x | 22ft x | 1.00 = 748.00 ft² |
| | | | 28ft x | 24ft x | 1.00 = 672.00 ft² |
| | | | 1ft x | 5ft x | 1.00 = 5 ft² |
| **Total Living Area (rounded):** | **5888 ft²** | | 18ft x | 10ft x | 1.00 = 180 ft² |

PLAT MAP

| Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | | File No.: | 23-1200 |
|---|---|---|---|---|
| Property Address: 107 Quayside Drive | | | Case No.: | |
| City: Jupiter | | State: FL | | Zip: 33477 |



LOCATION MAP

| | |
|---|---|
| Client:   Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.:   23-1200 |
| Property Address: 107 Quayside Drive | Case No.: |
| City: Jupiter | State: FL   Zip: 33477 |



AERIAL MAP

| Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | File No.: | 23-1200 |
|---|---|---|---|
| Property Address: 107 Quayside Drive | | Case No.: | |
| City: Jupiter | | State: FL | Zip: 33477 |



## Appraiser Independence Certification

File No.:  23-1200

| | |
|---|---|
| Borrower: | |
| Property Address: | 107 Quayside Drive |
| City: | Jupiter County: Palm Beach State: FL Zip Code: 33477 |
| Lender/Client: | Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr |

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with. This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located.  My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.

- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of the Lender/Client, or any other third party acting as joint venture partner, independent contractor, appraisal company, appraisal management company, or partner on behalf of the Lender/Client, influenced or attempted to influence the development, reporting, result, or review of the appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that the Lender/Client has never participated in any of the following prohibited behavior in our business relationship:

1. Withholding or threatening to withhold timely payment or partial payment for the appraisal report;

2. Withholding or threatening to withhold future business, or demoting or terminating, or threatening to demote or terminate my services;

3. Expressly or implicitly promising future business, promotions, or increased compensation for my services;

4. Conditioning the ordering of the appraisal report or the payment of the appraisal fee or salary or bonus on my opinion, conclusion or valuation reached, or on a preliminary value estimate requested;

5. Requesting an estimated, predetermined, or desired valuation in the appraisal report, prior to the completion of the appraisal report, or requesting estimated values or comparable sales at any time prior to the completion of the appraisal report;

6. Providing an anticipated, estimated, encouraged or desired value for the subject property, or a proposed or target amount to be loaned to the Borrower, except that a copy of the sales contract may have been provided if the assignment was for a purchase transaction;

7. Providing stock or other financial or non-financial benefits to me or any entity or person related to me, my appraisal or appraisal management company, if applicable;

8. Any other act or practice that impairs or attempts to impair my independence, objectivity or impartiality, or violates law or regulation, including but not limited to, the Truth in Lending Act (TILA)  and Regulation Z, or the Uniform Standards of Professional Appraisal Practice (USPAP).

Additional Comments:

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: ██████ , SRA | Name: |
| Date Signed: 06/06/2023 | Date Signed: |
| State Certification #: Cert Gen ██████ | State Certification #: |
| or State License #: | or State License #: |
| or Other (describe): State #: | State: |
| State: FL | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 11/30/2024 | |

USPAP ADDENDUM

File No. 23-1200

| | |
|---|---|
| Borrower: | |
| Property Address: 107 Quayside Drive | |
| City: Jupiter | County: Palm Beach | State: FL | Zip Code: 33477 |
| Lender: Ryan Stumphauzer, Court Appointed Receiver for 107 Quayside Dr | |

## Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: under 3 months

Estimating market value includes a reasonable exposure time. It is our opinion (based on the market data) that a reasonable exposure time would be under 3 months. The estimated value is based on a specific date, wherein a theoretical market exposure has already occurred. To estimate a future value at the end of the marketing time starting at the (effective) date of the appraisal is considered a prospective value as opposed to the current value.

## Additional Certifications

[X] I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

## Additional Comments

| APPRAISER | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: ██████, SRA | Name: |
| Date Signed: 06/06/2023 | Date Signed: |
| State Certification #: Cert Gen ██████ | State Certification #: |
| or State License #: | or State License #: |
| or Other (describe): State #: | State: |
| State: FL | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 11/30/2024 | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: June 2, 2023 | [ ] Did Not  [ ] Exterior-only from street  [ ] Interior and Exterior |

# Exhibit B

*Redacted As Is Residential Contract for Sale and
Purchase for the sale of the Quayside Property*

# "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**eXp REALTY**®

1* **PARTIES:** _____ Ryan K Stumphauzer Court Appointed Receiver for 107 Quayside _____ ("Seller"),
2* and _____ The REDACTED Revocable Trust Agreement _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):

6 **1. PROPERTY DESCRIPTION:**
7* (a) Street address, city, zip: _____ 107 Quayside Drive, Jupiter, FL 33477 _____
8* (b) Located in: Palm Beach County, Florida. Property Tax ID #: 30434107090000490
9* (c) Real Property: The legal description is ADMIRALS COVE LT 49
10 _____
11 _____
12 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14 by other terms of this Contract.
15 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16 which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17 purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18 and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s),
19 doorbell(s), television wall mount(s) and television mounting hardware, security gate and other access
20 devices, mailbox keys, and storm shutters/storm protection items and hardware ("Personal Property").

21* Other Personal Property items included in this purchase are: _____
22 _____
23 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24* (e) The following items are excluded from the purchase: _____
25 _____

26* **PURCHASE PRICE AND CLOSING**

27* **2. PURCHASE PRICE** (U.S. currency):......................................................................... $ 12,100,000.00
28* (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ....... $ 2,300,000.00
29 The initial deposit made payable and delivered to "Escrow Agent" named below
30* **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within __3__ (if left
31 blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
32 OPTION (ii) SHALL BE DEEMED SELECTED.
33* Escrow Agent Name: Mettler Randolph Massey Ferguson Carroll & Sterlacci, P.L.
34* Address: 340 Royal Palm Way, Suite 100 Palm Beach, FL 33480 Phone: 561-833-9631
35* E-mail: mferguson@mettlerlaw.com Fax: 561-655-2835
36* (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37* days after Effective Date ................................................................$ 0.00
38 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... $0.00
40* (d) Other: _____ ............. $ _____
41 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42* transfer or other Collected funds (see STANDARD S)............................................. $ 9,800,000.00

43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44 7-7-2023 (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45* ~~July 5, 2023~~ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46 RW Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47 the counter-offer is delivered.
48* RKS (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49 initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51 received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52 furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Buyer's Initials RW                                                    Seller's Initials RKS
FloridaRealtors/FloridaBar-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6666f166-93b0-4376-b436-2023305888 ]

Form Simplicity

53* this Contract, the Closing shall occur on _____or before September 1, 2023_____ ("Closing Date"), at the time
54 established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

55
56 (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57 Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58 checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59 extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60 days.
61 (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62 unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63 extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

64
65 (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66 to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68* codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69 to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70 shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71 CLOSING OCCUPANCY BY BUYER.
72* (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74 Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75 shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76 within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77* occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78* election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80 and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81 be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82 Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.
83* **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84* this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86                                                        **FINANCING**

**8. FINANCING:**

87
88* ☒ (a) This is a cash transaction with no financing contingency.

89* ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90* Approval Period): (1) Buyer obtaining approval of a ☐conventional ☐FHA ☐ VA or ☐ other _____
91* (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐adjustable, ☐fixed or
92 adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97* (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.
102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.
106 (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

Buyer's Initials _RW_                              Page **2** of 12                     Seller's Initials _RKS_ _____

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6555185-03b7-4375-b436-202225088888 ]

Form
Simplicity

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.

111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.

115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.

120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.

126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.

132* ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133* ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any        • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)  • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
140* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)  • Other:_____Real Estate Commission_____
141 • Charges for FIRPTA withholding and reporting
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages          • Loan expenses
148 • Recording fees for deed and financing statements          • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
150 • Survey (and elevation certification, if required)           • Buyer's attorneys' fees
151 • Lender's title policy and endorsements                     • All property related insurance
152 • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9 (c)(iii) is checked.)
154* • Other:_____-----------_____

155* (c) **TITLE EVIDENCE AND INSURANCE:** At least __5__ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

Buyer's Initials _R.W_____ _____        Page **3** of 12        Seller's Initials _RKS____ _____
FloridaRealtors/FloridaBar-ASIS-6    Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6660f6f-02b7-437b-b434-2022b5066888 ]

Form
Simplicity

165 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166 liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167 **(CHECK ONE):**
168* [X] (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171 provider(s) as Buyer may select; or
172* [ ] (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173 services related to Buyer's lender's policy, endorsements and loan closing; or
174* [ ] (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176 continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177 reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178 continuation and premium for Buyer's owner's  policy, and if applicable, Buyer's lender's policy. Seller shall not
179* be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180 search ordered or performed by Closing Agent.
181 (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184* (e) **HOME  WARRANTY:** At Closing,[ ] Buyer [ ] Seller [X] N/A  shall pay for a home warranty plan issued by
185* ------------------------------------------------ at a cost not to exceed $0.00_____ . A home
186 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193 be paid in installments **(CHECK ONE):**
194* [X] (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195 Installments prepaid or due for the year of Closing shall be prorated.
196* [ ] (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197 to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198 deemed selected for such assessment(s).
199 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201 (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202 Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212 F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213 Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214 knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215 unpermitted improvements.
216 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217 desires additional information regarding mold, Buyer should contact an appropriate professional.
218 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within ___0___ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.

229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.

231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.

233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT     UNTIL     BUYER     HAS     RECEIVED     AND     READ     THE     HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.

250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* ___0___ *(if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*

Form
Simplicity

275  (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior
276  to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
277  follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
278  Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
279  Maintenance Requirement and has met all other contractual obligations.
280  (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection
281  of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans,
282  written documentation or other information in Seller's possession, knowledge, or control relating to
283  improvements to the Property which are the subject of such open or needed permits, and shall promptly
284  cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve
285  such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,
286  consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
287  or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
288  expend, any money.
289  (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
290  cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
291  to Buyer.

292  **ESCROW AGENT AND BROKER**

293  **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
294  and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
295  within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions  of
296  this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting
297  demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
298  take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
299  liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
300  the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
301  the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
302  dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
303  notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
304  extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
305  comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
306  mediation, arbitration, interpleader or an escrow disbursement order.
307  In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
308  or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
309  attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
310  shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
311  Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
312  termination of this Contract.
313  **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
314  square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
315  professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
316  and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
317  Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
318  public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
319  **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
320  **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
321  **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
322  individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
323  employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
324  all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
325  or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
326  information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
327  failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
328  beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
329  recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
330  provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Buyer's Initials ___ *RW* ___          Page **6** of **12**          Seller's Initials: *KS*

FloridaRealtors/FloridaBar-ASIS-6    Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6656f96-92b0-4375-b443-202235555888 ]

Form
Simplicity

331 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335 ## DEFAULT AND DISPUTE RESOLUTION

336 **15. DEFAULT:**
337 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349 performance.
350 This Paragraph 15 shall survive Closing or termination of this Contract.
351 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353 as follows:
354 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356 16(b).
357 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362 16 shall survive Closing or termination of this Contract.
363 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368 ## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

369 **18. STANDARDS:**
370 **A. TITLE:**
371 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
383 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385 with law.

Buyer's Initials _RW_____     Page **7** of **12**     Seller's Initials _RKS_____ _____

FloridaRealtors/FloridaBar-ASIS-6    Rev.10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 091498-800168-8327140

Form
Simplicity

Electronically Signed using eSignOnline™ f Session ID : 66565186-62b7-4375-b435-202325008888 ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

---

Buyer's Initials ___RW___  _____        Page **8** of **12**        Seller's Initials ___AG___  _____

FloridaRealtors/FloridaBar-ASIS-6    Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6650f16f-02b7-437b-b43d-202525068888 ]

Form Simplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

453 **H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.

458 **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.

464 (ii)   **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.

469 (iii)   **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.

475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

479 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

490 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

Electronically Signed using eSignOnline™ | Session ID :

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

499 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505 maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
506 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507 shall survive Closing.
508 **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
511 **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
519 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
521 **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525 upon, nor extended or delayed by, such Exchange.
526 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
527 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528 Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529 interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530 delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531 shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532 facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533 hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534 signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
535 **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539 to be bound by it.
540 **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542 rights.
543 **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
545 **S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or  received, including
546 Deposits, have become actually and finally collected and deposited in the account of  Escrow Agent or Closing
547 Agent. Closing and disbursement of funds and delivery of closing documents  may be delayed by Closing Agent
548 until such amounts have been Collected in Closing Agent's accounts.
549 **T.  RESERVED.**
550 **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552 county where the Real Property is located.
553 **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6865f1bf-03b7-4375-b434-202330086888 ]

Form
Simplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.
558 (i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.
564 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.
567 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.
578 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.
580 **W. RESERVED**
581 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

587 **ADDENDA AND ADDITIONAL TERMS**

589* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
590 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☒ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☐ O. Insulation Disclosure | ☐ AA. Licensee Property Interest |
| ☐ E. FHA/VA Financing | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ BB. Binding Arbitration |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ CC. Miami-Dade County |
| ☐ G. Short Sale | ☐ R. Rezoning | Special Taxing District |
| ☐ H. Homeowners/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | ☐ DD. Seasonal/Vacation Rentals |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy | ☐ EE. PACE Disclosure |
| ☐ J. Interest-Bearing Acct. | ☐ U. Post-Closing Occupancy | ☐ Other:_____ |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | _____ |
| ☐ L. RESERVED | ☐ W. Back-up Contract | _____ |

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : 6685f1bf-73b7-4375-b43d-20d925068881 ]

591* **20. ADDITIONAL TERMS:** Closing date to be a date chosen by seller, not prior than 20 days and no longer than 60
592 days from the effective day.

593

594 Property inspection waived. Buyer accepts the property AS-IS.

595

596 All fixtures, wall TV's, finishes, and furnishings currently onsite as of 7/01/2023 are to convey with the property.
597 Not to be exchanged, altered. Or moved. At sellers option all items may be removed from the purchase price at a
598 mutually agreed upon value between buyer and seller and sold separately as an asset sale to buyer, with a equal
599 reduction to the purchase price.

600

601 Buyer has first right of refusal to purchase the artwork and paintings.

602

603 -Personal items (clothing, accessories, etc.) are excluded from sale, and will be removed from the property prior to closing.  RW
604 -This sale is conditioned on and subject to approval by the court in the case of
605    Securities and Exchange Commission v. Complete Business Solutions Group., Inc. et al,
606    Case No. 20-cv-81205 (S.D Fla)  (the "Court")  RW
607 -Seller agrees to provide Buyer with a right of first refusal to purchase the artwork and paintings,
608    provided that any sale of the artwork and paintings will also be conditioned on and subject to approval by the Court. RKS

609 **COUNTER-OFFER**

610 ☐ Seller counters Buyer's offer.

611 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
612 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

613 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

614 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
615 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
616 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
617 *interested persons.*

618 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
619 TO BE COMPLETED.

620* Buyer: **REDACTED**                                         Date: 07/02/2023

621* Buyer: _____      Date: _____

622* Seller: _____      Date: Jul 6, 2023

623* Seller: _____      Date: _____

624 Buyer's address for purposes of notice          Seller's address for purposes of notice
625* _____          _____
626* _____          _____
627* _____          _____

628 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
629 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
630 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
631 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
632 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
633 made by Seller or Listing Broker to Cooperating Brokers.

634*            Andrew Saporito PA                                    Robert B Thomson
635 **Cooperating Sales Associate, if any**                 **Listing Sales Associate**

636*            EXP Realty                                             Waterfront Properties
637 **Cooperating Broker, if any**                          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 091498-800168-8327140

Electronically Signed using eSignOnline™ [ Session ID : 6850f186-62b0-437b-b435-20d920468886 ]

Form
Simplicity

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



**When initialed by all parties**, the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between the parties and the clauses below will be incorporated therein:

_____ Ryan K Stumphauzer Court Appointed Receiver for 107 Quayside _____ (SELLER)

and _____ The REDACTED Revocable Trust Agreement _____ (BUYER)

concerning the Property described as 107 Quayside Drive, Jupiter, FL 33477 _____

*Buyer's Initials*  RW  _____          *Seller's Initials*  RS  _____  _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**PART A.  DISCLOSURE SUMMARY**

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

Disclosure Summary For _____ Admirals Cove _____
**(Name of Community)**

1.  AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
2.  THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
3.  YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $826.16_____ PER _____month_____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
4.  YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
5.  YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
6.  THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
7.  THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
8.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
9.  THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

06/21/2023_____          REDACTED_____
DATE                                         BUYER

_____                        _____
DATE                                         BUYER

Page 1 of 2  B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE          (SEE CONTINUATION)
CR-6  Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 077374-300168-7032725

Electronically Signed using eSignOnline™ | Session ID : 8e0d3f87-7dd0-405a-a459-a265f8d97d31

Form Simplicity

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE (CONTINUED)
**PART B.**

The Property is located in a community with a mandatory homeowners' association or an association that may require the payment of assessments, charges, or impose restrictions on the Property ("Association").

1.  **APPROVAL:** The Association's approval of Buyer (CHECK ONE): ☒ is ☐ is not required. If Association approval of this transaction or the Buyer is required, this Contract is contingent upon Association approval no later than ____ (if left blank, then 5) days prior to Closing. Within __5__ (if left blank, then 5) days after Effective Date, the Seller shall initiate the approval process with Association. Buyer shall pay application and related fees, as applicable, unless otherwise provided for in Association governing documents or agreed to by the parties. Buyer and Seller shall sign and deliver any documents required by the Association, provide for interviews or personal appearances, if required, and use diligent effort to timely obtain Association approval. If approval is not granted within the stated time period above, Buyer may terminate this Contract, and shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2.  **PAYMENT OF FEES, ASSESSMENTS, AND OTHER ASSOCIATION CHARGES:**
    (a) Buyer shall pay any application, initial contribution, and/or membership or other fees charged by Association pursuant to its governing documents or applicable Florida Statutes. If applicable, the current amount(s) is:

| | | | | | |
|---|---|---|---|---|---|
| $ 500.00 per | Once | for | Application Fee | to | Admirals Cove MPOA |
| $ 250.00 per | Once | for | Dock License | to | Admirals Cove MPOA |
| $ per | | for | | to | |
| $ per | | for | | to | |

    (b) If special or other assessments levied by the Association exist as of the Effective Date, or any assessment(s) are levied after the Effective Date and prior to the Closing Date, and are due and payable in full prior to Closing Date, then Seller shall pay all such assessment(s) prior to or at Closing; or, if any such assessment(s) may be paid in installments, then Seller shall pay all installments which are due before Closing Date, prior to or at Closing, and (**CHECK ONE**): ☒ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**
    (c) Seller shall pay, prior to or at Closing, all fines imposed against the Seller or the Property by the Association which exist as of the Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

**The Association or Management Company to which assessments, special assessments or rent/land use fees are due and payable, is/are:**

| | | |
|---|---|---|
| **Contact Person** Amber Strominger | **Contact Person** | |
| **Phone** 561-746-7769 | **Phone** | |
| **Email** ambers@admiralscovepoa.com | **Email** | |

**Additional contact information can be found on the Association's website, which is:**
**www.** acmpoa.com

CR-6  Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 077374-300168-7032725

Form
Simplicity

Electronically Signed using eSignOnline™ [ Session ID : 8e003f8f-7d49-405b-a459-4385f8d59536 ]



THE CLUB AT
# ADMIRALS COVE

# Membership Initiation Fees and Dues

NOVEMBER 1, 2022 - OCTOBER 31, 2023

**Membership Application Fee $ 500**

## Initiation Fees

| | TOTAL INITIATION FEE | INITIATION FEE REFUNDABLE PORTION | INITIATION FEE NON-REFUNDABLE PORTION |
|---|---|---|---|
| Golf | $ 225,000 | $ 0 | $ 225,000 |
| Sports | $ 167,000 | $ 0 | $ 167,000 |
| Tennis | $ 151,000 | $ 0 | $ 151,000 |
| Social | $ 130,000 | $ 0 | $ 130,000 |
| Marina Golf | N/A | N/A | N/A |
| Marina Sport | N/A | N/A | N/A |

## Annual Dues and Fees

| OPERATING | GOLF | SPORTS | TENNIS | SOCIAL | MARINA GOLF | MARINA SPORT |
|---|---|---|---|---|---|---|
| Operating Dues | $ 36,740 | $ 31,075 | $ 23,566 | $ 22,425 | $ 45,924 | $ 38,843 |
| Golf & Valet Service Charge | $ 997 | $ 831 | N/A | N/A | $ 997 | N/A |
| Valet Service Charge | N/A | N/A | $ 720 | $ 720 | N/A | $ 831 |
| Food & Beverage Minimum[1] | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Food & Beverage Service Charge[2] | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 |
| Trail Fee[3] | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 |
| Employee Holiday Fund | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 |
| Marina Security Deposit | N/A | N/A | N/A | N/A | $ 5,000 | $ 5,000 |
| Marina Dockage | N/A | N/A | N/A | N/A | Last Month Deposit (Current Dockage Rate Assigned) | |

| CAPITAL | GOLF | SPORTS | TENNIS | SOCIAL | MARINA GOLF | MARINA SPORT |
|---|---|---|---|---|---|---|
| Capital Dues[5] | $ 2,676 | $ 2,220 | $ 1,620 | $ 1,536 | N/A | N/A |
| Capital Debt Assessment[6] | $ 3,528 | $ 3,048 | $ 2,100 | $ 2,088 | N/A | N/A |

1. Member has until October 31 of each Club fiscal year to satisfy the Food & Beverage Minimum or the unused balance will be charged to the Member's account.
2. Food & Beverage Service Charge is billed to each member at $ 200 a month.
3. Payable by Members who use their own golf cart on Admirals Cove golf courses. (Additional form required)
4. Golf Cart Storage and Lockers Fees if elected and billed monthly.
5. Capital dues are billed monthly at the rate of $ 223 (Golf), $ 185 (Sports), $ 135 (Tennis), $ 128 (Social)
6. Capital Debt Assessment is billed monthly at $ 294 (Golf), $ 254 (Sports), $ 175 (Tennis), $ 174 (Social)

*Dues, Fees, Charges and Minimums are subject to change by the Club and are subject to applicable Florida State Sales Tax.*

561.744.1700    200 ADMIRALS COVE BOULEVARD  |  JUPITER, FLORIDA 33477    ADMIRALSCOVE.NET

Buyer: _____    REDACTED    Buyer: _____


Electronically Signed using eSignOnline™ | Session ID : Be029ff7-f4d3-405b-ad09-49357dd3713a 1

**ADMIRALS COVE**
**COMPREHENSIVE RESALE ADDENDUM**
**(Non-Condominium)**

Comprehensive Resale Addendum to Agreement of Sale for the property address:

107 Quayside Drive, Jupiter, FL 33477 _____ ("Property") by
and between ___ Ryan K Stumphauzer Court Appointed Receiver for 107 Quayside _____ ("Seller") and
_____ The **REDACTED** Revocable Trust Agreement _____ ("Buyer").

    1.  <u>Declaration of Restrictions:</u> The Property is subject to a Master Declaration of Covenants, Restrictions and Easements for Admirals Cove ("Master Declaration") and Declaration of Covenants, Restrictions and Easements for Single Family Homes at Admirals Cove ("Single Family Declaration"), (collectively, "Declarations"). Membership in both the Admirals Cove Single Family Homeowners Association, Inc. ("Single Family Association") and Admirals Cove Master Property Owners Association, Inc. ("Masters Property Owners Association"), (collectively referred to as "Associations") is a prerequisite to ownership and the Associations have authority granted to them to assess the Property and to impose liens against the Property or the Buyer, or both, in the event the assessments are not timely paid. True and complete copies of the Declarations, Article of Incorporation, By-Laws, and Rules and Regulations of the Associations, and all amendments thereto, shall be delivered to Buyer at Sellers expense within the time allowed for delivery of evidence of title and subject to the terms and provisions of the Homeowners' Association/Community Disclosure attached to the Contract. If the documents required by said Disclosures are not delivered by Seller to Buyer, and are provided by Waterfront Properties and Club Communities, Seller shall be charged a fee of $50 for the same at Closing, payable to Waterfront Properties and Club Communities for a copy of said documents.

    2.  <u>Contingency:</u> If the Declarations provide either for either of the Associations' right of approval of Buyer or right of first refusal, this contract is contingent upon (a) the Association's approval of Buyer; or (b) right of first refusal not being exercised by Association prior to Closing. In the event Buyer is not approved or the right of first refusal is exercised, the deposit will be returned to the Buyer on demand and the contract will be null and void. The Buyer agrees to promptly (within five days from the Effective Date) make application to the Association for approval and use diligent effort to obtain such approval, including making personal appearances, if requested. Seller and Buyer shall sign and deliver all documents required by the Association to complete the transfer. Any application and transfer fees charged by the Association shall be paid by the Buyer. The cost or fee imposed by the Association to provide its estoppel letter and its certificate of approval or waiver of its right of first refusal, shall be paid by the Seller.

    3.  <u>Mold Inspection:</u>

    a) Buyer, at Buyers expense, may have a qualified professional Conduct an Inspection of the Property for mold within ___0___ (15, if left blank) days from the Effective Date ("Mold Inspection Period") and provide Seller with a copy of the Mold Inspection Report.

    b) Buyer shall be responsible for primp payment for such inspection and repair of damage to and restoration of the Property resulting from such inspection. This provision shall survive the termination of the Contract.

    c) Seller shall be responsible for the cost to remove all mold up to the sum of $___0___.

    d) In the event the Mold Inspection Report reveals the presence of mold in the Property and the estimated cost to professionally remove the mold is in the excess of the amount set forth in Paragraph 3 c) above, then Buyer may cancel the Contract by delivering written notice of such election no later than prior to expiration of the Mold Inspection Period. If Buyer timely cancels the Contract, the deposit(s) paid shall be immediately returned to Buyer and Buyer and Seller shall be released from all further obligations under the Contract, except as provided in subparagraph 3 b) above.

Rev 11/22

e) If Buyer fails to conduct the mold inspection permitted in this Paragraph or having conducted such inspection, fails to timely notify the Seller of Buyer's intent to cancel this Contract or if the mold inspection does not reveal the presence of mold in the Property or if the Mold Inspection Report does not require professional remediation to remove the mold, at a cost which exceeds the sum specified in Paragraph 3 c) above, then Buyer may not terminate this Contract pursuant to this provision.

4.  <u>Purchase of Membership</u>:

a) Buyer is hereby advised that the Master Declaration and the Bylaws of The Club at Admirals Cove, Inc., ("Club") require Mandatory Membership in the Club with the purchase of a home with a membership in Admirals Cove. Seller and Waterfront Properties and Club Communities recommend that any prospective purchaser of a home in Admirals Cove contact the Club to obtain more information regarding this matter.

b) At Closing, in addition to payment of the Purchase Price, Buyer shall purchase Seller's or _____: __X__ Full Golf, _____Tennis, _____Social, or _____Sports, (check one) Membership ("Membership") in The Club at Admirals Cove, Inc. ("Club") in accordance with the Bylaws of the Club, at the price established by the Club at the time of purchase of the Membership. Buyer shall make application for such Membership within 15 days from the date hereof or by the Closing Date, whichever occurs first. Buyer agrees to promptly make all payments, execute all documents, and provide all information and documentation required by the Club in order to purchase said Membership. In the event that the foregoing condition precedent remains unsatisfied by the Closing Date, through no fault of Buyer, this Contract shall be terminated, whereupon the deposit shall be refunded to the Buyer. Seller represents that Seller has no knowledge of any pending special assessments for said Club except in the amounts set forth on the attached Dues and Fees Schedule from the Club, which shall be prorated to the day of Closing, unless otherwise determined by the Club. All dues, fees and assessments levied by the Club on or after the Closing Date shall be paid by the Buyer. An assessment shall be deemed "levied" under this paragraph, on the date when the Club's Board of Directors or the required percentage of Club members, or both, as the case may be, has voted to approve the special assessment(s) in the manner provided by the Bylaws.

5.  <u>Dock:</u> If the Subject Property includes a dock, Buyer understands that it must obtain approval for any and all vessels to be moored at the dock and enter into a Dock License Agreement with the Master Property Owners Association.

6.  <u>Equal Housing Opportunity Disclosure:</u> A REALTOR IS REQUIRED BY LAW AND THE NATIONAL ASSOCIATION OF REALTORS CODE OF ETHICS TO TREAT ALL PARTIES IN PROPERTY TRANSACTION FAIRLY WITHOUT REGARD TO RACE, COLOR, RELIGION, NATIONAL ORIGIN, ANCESTRY, SEX, AGE, MARITAL STATUS, SEXUAL ORIENTATION, PRESENCE OF CHILDREN, OR PHYSICAL OR MENTAL HANDICAPS.

SELLER:

_____

_____

DATE: Jul 6, 2023

BUYER:

REDACTED

_____

DATE: 06/21/2023 03:40 PM

Rev 11/22

# 107 Quayside Drive Inventory updated 7-5-23

## Entry
Entry Table
2 Square Stools
1 Artificial Fig Plant in Planter
Planter1 Round Rug

## Living/Great Room
1 TV on wall
1 Leather Sofa
1 Abstract Coffee Table
2 Hour Glass Shaped Tables
Assorted Vases on TV Console (built-in)
Rug
*2 Chairs and Tray Table        RW  RKS

## Kitchen
6 Bar Stools
Varies Counter Décor

## Dining Room
Dark Wood Table with 8 Linen Chairs
2 Gray and White Vases
1 Vase with Flowers

## Primary Bedroom (first floor)
        1 Mirror on Floor
King Bed and Mattress (Suede)
2 Night Tables
2 Mirrors on Floor (attached to each other)
1 Couch
1 Under TV Console
TV
1 Abstract Table
2 Chaise Lounges
2 Stone Tables
1 Rug
*2 Benches (His & Hers Closets)   RW  RKS

## 1st Floor Bedroom
TV

## Guest Bath
Artificial Potted Plant

## Office
1 Leather Desk
1 White Velvet Chair

RKS

1 Couch
1 Ottoman
Glass End Table
3 Credenzas
1 Grey Chair
TV
Oval Rug

## Stairs & Hallway
Leather Ottoman

## Guest Bedroom 2nd Floor
Queen White and Silver  Headboard and Mattress
2 Gray Nightstands
2 Round Ottomans
Bench Foot of Bed
TV

## Guest Bedroom 2nd Floor
Queen Headboard & Mattress with White Bedding
2 Dark Charcoal Round End Tables
1 Dresser
TV
1 Small Artificial Plant

## Guest Bedroom 2nd Floor
King Gray Headboard and Mattress with White Bedding
2 Nightstands
7-5-1 Blue Lamp
White TV Console
TV
Bench at Foot of Bed

## Loft
4 Linen Swivel Chairs
Round Gray Coffee Table
Silver Rug
2 Vases
Metal Statue on Bar
Silver Picture Frame
TV
*AV Equipment in upstairs closet          *RW*   *RKS*

## Patio
TV
Assorted Table and Chairs (Brown)

## Garage
Assorted Tables and Sofas (matches inside furniture)