UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-81205-RAR

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS GROUP,
INC. d/b/a PAR FUNDING, *et al.*,

      Defendants.

_____/

**DEFENDANTS JOSEPH LAFORTE AND LISA MCELHONE'S MEMORANDUM OF LAW IN OPPOSITION TO THE RECEIVER'S MOTION FOR ORDER APPROVING THE SALE OF REAL PROPERTY LOCATED AT 107 QUAYSIDE DRIVE, JUPITER, FLORIDA 33477**

      Defendants, Joseph LaForte and Lisa McElhone (collectively the "Defendants"), by and through their undersigned counsel, file this Memorandum of Law in Opposition to the Receiver's Motion For Order Approving the Receiver's Sale of Real Property Located at 107 Quayside Drive, Jupiter, Florida, 33477 (the "Jupiter Property") (ECF 1638, the "Motion to Sell"). In the alternative, if the Court grants the Motion to Sell, the Defendants seek a stay of that order until the resolution of their pending appeal.

## BACKGROUND AND INTRODUCTION

      1.    A discussed herein, the Receiver's Motion to Sell should be denied because: the Expansion Order which brought the Jupiter Property into the Receivership Estate is the subject of a pending appeal to the Eleventh Circuit Court of Appeals; and the sale of the Jupiter Property is not needed to satisfy the Final Judgment against the Defendants, and – in any event – the Receiver will not be able to distribute the proceeds of the sale to the investors at this time because we are not yet in the distribution phase of the case. Further, the fact that the Receiver admits receiving nine (9) offers

above the asking price within days of listing the Jupiter Property for sale reflects that the Receiver may have inadvertently undervalued the home or, at a minimum, that the Receiver will very likely have the ability to sell the home at a later time for the same (or greater) value. [1]

2. Accordingly, the Defendants request that the Court deny the Receiver's request for authorization to sell the Jupiter Property. In the alternative, the Defendants request that the Court stay any Order granting the Motion to Sell until the Eleventh Circuit has ruled on the Defendants' appeal of the Expansion Order (which brought the Jupiter Property into the Receivership Estate) and the Final Judgments entered against Defendants.

## MEMORANDUM OF LAW

### I.  Legal Standard

A District Court's powers in an equity receivership include the power to permit a Receiver to sell property "where appropriate to protect the receivership estate." *Sec. & Exch. Comm'n v. Kirkland*, No. 6:06-XC-183-ORL28KRS, 2006 WL 3627557, at *2 (M.D. Fla. Dec. 11, 2006).

Federal Courts can stay judgments and other orders pending the outcome of an appeal "as part of the traditional equipment for the administration of justice." *Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 1756 (2009); *see also SEC v. Mut. Benefits Corp.*, No. 04-60573-CIV, 2021 WL 5206302, at *1 (S.D. Fla. Nov. 9, 2021). District Courts typically employ the following four-part test when deciding whether to stay an order pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id*.

---

[1] The Defendants are mindful of this Court's prior order (ECF 1634) and the need to conserve judicial resources. These objections are respectfully presented to document Defendants' position in order to preserve their legal rights consistent with Counsels' duties as officers of the Court and in keeping with Counsels' ethical obligations to vigorously advocate for their clients' rights without violating the rules of this court or the Rules Regulating the Florida Bar.

*Id.* at *2 (citing *Nken v. Holder*, 556 U.S. at 426). However, the Eleventh Circuit has clarified that a movant may also obtain a stay upon a lesser showing of a 'substantial case on the merits' when consideration of the other three factors reflects that "the balance of equities… weighs heavily in favor of granting the stay." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (citing *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)

## II. Argument

### a. The Motion to Sell Should Be Denied

The Receiver's request for authorization to sell the Jupiter Property should be denied at this time for a number of reasons. First, the Defendants have filed an appeal to the Eleventh Circuit challenging the Expansion Order which brought the Jupiter Property into the Receivership Estate, as well as the Final Judgments against them.[2] Defendants' opening briefs set forth meritorious arguments and may result in the Expansion Order being vacated and/or the Final Judgments against Defendants being reversed and remanded or significantly reduced. If the Expansion Order is vacated, the Jupiter Property will no longer be a part of the Receivership Estate and neither the Receiver nor this Court would have authority to force the return of the property to the Defendants. If the Final Judgments are reversed or reduced, the justification for the forced sale of the Jupiter Property would be mitigated or vitiated.

In view of Defendants' pending appeal, one might expect the Receiver to delay his efforts to sell the Jupiter Property. Nor does the Receiver explain why the Jupiter Property must be sold at this time, and how the Receiver proposes to use the proceeds of the sale to further the needs and objectives of the Receivership or to "protect the receivership estate". *See e.g. Kirkland*, 2008 WL 4264532 at *2 (citing the Receiver's representation that the proposed sale of real property was necessary to maintain

---

[2] *See* Mr. LaForte's Appellant brief (attached as Ex. A to DE 1612) and Ms. McElhone's Appellant brief (attached as Ex. B to DE 1612).

the recurring obligations of the receivership estate as a basis for authorizing the sale, and weighing that need against the effect on the defendant's pending appeal). The Receiver's decision *not* to address these factors is likely attributable to the fact that the Receiver's recent comments in open court and most recent quarterly report reflects that there is no compelling reason to sell the Jupiter Property at this time. As of May 1, 2023, the Receiver had more than $118 Million in cash reserves (*see* ECF 1559) – far more than is needed to fund the Receiver's continuing operations. Further, at the most recent status conference on June 29, 2023, the Receiver represented that cash reserves had increased to $123 Million (which has doubtless increased by virtue of the sale of the Paupack Property). The Receiver is also in possession of hundreds-of-millions of dollars in unliquidated assets – including, without limitation, MCA Receivables which the Receiver has valued at approximately $192 Million, a portfolio of investment real estate worth significantly more than $44 Million, and several million dollars more in art and jewelry. *Id.* [3]

Given the wealth of other assets within the Receivership Estate, there is no legitimate reason for the Receiver to sell the Jupiter Property now. The sale of the Jupiter Property is not necessary to fund the Receiver's operations, nor will it allow the Receiver to reach the stage of the case where he will be able to begin making distributions to investors. The Receivership is presently well funded and liquid and the Receiver is in possession of a wealth of other assets which can be liquidated (if necessary) and used to fund the Receivership and satisfy the judgments in this case. This is especially important here since Defendants' pending appeal could result in the Jupiter Property being returned to them. On the other hand, if the Receiver is permitted to proceed, the sale would permanently divest Defendants of their property, causing them irreparable harm.

---

[3] Notwithstanding the Court's comments in ECF 1634, the $192M valuation is the Receiver's good faith estimate of value remaining after a significant write-down was taken by the Receiver's professionals based on their experience and expertise after two years of due diligence and work on the portfolio.

The Court should also consider the fact that the Receiver obtained nine offers above the listing price within a few days of listing the Jupiter Property for sale, even though the recent spike in interest rates has suppressed the real estate market generally. This suggests that the Receiver may have inadvertently priced the Jupiter Property too low (especially considering that the property is being sold with its furnishings) or, at a minimum, that there is no urgent need to sell the Jupiter Property, as demand for properties in this specific development (Admirals Cove) remains strong despite adverse market conditions.

### b. In the Alternative, the Court Should Stay Any Order Pending the Outcome of Defendants' Appeal

In the alternative, if the Court enters an order granting the Motion to Sell, the Defendants request that the order be stayed until the Eleventh Circuit has ruled on Defendants' pending appeal of the Expansion Order and the Final Judgments against Defendants.

The Defendants can demonstrate good cause for a stay under the applicable four-part test. First, Defendants' initial briefs establish a strong likelihood of success on the merits with respect to their request for relief from the Expansion Order (which brought the Jupiter Property into the Receivership) and their request to vacate or modify the Final Judgments against them (which directly impacts their obligations, which the sale of the Jupiter Property would presumably be applied to). In particular, Mr. LaForte's brief demonstrates that the Defendants were denied due process in connection with the Court's decision to dramatically expand the Receivership Estate to include Defendants' real property (including the Jupiter Property) and other property. (*See*, generally, DE 1612, Ex. A, generally).

At a bare minimum, the appellate briefs unquestionably demonstrate a *genuine possibility* that the Expansion Order will be vacated – and this alone is a sufficient showing because the balance of equities weigh heavily in Defendants' favor on examination of the other three factors courts consider

when issuing a stay. *See Garcia*-Mir, 781 F.2d at 1453. First, there is no question that Defendants will suffer irreparable harm if they prevail on their appeal *without* a stay being granted. The Jupiter Property was intended to be Defendants permanent residence and had just been completed when the Receivership was created – and once it is sold, no act of this Court can restore the property to them.

Second, neither of the other parties to this action, nor the investors, will be harmed if the stay is granted, as the Receiver has not established an immediate need for the money that would be realized from the sale, nor any plan for how that money will be used. Indeed, if the Jupiter Property is sold now, it appears that the sale proceeds will simply be added to the $123 Million (or more) in cash the Receiver already has on hand. Given the quantity of other assets which will need to be liquidated before the Receiver can begin the process of making distributions to investors – including, but not limited to, a portfolio of 22 commercial properties – there is simply no immediate need for the Receiver to sell the Jupiter Property now.

Finally, the public interest also favors Defendants because, under the foregoing circumstances, the sale of the Jupiter Property would be unduly punitive and would effectively constitute a forfeiture. As discussed above, the Receiver has not (and cannot) show that he needs to sell the Jupiter Property in order to fund the Receiver's operations or to satisfy *any* judgment in this case. Furthermore, there has never been any express finding that the Jupiter Property was purchased with ill-gotten gains. Instead, the Expansion Order (which is on appeal) merely states that "that tainted funds, which ***could*** be the subject of disgorgement, ***may*** be found in the entities and properties identified herein." ECF 436 at P. 2. (Emphasis supplied). For all of these reasons, the forced sale of the Jupiter Property at this time would irrevocably erase Defendants' fundamental property rights, and would violate the time honored maxim that "equity abhors a forfeiture." *See e.g.*, *Dade Cnty. v. City of N. Miami Beach*, 69 So. 2d 780, 783 (Fla. 1953); *In re Belize Airways Ltd.*, 5 B.R. 152, 154 (Bankr. S.D. Fla. 1980).

## CONCLUSION

For all the reasons discussed herein, the Defendants request that the Court deny the Receiver's Motion For Order Authorizing the Receiver's Sale of Real Property Located at 107 Quayside Drive, Jupiter, Florida, 33477. In the alternative, if the Court chooses to grant the Receiver's motion, the Defendants request that the order and sale be stayed until such time as the Eleventh Circuit Court of Appeals has ruled on the Defendants' pending appeal.

**KAPLAN ZEENA LLP**
*Attorneys for Defendant Lisa McElhone*
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: /s/ *James M. Kaplan*
  JAMES M. KAPLAN
  Florida Bar No.: 921040
  james.kaplan@kaplanzeena.com
  elizabeth.salom@kaplanzeena.com
  service@kaplanzeena.com
  NOAH E. SNYDER
  Florida Bar No.: 107415
  noah.snyder@kaplanzeena.com
  maria.escobales@kaplanzeena.com

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
*Attorneys for Defendant Joseph W. LaForte*
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100

By: /s/ *David L. Ferguson*
  DAVID L. FERGUSON
  Florida Bar Number: 0981737
  Ferguson@kolawyers.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 17th day of July, 2023, I electronically filed the forgoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmissions of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *James M. Kaplan*
  JAMES M. KAPLAN