# **EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

**DEAN VAGNOZZI,**

      Plaintiff,

**v.**

**SCOTTSDALE INSURANCE COMPANY,**
**GENERAL SECURITY NATIONAL**
**INSURANCE COMPANY, GOTHAM**
**INSURANCE COMPANY, INDIAN**
**HARBOR, QBE SPECIALTY, EVANSTON**
**INSURANCE, ENDURANCE INSURANCE,**
**STAR SURPLUS, ECKERT SEAMANS,**
**CHERIN & MELLOTT, LLC,**
**JOHN PAUCIULO, ESQUIRE.**

      Defendants.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT RELIEF**

NOW COMES Plaintiff, Dean Vagnozzi ("Vagnozzi"), by and through his undersigned

counsel, and hereby files the following Complaint for Declaratory Judgment Relief against the

above-named Defendants.  In support of his Complaint, Vagnozzi states the following:

**NATURE OF ACTION**

1.     This complaint seeks a declaratory judgment concerning the amount of available

insurance proceeds under legal malpractice liability insurance policies as they relate to the

malpractice claims asserted by Vagnozzi against his former attorney, John W. Pauciulo, Esquire,

and the law firm of Eckert Seamans, Pauciulo's former firm.

2.     Vagnozzi's malpractice Complaint was filed in the Pennsylvania Court of Common Pleas of Philadelphia County and is styled as *Vagnozzi v. Eckert Seamans Cherin & Mellott and John Pauciulo,* May Term 2021 No. 002115.

3.     Vagnozzi seeks to resolve the controversy over whether his malpractice Complaint contains separate "claims" apart from claims made and complaints filed by several different parties in different litigation arising out of investments made in a merchant cash advance company, Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding").

4.     Par Funding is the subject of an SEC receivership action pending in this Court before the Honorable Rodolfo A. Ruiz, styled as *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, Case No. 20-CV-81205-RAR ("Receivership Action").

5.     Resolution of the issues set forth herein will resolve whether the available insurance proceeds to pay damages for Vagnozzi's claims and the other parties' claims are capped at the "single claim" limit of $50,000,000 under the polices, or whether Vagnozzi's Complaint includes separate "claims" that trigger the policies' aggregate limit up to $100,000,000.

6.     Resolution of this issue is critical at this time because this Court's Receiver in the Receivership Action has recently announced he and other investors in Par Funding have reached an agreement in principle with Eckert Seamans and Pauciulo.

7.     The Court will have to approve the Receiver's agreement in principle, and in doing so, will need to determine the scope of insurance coverage applicable to those claims and Vagnozzi's Complaint.

8.     The insurers named herein have taken the false position that the total available insurance limits for all claims related to Par Funding, including the claims in Vagnozzi's

2

malpractice Complaint, is $50,000,000 when, in fact, Vagnozzi's Complaint contains separate "claims" that trigger the $100,000,000 aggregate limit of the policies.

9.      Vagnozzi thus brings this declaratory judgment action requesting the Court resolve the parties' insurance coverage dispute as to whether Vagnozzi's malpractice Complaint gives rise to separate "claims" under the language of the subject insurance policies such that an additional $50,000,000 in insurance proceeds are available for Vagnozzi's claims, which are separate from claims related to Par Funding.

## PARTIES

10.     Plaintiff Vagnozzi is an adult individual who resides and is domiciled in Pennsylvania at 114 Itham Lane, Collegeville, Pennsylvania 19426.

11.     Defendant Scottsdale Insurance Company ("Scottsdale") is an insurance company, incorporated in the State of Ohio, with a principal place of business at 8877 North Gainey Center drive, Scottsdale, AZ 85258.

12.     Defendant General Security National Insurance Co. ("General") is an insurance company, incorporated in the State of New York, with a principal place of business at One Seaport Plaza, 199 Water Street, 21st Floor, New York, NY 10038.

13.     Defendant Gotham Insurance Co. ("Gotham") is an insurance company, incorporated in the State of  New York, with a principal place of business at 412 Mt. Kemble Avenue Suite 300C, Morristown, NJ 07960.

14.     Defendant Indian Harbor Insurance Co. ("Indian Harbor") is an insurance, incorporated under the laws of the State of Delaware, with a principal place of business at 70 Seaview Avenue, Stamford, CT 06902.

15.     Defendant QBE Speciality Insurance Co. ("QBE") is upon information and belief an Australian insurance company with a principal place of business at 55 Water Street, New York, NY 10041.

16.     Defendant Evanston Insurance Co. ("Evanston") is an insurance company, incorporated in the State of Illinois, with a principal place of business at 10275 W. Higgins Rd, Suite 750, Rosemond, Illinois 60018.

17.     Defendant Endurance Insurance Co. ("Endurance") is an insurance company, incorporated in the State of Delaware, with a principal place of business at 750 3rd Ave, Fl 2, New York, NY 10017.

18.     Defendant Star Surplus Insurance Co. ("Star Surplus") is an insurance company, incorporated in the State of Illinois, with a principal place of business at 399 Park Avenue, 8th Floor, New York, NY 10022.

19.     The above Defendants identified in paragraphs 11-18 are at times collectively referred to herein as "Insurance Defendants."

20.     Defendant John W. Pauciulo, Esquire ("Pauciulo") is an individual citizen of the Commonwealth of Pennsylvania, who is licensed to practice law in the Commonwealth of Pennsylvania and was a "Member" of the law firm Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans," "Eckert," or "firm").  Pauciulo presently practices at his law offices located at 1055 Westlakes Drive, Suite 300, Berwyn, Pennsylvania 19312.

21.     Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans," or "Eckert") is a limited liability corporation organized for the purpose of providing legal services to the public including, with offices located at 50 S. 16th Street, 22nd Floor, Philadelphia, PA 19102.

4

## JURISDICTION & VENUE

22.     This case is related to the SEC Receivership Action, *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, Case No. 20-CV-81205-RAR, wherein the Court has appointed a receiver over the various entities named as defendants in that action, and pursuant to its "equity jurisdiction," the Court has entered litigation stays over Vagnozzi's malpractice claims and other parties' claims against Eckert Seamans and Pauciulo which relate to Par Funding and the Receivership Action.

23.     The Court has subject matter jurisdiction because the requested declaratory judgment relief pursuant to 28 U.S.C. § 2201 relates to the Court's exercise of equity jurisdiction in the Receivership Action, in which the Court is called upon to approve or disapprove the pending agreement in principle between the Receiver and Eckert Seamans and Pauciulo, which will be funded by the Insurance Defendants.

24.     The requested declaratory judgment in this matter is therefore related and incident to the Court's equity jurisdiction in the Receivership Action such that the Court has subject matter jurisdiction to determine the parties' rights under the insurance policies in question.[1]

---

[1] By bringing this declaratory judgment action before this Court pursuant to the Court's equity jurisdiction in the Receivership Action, Vagnozzi does not suggest that the Court in the Receivership Action has jurisdiction over his malpractice Complaint or that the Court's equity jurisdiction extends so far as to permit the Court to enter a "bar order" against Vagnozzi's claims.  To the contrary, the Court's equity jurisdiction in the Receivership Action does not extend so far as to permit the Court to bar claims of non-parties such as Vagnozzi, which are asserted against non-parties, such as Eckert and Pauciulo.  *See, e.g., Digital Media Solutions LLC v. South University of Ohio, LLC*, 59 F.4th 772 (6th Cir. 2023).  Vagnozzi is, however, filing this declaratory judgment action before this Court for purposes of efficiency because the Court will shortly be determining the equity and fairness of the Receiver's proposed settlement with Eckert and Pauciulo, and the insurance coverage issues raised in this Complaint are relevant to the Court's decisions concerning the Receiver's proposed settlement in principle.

**RELEVANT FACTS SUPPORTING DECLARATORY JUDGMENT**

25.     On April 23, 2021, Vagnozzi instituted a lawsuit in Pennsylvania state court against Pauciulo and the law firm, Eckert Seamans, based on the legal services Pauciulo and Eckert performed for Vagnozzi over a period of several years.  *Vagnozzi v. Eckert Seamans Cherin & Mellott and John Pauciulo,* May Term 2021 No. 002115 ("Vagnozzi Action").  A copy of the Complaint in the Vagnozzi Action is attached as Exhibit "A."

26.     Eckert Seamans and Pauciulo are insured for liability purposes by the Insurance Defendants, which have collectively issued claims made liability policies for the policy year November 1, 2020 through November 1, 2021 ("Policy Period").

27.     While Eckert's primary insurer is Scottsdale, which has a $10,000,000 liability limit, the Insurance Defendants have collectively issued primary and excess "claims made" policies with a single claim liability limit of $50,000,000 and aggregate claim limits of $100,000,000 for the 2020-2021 Policy Period.

28.     The relevant language in the policies states that "All CLAIMS (regardless of whether they involve one or more INSUREDS) arising out of the same ACT, or series of related ACTS, shall constitute a single Claim, irrespective of the number of claimants . . ."  A true and correct copy of the primary Scottsdale Policy, which all policies issued by the Insurance Defendants incorporates and adopts, is attached as Exhibit "A."

29.     The Insurance Defendants named herein have collectively taken the position that Vagnozzi's Complaint, along with the claims made and complaints filed by several other parties, including the Receiver, all "arise out of the same ACT, or series of related ACTS" because they all relate to investments made in Par Funding's merchant cash advance business.

30.     Initially, however, the Insurance Defendants, through their legal counsel, acknowledged that Vagnozzi's claims included separate "claims" for insurance purposes, noting, in a letter to Eckert, that "with respect to the Pillar 6 Claim, based on the information available to us at this time, Vagnozzi's merchant cash advance appears to be separate from Vagnozzi's life insurance business.  Accordingly, Insurers will continue to treat the Pillar 6 Claim [a Vagnozzi related investment] as a separate claim . . .."  A copy of the November 9, 2020 letter from Insurance Defendants' counsel to Eckert is attached as Exhibit "B."

31.     However, as of July 15, 2021, counsel for the Insurance Defendants reversed positions and sent a letter to Eckert's Chief Legal Counsel, Timothy Coon, identifying the various Par Funding related claims and complaints, including Vagnozzi's, taking the position that all such claims constitute a "single claim" under the relevant policies.  A copy of the July 15, 2021 letter from the third-party administrator for the Insurance Defendants is attached as Exhibit "C."

32.     In response, Eckert, through its Chief Legal Counsel, Timothy Coon, Esquire, disputed this interpretation as it relates to the claims in the Vagnozzi Action, noting "we believe further information is needed to assess whether some of the other suits are limited to 'claims that arise out of the same Act or series of related Acts'.  As one example, the *Dean Vagnozzi* suit appears to allege different acts, claims, and time periods than those involved in the three class actions or the *Schapperle* claim."  A copy of Mr. Coon's March 21, 2022 letter is attached as Exhibit "D."

33.     The Insurance Defendants' stated position in its counsel's July 15, 2021 letter – that all of the identified cases constitute a "single claim" under the subject policies – drastically impacts the available insurance proceeds to satisfy the claims in the Vagnozzi's Action because,

if accurate, the available insurance proceeds would be capped at the single claim limit of $50,000,000, which would need to be shared by Vagnozzi with all other claimants asserting claims related to Par Funding.

34.     While Vagnozzi's malpractice complaint does include claims related to investments in Par Funding, as Eckert notes, the Vagnozzi Action also contains legal malpractice claims that have no connection to Par Funding investments.

35.     For example, the Vagnozzi Action includes acts of malpractice related to Vagnozzi's solicitations for a company called Fallcatcher, Inc., which related to investments made in a company that developed a method to assist healthcare insurance companies detect fraudulent billing practices by medical providers.

36.     The Fallcatcher investments were found by the Securities and Exchange Commission ("SEC") to be illegal and in violation of federal securities laws despite the advice by Pauciulo and Eckert to the contrary.

37.     Similarly, Vagnozzi's malpractice Complaint includes claims related to eight life insurance settlement funds called "Pillar Life Settlement Funds 1-8," whereby Vagnozzi, following Pauciulo's legal advice, solicited funds from investors to buy life insurance policies from about 2010-2018.

38.     The SEC likewise determined Vagnozzi's Pillar Life Settlement Funds 1-8 were illegal and in violation of federal securities laws despite the advice by Pauciulo and Eckert to the contrary.

39.     Neither the Fallcather investments nor the Pillar Life Settlement Funds 1-8 involved investments in Par Funding and each were declared illegal by the SEC as a direct result of the legal malpractice of Pauciulo and Eckert.

8

40.     Pauciulo's and Eckert's malpractice with respect to the legality of the Fallcatcher investments and the Pillar Life Settlement Funds 1-8 each caused Vagnozzi to suffer enormous financial and reputational damages which are completely independent from the harm caused to Vagnozzi related to the investment funds in Par Funding.

41.     Thus, the claims in Vagnozzi's Complaint related to Fallcatcher and Pillar Life Settlement Funds 1-8 do not "arise out of the same ACT, or series of related ACTS" as the complaints and claims premised on the illegality of investments in Par Funding.

42.     Vagnozzi's Fallcatcher and Pillar Life Settlement Fund claims are thus separate "claims" from the Par Funding related "claims," and therefore trigger the aggregate coverage of $100,000,000 under the subject insurance policies.

43.     Even though the Vagnozzi Action contains claims separate from the claims related to Par Funding, recently the Receiver appointed in the Receivership Action announced that he and investors in Par Funding have reached a "settlement in principle" with Eckert and Pauciulo, whereby the Insurance Defendants, on Eckert and Pauciulo's behalf, have agreed in principle to settlement terms.  (Those terms are confidential and thus are not repeated or attached to this Complaint.)

44.     The Receiver's agreement in principle fails to take into account the fact that the Vagnozzi Action has separate claims that do not "arise out of the same Act or series of related Acts" as the Par Funding related claims, which trigger the insurance policies' aggregate limits of $100,000,000.

## COUNT I
### Vagnozzi v. Insurance Defendants
### Request for Declaratory Judgment, 28 U.S.C. § 2201

45.     Plaintiff hereby incorporates all allegations of this Complaint as though same were fully set forth herein at length.

46.     The Policies issued by the Insurance Defendants covering the liability of Eckert Seamans and Pauciulo for the Vagnozzi Action have single claim limits of $50,000,000 and an aggregate claim limit of $100,000,000 for multiple claims.

47.     The Policies all state that "All CLAIMS (regardless of whether they involve one or more INSUREDS) arising out of the same ACT, or series of related ACTS, shall constitute a single Claim, irrespective of the number of claimants . . ."

48.     The Insurance Defendants have taken the position that the Vagnozzi Action is part of the many actions and claims asserted against Eckert and Pauciulo related to investments in Par Funding such that they all constitute a "single Claim" which arise out of the "same Act or series of related Acts" under the Policies.

49.     The Vagnozzi Action alleges separate acts of malpractice related to Fallcatcher, Inc. and Pillar Life Insurance Settlements Funds 1-8 that have no connection to Par Funding.

50.     The Vagnozzi Action thus constitutes separate claims under the Insurance Defendants' Policies such that an additional $50,000,000 of insurance proceeds – apart from the $50,000,000 available to settle the Receiver's and other claims -- is available to cover the liability of Eckert and Pauciulo for Vagnozzi's claims.

51.     There is a real and actual controversy concerning the interpretation and meaning of the aforementioned policy language such that the Court should declare the parties' rights pursuant to 28 U.S.C. § 2201.

10

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a declaratory judgment as follows:

(a)  Declaring that the claims in the Vagnozzi Action are not part of the "single claims" related to Par Funding, but constitute separate claims under the insurance policies issued by the Insurance Defendants;

(b)  Declaring that the available insurance proceeds to cover the liability of Eckert Seamans and Pauciulo for the claims in the Vagnozzi Action is $50,000,000; and

(c)   Entering any further relief deemed just and equitable under the circumstances.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
Telephone: 215-735-3900
Fax: 215-735-2455
E-mail: gbochetto@bochettoandlentz.com

By:      */s/ George Bochetto*
George Bochetto, Esquire
*Pro Hac Vice*
*Attorneys for Plaintiff Dean*
*Vagnozzi*

11

And

EATON & WOLK, PL
*Local Counsel for Bochetto & Lentz, P.C.*
2665 S. Bayshore Drive, Suite 609
Miami, Florida 33133
Telephone:  305-249-1640
Email:  wwolk@eatonwold.com
mcomas@eatonwolk.com

By:      *s/William G. Wolk*_____
       WILLIAM G. WOLK
       FBN: 103527

# **EXHIBIT A**

**DECLARATIONS**
**ELITE LAWYERS LIABILITY**
**PRIMARY INDEMNIFICATION POLICY**

LWS0000677
Renewal of Number

 SCOTTSDALE INSURANCE COMPANY®

**Policy Number**
**LWS0000869**

Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**NAMED INSURED AND MAILING ADDRESS:**

Eckert Seamans Cherin & Mellot,LLC
600 Grant Street, U.S. Steel Tower, 44th Floor
Pittsburgh, PA 15219

**AGENT NAME AND ADDRESS:**

**Huntersure LLC**
229 Seventh Street, Suite 303
Garden City, NY 11530

Agent No.: _____ 31521

**POLICY PERIOD:**    From: November 1, 2020    To:    November 1, 2021
**12:01 A.M. Standard Time at the Name of the INSURED'S mailing address.**

Limit of Liability..............................................................................$    10,000,000

In the aggregate including reasonable costs, charges and expenses

**Round The Clock Reinstatement of the Limit** ....................................... Yes ☒ No ☐

**Retention:**

Retention (a) each and every CLAIM including reasonable costs, charges and expenses:.......$    750,000
Retention (b) in the aggregate including reasonable costs, charges and expenses: ................$    1,500,000
Retention (c) each and every CLAIM including reasonable costs, charges and expenses:.......$    100,000

**Premium:**..............................................................................$    895,000

**Choice of Law in the event of a Policy Dispute:** Pennsylvania

**Payment Terms:** 30 Days

**Date of Proposal:** September 21, 2020

**Arbitrator or Arbitration Association:** _____

**INSURER'S Representatives:** Anthony P. Spain • Mendes & Mount, LLP • 750 Seventh Avenue • New York, NY 10019

**INSURED'S Representatives:** Risk Strategies Company • 2040 Main Street, Suite 450 • Irvine, CA 92614

**INSURER(S):** Scottsdale Insurance Company

_____ 40% _____ % part of each dollar of limit and premium expressed hereon and of payment thereunder

**Policy and endorsements attached at inception:** (Attached on second page)

**THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.**

THE DECLARATIONS, TOGETHER WITH THE POLICY FORMS, ENDORSEMENTS, IF ANY,
AND APPLICATION, COMPLETE THE ABOVE-NUMBERED POLICY.

LWS-D-1 (8-10)

ESCM_DV-0122246

(Declarations continued)

**Policy and endorsements attached at inception:**

- Extended Reporting Period Amendatory Endorsement
- Damages Amendatory Endorsement
- Amended Definition of Claim Endorsement
- Amended Merged and Acquired Individuals, Groups or Firms Condition
- Knowledge of Claim Endorsement
- Other Insurance Condition Endorsement
- Fee Extension Endorsement
- Amended Definition of Employee Endorsement
- Amendedatory Endorsement
- Self Defense Endorsement
- Amended Definition of Firm Endorsement

"The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Insurance Guaranty Association. Placed by: (RSC Insurance Brokerage Inc., License No. 68844)."

THE DECLARATIONS, TOGETHER WITH THE POLICY FORMS, ENDORSEMENTS, IF ANY,
AND APPLICATION, COMPLETE THE ABOVE-NUMBERED POLICY.

LWS-D-1 (8-10)

ESCM_DV-0122247

**SCOTTSDALE INSURANCE COMPANY®**

A Stock Insurance Company, herein called the Company

## ELITE LAWYERS PRIMARY INDEMNIFICATION FORM

THIS POLICY, SUBJECT TO ITS TERMS, CONDITIONS, EXCLUSIONS AND LIMITATIONS, IS APPLICABLE ONLY TO **CLAIMS** FIRST MADE AGAINST ANY **INSURED** AS DESCRIBED HEREIN DURING THE **POLICY PERIOD** OR ANY APPLICABLE EXTENSION THERETO. THE LIMIT OF LIABILITY AVAILABLE TO PAY ANY **DAMAGES** OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIMS EXPENSES. CLAIMS EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THIS IS A NON-CANCELLABLE POLICY EXCEPT AS PROVIDED FOR HEREIN.

Whereas the **FIRM** has made to the **INSURER** herein a written application of insurance containing particulars and statements ("the Application") which it is hereby agreed are material and the basis of the contract, and has paid or has agreed to pay the sums stated in the Declarations as consideration to the **INSURER:**

### I. COVERAGE

This policy is to indemnify, subject to its terms, conditions, exclusions and limitations, any **INSURED** (as hereinafter defined) in respect of any **CLAIM** first made against any **INSURED** during the **POLICY PERIOD** by reason of any **ACT** (as hereinafter defined) committed at any time prior to the end of the **POLICY PERIOD** wherever such **ACT** was or may have been committed or alleged to have been committed:

A. by any **INSURED,** or any other person or entity in the conduct of any business conducted by or on behalf of the **FIRM** in its professional capacity as Attorneys, Counselors at Law or Notaries; or

B. by any **INSURED** acting in his/her professional capacity as Attorney, Counselor at Law or Notary of the **FIRM** (whether or not in the name of the **FIRM**), provided always that either (a) a portion of the fee for legal or non-legal services (if a fee is charged, and regardless of whether such fee is actually collected) accruing from such work inures to the benefit of the **FIRM** or (b) such work was performed with the prior written approval of the **FIRM.**

If, without the prior written approval of the **FIRM,** a fee is charged by any **INSURED** acting in his/her professional capacity as Attorney, Counselor at Law, or Notary and no portion of such fee in fact inures to the benefit of the **FIRM,** then this section shall not be applied to deny cover to any **INSURED** who did not benefit from such fee.

In extension and not in limitation of the foregoing such business or work shall be deemed to include services as an administrator, executor, trustee, guardian, receiver, conservator, mediator, arbitrator, other dispute resolution neutral, committee for incompetent, lobbyist, agent to title insurance company and/or designated issuing attorney to a title insurance company, or other fiduciary, or similar agent or advisor.

### II. DEFINITIONS

A. **ACT** shall mean any act, error or omission (whether of acts, facts, law or otherwise), breach of contract for professional services, breach of duty, inducement of breach of contract or duty, libel or slander, false arrest, detention or imprisonment, wrongful entry or eviction, invasion of the right of private occupancy, malicious prosecution, abuse of process, violation of the right of privacy, or any allegation thereof.

B. **CLAIM** shall mean:

1. any written demand in which **DAMAGES** are sought against any **INSURED;**

2. any written notice received by any **INSURED** from, or on behalf of, any person that it is the intention of such person to hold the **INSURED** responsible for the results of any specified **ACT;**

3. written notice of the commencement of any judicial, administrative or other proceeding against any **INSURED;** or

4. a written request made to an **INSURED** to toll or waive a statute of limitations relating to a potential **CLAIM.**

All **CLAIMS** (regardless of whether they involve one or more **INSUREDS**) arising out of the same

ESCM_DV-0122248

**ACT,** or series of related **ACTS,** shall constitute a single **CLAIM,** irrespective of the number of claimants and shall be deemed to have been made during the **POLICY PERIOD** in which such **CLAIM** arising from the **ACT** or series of related **ACTS** is first made against such **INSUREDS** without regard to the **POLICY PERIOD(S)** in which later **CLAIMS** arising out of such **ACT** or series of related **ACTS** are asserted.

C.   **DAMAGES** shall mean a monetary judgement, award or settlement and shall include, where insurable by law, compensatory damages, penalties in the nature of punitive damages, and/or punitive damages.

D.   **EMPLOYEE** shall include any natural person working with the **FIRM** whom the **FIRM** designates as an **EMPLOYEE** for the purposes of this policy at the time notice of the matter is first provided to the **INSURED.**

E.   **FIRM** shall mean the persons carrying on business under the **Named Insured** as stated in the Declarations herein (whether as a partnership, professional corporation, or otherwise) and any associated or subsidiary entities, sole proprietorships, partnerships that are owned and operated by one or more partners of the **FIRM** which are required to be established by law or local regulations for the sole purpose of conducting business by or on behalf of the **FIRM** in the **FIRM'S** professional capacity as attorneys, counselors at law or notaries, and others as more fully described in the policy and shall also include their **Predecessors in Business** as stated in the Declarations.

F.   **INSURED** shall mean the **FIRM** and each of the following persons (and/or heirs and estates) as defined in 1. through 5. below, but only with respect to any **CLAIM** arising out of any **ACTS** committed or alleged to have been committed during a period when the person who committed or is alleged to have committed the **ACTS** was acting on behalf of the **FIRM** within the scope of Sections I.A. or I.B., above:

1.   the partners, shareholders, officers and directors of the **FIRM** and any other person or persons who may at any time and from time to time be a partner, shareholder, officer, or director in the **FIRM;**

2.   the partners, shareholders, officers and directors no longer in the **FIRM** who were

partners, shareholders, officers and directors in the **FIRM** at the time of the **ACT;**

3.   the **FIRM'S EMPLOYEES** or former **EMPLOYEES,** but only with respect to any **ACT** committed in the course of their employment by the **FIRM** in the conduct of the **FIRM'S** business, or as provided in section I.B. above;

4.   persons designated "counsel" or "of-counsel" to the **FIRM** but only in their capacities as such, or as provided in section I.B. above; and

5.   former partners, shareholders, officers and directors of the **FIRM** and **EMPLOYEES** in respect of services performed.

1. through 5. above are understood to include, where applicable, Professional Corporations and directors, officers, stockholders, and employees of the Professional Corporations.

G.   **INSURER** shall mean the **INSURER** and/or **INSURERS** named on the Declarations.

H.   **POLICY PERIOD** shall mean the period of time stated in the Declarations or any shorter period resulting from policy cancellation.

III.   **EXCLUSIONS**

This policy does not apply to:

A.   any **CLAIM** or circumstance in respect of which any **INSURED,** before the inception date of the **POLICY PERIOD,** has given valid written notice to any **other insurance carrier** or is disclosed in the Application;

B.   any **CLAIM,** other than those excluded by Exclusion III.A. above, for which an **INSURED** is entitled to indemnity hereunder which is insured by any other policy or policies under which payment of the **CLAIM** is actually made, except in respect of any excess beyond the amount or amounts of such payments under such other policy or policies. This exclusion shall not apply to policies specifically written as excess insurance over the primary **Limits of Liability** of this policy. If a **CLAIM** falls both within this exclusion and Exclusion III.A. above, Exclusion III.A. above shall be deemed to apply;

C.   any **CLAIM** arising out of any **INSURED** acting in the capacity of a director and/or officer of any entity other than as a director and/or officer of an

ESCM_DV-0122249

INSURED Professional Corporation. However, coverage shall apply to any **CLAIM** arising out of the actual or alleged performance of professional services on behalf of the **FIRM** within the scope of Sections I.A. or I.B. by any **INSURED** for such entity;

D. any **CLAIM** arising under the Employee Retirement Income Security Act of 1974 Public Law 93-406 and amendments thereto against any **INSURED** while acting as a fiduciary within the meaning of said Act. Nothing in the foregoing shall be deemed to exclude coverage for **ACTS** committed while providing legal services as otherwise provided by the policy;

E. any **CLAIM** alleging the fraud or dishonesty of any **INSURED** if a judgment or other final adjudication shall establish that such **INSURED** committed or personally acquiesced in the commitment by another **INSURED** of active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent. However, nothing contained in the foregoing shall exclude coverage to the **FIRM,** or to any other **INSURED** who was not so adjudged to have committed or personally acquiesced to such fraud or dishonesty as described above, except that this policy shall then only pay in excess of the full extent of the assets in the **FIRM** of any partner who was so adjudged to have committed or personally acquiesced to such fraud or dishonesty as described above and any other personal assets of such partner in excess of any amount owed to the **FIRM** recovered by the **FIRM** shall inure, to the extent of the amount paid by this policy, to the benefit of the **INSURER.** Solely for the purposes of this Exclusion, the term "personally acquiesced" shall mean having personal knowledge of the fraud or dishonesty of another **INSURED** and remaining passive prior to or contemporaneously with the time that such fraud or dishonesty occurs;

F. any **CLAIM** for bodily injury to, or sickness, disease or death of any person, or injury to or destruction of any tangible property, arising out of **ACTS** of any **INSURED** unless it arises out of **ACTS** committed in their professional capacity, or as provided in section I.B.;

G. any **CLAIM** for fines or penalties in the nature of fines (however, this shall not be construed as an exclusion of punitive damages) against any **INSURED,** but this exclusion shall not apply to reasonable costs, charges and expenses incurred in the defense of any **CLAIM** otherwise covered by this policy which demands fines or penalties in the nature of fines in addition to compensatory damages;

H. any **CLAIM** arising out of any **ACT** committed by an **INSURED** in connection with any business enterprise not an **INSURED** hereunder if, at the time of such **ACT:**

1. the **FIRM** or any partner, shareholder, officer or director, or **EMPLOYEE** of the **FIRM,** in a non-fiduciary capacity, has an ownership interest in such business enterprise. Ownership interest as used in this Exclusion shall be deemed to mean five percent (5%) or more of the issued and outstanding voting stock of a publicly-traded company (or ten percent [10%] if the **FIRM** did not hold any part of such ownership interest nor have any knowledge of the ownership by the partners, shareholders, officers, or directors, or **EMPLOYEES**) or twenty-five percent (25%) or more of the ownership of any other business enterprise; or

2. the **FIRM** or any partners, shareholders, officers, or directors, or **EMPLOYEES** of the **FIRM** control, operate or manage such business enterprise in a non-fiduciary capacity. For purposes of this paragraph and notwithstanding the terms of Exclusion C., the holding by a partner or **EMPLOYEE** of the **FIRM** of a position on the board of directors, board of trustees, or equivalent body (or a committee of such board or body), and the position of company secretary/clerk shall not in itself be deemed to constitute control, operation or management of such business enterprise;

I. any **CLAIM** made by an **INSURED** or former **INSURED** against another **INSURED** unless it arises out of an **ACT** committed by or alleged to have been committed by such other **INSURED** in his or her rendering or failing to render professional services as Attorney, Counselor at Law or Notary; or

J. any **CLAIM** for a return, withdrawal, or reduction of fees and/or receivables charged or chargeable.

ESCM_DV-0122250

## IV. CONDITIONS

### A. LIMITS

1. The **Limit of Liability** of the **INSURER** shall not exceed the sum stated as the **Limit of Liability** in the Declarations for all **CLAIMS** made against all **INSUREDS** during the **POLICY PERIOD,** including reasonable costs, charges and expenses incurred in connection with such **CLAIMS,** subject to the terms, conditions, exclusions and limitations of this policy.

2. In the event that the **Limit of Liability** stated as the **Limit of Liability** in the Declarations is fully exhausted or partially eroded by the payment of any **CLAIM** including reasonable costs, charges and expenses, then a reinstated amount equal to the amount by which the **Limit of Liability** is exhausted or eroded shall subsequently become applicable to any other **CLAIM** made against the **INSURED** during the **POLICY PERIOD,** provided however, that such amount shall be in excess of the total of (a) the remaining amount of the **Limit of Liability,** if any; and (b) the remaining amount of the **Excess Limits Over Primary** as stated in the Declarations, if any. Only upon complete exhaustion of the **Limit of Liability** and **Excess Limits Over Primary** shall any such reinstated amount be applied to any **CLAIM.** The **INSURERS'** maximum liability for all **CLAIMS** made in any **POLICY PERIOD,** including any reinstated amount, shall be limited to an amount equal to twice the **Limit of Liability.**

3. All **CLAIMS** arising from the same **ACT** or series of related **ACTS** shall constitute a single **CLAIM** and a maximum of one **Limit of Liability** is applicable to the total amount of such **CLAIM.**

### B. RETENTION

In respect of any **CLAIMS** covered hereunder, this policy is only to pay the excess of the **Retention** stated in **Retention** (a) of the Declarations in respect of each and every such **CLAIM,** including reasonable costs, charges and expenses. If however, the aggregate of payments by the **INSURED** in respect of the **Retention** stated in **Retention** (a) of the Declarations for all **CLAIMS** attaching during the **POLICY PERIOD,** exceeds the amount stated in **Retention** (b) of the Declarations, then the **Retention** shall be reduced to the amount stated in **Retention** (c) of the Declarations for the remainder of the **POLICY PERIOD.** If because of partial exhaustion, the remaining balance of the **Retention** set forth in **Retention** (b) of the Declarations is less than the **Retention** set forth in **Retention** (c) of the Declarations; then the **Retention** set forth in **Retention** (c) of the Declarations shall apply to each and every **CLAIM** and in no event shall the **INSURER** be liable for any amounts of the **CLAIM** until the **INSURED** has paid the applicable **Retention** stated in **Retention** (a) and **Retention** (b) of the Declarations or the **Retention** stated in **Retention** (c) of the Declarations. If because of partial exhaustion, the remaining balance of the **Retention** set forth in **Retention** (b) is less than the **Retention** set forth in **Retention** (a) of the Declarations, but greater than the **Retention** set forth in **Retention** (c) of the Declarations, then the remaining balance of the **Retention** set forth in **Retention** (b) shall apply to each and every **CLAIM** until such remaining balance is less than the **Retention** set forth in **Retention** (c) of the Declarations, after which the **Retention** set forth in **Retention** (c) of the Declarations shall apply to all subsequent **CLAIMS.** All **CLAIMS** arising from the same **ACT** or series of related **ACTS** shall constitute a single **CLAIM** and a maximum of one **Retention** is applicable to the total amount of such **CLAIMS.**

The **INSURER** agrees that if any **INSURED** purchases separate insurance, then this policy, subject to its terms, conditions and limitations, shall pay the excess of either:

1. The **Retention** stated in the Declarations; or

2. The amount of any recoveries under such separate insurance if those recoveries are greater than the amount of aforesaid **Retention.**

The amount of any recoveries under such separate insurance shall apply as though borne by the **INSURED.**

### C. PREMIUM

This policy is issued for the **Premium** as stated in the Declarations.

ESCM_DV-0122251

D. **CANCELLATION CLAUSE**

This policy is non-cancellable during the **POLICY PERIOD** as stated in the Declarations, except as set forth below.

1. One or more **INSURERS** have their authority to act as an approved Surplus Lines Insurer or an Authorized Insurer withdrawn by any applicable regulatory body;

2. One or more **INSURER***S* fail to maintain a rating of at least "A-" by A.M. Best and/or Standard & Poor's;

3. One or more **INSURERS** is declared insolvent or placed under the protection of Chapter 11 or similar proceedings; or

4. One or more **INSURERS** is acquired by or merged with another entity possessing a rating of less than "A-" by either A.M. Best and/or Standard & Poor's.

Cancellations as a result of Condition D.1., 2., 3. or 4. above may be instituted at the sole discretion of the **FIRM.** However, the **FIRM** shall only have the right to cancel the participation of that **INSURER** which has failed to maintain its status as an approved Surplus Lines Insurer or Authorized Insurer, has failed to maintain its A- rating and/or is declared insolvent. Cancellation must be initiated by the **FIRM** within thirty (30) days from the latest date on which the **INSURER** lost its authority, failed to maintain its A- rating was declared insolvent, and/or the **INSURED** became aware of such change in status, via certified or registered mail, to the **INSURED'S representative** as stated in the Declarations. Notice of Cancellation should state when such coverage shall be terminated. Return premiums due to the **FIRM** shall be calculated on a pro rata basis effective the date of cancellation. In the event that there are any notified **CLAIMS** or circumstances, then the **Premium** shall be deemed fully earned and no return premium will be forthcoming. The effective date of cancellation shall be determined by the **FIRM** and shall take effect no earlier than the earliest date to which the **INSURER** lost its authority, was downgraded and/or was declared insolvent. The failure of the **FIRM** to cancel such coverage immediately at the time of any of the above referenced provisions arising shall not preclude the **FIRM** from exercising such cancellation at a later date during the **POLICY PERIOD**

provided such notice is within the aforementioned thirty (30) days.

E. **EXTENDED REPORTING PERIOD**

If the **INSURER** refuses to renew this policy or the **FIRM** declines to renew this policy, the **FIRM** shall then have the right, in consideration of the appropriate additional premium, to an **Extended Reporting Period.** An **Extended Reporting Period** does not extend the **POLICY PERIOD** or change the scope of coverage provided. Subject to the policy's terms, conditions, exclusions and limitations, the policy is extended to apply to **CLAIMS** made against any **INSURED** during the **Extended Reporting Period** selected below but only when such **CLAIMS** arise out of **ACTS** committed prior to the expiration date of this policy.

To exercise this right, the **FIRM** must give notice in writing no later than thirty (30) days after the expiration date of this policy, together with the appropriate additional premium amount as set forth below, and in the event of failure by the **FIRM** to give such notice and pay such additional premium amount prior to such date, it shall not at a later date be able to invoke this extension. The sending of notice by registered or certified mail, or by facsimile transmission and the provision of the appropriate premium amount to the **INSURED'S Representatives,** as stated in the Declarations, shall be sufficient proof of notice and payment by the **FIRM,** respectively.

The appropriate additional premium and corresponding **Extended Reporting Period** shall be at the election of the **FIRM** either:

1. for one hundred percent (100%) of the annualized **Premium** if **INSURERS** refuse to renew or one hundred fifty percent (150%) of the annualized **Premium** if the **FIRM** declines to renew for a twelve (12) calendar month **Extended Reporting Period;**

2. for one hundred seventy-five percent (175%) of the annualized **Premium** if **INSURERS** refuse to renew or two hundred percent (200%) of the annualized **Premium** if the **FIRM** declines to renew for a twenty-four (24) calendar month **Extended Reporting Period;** or

ESCM_DV-0122252

3. for two hundred twenty-five percent (225%) of the annualized **Premium** if **INSURERS** refuse to renew or two hundred seventy-five percent (275%) of the annualized **Premium** if the **FIRM** declines to renew for a thirty-six (36) calendar month **Extended Reporting Period.**

The quotation by the **INSURER** of a different **Premium** or **Retention** or **Limit of Liability** or changes in the policy language for the purpose of renewal shall not constitute a refusal to renew by the **INSURER.**

An **Extended Reporting Period** does not reinstate or increase the **Limits of Liability.** The **Limit of Liability** for the **Extended Reporting Period** shall be part of, and not in addition to, the **Limit of Liability** for the **POLICY PERIOD.**

The right to the **Extended Reporting Period** shall not be available to the **FIRM** where cancellation or nonrenewal by the **INSURER** is due to nonpayment of premium or failure by the **FIRM** to pay such amounts in excess of the applicable **Limit of Liability** or within the amount of the applicable **Retention.**

At the commencement of the **Extended Reporting Period** the entire premium shall be deemed to be earned, and in the event the **FIRM** terminates the **Extended Reporting Period,** for any reason, the **INSURER** will not be liable to return any premium paid for the **Extended Reporting Period.**

F. **CLAIMS PROCEDURES**

1. The **FIRM** shall, as soon as practicable, give to the **INSURER** notice in writing of any **CLAIM** made against any **INSURED** as a condition precedent to the **INSURED'S** right to be indemnified under this policy with respect to such **CLAIM.** For the purposes of this policy the date which such **CLAIM** is made against any **INSURED** shall be the date on which any **INSURED** receives a written demand or notice and shall be the date on which such **CLAIM** attaches to the policy. The **FIRM** shall further, upon request, give to the **INSURER** such information as the **INSURER** may reasonably require and is in the **FIRM'S** power to give.

2. If any **INSURED** shall become aware of any circumstance which may subsequently give rise to a **CLAIM** being made against any **INSURED** in respect of any **ACT** and if, during the **POLICY PERIOD** or **Extended Reporting Period,** written notice is given to the **INSURER** providing the most comprehensive details available regarding:

a. the specific circumstance or circumstances, including, if possible, the specific **ACT** or **ACTS** which the **INSURED** believes may give rise to a **CLAIM;** and

b. the manner in which the **INSURED** first became aware of such circumstance or circumstances,

then any **CLAIM,** which may subsequently arise therefrom, shall, for the purposes of this policy, be treated as a **CLAIM** made on the date on which such notice was given to the **INSURER.**

For the purposes of giving notice to the **INSURER** under **CONDITIONS** F.1. and F.2. above, such notice shall be given to the **INSURER'S Representative** as stated in the Declarations. Thereafter **INSURER'S Representatives** (or any substitute as may be subsequently appointed by **INSURERS** and advised to the **FIRM**) shall act on behalf of all **INSURERS** with respect to any such **CLAIM** or circumstance.

3. An **INSURED** shall not be required to contest any **CLAIM** by legal proceedings in the event such **CLAIM** can, by agreement with the claimant, be contested by arbitration in accordance with the rules obtained from the American Arbitration Association, or any other equivalent body or association in any non-USA jurisdiction in which the **CLAIM** is brought. The **INSUREDS** shall give to the **INSURER'S Representatives** written notice of the intention to refer such **CLAIM** to arbitration.

4. In the event that a **CLAIM** is to be contested, the defense shall be conducted by or on behalf of any **INSURED** in cooperation with the **INSURER** and by defense counsel selected by the **INSURED** and approved by the **INSURER,** such approval not to be unreasonably withheld. It is agreed that the

ESCM_DV-0122253

**INSURED** and their attorneys shall co-operate fully with the **INSURER'S Representatives** during the course of such defense, including but not limited to:

a. providing such information as may reasonably be required by the **INSURER'S Representatives;**

b. consulting with the **INSURER'S Representatives** with respect to the incurring of reasonable costs, charges and expenses covered hereunder in relation to such defense; and

c. consulting with the **INSURER'S Representatives** with respect to **CLAIM** management and **CLAIM** settlement strategies, including providing the **INSURER'S Representative** with information on specific settlement offers made by claimants. No **CLAIM** for which indemnity is sought hereunder shall be settled by any **INSURED** without the consent of the **INSURERS,** such approval not to be unreasonably withheld, and the **FIRM** shall immediately notify the **INSURER'S Representatives** of any settlement offer made to any **INSURED** with respect to any **CLAIM.**

In the event that the **INSURED** is not materially in compliance with the foregoing, the **INSURER** shall be entitled, (at their own expense) but not obligated to, to take over and conduct in the name of any **INSURED** the defense or settlement of any such **CLAIM.** In doing so, the **INSURER** shall advise the **INSURED** in writing of its intention to take over such **CLAIM** and the **INSURED** shall cooperate and provide the **INSURER** with such information as is reasonably requested.

5. If the **FIRM** shall deem it advisable to effect a particular settlement of **CLAIM,** either prior to, or during, any arbitration proceedings, or prior to, or while in litigation, the **FIRM** shall give to the **INSURER** written notice of the specific terms of the proposed settlement and may, if not consented to by the **INSURER,** refer the matter for decision to the **Arbitrator** or **Arbitration Association,** mutually agreed upon by the **FIRM** and the **INSURER,** for this specific purpose prior to the inception date of this policy and as stated in the Declarations. If such **Arbitrator** or **Arbitration Association** shall rule in writing (after first affording an opportunity to both the **FIRM** and counsel to the **INSURER** to be heard) that the proposed settlement is advisable from the standpoint of the **FIRM** as well as the **INSURER** after taking into consideration all the circumstances, then this policy subject to the terms, conditions, exclusions and limitations hereof shall deem the settlements and its amount to be reasonable, but not constitute a decision on coverage. Any expenses of such a referral including the compensation of any **Arbitrator** or **Arbitration Association,** shall be apportioned between the **FIRM** and the **INSURER** in the proportion which the amount paid by each in any final settlement of the **CLAIM** bears to the total settlement. If the **CLAIM** is finally settled or otherwise disposed of without any payment to the claimant then the expenses of such referral shall be paid in equal shares by the **FIRM** and the **INSURER.**

G. **COSTS**

The **INSURER** agrees that subject to all of the terms, conditions, exclusions and limitations of this policy, it will pay all reasonable costs, charges and expenses incurred in connection with the defense of any **CLAIMS** covered hereunder, and all reasonable costs, charges and expenses incurred in connection with a circumstance, after notification of such circumstance in accordance with IV. **CONDITIONS** F.2.

The cost of any appeal, attachment or similar bonds required to be furnished in connection with the contest of any **CLAIMS** covered hereunder is included in the term "costs, charges and expenses," and no **INSURED** shall be required to give security for such bonds.

H. **OTHER CONDITIONS**

1. If any **INSURED** shall give to the **INSURER** notice of any **CLAIM** knowing such **CLAIM** to be false or fraudulent, as regards amount or otherwise, this policy shall become void as to such **CLAIM** and void from inception in respect of each **INSURED** having such knowledge.

ESCM_DV-0122254

2. Payments by the **INSURER,** if any, shall be made in the United States of America in U.S. Dollars.

I. **SUBROGATION**

No rights of subrogation shall accrue hereunder against any past or present partner, shareholder, officer or director, or **EMPLOYEE** of the **FIRM,** unless such person shall have committed active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent in relation to matters which are the subject of a **CLAIM** hereunder. Final adjudication is required.

J. **ARBITRATION**

1. All disputes which may arise between one or more **INSUREDS** (including persons claiming benefits under this policy regardless of whether the **INSURER** agrees they are **INSUREDS**) and the **INSURER** (including its directors, officers, **EMPLOYEES** or agents) out of or in relation to this policy (including disputes as to its validity, construction or enforceability), or for its breach, shall be finally settled by arbitration held according to the Commercial Rules of the American Arbitration Association, by which the **INSUREDS** and the **INSURER** agrees to be bound. In addition to the rules governing such arbitration, the parties shall have at their disposal the broadest pre-trial discovery rights as are then available under the laws and judicial rules of the jurisdiction in which the arbitration is to be held, provided that any dispute between the parties relating to discovery shall be submitted to the arbitration panel for resolution. Disputes regarding interim relief pending a final decision of the arbitration panel in a matter hereunder shall also be submitted to the arbitration panel for resolution.

2. Unless the parties consent in writing to a lesser number, the arbitration panel shall consist of three practicing attorneys, one to be appointed by the **INSUREDS,** one to be appointed by the **INSURER,** and the third by the two arbitrators so appointed.

3. The award of the arbitration panel may be, alternatively or cumulatively, for monetary damages, an order requiring the performance of the obligations under this policy, or

any other appropriate order or remedy. The award shall assign all costs of the arbitration to one or both parties. Judgment upon any award rendered in the arbitration may be entered by any court having proper jurisdiction.

4. For purposes of implementing this Condition J., including entering judgment upon any award by the arbitration panel and enforcing any decision of the arbitration panel in respect of disputes over discovery or the availability of ancillary relief, the **INSURER** and each of the **INSUREDS** hereby submit themselves to any competent jurisdiction in the United States.

K. **NONPAYMENT OF PREMIUM CLAUSE**

All premium due to **INSURERS** under the policy is to be paid within the number of days as stated under **Payment Terms** on the Declarations.

In the event of nonpayment of Premium:

1. Condition D. **CANCELLATION CLAUSE** is deleted and is replaced as follows:

   Non-receipt by **INSURERS** of such premium, by midnight (local standard time) on the premium due date, shall render this policy void with effect from Inception.

2. Condition E. **EXTENDED REPORTING PERIOD** is deleted in its entirety.

L. **ASSIGNMENT**

The interest of an **INSURED** under this policy shall not be assignable to any other person other than as provided for herein.

M. **SEVERAL LIABILITY NOTICE**

The subscribing **INSURER'S(S')** obligations under this contract of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. Each subscribing **INSURER** is not responsible for the subscription of any co-subscribing **INSURER** who for any reason does not satisfy all or part of its obligations.

N. **MERGED AND ACQUIRED INDIVIDUALS, GROUPS OR FIRMS**

When any **firm** is merged into or acquired by the **NAMED INSURED,** or an individual or a group of

ESCM_DV-0122255

individuals who formerly practiced at another **firm** become partners and/or **EMPLOYEES** of the **NAMED INSURED,** this policy shall indemnify the **NAMED INSURED** (subject to its terms, conditions, exclusions and limitations) with respect to any **CLAIM** first made against the merged or acquired **firm** or individual(s), but only for work in progress as respects **CLAIMS** alleging **ACTS** committed, in whole or in part, subsequent to the date of their joining the **NAMED INSURED,** and such merged or acquired **firm** or individual(s) shall be included hereunder effective from the date of joining as additional **INSUREDS.**

It is understood, however, that:

1.  when any such merger, acquisition or group of individuals who practiced together at another **firm** increases the total number of attorneys of the **NAMED INSURED,** as at the preceding anniversary date, by more than five percent (5%) or twenty-five (25) attorneys (whichever is the greater) then within thirty (30) days of the merger or acquisition, the **NAMED INSURED** shall notify the **INSURER** through **INSURED'S Representatives** as named in the Declarations; and

2.  within thirty (30) days of receipt of notification the **INSURER** agrees to add the merged or acquired **firm** or individual(s) subject to such terms and conditions as the **INSURER** and the **INSURED** may agree. If, however, within thirty (30) days of receiving notification of the merger or acquisition the **INSURER** does not propose any terms and conditions

to the merger or acquisition, or the **INSURED** and the **INSURER** are not able to reach mutually acceptable terms and conditions, then the additional premium for the merged or acquired **firm** or individuals shall be calculated at pro rata (from the date of merger or acquisition) of fifty percent (50%) of the annual-per-capita rate charged by the **INSURER** for this policy at the preceding anniversary date.

Unless specifically agreed as part of the above referenced negotiations, the merged or acquired **firm,** or **firm** at which such group of individuals formerly practiced, shall not automatically be deemed to be a **Predecessor in Business** of the **NAMED INSURED,** as that term is set forth in the Declarations, irrespective of whether or not notification to the **INSURER** is required as described above.

O.  **DESIGNATED REPRESENTATIVES**

To facilitate the placement, negotiation of terms, and administration of the policy, and to permit the **INSURER'S** reliance on mutually agreed modifications to the policy, the **INSUREDS** shall appoint by letter to the **INSURER,** a list of at least two but not more than five designated representatives each of whom shall act on behalf of any or all **INSUREDS** under the policy for all purposes including, without limitation, providing and receiving notices, exercising all rights, negotiating and agreeing terms, conditions, premiums and all other contractual rights.


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** \_\_\_\_\_1\_\_\_\_\_

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXTENDED REPORTING PERIOD AMENDATORY ENDORSEMENT

Section IV. **CONDITIONS** E. **EXTENDED REPORTING PERIOD** sections 1., 2. and 3. are deleted in their entirety and are replaced by the following:

E. **EXTENDED REPORTING PERIOD**

The appropriate additional premium and corresponding **Extended Reporting Period** shall be at the election of the **FIRM** either:

1. for one hundred percent (100%) of the annualized **Premium** for a twelve (12) calendar month **Extended Reporting Period;**

2 for one hundred twenty-five percent (150%) of the annualized **Premium** for a twenty-four (24) calendar month **Extended Reporting Period;** or

3. for one hundred seventy-five percent (200%) of the annualized **Premium** for a thirty-six (36) calendar month **Extended Reporting Period.**

All other terms and conditions remain unchanged.

AUTHORIZED REPRESENTATIVE                    November 1, 2020
                                                              DATE

UTS-3g (3-92)                    Page 1 of 1

ESCM_DV-0122257

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** ___2___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DAMAGES AMENDATORY ENDORSEMENT

It is understood and agreed that Section II. **DEFINITIONS**, Item C. is hereby deleted in its entirety and is replaced with the following:

C.  **DAMAGES** shall mean a monetary judgment, award or settlement where insurable by law which the **INSURED** is legally obligated to pay arising from a covered **CLAIM**. To the extent it is uninsurable by law, **DAMAGES** do not include:

   a.  any **CLAIM** for fines, penalties, punitive or exemplary damages, imposed by a final judgment or any other final adjudication. However, this exclusion shall not apply to reasonable costs, charges and  expenses incurred in the defense of any **CLAIM** otherwise covered by this Policy which also demands such fines, penalties, punitive or exemplary damages;

   b.  any award of treble or other multiple damages pursuant to any statute or law, except that the compensatory amount of such award, prior to being multiplied, shall be deemed covered if the **ACTS** giving rise to a **CLAIM** upon which such compensatory award is based are otherwise covered by this Policy. However, this exclusion shall not apply to reasonable costs, charges and expenses incurred in the defense of any **CLAIM** otherwise covered by this Policy solely by reason of the fact such **CLAIM** demands treble or other multiple damages;

For the purpose of determining the insurability of punitive or exemplary damages or treble or multiple damages (hereinafter referred to as "punitive damages" for the remainder of this provision) under this Policy, the Underwriters agree with the **INSURED** that it is intended that coverage for punitive damages will be provided except to the extent that it is uninsurable by law, and that to give effect to this intention, the law of the jurisdiction permitting insurance coverage for punitive damages will apply for the sole purpose of interpreting this endorsement, provided that such jurisdiction:

(a.) is where such punitive damages were awarded or imposed; or

(b.) is where the act, error or omission occurred for which such punitive damages were awarded or imposed; or

(c.) is where the **INSURER** or any insurer, whether primary or excess, or any **INSURED** that is a corporation, limited liability company, partnership or other organization or association, is incorporated or otherwise organized or has its principal place of business; or

(d.) any other jurisdiction which the **INSURED** reasonably demonstrates could apply to this Policy.

It is further understood and agreed that if the choice of law provision set forth above is subject to final determination by the court, then the parties will abide by such final judicial determination; provided however, that the parties will take no position inconsistent with the intent of this endorsement which is to provide coverage for punitive damages where permitted by law as set forth above.

It is further understood and agreed that Section III. **EXCLUSIONS**, Item G. is hereby deleted in its entirety.

All other terms and conditions remain unchanged.

_____   AUTHORIZED REPRESENTATIVE

_____ November 1, 2020   DATE

UTS-3g (3-92)                                Page 1 of 1

ESCM_DV-0122258

 SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO.** _____3_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED DEFINITION OF CLAIM ENDORSEMENT**

Definition B. **CLAIM** of Section II. **DEFINITIONS** is amended to add the following:

**CLAIM** shall mean:

written notice for injunctive or administrative sanctions brought by or before a Federal, State, local or foreign regulatory agency or other authority (including State Supreme Court or Bar Association disciplinary or grievance procedures).

All other terms and conditions remain unchanged.

_____    _____ November 1, 2020
AUTHORIZED REPRESENTATIVE            DATE

UTS-3g (3-92)                    Page 1 of 1

ESCM_DV-0122259



## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____4_____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED MERGED AND ACQUIRED INDIVIDUALS, GROUPS OR FIRMS CONDITION**

Paragraph 1. of Condition N. **MERGED AND ACQUIRED INDIVIDUALS, GROUPS OR FIRMS** of Section IV. **CONDITIONS** is deleted in its entirety and is replaced by the following:

It is understood, however, that:

1. when any such merger, acquisition or group of individuals who practiced together at another **firm** increases the total number of attorneys of the **NAMED INSURED,** as at the preceding anniversary date, by more than ten percent (10%) or twenty-five (25) attorneys (whichever is the greater) then within thirty (30) days of the merger or acquisition, the **NAMED INSURED** shall notify the **INSURER** through **INSURED'S Representatives** as named in the Declarations; and

All other terms and conditions remain unchanged.

_____ / November 1, 2020
AUTHORIZED REPRESENTATIVE              DATE

ESCM_DV-0122260



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____5_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**KNOWLEDGE OF CLAIM ENDORSEMENT**

It is understood and agreed that Section IV. Conditions, Item F. CLAIMS PROCEDURES 1. is hereby deleted in its entirety and is replaced with the following:

1.   The **FIRM** shall, as soon as practicable after any member of the Management Committee of the **FIRM** first becomes aware of such **CLAIM**, give to the **INSURER** notice in writing of any **CLAIM** made against any **INSURED** as a condition precedent to the **INSURED'S** right to be indemnified under this policy with respect to such **CLAIM**. For the purposes of this policy the date which such **CLAIM** is made against any **INSURED** shall be the date on which any **INSURED** receives a written demand or notice and shall be the date on which such **CLAIM** attaches to the policy. The **FIRM** shall further, upon request, give to the **INSURER** such information as the **INSURER** may reasonably require and is in the **FIRM'S** power to give.

All other terms and conditions remain unchanged.

_____ / _____
AUTHORIZED REPRESENTATIVE                    DATE

November 1, 2020

UTS-3g (3-92)                    Page 1 of 1

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____6_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**OTHER INSURANCE CONDITION ENDORSEMENT**

Section IV. **CONDITIONS** is amended to add the following:

**OTHER INSURANCE**

If any **CLAIM** covered under this policy is also accepted as covered under the **INSURED's** network security and privacy liability insurance policy, then this policy shall be specifically excess of such policy.

All other terms and conditions remain unchanged.

_____          _____ November 1, 2020
AUTHORIZED REPRESENTATIVE                              DATE

ESCM_DV-0122262



**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____7_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEE EXTENSION ENDORSEMENT

It is understood and agreed that Section III. **EXCLUSIONS**, Item J. is hereby deleted and replaced with the following:

J. To any **CLAIMS(S)** seeking the return, withdrawal, reduction or disgorgement of legal fees, costs or expenses charged or chargeable by the **FIRM** unless such amount is a measure of **DAMAGES** for an otherwise covered **CLAIM**.

For the avoidance of doubt, this **POLICY** will not provide coverage for that portion of a **CLAIM** asserting that an amount charged or chargeable by the **FIRM** is excessive or unreasonable, relative to the work performed, and such assertion is not related to any alleged deficiency in the **FIRM'S** representation other than the amount charged or chargeable by the **FIRM**.

All other terms and conditions remain unchanged.

AUTHORIZED REPRESENTATIVE                    November 1, 2020
                                                                          DATE

ESCM_DV-0122263



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____8_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED DEFINITION OF EMPLOYEE ENDORSEMENT**

It is understood and agreed that Section II. **DEFINITIONS**, Item D. is hereby deleted in its entirety and replaced with the following:

D.  **EMPLOYEE** shall include any natural person working with the **FIRM** whom the **FIRM** designates as an **EMPLOYEE** for the purpose of this policy.

All other terms and conditions remain unchanged.

_____  /  November 1, 2020
AUTHORIZED REPRESENTATIVE                        DATE

UTS-3g (3-92)                    Page 1 of 1

ESCM_DV-0122264

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. ___9___**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDEDATORY ENDORSEMENT**

It is understood and agreed that Section IV. **CONDITIONS**, Item I. **SUBROGATION** is hereby deleted in its entirety and replaced with the following:

I.    No rights of subrogation shall accrue hereunder against any past or present partner, shareholder, officer or director, or **EMPLOYEE** of the **FIRM,** unless such person shall have committed active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent in relation to matters which are the subject of a **CLAIM** hereunder. Final adjudication is required.

All other terms and conditions remain unchanged.

_____          /          November 1, 2020
AUTHORIZED REPRESENTATIVE                                    DATE

UTS-3g (3-92)                                    Page 1 of 1

ESCM_DV-0122265

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____10_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELF DEFENSE ENDORSEMENT

Section IV. **CONDITIONS,** G. **COSTS** is deleted in its entirety and is replaced by the following:

G. **COSTS**

The **INSURER** agrees that subject to all of the terms, conditions, exclusions and limitations of this policy, it will pay all reasonable costs, charges and expenses incurred in connection with the defense of any **CLAIMS** covered here-under, and all reasonable costs, charges and expenses incurred in connection with a circumstance, after notification of such circumstance in accordance with Section IV. **CONDITIONS,** F.2.

The cost of any appeal, attachment or similar bonds required to be furnished in connection with the contest of any **CLAIMS** covered hereunder is included in the term "costs, charges and expenses," and no **INSURED** shall be required to give security for such bonds.

The term "costs, charges, and expenses" shall include charges by the **FIRM** in defending or in participating with its counsel in the defense of a **CLAIM** covered hereunder as follows:

1.  The **INSURED** may charge for reasonable time and expenses it incurs against its **Retentions.** In the event the **Retentions** are exceeded, the **INSURED** will be compensated by the **INSURER** for such charges. The **IN-SURER** and **INSURED** agree that the standard hourly billing rates for time charged by the **INSURED** will be discounted by 25% to eliminate the **INSURED'S** "profit factor."

2.  The **INSURED** will not apply against the **Retentions** (or otherwise charge to the **INSURER** in the event the **Retentions** are exceeded):

    a.  the time and expenses it incurs in the handling of a **CLAIM** in its capacity as the **INSURED** (as opposed to activities involved in defending or in participating with its counsel in defense of a **CLAIM**) including cooper-ating with the **INSURER** and its representatives and pursuing any **CLAIM** for coverage under this policy; and

    b.  the time and expenses incurred by the attorneys in the **FIRM** who are involved in the matters underlying the **CLAIM,** including without limitation, as defendant, as witnesses or as factual resources in the develop-ment, understanding and defense of the matters underlying the **CLAIM.**

However, the **INSURED'S** authority to participate in its own defense is subject to the **INSURER'S** approval, on a case by case basis, that it is appropriate at all or in part or whether self representation is appropriate for a particular stage in the proceedings. The **INSURER'S** consent to the **INSURED'S** request for self representation shall not be unreasonably withheld except that the **INSURER** may decline to allow the **INSURED** to self represent at trial for any reason.

In the event the **INSURED** requests and the **INSURER** consents to self representation on a case by case basis, the **INSURED** and the **INSURER** promptly will agree in writing to the staffing requirements for each **CLAIM** which will include the individual attorneys and staff proposed by the **INSURED** for its self representation.

ESCM_DV-0122266

The **INSURER** may review the time and expenses charged by the **INSURED** in its self-representation to determine the amount properly chargeable against the **INSURED'S Retentions.**

The **INSURED** will designate a partner to act as a liaison with the **INSURER** on each **CLAIM,** and will keep the **INSURER** apprised regularly of the status and developments of each matter for which the **INSURED'S** request for self representation has been approved by the **INSURER.**

It is agreed that any charges due under this agreement from the **INSURER** will be paid within sixty (60) days of beings submitted to the **INSURER.**

I/We hereby understand, acknowledge and accept the terms of this endorsement. (Signature is not required if attached at the original inception date of policy.)

_____        _____
SIGNATURE OF PARTNER, OFFICER OR SOLE PROPRIETOR                DATE

_____
TYPE NAME OF PARTNER, OFFICER OR SOLE PROPRIETOR

_____ /        November 1, 2020
AUTHORIZED REPRESENTATIVE                                     DATE

ESCM_DV-0122267


## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT
NO.** _____11_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LWS0000869 | November 1, 2020 | Eckert Seamans Cherin & Mellot, LLC | 31521 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDED DEFINITION OF FIRM ENDORSEMENT

It is understood and agreed that Section II. **DEFINITIONS**, Item E. is hereby deleted in its entirety and replaced with the following:

E.  **FIRM** shall mean the persons carrying business under the **Named Insured** as stated in the Declerations herein (whether as a partnership, professional corporation, or otherwhise) and any associated or subsidiary entities, sole proprietorships, partnerships that are owned and operated by one or more partners of the **FIRM** in the **FIRM's** professional capacity as attorneys, counselors at law or notaries, and others as more fully described in the policy and shall also include **Predecessors in Business** as stated in the Declarations.

All other terms and conditions remain unchanged.

_____  /  November 1, 2020
AUTHORIZED REPRESENTATIVE              DATE

ESCM_DV-0122268

# **<u>EXHIBIT B</u>**

 **MENDES**

WWW.MENDES.COM

November 9, 2020

Anthony P. Spain
Equity Partner
212.261.8337
Anthony.Spain@mendes.com

**VIA E-MAIL**
Timothy S. Coon, Esq.
Eckert, Seamans, Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

> Re:   Scottsdale Insurance Company, et al.
>        Lawyers Professional Indemnity Insurance
>        Insured: Eckert Seamans Cherin & Mellott, LLC
>        Claimants: Schapperle, et al.
>        Our File: 435,586

Dear Timothy:

We refer to our previous correspondence with you and your Firm regarding the captioned matter.  We appreciate the information you have provided thus far and ask that you please keep us apprised of all developments as they occur.

On May 7, 2020 the Firm notified Insurers of the Schapperle Claim (Our File: 436,586), which was made against the firm in connection with its representation of Mr. Dean Vagnozzi and certain merchant cash advance investment funds. Subsequently, the Firm notified Insurers of two class-action styled lawsuits that were filed against the insured firm in connection with its representation of Vagnozzi and the same merchant cash advance funds, *Caputo et al. v. Vagnozzi et al* (the "Delaware Action") and *Montgomery et al. v. ESCM, Pauciulo et al.*  (the "Florida Action"). The Firm also notified Insurers of an ongoing SEC investigation initiated against Mr. Vagnozzi and other related parties, wherein the Firm is not a party to the suit, but has been implicated by the complaint and subpoenaed for information ("SEC Action"). Lastly, on July 14 2020, the Firm notified Insurers of another claim asserted against the Firm in connection with its representation of Vagnozzi in connection with the formation of several life insurance investment funds, including the Pillar 6 Life Settlement Fund, L.P (the "Pillar 6 Claim") (Our File 436,033).

As the Firm has notified Insurers of claims and circumstances arising out of its representation of Mr. Vagnozzi, as described above, we direct your attention to Section II. B. of the captioned policy, which states in relevant part:

All CLAIMS (regardless of whether they involve one or more INSUREDS) arising out of the same ACT, or series of related ACTS, shall constitute a single CLAIM, irrespective of the number of claimants and shall be deemed to have been made during the POLICY PERIOD in which such CLAIM arising from the ACT or series of related ACTS is first made against such INSUREDS without regard to the POLICY PERIOD(S) in which later CLAIMS arising out of such ACT or series of related ACTS are asserted.

ESCM_DV-0121835

Our File: 435,586                          Page 2 of 2

     Based on the information available to us at this time, it appears that the Schapperle matter, the SEC Action the Delaware Action and the Florida Action may "aris[e] out of the same ACT, or series of interrelated ACTS" and therefore constitute a single "CLAIM" under the captioned policy.  Accordingly, Insurers will treat these matters as a single "CLAIM" under the captioned policy, made on May 7, 2020.

     With respect to the Pillar 6 Claim, based on the information available to us at this time, Vagnozzi's merchant cash advance appears to be separate from Vagnozzi's life insurance business. Accordingly, Insurers will continue to treat the Pillar 6 Claim as a separate claim made under the captioned policy on July 10, 2020. However, we reserve Insurers' rights to evaluate this determination further as additional information comes to light.

     Further, we note that the complaints in the Delaware and Florida Actions contain allegations that the Firm and its attorneys engaged in and/or aided and abetted fraudulent and dishonest conduct. Accordingly, we must respectfully reserve Insurers' rights pursuant to Exclusion E. of the captioned policy, which excludes from coverage "any CLAIM alleging the fraud or dishonesty of any INSURED if a judgment or other final adjudication shall establish that such INSURED committed or personally acquiesced in the commitment by another INSURED of active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent."  We note, however, that Exclusion E. does not "exclude coverage to the FIRM, or to any other INSURED who was not so adjudged to have committed or personally acquiesced to such fraud or dishonesty."

     Finally, it is alleged in the complaint in the Florida Action that the Firm was served with a subpoena in 2017, in connection with the SEC investigation of Mr. Vagnozzi.  Please advise us whether the Firm or its attorneys were served with a subpoena in connection with the SEC investigation and, if so, the date(s) of such service. Also, to the extent available, please provide us with a copy of that subpoena.

     Thank you for your cooperation. We trust that you appreciate that our actions and inquiries herein are without prejudice to any rights or defenses specifically reserved or otherwise generally available to our clients. Should you have any questions, please do not hesitate to contact the undersigned.

Very truly yours,

MENDES & MOUNT, LLP

By:
    Anthony P. Spain

By:
    Melissa J. Bartone

ESCM_DV-0121836

# **<u>EXHIBIT C</u>**

 **MENDES**

WWW.MENDES.COM

July 15, 2021

Melissa J. Bartone
Associate
212.261.8013
Melissa.bartone@mendes.com

**VIA E-MAIL**
Timothy S. Coon, Esq.
Eckert, Seamans, Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Re:   Scottsdale Insurance Company, et al.
Lawyers Professional Indemnity Insurance
Insured: Eckert Seamans Cherin & Mellott, LLC
Claimants: Schapperle, et al.
Our File: 435,586

Dear Timothy:

We refer to our previous correspondence with you and the Firm regarding the captioned claim. We appreciate the information you have provided thus far and ask that you continue to keep us apprised of all developments as they occur.

To date, the Firm has provided notice to Insurers of the following lawsuits:

∞   A class action styled lawsuit filed by Joseph and Joan Caputo against the Firm, attorney John Pauciulo, and others in the U.S. District Court of Delaware on August 5, 2020 (the "Delaware Action");

∞   A class action styled lawsuit filed by Robert Montgomery and others against the Firm, Mr. Pauciulo, and others in the U.S. District Court for the Southern District of Florida on September 9, 2020 (the "Florida Action");

∞   A class action styled lawsuit filed by Dennis Melchior and others against the Firm, Mr. Pauciulo, and others in the U.S. District Court for the Eastern District of Pennsylvania on November 6, 2020 (the "Melchior Action");

∞   A lawsuit filed by Dean Parker and others against the Firm and Mr. Pauciulo in the Court of Common Pleas of Philadelphia County, Pennsylvania on December 16, 2020 (the " Parker Action");

∞   A lawsuit filed by Dean Vagnozzi against the Firm and Mr. Pauciulo in the Court of Common Pleas of Philadelphia County, Pennsylvania on May 12, 2021 (the "Vagnozzi Action"); and

ESCM_DV-0121832

Our File: 435,586                         Page 2 of 3

∞   A lawsuit filed by Albert Vagnozzi, Paul T. Kohler, Capricorn Income Fund I, LLC, and Capricorn Income Fund I Parallel, LLC against the Firm and Mr. Pauciulo in the Court of Common Pleas of Philadelphia County, Pennsylvania on May 26, 2021 (the "Capricorn Action").

In addition to the above lawsuits, the Firm has provided notice to Insurers of the following matters:

∞   Allegations of securities fraud and civil conspiracy made by counsel for James F. Schapperle and Frank Dinatally against the Firm, Mr. Pauciulo, Mr. Vagnozzi, and ABFP Income Fund, LLC in a letter dated May 7, 2020 (the "Schapperle Claim");

∞   Allegations by counsel for Mr. Schapperle that the Firm aided and abetted Mr. Vagnozzi in his promotion and sale of unregistered securities in connection with certain life insurance investment funds, including Pillar 6 Life Settlement Fund, L.P., which were alleged on July 16, 2020 (the "Pillar 6 Claim");

∞   A lawsuit filed by the U.S. Securities and Exchange Commission ("SEC") against Mr. Vagnozzi and others in the U.S. District Court for the Southern District of Florida on July 24, 2020 (the "SEC Action"); and

∞   A letter dated October 9, 2020, from counsel for John Gissas to the Firm, which demanded that the Firm indemnify Mr. Gissas and his fund, Retirement Evolution, for any loss resulting from the SEC and Florida Actions (the "Gissas Claim").

We direct your attention to Section II. B. of the captioned policy, which states in relevant part:

All CLAIMS (regardless of whether they involve one or more INSUREDS) arising out of the same ACT, or series of related ACTS, shall constitute a single CLAIM, irrespective of the number of claimants and shall be deemed to have been made during the POLICY PERIOD in which such CLAIM arising from the ACT or series of related ACTS is first made against such INSUREDS without regard to the POLICY PERIOD(S) in which later CLAIMS arising out of such ACT or series of related ACTS are asserted.

Based on the information currently available to us, the Delaware Action, the Florida Action, the Melchior Action, the Parker Action, the Vagnozzi Action, the Capricorn Action, the Schapperle Claim, the Pillar 6 Claim, the SEC Action, and the Gissas Claim "aris[e] out of the same ACT, or series of interrelated ACTS" and therefore constitute a single "CLAIM" made on May 7, 2020, during the November 1, 2019 to November 1, 2020 policy period.  We respectfully reserve Insurers' rights to evaluate this issue further as additional information becomes available to us.

In addition to the foregoing, we again respectfully reserve Insurers' rights pursuant to Exclusion E. of the captioned policy, which excludes from coverage "any CLAIM alleging the fraud or dishonesty of any INSURED if a judgment or other final adjudication shall establish that such INSURED committed or personally acquiesced in the commitment by another INSURED of active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent."  We again note that Exclusion E. does not "exclude coverage to the FIRM, or to any other INSURED who was not so adjudged to have committed or personally acquiesced to such fraud or dishonesty."

ESCM_DV-0121833

Our File: 435,586                              Page 3 of 3

       Thank you for your cooperation. We trust that you appreciate that our actions and inquiries herein are without prejudice to any rights or defenses specifically reserved or otherwise generally available to our clients. Should you have any questions, please do not hesitate to contact the undersigned.

                         Very truly yours,

By: Melissa J. Bartone

ESCM_DV-0121834

# **EXHIBIT D**



ATTORNEYS AT LAW

Eckert Seamans Cherin & Mellott, LLC        TEL:   412 566 6000
U.S. Steel Tower                             FAX:   412 566 6099
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Timothy S. Coon
(412) 566-214
tcoon@eckertseamans.com

March 21, 2022

Megan Bright, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, NY 10019

Re:    Scottsdale Insurance Company et al
       Lawyers Professional Indemnity Insurance
       Insured: Eckert Seamans Cherin & Mellott LLC
       Mendes File: 435,586

Dear Megan:

Thank you for your February 22, 2022 letter updating and advising on our Insurers' reservation
of rights. As in the past, on behalf of the Insureds under the policy we reserve all of our rights
under the Policy.

Having reviewed your letter, in connection with our Insurers' position that all of the various
claims and suits relate back to the *Schapperle* claim, which was asserted in May, 2020, we must
respectfully disagree as we believe it is premature to make that determination. We do agree,
based on information known at this point, that several of the pending matters are substantially
similar and related, for example the *Caputo, Montgomery* and *Melchior* class actions. However,
we believe further information is needed to assess whether some of the other suits are limited to
"claims that arise out of the same Act or series of related Acts". As one example, the *Dean
Vagnozzi* suit appears to allege different acts, claims, and time periods than those involved in the
three class actions or the *Schapperle* claim. As another example, we do not yet have a complaint
in the *Legacy Advisory Group/David Gollner* matter (commenced by writ of summons in
October 2021) so we do not know the acts and claims that will be asserted. However plaintiffs'
counsel has said that this suit is "different from" the earlier-filed *Parker* case in which David
Gollner and his fund are plaintiffs.

As such, Eckert respectfully reserves all of its rights on the position that all of the pending claims
and suits are a single CLAIM under the 2019-20 policy. We believe the situation should clarify
after the court orders staying the various matters are lifted and we will certainly engage with you

ESCM_DV-0121840



Megan Bright
March 21, 2022
Page 2

further at that time.  We also acknowledge that if, hypothetically, any other policy applies to any of the claims or suits then Eckert would be responsible for the Retention under that policy.

By reserving its rights, Eckert in no way intends to lend any credence to the allegations, or imply that Eckert or any Eckert attorney will incur liability as a result of the lawsuits, claims or potential claims.  Thank you, and if you have any questions please let me know.

Very truly yours,

*Timothy S. Coon*

Timothy S. Coon
Chief Legal Officer


Cc: Timothy Q Hudak

ESCM_DV-0121841