UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-CV-81205-RAR

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS GROUP,
INC. d/b/a PAR FUNDING, *et al.*,

        Defendants.
_____/

**LISA MCELHONE'S MOTION TO MODIFY THE ASSET FREEZE ORDER [DE 230] TO PERMIT HER TO USE LIMITED FUNDS HELD IN BANK ACCOUNTS WHICH ARE NOT WITHIN THE RECEIVERSHIP ESTATE TO PAY HER ATTORNEY FEES**

Defendant Lisa McElhone, by and through her undersigned counsel, asks the Court to modify the asset freeze that was entered against her by consent (the "Asset Freeze Order," DE 230) in order to permit her to access the proceeds of certain bank accounts that are not within the Receivership Estate so that she may pay her outstanding attorney fees:

## INTRODUCTION

Ms. McElhone requests that the Asset Freeze Order be modified to permit her to use certain limited funds held in her personal and business checking accounts to pay her attorney fees. The accounts at issue have been frozen by virtue of the Asset Freeze Order, but were never made a part of the Receivership Estate. Ms. McElhone is unable to pay her attorney fees (outstanding and anticipated) in this action and in a related criminal case which was recently brought against her in the Eastern District of Pennsylvania. Accordingly, Ms. McElhone seeks a limited modification of the Asset Freeze Order to allow her to access and use approximately $747,000 held in the checking accounts identified below:

- Two personal checking accounts which have a combined balance of $546,402.71[1]; and

- Two business checking accounts held by Eagle Union Quest Two, LLC (a non-Receivership entity owned by Ms. McElhone/the LME Trust) which have a combined balance of $152,732.66.

- Two business checking accounts held by Lacquer Lounge, Inc. (a non-Receivership entity) which have a combined balance of $48,197.82. Lacquer Lounge is a nail salon owned by Ms. McElhone. It has no connection to the charged securities violations and has never been accused of any wrongdoing in this action. Moreover, Lacquer Lounge provides Ms. McElhone with her primary source of income at this time.[2]

Although $747,000 is not an insignificant sum, it is a small fraction of the assets which are currently within the Receivership Estate, which include about $127 Million in cash. *See* DE 1653, p. 2. Furthermore, it is not an unreasonable amount for Ms. McElhone to request given the significant cost of litigation in this action[3]. Ms. McElhone recognizes that she is subject to a Final Judgment which has not yet been satisfied. However, this is a function of the fact that virtually

---

[1] The account numbers and depository institutions at issue will be identified, if required, upon the disposition of this motion.

[2] Although Lacquer Lounge, Inc. is not a Receivership Entity, it is solely owned by Ms. McElhone. Accordingly, the language of the Asset Freeze Order may be broad enough to encompass Lacquer Lounge, Inc.'s business accounts. Furthermore, the subject depository institution has frozen these accounts, which suggests that they received notice of the Asset Freeze Order and determined that it applies. To the extent the Court believes that the Asset Freeze Order *does not* apply to these business accounts, Ms. McElhone requests an order of clarification stating same.

[3] The Receiver and his counsel have been paid roughly $10.85 Million out of the Receivership Estate to cover their attorney fees and expenses in this action. (*See* the Receiver's fee applications and the Court's Orders granting same). Ms. McElhone has likewise incurred millions of dollars in attorney fees for her defense in this action, and has thus far borne these costs on her own without seeking access to any of the property or funds which were seized from her and placed within the Receivership Estate.

all of Ms. McElhone's assets (including the LME Trust) and personally were brought into, and remain a part of, the Receivership Estate, and almost none of these assets have been credited to the Final Judgment against Ms. McElhone.[4] As Ms. McElhone has detailed in prior filings to this Court, she believes the value of the assets which were taken from her and made a part of the Receivership Estate are significantly greater than the amount of the Final Judgment, such that her request to modify the Asset Freeze Order to permit her to utilize the funds identified above can be granted without compromising the SEC's ability to satisfy the Final Judgment out of the assets which were seized from Ms. McElhone and placed within the Receivership Estate.

## MEMORADUM OF LAW

### A. Standard of Review

"A district court may exercise its full range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award." *SEC v. Lauer*, 445 F.Supp.2d 1362, 1367 (S.D.Fla 2006), *quoting FTC v. United States Oil & Gas Corp.,* 748 F.2d 1431, 1433–34 (11th Cir. 1984); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Co.,* 51 F.3d 982, 987 (11th Cir. 1995). As a corollary, district courts have "discretion to release frozen funds to pay living expenses and attorney fees, even in instances where the profit from the alleged wrongdoing exceeds the amount of the frozen funds." *See S.E.C. v. Petters*, No. 09-1750 ADM/JSM, 2009 WL 3379954, *2 (D. Mn. Oct. 20, 2009) (citing *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001)); *see also SEC v. Duclaud Gonzalez De Castilla,* 170 F. Supp. 2d

---

[4] The Receiver has now liquidated substantial property holdings that Ms. McElhone owned and/or controlled prior to the Receivership – including her former residence in Haverford, Pennsylvania, which she acquired in 2016, and her commercial property holdings in Philadelphia. However, at this time, the proceeds from the sale of these properties has not been applied to the Final Judgment. For reasons that remain unclear to Ms. McElhone and her counsel, the only assets the SEC has agreed to credit to the Final Judgment against Ms. McElhone are the cash that was seized from Ms. McElhone and Mr. LaForte's properties at the outset of the Receivership, and the funds realized from the liquidation of Ms. McElhone's IRA account.

427, 429 (S.D.N.Y. 2001); *CFTC v. Dinar Corp*, No. 1:15-CV-538-WKW, 2016 WL 814893 (M.D Al. Feb. 29, 2016); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972); *SEC v. Lauer*, No. 03-cv-80612-KAM, ECF No. 108 (S.D. Fla. Dec. 2, 2003). This Court previously held that a defendant who seeks to modify an asset freeze which was entered on consent must demonstrate a significant change in either the factual conditions or the law, and that the proposed modification is suitably tailored to the changed circumstances. DE 1580 (citing *Sierra Club v. Meiburg*, 296 F. 3d 1021, 1033 (11th Cir 2002)).

    **B. The Asset Freeze Order Should be Modified to Release Limited Funds Which Ms. McElhone Needs to Pay Her Attorney Fees**

Ms. McElhone seeks access to the funds held in the identified accounts so that she may pay outstanding fees owed to her attorneys in this case, as well as anticipated fees in a related criminal action proceeding in the Eastern District of Pennsylvania. Ms. McElhone's attorneys in this case are owed fees for work they performed that was necessary to the fair and efficient disposition of this case – including, *inter alia*: the successful defense of a Show Cause proceeding initiated by the Receiver; proceedings on the SEC's disgorgement motion, in which Ms. McElhone successfully argued that the SEC had failed to account for Par's legitimate business expenses, and presented the Court with an analysis that permitted it to deduct such expenses in accordance with *Liu v. SEC*, 140 S. Ct. 1936 (2020); and the preparation of a motion to amend this Court's first disgorgement order and final judgment on the grounds that it overstated Ms. McElhone's disgorgement obligation by approximately $20 Million due to an apparent mathematical error. Under these circumstances, the Court can, and should, exercise its discretion to modify the Asset Freeze Order to unfreeze the subject bank accounts and allow Ms. McElhone to use those funds to pay her attorneys in this case. *See U.S. Commodity Futures Trading Comm'n v. Dinar Corp*, No. 1:15-CV-538-WKW, 2016 WL 814893, at *6 (M.D. Ala. Feb. 29, 2016) (modifying preliminary

injunction to allow payment of defendant's attorney fees, observing that defendant's counsel had been "an asset to the efficient disposition of this case by simplifying issues, and, as a result of their zealous defense of this action").

The pending criminal case against Ms. McElhone presents additional grounds for the Court to modify the Asset Freeze Order. When an asset freeze in a civil action impacts a defendant's ability to pay counsel in a related criminal case, concerns regarding the defendant's Fifth and Sixth Amendment rights are implicated. *See S.E.C. v. Coates*, No. 94 CV5361 (KMW), 1994 WL 455558, 3 (S.D.N.Y., Aug. 23, 1994) (requiring an adversary hearing to determine whether the frozen assets were traceable to the alleged fraud to continue a civil asset freeze which impeded the defendant's ability to retain counsel of choice in a parallel criminal proceeding); *see also United States v. Noriega*, 746 F. Supp. 1541, 1545-46 (S.D. Fla. 1990) ("where a criminal defendant's only assets available for payment of attorneys' fees have been placed out of reach by government action, due process mandates that the government be required to demonstrate the likelihood that the restrained assets are connected to illegal activity").

Ms. McElhone is mindful of the Court's prior finding that a defendant who seeks to modify an asset freeze which was entered on consent must demonstrate a significant change in either the factual conditions or the law, and that the proposed modification is suitably tailored to the changed circumstances. ECF 1580 (citing *Sierra Club v. Meiburg*, 296 F. 3d 1021, 1033 (11th Cir 2002)). Here, modification of the Asset Freeze Order is warranted based on several material changes in the factual conditions of this case. First, when Ms. McElhone consented to the Asset Freeze Order, this case was at its inception and the amount of Ms. McElhone's potential liability was not known. But now that the amount of Ms. McElhone's liability has been reduced to a final judgment,[5] the

---

[5] In her pending appeal to the Eleventh Circuit, Ms. McElhone seeks a reduction of the Amended Final Judgement. The SEC, on the other hand, has not filed an appeal challenging the amount of

Court can readily determine (based on the Receiver's most recent quarterly report) that the value of the assets in the Receivership Estate exceeds the amount of the disgorgement against Ms. McElhone. *But c.f. S.E.C. v. Petters*, No. 09-1750 ADM/JSM, 2009 WL 3379954, *2 (D. Mn. Oct. 20, 2009) ("A district court may exercise its discretion to release frozen funds to pay living expenses or attorney fees, *even in instances where the profit from the alleged wrongdoing exceeds the amount of the frozen funds*") (Emphasis supplied).

Second, Ms. McElhone's income and resources have been substantially depleted in the years following her consent to the Asset Freeze Order. While Ms. McElhone was able to pay most of her legal costs for the first two years of this litigation, she is no longer able to do so and is therefore seeking relief from this Court. The costs of litigating this case have been high for all parties involved. Indeed, counsel for the Receiver have billed more than $10 Million in legal fees to date, all of which has been paid out of the cash holdings in the Receivership Estate (which were derived, almost entirely, from the assets of Receivership Entities Ms. McElhone previously owned or controlled, and from the sale of her various properties). The sum Ms. McElhone is seeking – $747,000, or approximately 7.4% of what the Receiver's counsel has been paid out of the Receivership Estate so far – is a small fraction of her total legal fees, and is reasonable given the scope and complexity of this action.

Finally, the initiation of the criminal proceeding against Ms. McElhone and her husband, Jospeh LaForte, *after* the Asset Freeze Order was entered has increased Ms. McElhone's legal costs considerably and contributed to her financial hardship. Furthermore, Mr. LaForte is no longer able to assist Ms. McElhone with her legal fees because he is currently being held without bond, and therefore has no ability to earn a living.

---

the Amended Final Judgment. Accordingly, the current judgment represents the upper limit of Ms. McElhone's potential liability.

Under these circumstances, it is equitable and fair for the Court to modify the Asset Freeze Order to allow Ms. McElhone to use the identified funds to pay her legal fees. Furthermore, the investors will not be harmed if these funds are released to Ms. McElhone because: 1) the bank accounts at issue were never brought into the Receivership Estate, therefore the release of these monies to Ms. McElhone will not reduce the pool of funds the Receiver has mustered to pay investors; and 2) there are significant assets within the Receivership Estate that can be used to pay investors.[6]  Accordingly, Ms. McElhone asks the Cour to enter an Order unfreezing the subject bank accounts and authorizing her to use these funds to pay her legal fees in this action and in the pending criminal case against her.

## REQUEST FOR HEARING

Ms. McElhone respectfully requests that the Court convene a hearing to allow oral argument on the instant motion so that she may address the legal and factual issues presented. Ms. McElhone submits that oral argument is warranted due to the critical importance of her obtaining funds to pay her attorney fees.

## CONCLUSION

For all of the reasons stated above, Ms. McElhone respectfully request that the Court enter an Order modifying the Asset Freeze Order by unfreezing the four (4) bank accounts identified in this motion and permitting Ms. McElhone to use the funds contained in those accounts to pay her legal fees in this action and in the pending criminal case against her.

---

[6] At the last Status Conference, the Receiver's counsel and the Court discussed the assets available for the claim distribution process and projected that approximately $180 Million would soon be available to distribute. This figure did not include the anticipated proceeds from the sale of numerous commercial properties which have not yet been liquidated, nor sums that may still be realized from collections on Par's MCA contracts.

**S.D. Fla L. R. 7.1(a)(3p) Certification of Counsel**

Counsel for Ms. McElhone hereby certify that they conferred with counsel for the Receiver, Timothy A. Kolaya, Esq., and have confirmed that the Receiver takes no position with respect to Ms. McElhone's request to unfreeze bank accounts which are not a part of the Receivership Estate. Counsel for the SEC, Amie Rigley Berlin, Esq., opposes the relief sought in this motion.

Respectfully submitted,

    **KAPLAN ZEENA LLP**
*Attorneys for Defendant Lisa McElhone*
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: /s/ *James M. Kaplan*
    JAMES M. KAPLAN
    Florida Bar No.: 921040
    james.kaplan@kaplanzeena.com
    elizabeth.salom@kaplanzeena.com
    service@kaplanzeena.com
    NOAH E. SNYDER
    Florida Bar No.: 107415
    noah.snyder@kaplanzeena.com
    maria.escobales@kaplanzeena.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 6th day of October, 2023, I electronically filed the forgoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmissions of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *James M. Kaplan*
    JAMES M. KAPLAN