UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 20-CV-81205-RAR

SECURITIES AND EXCHANGE COMMISSION,

                **Plaintiff,**

v.

COMPLETE BUSINESS SOLUTIONS GROUP, et al.,

                **Defendants**
_____/

**PLAINTIFF'S RESPONSE OPPOSING NON-PARTY CAPITAL SOURCE 2000'S MOTION TO INTERVENE IN ORDER TO LIFT THE ASSET FREEZE**

## I. Introduction

On June 3, 2023, this Court denied Defendant Joseph Cole Barleta's ("Cole") motion to unfreeze his asset, Capital Source 2000 ("CS 2000") [ECF No. 1580]. Barleta now comes before the Court seeking the exact same relief, but this time packaged as a Motion to Intervene filed in the name of CS 2000 [ECF No. 1734]. The Court has already ruled on Cole's request to lift the asset freeze as to CS 2000, and his instant effort to effectively seek reconsideration of that ruling should also be denied. The only new evidence presented with the instant Motion is Cole's own self-serving testimony that he does not use CS 2000 for his personal use. Not only is that contrary to the first motion Cole filed to lift the asset freeze as to CS 2000 [ECF No. 1572], it is belied by the actual evidence the Commission has recently obtained.

The CS 2000 bank account statements and checks show the truth about Cole's access to and use of CS 2000 funds. Those records, attached as Exhibit A hereto, show that Cole has used the CS 2000 bank account to pay his own defense counsel in this case $45,000 between March 28, 2023 and April 28, 2023 – using checks that appear to be signed by Cole. While the Asset Freeze remained in effect against Cole. And without disclosing the use of CS 2000 funds to pay counsel in his May 2023 motion to lift the asset freeze as to CS 2000.

## II. Background

The Commission filed this case in June 2020, alleging violations of the registration and anti-fraud provisions of the federal securities laws against Cole and others [ECF No. 1]. The

Commission simultaneously filed, among other things, an *ex parte* Motion for a Temporary Restraining Order, seeking Preliminary Injunctions and other relief against Cole and his Co-Defendants [ECF No. 14] ("TRO Motion"). On September 28, 2020, the Court granted the TRO Motion, entered an Order to Show Cause why Preliminary Injunctions should not be entered, and directed Cole and his co-defendants to file sworn accountings within five days [ECF No. 42]. The Order required Cole to disclose his bank accounts and all accounts over which he had the power or right to exercise any control [ECF No. 42 at p.17]. Cole ignored the Order and failed to file the sworn accounting. During discovery, the Commission sought documents from Cole, including all statements for any bank accounts he owned or controlled, and all accounts reflecting his source of income [ECF No. 1213-17 at Request Numbers 13 and 177]. Cole produced no bank account records for Capital Source 2000. On August 22, 2020, the Court entered a Preliminary Injunction, by Consent, against Cole [ECF No. 202]. The Preliminary Injunction includes an Asset Freeze, limited to $5.5 million, which states:

> A. Barleta and his respective directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with him who receive notice of this Order by personal service, mail, email, facsimile transmission or otherwise, hereby are restrained from, directly or indirectly, transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of, or withdrawing any assets or property, including but not limited to cash, free credit balances, fully paid for securities, personal property, real property, and/or property pledged or hypothecated as collateral for loans, or charging upon or drawing from any lines of credit, owned by, controlled by, or in the possession of, whether jointly or singly, and wherever located, Joseph Cole Barleta.

[ECF No. 202 at Section II.A (emphasis added)].

Thus, the Asset Freeze explicitly prevents Cole, his bank, and any person participating with Cole from (among other things) pledging, transferring or withdrawing any cash that Cole (whether alone or with others) owns, controls, or has possession of. To prevent violations of the Asset Freeze, the Order goes on to direct banks and other financial institutions to prohibit the withdrawal of such funds [ECF No. 202 at Section II.B].

In December 2021, Cole consented to a Final Judgment with the amount of monetary relief to be determined upon the Commission's motion [ECF No. 1016]. After litigation concerning the monetary relief, the Court entered a Final Judgment against Cole ordering him to pay disgorgement of $10,055,625, prejudgment interest of $754,525.32, and a civil penalty of $1,330,000 [ECF No.

2

1434]. The Court ordered Cole to pay a total of $12,140,150.32 to the Receiver within thirty (30) days. *Id*. The Order also provides for post-judgment interest, which continues to accrue. Cole has yet to pay a dime and the matter is in collections with the Commission. Cole remains subject to an Asset Freeze to which he consented, which freeze includes CS 2000 as Cole admits he owns CS 2000 and controls its bank account as the signatory on the account [ECF No. 202].

On May 26, 2023, Cole filed a motion asking this Court to lift the asset freeze entered against him as to his company, CS 2000 [ECF No. 1572]. Cole admitted he owns CS 2000 and admitted he has signatory authority over the CS 2000 accounts. The Court ordered expedited briefing, and the Receiver and the Commission filed responses opposing the relief [ECF No. 1577, 1578]. On June 3, 2023, the Court denied Cole's motion to lift the asset freeze as to CS 2000 [ECF No. 1580]. The Court found that "[a]s explained in the SEC's Response and the Receiver's Notice of Position, Cole has not demonstrated good cause or a significant change in either the factual conditions or the law that would warrant lifting the asset freeze…." *Id.* at p.1.

Now Cole comes before the Court again, seeking the exact same relief the Court denied on June 3, 2023, but this time seeking it in the name of CS 2000. As set forth below, the Court should deny the Motion because CS 2000/Cole has not demonstrated good cause or a significant change in either the factual conditions or the law that would warrant lifting the asset freeze.

### III. The Court Should Deny CS 2000's Motion to Intervene

CS 2000, which is Cole's company represented by Cole's own counsel in this case, argues that the Court should grant it leave to intervene in this action pursuant to Fed. R. Civ. P. 24. *See* Mot. at 2. To establish the right to intervene under Fed. R. Civ. P. 24, the prospective intervenor must establish: "1) that the application to intervene is timely; 2) that the intervenor has an interest relating to the property or transaction that is the subject of the action; 3) that the intervenor is situated so disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and 4) that the intervener's interest is not adequately represented by the existing parties to the suit." *See* ECF No. _, Order Denying Motion to Intervene (quoting *Qantum Commc'ns Corp. v. Star Broad., Inc.*, No. 05-21772-CIV, 2009 WL 3055371, at *2 (S.D. Fla. Sept. 14, 2009) (*citing Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996))].

CS 2000 must demonstrate all of these factors. It can demonstrate none of them. The motion to intervene is untimely. The asset freeze has been in effect for years. This case is closed. The litigation is over. The intervenor is an entity owned by Cole, whose lawyer filed the instant

3

motion on the intervenor's behalf. The intervenor's interest is represented by Cole – the intervenor's owner.

This Court has previously denied motions to intervene in this case where the interests of the non-party seeking to intervene are adequately represented by a party to this case or the Receiver. *See, e.g.,* ECF No. 152. Here, CS 2000's interests in this action are adequately represented by CS 2000's owner – Defendant Cole. Accordingly, CS 2000 does not satisfy the requirements to establish the right to intervene under Fed. R. Civ. P. 24. *See id.*

### IV. CS 2000 Cannot Meet Its Burden to Lift the Asset Freeze Imposed Against Cole

#### A. Legal Standard

The Eleventh Circuit has determined that a district court may exercise its full range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award. *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Co.*, 51 F.3d 982, 987 (11th Cir. 1995). The purpose of such a freeze order is to ensure that "any funds that may become due can be collected. The order functions like an attachment." *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir.1990); *see also Infinity Grp. Co.*, 212 F.3d at 197 ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.") (internal citation omitted).

Where, as here, the Defendant consented to the asset freeze [ECF No. 202], the standards for the modification of consent decrees govern. The Eleventh Circuit has determined that the district court may modify a consent decree if the movant shows that: (1) there has been "a significant change either in factual conditions or in law[;]" and (2) "the proposed modification is suitably tailored to the changed circumstances." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1033 (11th Cir. 2002) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 391 (1992)).

Cole apparently seeks to proceed under a different standard by filing the instant Motion in the name of his company, CS 2000, rather than in his own name. However, it is undisputed that Cole owns CS 2000, controls its bank accounts, and shares counsel with CS 2000. The Court should treat the instant Motion as having been filed by Cole, and should apply the standard for lifting an asset freeze to which the movant has consented.

4

**B. CS 2000 Cannot Meet Its Burden For Lifting the Asset Freeze**

CS 2000's motion emphasizes that it was released from the CBSG receivership. This is not relevant to any issue before the Court. CS 2000 was initially included in the Receivership because it was believed to have been an alter ego of CBSG [ECF No. 357 at p.5, Receiver's Motion to Expand Receivership to Include CS 2000]. When it was subsequently discovered that CS 2000 did not act as an alter ego of CS 2000 (the basis for including it in the Receivership), a Motion was filed to release CS 2000 from the Receivership. Releasing CS 2000 from the Receivership reflects nothing more than that.

After CS 2000 was released from the Receivership, the Commission obtained additional information, that Cole controlled it and controlled its bank accounts. The bank, in possession of the Asset Freeze Order, determined to freeze the account because the Asset Freeze applies to all accounts Cole controls or is the signatory on, and the CS 2000 is one such bank account. It is undisputed that Cole is the signatory. *In fact, the Commission has now learned that Cole used CS 2000's bank account to pay Cole's defense lawyer in this case $45,000 legal expenses in this case, including $15,000 on March 29, 2023; $15,000 on April 24, 2023; and $15,000 on April 28, 2023.* [Exhibit A, Composite CS 2000 Checks & Wire]. These were sent by two checks that appear to bear Cole's signature.

Now Cole wishes to unfreeze the CS 2000 account so he can continue using it to pay his lawyers, including those in his criminal case. Despite the fact that Cole is subject to a Final Judgment that he has failed to pay a penny on.

1.  **CS 2000 Did Not Show a Significant Change Either in Factual Conditions or in Law**

According to the notes and offering letter Cole filed with his first motion to lift the asset freeze as to CS 2000, Cole has owed the investors in the Capital Source 2000 offering money since before the Commission even filed its case [ECF no. 1572]. Thus, it appears that when he consented to the Asset Freeze, he already owed these same investors money. Since consenting to the Asset Freeze, nothing has happened other than Cole – by his own admission in the Motion and exhibits filed thereto – recently renegotiated with those investors to pay them even less than before. Further, the Receiver's counsel emailing the Asset Freeze to Cole's new bank is a distinction without a difference. As is the release of CS 2000 from the Receivership when it was determined CS 2000 was not a CBSG alter ego (the sole basis for placing CS 2000 into the Receivership, ECF No. 375].

As set forth above, and as Cole and CS 2000 do not dispute, the Asset Freeze prohibits Cole, the signatory on the CS 2000 account, from transferring the funds. The only thing that has changed is the bank prevented Cole and CS 2000 from continuing to violate the Asset Freeze. He never should have violated it to begin with. And as for his supposed need for legal fees, Cole has been paying lawyers in this case for 3 years, including as of the time he signed the consent to the Asset Freeze. He failed to file the sworn accounting the Court ordered, and failed to produce financial records, and therefore there is no evidence whatsoever about his need for fees.

Regardless, as set forth in below, lifting the Asset Freeze is not appropriate where, as here, the defendant has not paid his Final Judgment and CS 2000 is subject to the Asset Freeze under the explicit terms of the Asset Freeze.

**2. The Proposed Modification is Not Suitably Tailored to The Changed Circumstances**

The changed circumstance since Cole consented to the Asset Freeze is the imposition of a Final Judgment against him. He has failed to pay a dime and the Final Judgment remains outstanding against him.

CS 2000/Cole claim in the Motion that the changed circumstances is that "we know one-hundred percent that the assets in question, specifically cash, were not ill-gotten because they were returned to Cole and Bromley by this Court and with the consent of both the SEC and the Receiver." [ECF No. 1734 at p.11]. This argument is baseless and patently false. CS 2000 was released from the Receivership because the facts necessary for including it in the Receivership no longer existed – it was not an alter ego of CBSG. The Asset Freeze was not lifted and remained in effect as to Cole. It turns out that CS 2000 is Cole's company and Cole controls not only CS 2000 but also its bank accounts. It turns out that Cole has in fact used CS 2000's bank account to pay his legal fees in this case. He uses CS 2000 as his own personal bank account. It is subject to the Asset Freeze and must remain subject to it. The Commission's Collections Unit is currently working to collect on the Final Judgment against Cole, and has sought and is seeking discovery concerning CS 2000. The instant Motion interferes with those efforts and should be denied.

Cole failed to file the Court-ordered sworn accounting and did not produce financial records, and therefore his disclosures and admissions in his initial Motion to lift the Asset Freeze, and in the instant Motion, have illuminated his control over and use of these funds. CS 2000/Cole bears the burden, and neither Cole nor CS 2000 has presented no evidence that the funds in the Capital Source 2000 bank account he controls are not subject to collections activity on the Final

6

Judgment issued against Cole personally.

Indeed, Cole's initial Motion [ECF No. 1572] indicated that he used these funds for personal purposes and/or received distributions because he argued he needs the Capital Source 2000 account unfrozen in order to pay his own lawyers. The amount in the Capital Source 2000 account Cole controls has less in it than the Final Judgment imposed against him, and at this time none of the more than $12 million Cole owes to investors under the Final Judgment has been paid – thus, at this time there is a potential shortfall of at least $12 million for the victims of Cole's fraud in this case. Because CS 2000/Cole failed to demonstrate that the Capital Source 2000 funds are not subject to collections activity on the Final Judgment against Cole, and failed to meet the burden for modifying the Asset Freeze to which Cole consented, the Court should deny his Motion.

### C. The Court Should Exercise Its Discretion To Deny The Motion

The Court should decline to lift the asset freeze against Cole to permit him to spend any funds in CS 2000 because that money is necessary to ensure maximum compensation to the victims in this case. *See Mountain Capital Mgmt., L.L.C.*, 2010 WL 2473588, at *2 ("The Court evaluates an application to unfreeze assets for payment of attorneys' fees also in light of the principle that '[n]either civil nor criminal defendants have the right to use frozen investor funds to pay their counsel.' ") (quoting Credit Bancorp Ltd., 2010 WL 768944, at *4). The fact that the Capital Source 2000 account *might* not contain funds tainted by Cole's fraud is of no moment. That is because the purpose of an asset freeze is to preserve all of the defendant's assets for the victims of his fraud, and therefore, a "defendant can be ordered to disgorge funds that were not causally tied to the fraudulent activity." *S.E.C. v. Spongetech Delivery Sys., Inc.*, No. 10–CV–2031 DLI JMA, 2011 WL 887940, at *9 (E.D.N.Y. Mar. 14, 2011) (citing *SEC v. Aragon Capital Mgmt., LLC,* 672 F.Supp.2d 421, 443 (S.D.N.Y.2009)); *see also S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C.Cir.2000) ("As the SEC points out, the requirement of a causal relationship between a wrongful act and the property to be disgorged does not imply that a court may order a malefactor to disgorge only the actual property obtained by means of his wrongful act. Rather, the causal connection required is between the amount by which the defendant was unjustly enriched and the amount he can be required to disgorge."); *S.E.C. v. Callahan*, 12-cv-1065, 2015 WL 10853927 (E.D.N.Y. Dec. 24, 2015) (denying motion to partially lift asset freeze).

The Capital Source 2000 funds should not be released for multiple reasons. First, the amount of loss to investors asserted by the Commission in this case, and which Cole has been

7

Case 9:20-cv-81205-RAR   Document 1741   Entered on FLSD Docket 11/07/2023   Page 8 of 9

ordered to repay to investors in the Final Judgment against him, far exceeds the known value of available assets of Cole, who claims in his Motion he will be financially impacted if the funds remain frozen because, among other things, he needs the money for lawyers and to pay debts to other investors. A further depletion of assets would not be in the best interests of the investors of this case. *S.E.C. v. Forte*, 598 F. Supp. 2d 689, 692-94 (E.D. Pa 2009) ("[I]f the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees.") (citations omitted)). CS 2000/Cole has provided no sworn account – despite Cole being ordered to do so – and no evidence other than Cole's own self-serving testimony that he cannot use the money in the Capital Source 2000 account to pay the investors of this case.

Further, the CS 2000 notes, attached to the Motion filed at ECF No. 1572, pursuant to which CS 2000/Cole supposedly owe other investors in yet another offering, were entered into in March 2023 – after the Final Judgment was issued in this case and after Cole consented to the Asset Freeze that freezes the CS 2000 accounts. Given that Cole has paid none of the Final Judgment imposed against him, and given the lack of evidence CS 2000/Cole presented about the Capital Source 2000 funds, the Court should decline to lift the Asset Freeze.

As Cole has ignored the Court's Order to provide an accounting of his assets, his true financial condition is unknown. In the absence of facts from which an accurate assessment of Cole's financial condition can be determined and the use of Capital Source 2000 funds can be determined, the depletion of assets frozen for the benefit of investors in this case cannot be justified. *See Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d at 430; *S.E.C. v. Schiffer*, No. 97-CV-5853, 1998 WL 901684, at *1-3 (S.D.N.Y. June 25, 1998) (denying reconsideration of defendant's request to unfreeze assets because his failure to provide financial information on Fifth Amendment grounds "warranted a measure designed to preserve the status quo while the court could obtain an accurate picture of the whereabouts of the proceeds of the [alleged fraud].").

If Cole wishes to have the Asset Freeze lifted, he need only pay the Final Judgment against him in this case. He has chosen to ignore the Final Judgment and seeks to use funds he controls for purposes other than that for which the Asset Freeze was intended and the Final Judgment mandates. The Court should deny the Motion, sought this time in the name of CS 2000. Based on Cole's admissions about his use of the Capital Source 2000 funds and the bank records for CS 2000 showing that Cole pays his lawyer in this case from the CS 2000 bank account he controls,

the Court should permit the Commission's Collections unit to continue engaging in discovery to determine the scope of Cole's violation of the Asset Freeze and to determine what if any funds can be collected from CS 2000 for the benefit of investors in this case. Cole has concealed his financial assets by failing to produce documents and file the Court-ordered sworn accounting, but the information Cole and CS 2000 have disclosed in their Motions certainly proves one thing – there is an account at Capital Source 2000 over which Cole maintains control and which funds he has utilized already to pay his personal legal counsel despite the Asset Freeze. Releasing those funds based on the instant Motion would, at best, be premature at this time given the foregoing.

November 7, 2023	Respectfully submitted,

By: s/Amie Riggle Berlin
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Florida Bar No. 630020
Direct Dial: (305) 982-6322
Direct email: berlina@sec.gov
Attorney for Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154