UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CIV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, et al.,

    Defendants.
_____/

## SECURED CHEHEBAR INVESTORS'S MOTION TO INTERVENE

GEMJ Chehebar GRAT, LLC, Albert Chehebar, Isaac Shehebar, Isaac Shehebar 2008 AIJJ Grantor Retained Annuity Trust, Michael Chehebar, Ezra Shehebar, Ezra Chehebar, Ezra Shehebar LLC, Cherie Chehebar, Josef Chehebar, Steven Chehebar, and Joyce Chehebar (collectively the "Secured Chehebar Investors" or "SCIs"), by and thorough undersigned counsel, respectfully seek leave of the Court to intervene in this matter as a matter of right pursuant to Rule 24 of the Federal Rules of Civil Procedure. A copy of the motion (the "Motion" or "Mtn.") that the SCIs seek to have adjudicated by this Court is attached as "Exhibit 1". In support of this Motion to Intervene, the SCIs state:

Between 2017 and 2019, the Secured Chehebar Investors entered into various loan and security agreements with Complete Business Solutions Group Inc. ("Par Funding"). A list of these loans is found in this matter at Docket Entry 1330-28. In making these loans, each SCI entered into a Promissory Note and Security Agreement with Par Funding. Samples of these documents are attached to the Motion as "Exhibit A" (Promissory Note) and Exhibit B" (Security Agreement). The Security Agreements provided: "In consideration of the loan made by [the] Secured Party to

Debtor, [the] Debtor" granted broad interests in "all of the Collateral" belonging to Par Funding. [Mtn., Ex. B at ¶2.] "Collateral" is broadly defined as "all tangible and intangible property…wherever located and whether now owned or hereinafter acquired, including but not limited to, all accounts, contract[] rights, general intangibles…investment property…deposit accounts, bank accounts, documents and instruments, together with all proceeds thereof….the term "proceeds" shall have the meaning given to it in the UCC and shall additionally include but not be limited to, whatever is realized upon the use, sale, exchange, license or other utilization of or any disposition of the Collateral, rights arising from the Collateral and collections and distributions on the Collateral, whether cash or non-cash, and all proceeds of the foregoing." [Mtn., Ex. B at ¶1.(a).] In addition, under the Security Agreement, Par Funding authorized "the filing of any financing statement and [agreed to] execute alone or with the Secured Party any other document…necessary to protect the security interest under [the] Security Agreement against the interests of third persons." [Mtn., Ex. B at ¶3.(b).]

Pursuant to the Loan and Security Agreements, the SCIs filed UCC Financing Statements. Attached as "Composite Exhibit C" to the Motion are UCC Financing Statements which were filed on January 11, 2017, in Delaware, by the following SCIs:

GEMJ Chehebar GRAT, LLC
Albert Shehebar
Isaac Shehebar
Isaac Shehebar 2008 AIJJ Grantor Retained Annuity Trust

Attached as "Composite Exhibit D" to the Motion are UCC Financing Statements which were filed on January 11, 2017, in Pennsylvania, by the following SCIs:

GEMJ Chehebar GRAT, LLC
Albert Shehebar
Isaac Shehebar
Isaac Shehebar 2008 AIJJ Grantor Retained Annuity Trust

Attached as "Composite Exhibit E" to the Motion are UCC Financing Statements which were filed on August 7, 2020, in Delaware, by the following SCIs:

GEMJ Chehebar GRAT, LLC
Albert Chehebar
Isaac Shehebar
Isaac Shehebar 2008 AIJJ Grantor Retained Annuity Trust
Michael Chehebar
Ezra Shehebar
Ezra Chehebar
Ezra Shehebar LLC
Cherie Chehebar
Josef Chehebar
Steven Chehebar
Joyce Chehebar

Through the perfection of these UCC Financing Statements, the SCIs obtained valid and enforceable liens against the property and assets that have been brought into the Receivership pending before this Court. The liens remain attached to those assets. The Receiver is readying to make recommendations to this Court concerning the distribution of the Receivership's assets and has not confirmed that it will honor the SCIs perfected security interests. The SCIs are entitled to preferential distribution of the assets covered by their liens, to the full extent of the debt owed to the SCIs by Par Funding.

The Motion seeks an evidentiary hearing and subsequent Order: (1) determining that the SCIs possess valid liens upon the assets of the Receivership estate; (2) adjudicating the priority and amount of their liens; (3) setting aside funds held by the Receivership estate sufficient to pay the SCIs and segregate those funds so that they are not subject to distribution in the claims process to any other junior or unsecured creditors; and, (4) modifying the Claims Administration Order [DE 1471] consistent with foregoing findings and rulings by this Court.

## ARGUMENT AND LAW

"Rule 24 of the Federal Rules of Civil Procedure provides that the Court must permit someone to intervene who brings a timely motion and who 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *Qantum Communs. Corp. v. Star Broad., Inc.*, No. 05-21772-CIV, 2009 U.S. Dist. LEXIS 92868, 2009 WL 3055371 (S.D. Fla. Sept. 14, 2009). "A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. If [the party] establishes each of the four requirements, the district court must allow him to intervene." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (internal citation omitted).

The Secured Chehebar Investors readily meet Rule 24's intervention standard.

**First, the application is timely.** The claims which are the subject of the Motion that the Secured Chehebar Investors seek to bring have not yet been adjudicated. Indeed, during the March 4, 2023, status conference, counsel for the Receiver flagged the UCC issue to the Court, indicating that the issue much be adjudicated and the time to do so is approaching. The SCIs have diligently pursued intervention to preserve their rights under the UCC liens they have filed. This Court will necessarily have to determine the SCIs rights under their perfected liens as part of the distribution process, see *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, *infra*, and no party to these

proceedings will suffer prejudice as a result of the Court going through the process of adjudicating the liens.

**Second, the SCIs possess an interest relating to the property which is the subject of these proceedings.** As set forth in the attached pleading, the SCIs have a security interest in the estate such that any distribution without regard to the SCIs security interest would be in derivation of their rights and contrary to law. The Eleventh Circuit has made clear that the SCI's rights have travelled into this Receivership and survive independent of it. In *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1341 (11th Cir. 2017), a receivership was established when the SEC brought an action in relation to a failed Ponzi scheme. Wells Fargo had perfected security interests in three properties that the receivership had taken possession of. The district court established a claims process and Wells Fargo missed the claims bar date for two of the three properties that it had previously established a security interest upon. Wells Fargo then filed a motion seeking a ruling from the district court that it did not need to file a claim because it had previously established a security interest in all three properties. The district court disagreed and permitted the Receiver to sell two of the properties without regard to Wells Fargo's liens. Wells Fargo appealed and the Eleventh Circuit reversed.

In overruling the lower court, the Eleventh Circuit gave great weight to creditor rights in the context of receiverships. "[W]hile a federal district court has wide-ranging authority to supervise a Receivership, we hold it does not have the authority to extinguish a creditor's pre-existing state law security interest, as the district court purported to do here." *Wells Fargo Bank, N.A.*, 848 F.3d at 1344. The Court explained that the "primary purpose of both Receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors" and went on to analyze the question in the context of Eleventh Circuit

bankruptcy decisions. *Wells Fargo Bank, N.A.*, 848 F.3d at 1344. The court noted that in the bankruptcy context, secured creditors' liens remain intact without the need to file a claim. Significant to the case here, the court cited favorably, the following passage from a treatise on Receiverships:

> The appointment of a Receiver does not invalidate liens existing at the time the Receiver is appointed, although it may affect or change the remedy or remedies which the lienholder may use to enforce his lien. Generally speaking, the person who has a specific lien on property is entitled by following proper procedure to pay himself out of the property and if it be insufficient, then to prove his claim for the deficiency. In the case of Receivership such claim must come out of the proceeds of property not covered by the specific lien and such claim for deficiency must prorate with the unsecured creditors. Generally speaking, no other creditor except the lienholder is entitled to any part of the proceeds of property covered by a lien until the lienor is first paid.

*Wells Fargo Bank, N.A.*, 848 F.3d at 1345. As recognized by the Eleventh Circuit, by virtue of their UCC liens, the SCIs possess an interest in the property that is the subject of these proceedings, which is greater than any other claimant.

**Third, disposition of the action will impede or impair SCIs ability to protect their interest.** The Claims Administration Order deeply impacts the rights of the Secured Chehebar Investors and is the subject of this motion. Pursuant to the Claims Administration Order, "each Claimant and Administrative Claimant must properly complete and sign a Proof of Claim Form which, together with supporting documentation, must be timely submitted to the Receiver's Claims Agent" on or before the Claims Bar Date (March 22, 2023, at 11:59 p.m.). [DE 1471 at ¶7.] "Any Claimant or Administrative Claimant who is required to submit a Proof of Claim, but fails to do so in a timely manner or in the proper form, shall: (a) be forever barred, estopped, and enjoined to the fullest extent allowed by applicable law from asserting, in any manner, any Claim against any of the Receivership Entities, the Receivership Estate, or its assets; and (b) shall not receive any distribution from or have standing to object to any distribution plan proposed by the Receiver.

Further, the Receiver shall have no further obligation to provide any notices on account of such Claim and the Receivership Estate is discharged from any and all indebtedness or liability with respect to such Claim." [DE 1471 at ¶11.]

The Claims Administration Order also vests the Receiver with broad authority to resolve any claim without Court intervention: "**The Receiver shall have the authority to compromise and settle claims from any Direct Claimant or Administrative Claimant, or resolve any Notice of Deficiency, at any time, as appropriate, without further order of this Court. The Receiver, at his discretion, may file a motion seeking Court approval of any compromise or settlement of a Claim.** All parties to this proceeding are directed to cooperate with the Receiver to the maximum extent possible to achieve swift resolution of disputes concerning claims without the need for a determination by the Court." [DE 1471 at ¶19 (emphasis added)]. Finally, the Claims Administration Order makes clear that any parties submitting to the claims process are bound by the decisions of the Court. "Submission of a Proof of Claim in this case constitutes consent to the jurisdiction of the Court for all purposes and constitutes agreement to be bound by its decisions, including, without limitation, a determination as to the extent, validity and amount of any Claim asserted against the Receivership Estate. The submission of a Proof of Claim shall constitute consent to be bound by the decisions of the Court as to the treatment of the Claim in a Court-approved distribution plan." [DE 1471 at ¶18.]

Once the Receiver and Court determine the manner and sums of distributions, and the distributions begin, the SCI's rights will immediately be impacted.

**Fourth, the SCI's interest is not adequately represented by the existing parties to the suit.** The SEC and Receiver have made clear that neither intends to seek to uphold the SCIs perfected liens and their priority. During the March 4, 2024 status conference, which the SCIs

were not party to, the SEC and Receiver made clear that they were seeking to diminish the SCIs rights. The Receiver referred to the SCIs UCC liens during the hearing to flag for the Court the upcoming need to resolve the issue:

> And they are unique, in one respect, in that they have UCC1s that were actually reported. And they've taken the position that their claims should have priority over all other investments, all other claimants, all other distributions. So that's their position. And they also claim that there should be no deduction for the amounts they've received for interest. And in fact, because they have a secured claim, they should receive interest that they would have recovered on those investments, on those promissory notes.
>
> So that is one that I think we have been trying to resolve, but I think that may be one that the Court may need to resolve when we file our motion to accept the notices of determination and adjudicate the objections. We will continue to try to work through that issue, but that may be one just, I want to put it on the Court's radar, that that is potentially an objection that the Court may need to address.

[DE 1826 at 26:21 – 27:7.] The SEC referred to the SCIs as "insiders" and made plain its belief that the SCIs should not receive any distribution in this case. "And we have given them our position on the Chehebars, who, in our view, were insiders who should not have claims in this case anyway, and we've talked about some of the other matters." [DE 1826 at 67:15-18.] The Receiver and the SCIs have not been able to reach an agreement on the resolution of the SCIs' liens. Undersigned counsel and counsel for the Receiver, have previously agreed that if the SCIs and were not able to resolve their disputes concerning the SCIs entitlement to priority, the claims would be presented to the Court so that the Court could rule upon their position. Further, the Receiver and counsel for the SCI's conferred and agreed that the parties would seek such relief prior to any agreements being entered into with any claimants/creditors, and prior to any distributions made to any claimants/creditors. The time for that resolution has become ripe as neither the SEC nor the Receiver are capable or interested in protecting the rights of the SCIs.

**I HEREBY CERTIFY** that I have conferred with counsel for the Receiver and SEC in relation to the relief sought through this Motion to Intervene.

The Receiver opposes the relief requested in this Motion to Intervene.

The SEC opposes the relief requested in this Motion to Intervene.

WHEREFORE, the SCIs respectfully request this Court grant them leave to intervene and file the attached Motion.

Dated: April 18, 2024.

Respectfully submitted,

s/ Marshall Dore Louis
Marshall Dore Louis
Florida Bar No. 512680
Bruce Alan Weil
Florida Bar No. 816469
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400/FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com
         bweil@bsfllp.com