UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81205-RAR

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

COMPLETE BUSINESS SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING, *et al.,*

        Defendants.

_____/

## RECEIVER'S QUARTERLY STATUS REPORT DATED APRIL 30, 2024

Ryan K. Stumphauzer, Esq., Court-Appointed Receiver ("Receiver") of the Receivership Entities,[1] pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141], hereby files this Quarterly Status Report dated April 30, 2024. By way of summary, as of the end

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding; Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC; RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Investment Fund 2 LP; MK Corporate Debt Investment Company LLC; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consultants, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; Liberty Eighth Avenue LLC; The LME 2017 Family Trust; Blue Valley Holdings, LLC; LWP North LLC; 500 Fairmount Avenue, LLC; Recruiting and Marketing Resources, Inc.; Contract Financing Solutions, Inc.; Stone Harbor Processing LLC; LM Property Management LLC; and ALB Management, Inc., and the Receivership also includes the property located at 107 Quayside Drive, Jupiter, Florida 33477.

of the reporting period (March 31, 2024), the Receivership Estate consisted of, among other things, approximately $26,500,000 of unsold real property, [2] $596,000 in other unsold tangible assets the Receiver has brought into the Receivership Estate, and $150,288,425 in cash. As of April 30, 2024, the current cash balance was $152,098,367. The report attached as Exhibit 1 includes a schedule reflecting the net tangible assets contained within the Receivership Estate.

I. **Overall Administration of Receivership Estate**

   A. **Quarterly Report of Receivership Estate**

Pursuant to the requirements of the Amended Order Appointing Receiver [ECF No. 141], attached as Exhibit 1 is a full report and accounting reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates (the "Quarterly Report"). The Quarterly Report contains the following information: (1) summary of the operations of the Receiver; (2) the amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate; (3) a schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership; (4) a description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; (5) a description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in:

---

[2] The amounts for real property have decreased from the previous quarter as a result of the sale of real property during the quarter, resulting in an increase in the cash balance.

(i) reducing the claims to judgment; and, (ii) collecting such judgments); (6) a list of all known creditors with their addresses and the amounts of their claims; (7) the status of Creditor Claims Proceedings, after such proceedings have been commenced; and (8) the Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations, as required pursuant to Paragraphs 53 and 54 of the Amended Order Appointing Receiver dated August 13, 2020 [ECF No. 141].

## II.   Update on Other Assets Included within the Receivership Estate

### A.   Accounts Receivable and Collection Activities

At the time of his appointment, the Receiver obtained control over $28,779,570 in cash held by the various original Receivership Entities. As a result of various Orders expanding the Receivership, the Receiver obtained an additional $14,756,649 in cash held by the additional Receivership Entities. The Receiver has also acquired an additional $146,098,468 in cash through collections, settlements, other recoveries, and asset sales. After accounting for expenses, the total cash balance was $150,288,425 as of March 31, 2024. As of April 30, 2024, the current cash balance was $152,098,367. This increase of the cash balance is the result of, among other things, collections activities, the receipt of proceeds from settlements the Receiver has reached with third parties, and the sale of real estate within the Receivership Estate.

### B.   Accounts Receivable – Merchant Cash Advance Accounts

The Receiver, his professionals, and the staff he rehired at Par Funding have been continuing to collect on the accounts receivable for the merchant cash advance ("MCA") accounts that were pending with the company as of the time the Receiver took over the operations of Par Funding. Through the first quarter of 2022, the Receiver's quarterly status reports reflected the full accounts receivable balances that had been recorded on Par Funding's books for these MCA accounts, while explaining that these balances did not reflect appropriate reductions or reserves

for collectability or bad debt. Starting in the quarter that ended on June 30, 2022, the Receiver identified MCA accounts that should be written off because the merchant had a closed bankruptcy, was no longer in operation, or had neither viable guarantors nor viable collateral. The Receiver also determined that a reserve was required for MCA accounts with ongoing bankruptcies and in other circumstances where full payment was doubtful. *See* DSI's Report, attached as Exhibit 1.

At the end of the second quarter of the 2022 reporting period (April 1, 2022, through June 30, 2022), the net result of these adjustments was a reduction of the total receivable balance from approximately $345 million to $224 million. At the end of the third quarter of the 2022 reporting period (July 1, 2022, through September 30, 2022), the total receivable balance was further reduced as a result of these adjustments to a total of $189 million. At the end of the third quarter of the 2023 reporting period (July 1, 2023, through September 30, 2023), the total receivable balance was further reduced to $68.5 million. As of the end of this reporting period, the total receivable balance was further reduced to $23.8 million. The Receiver anticipates further reductions in the receivable balance.

Based on this collectability analysis, and only using information that was available to CBSG management, the Receiver finalized and filed an amended tax return for 2018, a previously unfiled return for 2019, and an amended return for 2020.  Through these returns, the Receiver is requesting a refund of approximately $10.5 million**.**

      C.      **Collection Efforts Through Outside Collection Company and Litigation**

As previously reported, the Receiver engaged Altus Receivables Management, Inc. ("Altus"), a national collection company, to collect judgments previously entered against select non-performing, non-bankruptcy merchants, guarantors, and counterparties that had outstanding balances and/or were otherwise in default at the time of the establishment of the receivership.

Referrals to Altus began on January 9, 2022, and 216 exemplified judgments in total were referred to Altus. Altus has closed 166 files, either by way of settlement or based on a determination that further collection efforts would be futile. Although some collection efforts through Altus are ongoing, the Receiver has not referred any additional files to Altus for several months, does not plan to send any additional files to Altus, and is expecting any remaining collection efforts from Altus to be winding down.

The Receiver also initiated 68 actions against merchants in the Philadelphia Court of Common Pleas, either through civil action complaints or confessions of judgment. Of these, only 4 are being actively litigated, with the balance resolved through offers of settlement, default, or confessed judgments.

### D.   Collection Activity and Settlements with ESC and HBC Counterparties

To date, the Receiver has resolved, either through full payoffs of the amount owed or settlements, the account balances of several counterparties to agreements with Eagle Six Consultants, Inc. ("ESC") and Heritage Business Consulting, Inc. ("HBC"). The Receiver continues to explore settlement opportunities with the remaining viable counterparties to these agreements. Although the remaining balance owed to ESC and HBC by these counterparties is $29.3 million, the Receiver believes a significant portion of that amount is likely to be uncollectable.

### E.   Life Settlements

The Receiver continues to manage the portfolios of life settlement policies owned by ABFP Multi-Strategy Investment Fund LP ("MSIF") and ABFP Multi-Strategy Investment Fund II LP ("MSIF II"). On February 27, 2024, the Receiver was notified that one of the MSIF II life settlement policies had matured, and deposited the proceeds totaling $750,000 in March 2024. To date, the Receiver has received total death benefits payable for policies owned by MSIF in the

amount of $5,532,479, and for policies owned by MSIF II in the amount of $7,700,000. These amounts only include the policy face value the Receiver has received on these policies, and exclude any interest or dividends the Receiver has received for these policies.

### III. Settlement with Eckert Seamans

As previously reported, the Receiver and class counsel representing investor plaintiffs in various class action cases reached an agreement in principle to settle their claims against Eckert Seamans and its former partner John W. Pauciulo for $45 million, which represented the approximate amount of the remaining limits on the law firm's eroding insurance policy. To facilitate this settlement, the Receiver attempted to resolve potential objections from the following groups: (1) Defendant Dean Vagnozzi and non-parties Alec Vagnozzi, Albert Vagnozzi, and Terry Kohler (collectively, the "Vagnozzi Group"); and (2) the Plaintiffs in the case of *Parker, et al. v. Pauciulo, et al.*, No. 20-00892 (Phila. Ct. Com. Pl. 2020) (the "Parker Plaintiffs"). The Receiver attended settlement conferences before United States Magistrate Judge Bruce E. Reinhart with the Vagnozzi Group on October 31, 2023 (ECF No. 1727) and the Parker Plaintiffs on November 13, 2023 (ECF No. 1728), but was unable to reach agreements with either group.

The Receiver, together with counsel for the investor class, drafted a "Motion for (i) Approval of Settlement Among the Receiver, Putative Class Plaintiffs and Eckert Seamans, (ii) Approval of Form, Content and Manner of Notice of Settlement and Bar Order, (iii) Entry of Bar Order, and (iv) Scheduling a Hearing. The Receiver submitted a draft of that motion to the SEC for its review in December 2024, and on April 19, 2024, the SEC advised the Receiver that it would not oppose this motion. Now that the Receiver is aware of the SEC's position, he intends to file the aforementioned motion by Friday, May 3, 2024.

IV.  **Receiver-Controlled Real Estate and Personal Property**

   A.  **Marketing of Personal Residences**

The Receiver has been in control of 25 properties (the "Receiver-Controlled Properties"). Three of the Receiver-Controlled Properties are single-family residential properties (the "Single-Family Properties"). By Order dated January 10, 2023, the Court authorized the Receiver to market for sale all of the Receiver-Controlled Properties (the "Court Order"). Following the Court Order, the Receiver (i) commissioned market value appraisals of the Single- Family Properties and (ii) engaged separate real estate brokers to list and market each property for sale. Currently, the Receiver has sold two of the three Single-Family Properties. Each sales price was above the property's appraised value.

As previously reported, the third Single-Family Property located at 107 Quayside Drive, Jupiter, Florida, was under an Agreement of Sale, but certain title issues, including an IRS lien based on Defendant Lisa McElhone's pre-receivership federal tax obligations, has prevented the Receiver from closing on that sale.  This property is no longer under an Agreement of Sale¸ as the buyer under that agreement cancelled the contract when it became clear that these title issues could not be resolved promptly.  The Receiver is continuing to explore methods to resolve these title issues, and anticipates filing a motion with the Court once he has determined the relief that will be necessary to satisfy a title insurance company for the purpose of providing title insurance on the sale of that property.

The status of the Single-Family Properties is summarized below:

| Properties | Location | Listing Service | Status | Sale Price |
|---|---|---|---|---|
| 105 Rebecca Court, | Paupack, PA | Jack Muehlhan Realty | **Sold** | $3,300,000 |

| | | | | |
|---|---|---|---|---|
| 568 Ferndale Lane | Haverford, PA | MLS | **Sold** | $3,338,000 |
| 107 Quayside Drive | Jupiter, FL | Waterfront Properties and Club Communities - MLS | Previously Under Contract, But Sale Cancelled | |

B.     **Marketing of Philadelphia Commercial/Mixed Use Properties**

The remaining 22 properties are commercial, residential, or mixed-use rental properties in Philadelphia (the "Philadelphia Properties"), and 14 of them have been sold. A fifteenth property is scheduled to close once certain regulatory issues with the City of Philadelphia resolve. A sixteenth property is scheduled to close on May 2, 2024. The Receiver is also finalizing Agreements of Sale for two (2) additional properties. The status of the Philadelphia Properties is summarized below:

| | **Properties** | **Neighborhood** | **Listing Service/Broker** | **Status** | **Sale Price** |
|---|---|---|---|---|---|
| 1. | 300 Market Street, Philadelphia PA | Old City | LoopNet™ Berkshire | Finalizing Agreement of Sale | |
| 2. | 1427 Melon Street, Philadelphia PA | Fairmount | LoopNet™ Colliers | **Sold** | $5,550,000 |
| 3. | 1530 Christian Street, Philadelphia PA | Graduate Hospital | Bright MLS® Berkshire | **Sold** | $890,000 |
| 4. | 627-629 E. Girard Avenue, Philadelphia, PA | Fishtown | LoopNet™ Berkshire | Finalizing Agreement of Sale | |
| 5. | 861 N. 3rd Street, Philadelphia PA | Northern Liberties | LoopNet™ Berkshire | Agreement of Sale ($1,468,500) Closing on May 2, 2024 | |

|    | Properties | Neighborhood | Listing Service/Broker | Status | Sale Price |
|---|---|---|---|---|---|
| 6. | 1223 N. 25th Street, Units A, B, C, Philadelphia PA | Sharswood | Bright MLS® COMPASS | **Sold** | $650,000 |
| 7. | 4633 Walnut Street, Philadelphia PA | Walnut Hill | Bright MLS® COMPASS | **Sold** | $700,000 |
| 8. | 803 S. 4th Street, Philadelphia PA | Queens Village | Bright MLS® Berkshire | **Sold** | $430,000 |
| 9. | 142 N. 2nd Street (owned by 803 S. 4th St., LLC), Philadelphia PA | Old City | LoopNet Berkshire | Agreement of Sale ($175,000) Closing to be determined | |
| 10. | 915-917 S. 11th Street, Philadelphia PA | Hawthorne | Bright MLS® Berkshire | **Sold** | $1,750,000 |
| 11. | 135-137 N. 3rd Street, Philadelphia PA | Old City | LoopNet™ Berkshire | Listed and actively showing | |
| 12. | 500 Fairmount Avenue, Philadelphia PA | Northern Liberties | LoopNet™ Berkshire | **Sold** | $1,450,000 |
| 13. | 2413 Roma Drive, Philadelphia PA | Sienna Place | Bright MLS® Berkshire | **Sold** | $676,000 |
| 14. | 118 Olive Street, Philadelphia PA | Northern Liberties | Bright MLS® COMPASS | **Sold** | $661,000 |
| 15. | 1250 N. 25th Street, Units A, B C, Philadelphia PA | Sharswood | Bright MLS® COMPASS | **Sold** | $650,000 |
| 16. | 1248 N. 25th Street, Unit A (owned by 1250 North 25th St., LLC), Philadelphia PA | Sharswood | Bright MLS® COMPASS | **Sold** | $250,000 |
| 17. | 1932 Spruce Street, Philadelphia PA | Rittenhouse Square | Bright MLS® Berkshire | **Sold** | $1,650,000 |

|    | Properties | Neighborhood | Listing Service/Broker | Status | Sale Price |
|----|------------|--------------|------------------------|--------|------------|
| 18. | 242 S. 21st Street, Philadelphia PA | Rittenhouse Square | Bright MLS® Berkshire | **Sold** | $1,025,000 |
| 19. | 1635 Passyunk Ave, Philadelphia PA | East Passyunk | LoopNet™ Berkshire | Listed and actively showing | |
| 20. | 715 Sansom Street, Philadelphia PA | Jewelers' Row | LoopNet™ Colliers | **Sold** | $2,100,000 |
| 21. | 20-22 N. 3rd Street (4 units), Philadelphia PA | Old City | LoopNet™ Berkshire | Listed and actively showing | |
| 22. | 205 B Arch Street (104 N. 2nd Street), Philadelphia PA | Old City | LoopNet™ Berkshire | Listed and actively showing | |

The Receiver continues to work diligently with Berkshire to market these properties aggressively so as to maximize their value in any sale.

Finally, the vast majority of the Philadelphia Properties are individually held by a corresponding single purpose limited liability company registered in Pennsylvania (the "LLC"). As the property held by a particular LLC is sold, the Receiver intends to dissolve the corresponding LLC under Pennsylvania law as part of his efforts to reduce the number of Receivership Entities and, ultimately, to wind down the Receivership Estate.

### C. Sale of Personal Property

The Receiver has now sold a substantial amount of personal property within the Receivership Estate, including automobiles, jet skis, fine art, and luxury watches. The Receiver is still in the process of selling two watercraft and one piece of artwork. The Receiver is also in the process of cataloguing and auctioning various items of sports memorabilia from the offices at 20-22 N. 3rd Street, Philadelphia. The Receiver continues to explore other opportunities to sell or dispose of the remaining property within the Receivership Estate.

V. **Claims and Distribution Process**

On December 21, 2022, the Receiver filed a Motion to Establish and Approve: (1) Proof of Claim Form; (2) Claims Bar Date and Notice Procedures; and (3) Procedure to Administer and Determine Claims (the "Claims Motion"). The Court entered an Order granting the Claims Motion on December 23, 2022 (the "Claims Order"). By granting the Receiver's Claims Motion, the Court has approved a procedure for each person or entity who believes he, she, or it may have a claim against any Receivership Entity to submit a claim to the Receivership assets.

In January 2023, the Receiver began the process of providing notice (direct and by publication) to potential claimants. Pursuant to the requirements of this claim process, all Proof of Claim Forms were required to be submitted to the Receiver's Claims Agent, Epiq Corporate Restructuring, LLC ("Epiq"), on or before March 22, 2023, at 11:59 p.m. (prevailing Eastern Time).

Beginning on November 21, 2023, the Receiver began to send out Notices of the Receiver's Determination ("NODs") as to these proofs of claim. In these NODs, the Receiver indicated whether the Receiver agreed with the validity of each claim and, based on the records of the Receivership Entities, whether the Receiver agreed with the amount each claimant sought to recover from the Receivership Estate. The NODs provided each claimant with a 30-day window to submit a response to the NODs, indicating whether they had any objections to the Receiver's determinations. Approximately 300 claimants filed objections to the Receiver's NODs. These objections included various grounds, including objections to the Receiver's basis for rejecting particular claims and calculating approved claim amounts, objections to distributions being paid to various "Agent Funds, rather than direct distributions to the end investors, and objections from several investors who invested through a self-directed IRA at CamaPlan, whose individual claims were deemed to be duplicative of the bulk claim CamaPlan submitted on behalf of each of its

account holders.

On April 22, 2024, the Receiver filed a Motion to (i) Approve Proposed Treatment of Claims and (ii) for Determination of a Ponzi Scheme (ECF No. 1843). On Aril 23, 2024, the Court ordered all claimants with outstanding objections who wished to file a response to the Receiver's determination to do so by May 7, 2024, and ordered the Receiver to file a reply to each response, or each category of response if applicable, on or before May 21, 2024 (ECF No. 1845). After the Court resolves these objections and rules upon the proposed distribution method, the Receiver will seek the Court's permission to distribute funds to the investors with the assistance of Epiq.

## VI. Criminal Proceedings Report

On May 18, 2023, the United States filed a superseding indictment in the United States District Court for the Eastern District of Pennsylvania, charging 63 counts of criminal violations and two notices of forfeiture against Complete Business Solutions Group, Inc. d/b/a Par Funding, and Defendants Joseph LaForte, Joseph Cole Barletta, James LaForte, and Lisa McElhone. The Court unsealed the superseding indictment on May 23, 2023. Of note, 21 of the 63 counts in that indictment alleged criminal conduct by Par Funding. Specifically, Par Funding faced charges of conspiracy, wire fraud, and securities fraud. As the Receiver represents Par Funding for all legal purposes, counsel for the Receiver, Douglas K. Rosenblum, appeared before Magistrate Judge Richard Lloret on June 2, 2023, and entered a plea of not guilty to all counts against the company.

In recent months, prosecutors in the United States Attorney's Office have filed a variety of superseding indictments. Various individual defendants related to Par Funding have pled guilty and are awaiting sentencing. For ease of reference for this Court, below is a summary of all criminal dockets within the United States District Court for the Eastern District of Pennsylvania related to Par Funding. The Honorable Mark A. Kearney is presiding over each of the following cases.

- Case number 2:22-cr-00279 charges defendant Renato Gioe with two counts of extortionate collections of credit and one count of conspiracy to the same offense. Mr. Gioe pled guilty and is scheduled for sentencing on June 5, 2024.

- Case number 2:23-cr-00010 charges defendant Perry Abbonizio with one count of conspiracy to commit wire fraud. Mr. Abbonizio pled guilty and is scheduled for sentencing on June 4, 2024.

- Case number 2:23-cr-00198 charges defendants Joseph Lafore, James Laforte, and Joseph Cole Barleta with RICO violations, extortion, obstruction, perjury, retaliation, conspiracy, and more. Although this is the original docket number under which the government charged Par Funding as a corporate defendant, the government has now separated the company in a different indictment, detailed below. All defendants in this case have pled not guilty, and trial is scheduled for October 8, 2024. The Court has set aside 23 trial days for this case. Of note, attached to this RICO indictment are notices of forfeiture. The assets subject to the notices include, but are not limited to, a Cesna Citation Sovereign 680 jet bearing tail number N789MJ that is currently in the possession of the United States, all funds in a Charles Schwab investment account ending in number 7878 in the name of Tradewinds South, LLC, and parcels of land owned by Defendant Joseph Cole Barletta at 1745 Walnut Green Road and 1751 Walnut Green Road in Wilmington, Delaware. The United States has filed notices of lis pendens against both of these Wilmington, Delaware properties.

- Case number 2:24-cr-00065 charges defendants Joseph Laforte, Lisa McElhone, Joseph Cole Barleta, Rodney Ermel, and Kenneth Bacon with tax evasion, wire fraud, conspiracy, and related offenses. Mr. Ermel and Mr. Bacon provided tax and accounting services for Joseph Laforte and Lisa McElhone, individually, as well as for

      Mr. Laforte and Ms. McElhone's business entities. Defendant Lisa McElhone has pleaded guilty to one count of wire fraud and is scheduled for sentencing on August 12, 2024. The remaining defendants have pled not guilty and are scheduled for trial beginning December 3, 2024. The Court has set aside seven days for trial.

- Case number 2:24-cr-00066 is the new superseding indictment charging Par Funding with the same crimes originally charged on May 18, 2023. By virtue of the superseding indictment, Par Funding, as a corporate defendant, is now on its own timeline. This case is scheduled for trial on December 20, 2024. Both counsel for Par Funding and the United States Attorney's Office have notified the Court that the parties are exploring a non-trial disposition. The government has made clear that it does not wish to interfere with the Receivership proceedings before this Court in the Southern District of Florida, including the expeditious distribution of funds to investors. To that end, the United States and the Receiver are refraining from exchanging voluminous discovery materials in an effort to save legal fees and costs, as the overwhelming majority of discovery in this criminal case is duplicative of discovery materials obtained from Par Funding in this case. The Court has ordered the parties to file status reports at regular intervals to apprise the Court of the status of the proceedings before this Court in the Southern District of Florida.

The Receiver will continue to monitor and, as necessary, participate in these criminal proceedings, with the goal of minimizing any related expense to the Receivership Estate.

## VII. Conclusion

      **WHEREFORE**, Ryan K. Stumphauzer, as Court-Appointed Receiver, by and through his undersigned counsel, respectfully files this Quarterly Status Report dated April 30, 2024.

Dated: April 30, 2024

Respectfully Submitted,

**STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400

By: */s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA
Florida Bar No. 056140
tkolaya@sknlaw.com

*Co-Counsel for Receiver*

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200

By: */s/ Gaetan J. Alfano*
GAETAN J. ALFANO
Pennsylvania Bar No. 32971
*(Admitted Pro Hac Vice)*
GJA@Pietragallo.com
DOUGLAS K. ROSENBLUM
Pennsylvania Bar No. 90989
*(Admitted Pro Hac Vice)*
DKR@Pietragallo.com

*Co-Counsel for Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2024, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Timothy A. Kolaya*
TIMOTHY A. KOLAYA