Karean L Eissler
149 Hidden Hollow Court
Phoenixville, PA 19460
May 6, 2024

Clerk's Office
Southern District of Florida
Wilkie D. Ferguson Jr. US Courthouse
400 North Miami Avenue
Miami, FL 33128



FILED BY MC D.C.
MAY 08 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

RE: SEC v Complete Business Solutions Group Inc. et al; Case No. 9:20-cv-81205-RAR

Claim20216

This is in response to an email and attached summary of case. I received a message stating "On April 23, 2024, Judge Ruiz issued an Order establishing a briefing schedule on the Receiver's motion. Specifically, any claimants with unresolved objections to the Receiver's notices of determination who intend to file a response to the Receiver's motion must do so by May 7, 2024. Any responses to the motion must be filed with the United States District Court for the Southern District of Florida." This is my response.

I am not an attorney, nor do I have any representation by an attorney. I do have a concern with what I read in the Document 1843-27 entered on Docket FLSD 04/22/2024.

> I. I Disagree with the Receiver's use of all **prior note** investments (including notes that matured and closed prior to the claim date of July 28, 2020) rather than using the **current note** values (as of the claim date of July 28, 2020) for the general calculation of what is owed investors.

I agree that this is a Ponzi scheme. As such, it would be understood that new money was being taken in to pay the principal and interest of older money in the scheme.

I have included my original objection that describes my specific position in more detail.

Most of the Merchant Cash Advance (MCA) notes were designed to mature in a year and then required a reinvestment into a new note. There was an ultimatum prescribed onto investors in early 2020 requiring them to abandon their old funds and enter "Parallel" funds. The "Parallel" funds emerged about 3 months prior to the Receivership intervention (i.e. very few interest payments made).

Claim20216

The Receiver seems to be trying to claw back money from note investments and investors prior to 2020. This seems to be unfair as the principal collected in the "Parallel" funds was used to pay for the principal payout in the original funds, in effect the same investor was paying for their own original principal. What is also not being considered by the Receiver is investors who may have invested years ago and got their money out and were not invested at all in 2020 and only gained from all later investors. The Receiver has made no effort to go after those investors to equally claw back their funds.

II.   *I Disagree with the Receiver's use of Net Investments methodology.*

If the Receiver has collected enough from the assets to pay back the principal to all investors, then all investors should receive all their principal. The Receiver should not be keeping excess funds.

If the Receiver did not collect enough from the assets to pay back the principal in full to all investors, the fraction collected should be applied to all investors. For example, if the principal in the fund(s) was $100,000,000 and the Receiver was able to recover $90,000,000 (or 90% of the original principal), then each investor should be given back 90% of their individual investment.

Then, the investor can claim the loss on tax returns and the IRS would use the Net Investment methodology to determine credit.

III.   *I Disagree with the Receiver's assessment of what I am specifically owed.*

My Claim20216 remains my position that my invested principal was $101,000.00 (as stated in the exhibit). I disagree with $93,693.30 as stated as the Allowed Claim Amount by the Receiver, for reasons mentioned above.

IV.   *I feel the Multi-Strategy Investments should be handled differently.*

I am not invested in the Multi-Strategy Investments, but did consider it at one point. From what I understand, Multi-Strategy (Life Settlement) Funds are different from MCA. They are structured differently, have different assets and different investors.

From what I understand, only a **small** portion of their investment was to be invested in the MCA, only to make enough interest to pay the premiums of the insurance policies. The Receiver should know the exact percentage. Only that percentage of an investor's principal in the Multi-Strategy should have been considered a loss from MCA.

The assets in those funds are not related to MCA, so I would think that they should not be counted as assets that were recovered for MCA. The payouts from those assets should be distributed ONLY to those who bought into those funds (i.e. not the general MCA fund investors)

The notes held in the Multi-Strategy funds are longer term than the way the MCA notes were structured. As such, they can be much older than the MCA notes. Using the "Net Investment" calculation is wrong for these notes because 1) the interest or payouts in the past were completely unrelated to MCA, and 2) the payouts for these policies may have occurred prior to any of the MCA funds.

The Receiver was responsible for ensuring that the premiums were kept up to date during the time they were under the Receiver control. People should have died, and those policies should have paid out. So, those who invested in those funds should have received payment, while those invested in MCA should not have received any payout from those deaths.

If those funds experienced challenges after the Receiver took over from co-mingling of assets, failure to pay premiums, failure to payout investors for death benefits, the Receiver should be held accountable outside of the MCA issues.

I thank you for the consideration of my objections. Thank you for your time.

Best Regards,

Karean Eissler

*Attatchment
(previously sent to Receiver)*

Claim20216

Supporting documentation for Objection to Receiver's proposed modification to claim20216

Below is a snapshot of the instructions I received.

The Notice of Determination is proposing to reduce your claim. The Claims Motion included instructions for investors to calculate their claims to determine the "Net Investment".

Pre-Receivership Claim Amount. For all Claims other than Administrative Claims, please state the amount of your claim as of July 28, 2020. Investors, if you claim to have made a loan to, obtained a promissory note from, or hold an interest in a Receivership Entity, please fill out and attach an "Investor Supplement to Proof of Claim Form" (see Exhibit A) to account for each time you made an investment with or provided funds to the applicable Receivership Entity and the date and amount of each transaction thereafter. You must also provide a chronological accounting indicating the date and amount of any withdrawals made by or payments received by you from any Receivership Entity, whether such payments were denominated as the return of principal, interest, commissions finder's fee, or otherwise.

**The objection that I have to the claim is about the Receiver's recent inclusion of payments received from an entity that I was not invested in as of July 28, 2020.**

I was presented with an agreement to dissolve my participation with the original ABFP 3 to participate in a "Parallel" fund. This new Fund came with full rights as a separate entity, including the right to add new money. Additionally, New Senior Indebtedness would take a senior position to the restated notes from the original funds (see page 7 of ABFP Income Fund 3 Supplement to Confidential Private Placement Offering Memorandum for the Exchange of Outstanding Promissory Notes for Amended and Restated Promissory Notes). Also, page A-3 Section 3.08 states that the Original Notes are being surrendered in exchange for the Restated Note. My understanding was the Parallel Fund is independent of the Original and the Subscription Agreement was just a vehicle to transfer money from the Original Fund to the new Parallel Fund without the need of sending the money back to my bank account and then me sending a new check. As such, the two are separate entities for reporting purposes and operations.

It is my understanding that it was optional to enter into the Parallel Fund. Those who decided <u>not</u> to enter into the Parallel Fund would have a claim against the Original Fund. However, those who decided to enter into the Parallel Fund would have a claim against that entity.

I signed a Subscription Agreement in April of 2020 which dissolved my participation in the original entity TIN 30-1163764 and entered an investment with the entity TIN 85-1068672. Below is a screenshot of the signing of the agreement, demonstrating my exit from the Original Fund and entrance into the Parallel Fund **prior to July 28, 2020:**

ORIGINAL ISSUER:
ABFP INCOME FUND 3, LLC

By: ABFP Management Company, LLC

By: _____
   Dean Vagnozzi, sole member

SUCCESSOR ISSUER:

ABFP INCOME FUND 3 PARALLEL, LLC

By: ABFP Management Company, LLC

By: _____
   Dean Vagnozzi, sole member

PURCHASER/INVESTOR:

Sign Name: _Karean Eissler_    4/30/2020

Print Name: _Karean L Eissler_

Furthermore, as I reported in my Exhibit that was previously requested, I received <u>TWO</u> Interest payments from the new entity since April of 2020 and I received <u>NO</u> Interest payments from the original entity since April of 2020.

- As far as tax reporting, I have paid taxes on all the Interest payments I have received to date from both entities. The IRS allows for reporting of losses.
- Theoretically, If I had not invested in the new Parallel Fund, I would have been able to file a loss against the Original Fund (TIN 30-1163764) with interest payments of $6,733.36 counting against the net. But, this is not my situation.
- Since the Principal from the Original Fund was completely transferred over, I had no loss of Principal from that Fund (and therefore, would not be able to submit a claim of loss against TIN 30-1163764).
- In Reality, I invested $101,000 in the Parallel Fund (TIN 85-1068672) and received $673.34 in Interest for a net loss of $101,326.66.

Please consider this objection to the proposed revision by the Receiver as I was only invested in TIN 85-1068672 as of July 28, 2020, and that is the only entity that I had a loss of Principle from.


Thank you and Best Regards,

Karean Eissler

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

USPS.COM/PICKUP

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2



UNITED STATES POSTAL SERVICE® | PRIORITY MAIL EXPRESS®

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)   PHONE (610) 715-7587

Karean Eissler
149 Hidden Hollow Ct
Phoenixville PA 19460

REC'D BY
MAY -8 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (305) 523-5100

Clerk's Office
Southern District of Florida
Wilkie D. Ferguson Jr. US Courthouse
400 North Miami Avenue
Miami FL
ZIP + 4® (U.S. ADDRESSES ONLY)
33128-

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

⤺ PEEL FROM THIS CORNER



PAYMENT BY ACCOUNT
USPS® Corporate

ORIGIN (POSTAL SERVICE)
☐ 1-Day
PO ZIP Code
19460
Date Accepted (MM/DD/YY)
5/4/24
Time Accepted
1:23   ☐ AM
         ☐ PM
Special Handling/Fragile
$
Weight   ☐ Flat Rate
   lbs. 3   oz
DELIVERY (POSTAL)
Delivery Attempt (MM/DD/Y)
Delivery Attempt (MM/DD/Y)

LABEL 11-B, MAY 2021


PAPER POUCH
how2recycle.info

