## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 20-CV-81205-RAR

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COMPLETE BUSINESS SOLUTIONS GROUP, INC., *et al.,* | ) |
| | ) |
| Defendants. | ) |

## NON-PARTY MERCHANTS' OBJECTION TO RECEIVER'S MOTION
## FOR APPROVAL OF SETTLEMENT AGREEMENT WITH ECKERT SEAMANS
## AND REQUEST FOR BAR ORDER

Non-party merchants B & T Supplies, Inc. d/b/a B and T Supply d/b/a Biggest Book.com ("B&T"), Tzvi Odzer ("Odzer"), Ruben Azrak (Azrak"), RKDK Inc. and Gelato on Hudson LLC d/b/a Haagen Dazs franchises (collectively "Haagen Dazs"), Asia Star Broadcasting Inc. ("ASB") and Daniel Shah ("Shah"), the Perfect Impression Inc. ("Perfect Impression"), and Susan Abrahams ("Abrahams") (collectively, the "Objecting Merchants"), pursuant to this Court's Order for the (i) approval of Settlement among Receiver, Putative Class Plaintiffs, and Eckert Seamans Cherin & Mellott, LLC and John Pauciulo, Esq.; (ii) Approval of Form, Content, and Manner of Notice of Settlement and Bar Order; (iii) Setting Deadline to Object to Approval of the Settlement and Entry of Bar Order; and (iv) Scheduling a Hearing [ECF No. 1906], timely object to the entry of a bar order that would preclude any continued assertion of the action brought by the Objecting Merchants against Eckert Seamans Cherin & Mellott, LLC and John Pauciulo, Esq. (collectively

"Eckert Seamans") in the case *B & T Supplies, Inc., et al., v. AG Morgan Tax and Accounting LLC, et al.*, Case No. 1:23-cv-11241 (S.D.N.Y.) ("*B & T Supplies* litigation") or the filing of any new action against Eckert Seamans relating in any way to any of the Receivership Entities, the Receivership Estate, or which arise directly or indirectly from Eckert Seamans' activities, omissions, or services, or alleged activities, omissions, or services, in connection with the Receivership Entities or the Receivership Estate (the "Bar Order"). ECF No. 1861.

## INTRODUCTION

As the Supreme Court recently held, the bankruptcy code does not authorize a release and injunction that "effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Harrington v. Purdue Pharma L. P.*, No. 23-124, 2024 WL 3187799, at *11 (U.S. June 27, 2024) ("*Purdue Pharma*") (ruling that Purdue's bankruptcy plan was not authorized under the U.S. bankruptcy code insofar as it sought to effectively discharge claims without the consent of affected bankruptcy claimants through settlement agreement).

The Bar Order in the Settlement Agreement between the Receiver, Putative Class Plaintiffs, and Eckert Seamans (the "Settlement Agreement") violates Justice Gorsuch's holding in *Purdue Pharma* by seeking to discharge and bar all current and future claims of the Objecting Merchants against Eckert Seamans, including those currently pending in the *B & T Supplies* litigation,[1] despite the fact that the Objecting Merchants: 1) are not parties to the Settlement Agreement, 2) did not consent to the discharge of their claims, and 3) receive nothing for the release of their pending and future claims against Eckert Seamans.

---

[1] The Objecting Merchant's recently voluntarily dismissed **without** prejudice their claims against Eckert Seamans in the *B & T Supplies* litigation [ECF No. 34] subject to a six-month tolling agreement so that the Objecting Merchants could complete their negotiation of a possible settlement with the Receiver.

The Eleventh Circuit, in step with the Supreme Court's decision in *Purdue Pharma*, recently ruled that just such a release, where absent class members "would receive absolutely nothing in exchange for giving [defendant] overbroad releases, and Class Counsel would receive $7 million in attorney's fees" was overbroad, holding that the District Court abused its discretion in approving the Settlement Agreement and Release. *See Drazen v. Pinto*, 101 F.4th 1223, 1278 (11th Cir. 2024) ("To sum it up, the District Court materially breached its duty to the absent Class Members from June 9, 2020—when it preliminarily approved the settlement agreement that advanced the lawyers' interests at the expense of the absent Class Members—to December 23, 2020, when it certified the class, approved the proposed Settlement Agreement, and granted Class Counsel's motion for attorney's fees."). The Bar Order here is similarly overbroad and should not be approved by this Court.

Importantly, the Objecting Merchants' claims against Eckert Seamans are unconnected to the claims the Settlement Agreement addresses and do not seek to recover from the property of the Receivership Estate. Instead, those claims seek to recover from Eckert Seamans the damages for their marketing and soliciting the investments that the Complete Business Solutions Group, Inc. ("CBSG") criminal enterprise used to issue the usurious Merchant Cash Advance ("MCA") loans despite having full knowledge of Joseph LaForte's extensive criminal background and the enterprise's purpose to fund criminally usurious loans. *See B & T Supplies*, ECF No. 1. While the Settlement Agreement resolves the Receiver's claims against Eckert Seamans on behalf of the investor Receivership Entities who funded the MCA loans, the Objecting Merchants seek damages on behalf of the merchants who were the victims of those usurious loans. The Objecting Merchants' damages against Eckert exist independently from those of the Receivership - they do not arise from derivative liability, nor do they seek contribution or indemnity from the estate.

The Receiver does not have the authority to bar independent, non-derivative claims of the Objecting Merchants where the success or failure of those claims will have no effect on the Receivership Estate. *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. 2019) (holding that "the Receiver lacked standing to settle independent, non-derivative, non-contractual claims of these Appellants."). In addition, the Supreme Court has held that there is no statutory authority for courts to authorize the discharge of such claims without the consent of the affected claimants. *See Purdue Pharma*, 2024 WL 3187799 at * 11. As the Eleventh Circuit stated, the district court abuses its discretion when it fails to "guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members." *See Drazen v. Pinto*, 101 F.4th at 1254 (citation omitted). The approval of the Bar Order would punish the true victims of CBSG's and Eckert Seamans' criminal RICO Enterprise, the Objecting Merchants, and deprive them of their due process rights by summarily barring their claims in the *B & T Supplies* litigation and any future claims against Eckert Seamans.

For these reasons, and because the bar order is not fair and equitable, the Objecting Merchants object to the final approval of the entry of the proposed Bar Order.

## **BACKGROUND**

The Objecting Merchants filed their class action complaint against Eckert Seamans to recover damages for its role in funding the MCA Agreements while knowing that these agreements were in fact usurious loans with interest rates as high as 400%. *See B & T Supplies* litigation, ECF No. 1. The Objecting Merchants have lost hundreds of millions of dollars, many have had their businesses shuttered and others have lost customers due to the unlawful collection tactics.

As alleged in the Objecting Merchants' December 28, 2023 Complaint, Eckert Seamans acted as a wing of the criminal enterprise in the funding of the loans. *Id.*, ¶ 230. Eckert Seamans

provided legal counsel the enterprise's marketers, created videos themselves, participated directly in the marketing of those loans, and claimed to have conducted due diligence into the loans. *Id.*, ¶ 231-34. As a result of their actions, the SEC brought an order instituting public administrative and cease-and-desist proceedings against Defendant Pauciulo detailing how he provided legal counsel for one of the sales agents who raised more than $100 million from investors to fund the MCA loans. *Id.*, ¶ 236-39. Pauciulo settled the charges raised by the SEC's order on the same day it was issued. *Id.*, ¶ 239.

The class action cases that are the subject of the Settlement Agreement were brought against Eckert Seamans on behalf of the investors who alleged that the offering documents they presented to the investors were ripe with misrepresentations and omissions. *See i.e. Montgomery, et. al. v. Eckert Seamans Cherin & Mellott, LLC et al*, 20-cv-23750 (S.D.Fla.), ECF No. 1. As alleged, Eckert Seamans represented to investors that they had conducted due diligence when they had not, failed to warn that the loans were uninsured, failed to disclose that CBSG had filed hundreds of lawsuits looking to collect from merchants who had defaulted, and failed to disclose that CBSG had been the subject of investigations or that LaForte had spent time in prison for larceny and money laundering. *Id.*, ¶¶ 4-10.

The Settlement Agreement intends not only to settle the claims of the investors for the sum of $45 million, which shall be distributed through the Receivership Estate, but also to bar the Objecting Merchants and others from continuing to assert their pending claims as well as from bringing any future claims. [ECF No. 1861-1 at 2.] While the Objecting Merchants, whose pending claims Eckert Seamans and the Receiver are seeking to bar, gained nothing from the Settlement Agreement, the attorney's fund is $6,750,000 and the Receiver is to recoup its own fees for its part, which has not been disclosed to investors or the parties.

On May 13, 2024, the Court issued its order preliminarily approving the Settlement Agreement and the bar order but reserved a final ruling with respect to the terms of the Settlement Agreement, including the Bar Order, until after the Final Approval Hearing. *See* ECF No. 1906.

## ARGUEMENT

The entry of a bar order is an "extraordinary remedy" that bars a third party's claim, even where, as here, the third party is not part of the relevant lawsuit or settlement. *See Securities and Exch. Commn. v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) (citation omitted). The Eleventh Circuit has cautioned courts that they "should enter bar orders 'cautiously and infrequently and only where essential, fair, and equitable.'" *Id*. (citation omitted).

In *Purdue Pharma* the Supreme Court has gone further, holding that courts are not authorized to approve a release and injunction that extinguishes claims against non-debtor third parties without the consent of affected claimants. *See Purdue Pharma*¸ 2024 WL 3187799 at \*11. The Eleventh Circuit, in a decision preceding *Purdue Pharma*, likewise found that the district court had abused its discretion in approving an overbroad release that would bar the claims of absent class members who would receive nothing from the settlement. *Drazen*, 101 F.4th at 1258.

Even prior to those decisions, a district court considering entering a bar order must conduct a two-part inquiry: First it must consider whether the bar order is "essential," and, second, it must determine whether it is "fair and equitable, with an eye toward its effect on the barred parties." *Quiros*, 966 F.3d at 1199. "A bar order is essential when it is 'integral' to the settlement." *Id*. In other words, "[a] bar order issued to facilitate a settlement is essential only if is essential to resolving the settling parties' litigation. If the parties would have still resolved their dispute without entry of the bar order, the order is not essential and the court should not enter it." *Id*. at 1200.[2]

---

[2] Here, the parties have inserted language specifically intended to satisfy the "essential" element of the test. Therefore, the Objecting Merchants will not contest the first part of this test.

When it comes to considering whether a bar order is fair and equitable, the Eleventh Circuit has determined that "[g]iven the similarity between bankruptcy and receivership proceedings, we often apply bankruptcy principles to receivership cases because we have limited receivership precedent." *Quiros*, 966 F.3d at 1199. Some of the factors considered in the bankruptcy context when determining whether a bar order is fair and equitable are: (1) "the interrelatedness of the claims that the bar order precludes"; (2) "the likelihood of nonsettling defendants to prevail on the barred claim"; (3) "the complexity of the litigation"; and (4) "the likelihood of depletion of the resources of the settling defendants." *Matter of Munford*, 97 F.3d 449, 455 (11th Cir. 1996).

## I.    The Overbroad Bar Order Violates the Holdings of Both the Supreme Court and the Eleventh Circuit

The Settlement Agreement's Bar Order states that "no further civil actions can or will be commenced or continued against the Eckert Seamans Released Parties with respect to the events and occurrences underlying the claims in the Putative Class Actions, or otherwise relating in any way to any of the Receivership Entities, the Receivership Estate, or which arise directly or indirectly from Eckert Seamans' activities, omissions, or services, or alleged activities, omissions, or services, in connection with the Receivership Entities or the Receivership Estate."  This bar on civil actions, includes but is not limited to continued assertion of any other actions filed against Eckert Seamans and relating to the Receivership Estate, including the *B & T Supplies* litigation. This bar purports to end the Objecting Merchants claims against Eckert Seamans despite the fact that the Objecting Merchants do not benefit from the settlement, have not consented to the extinguishing of their claims (and in fact object to such action), and are bringing claims that **are not related to the Receivership Estate**.  The entry of the bar order goes beyond the authority of the Court or the Receiver and should not be approved.

The Supreme Court held that courts lack the authority to approve the release of claims of third parties who would not benefit from the settlement or discharge and who did not consent to the release of their claims. *See Purdue Pharma¸* 2024 WL 3187799 at *11.  Moreover, the Receiver lacks standing to settle independent, non-derivative claims that have no connection to the Receivership or the Receivership property. *See Sec. & Exch. Comm'n*, 927 F.3d at 841 (vacating district court's order approving settlement and bar order, stating that "an equity receiver may sue only to redress injuries to the entity in receivership" and "a trustee, who lacks standing to assert the claims of creditors, equally lacks standing to settle them.") (cleaned up).

Here, the claims of the Objecting Merchants against Eckert Seamans are unconnected to the Receivership or the Receivership Property.  The claims in the *B & T Supplies* litigation seek damages related to their conduct as to the misrepresentations in funding the usurious loans that harmed the Objecting Merchants – the investors are not implicated in those claims and thus the Receivership has no interest in the litigation.  The Receiver would have no standing to bring the Objecting Merchants' claims against Eckert Seamans as the investors would have no interest in those claims.  Moreover, because the Objecting Merchants' claims have no connection to the Receivership, the Settlement Agreement provides no relief to Objecting Merchants.  Without standing to bring the claims or consent to abrogate those claims in the Settlement Agreement, the Receiver has no authority to bar the claims of the Objecting Merchants' independent, unrelated third-party claims against Eckert Seamans without their consent. *See In re Fundamental Long-Term Care, Inc.*, *515* B.R. 352 (Bankr. M.D. Fla. 2014) (holding that lack of any consideration to third parties affected by bar order prevented court from approving compromise, even though it appeared to be in best interests of estate and had uniform support of estate creditors); *see also See Sec. & Exch. Comm'n*, 927 F.3d at 842 ("The prohibition on enjoining unrelated, third-party claims

without the third parties' consent does not depend on the Bankruptcy Code but is a maxim of law not abrogated by the district court's equitable power to fashion ancillary relief measures.")

Instead, the Receiver is allowing those independent claims to be barred where such a bar solely benefits Eckert Seamans in order to facilitate a settlement that funds the Receivership Property – as well as the Receiver and Class Counsel – to the detriment of the third-party Objecting Merchants who lose all rights to their claims without the benefit of due process or consideration from the settlement.  Objecting Merchants will have no further recourse to bring those claims and will lose forever their rights as to the claims against Eckert Seamans.  The inclusion of the Bar Order runs afoul of the Eleventh Circuits admonition that such overbroad releases should be scrutinized by the court for evidence of collusion. *Drazen*, 101 F.4th at 1259 (Holding that the Court erred because it "it did not "exercise 'careful scrutiny' in order to 'guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.'"). (internal citations omitted).

For these reasons, the Court should not approve the overbroad Bar Order.

## II.    Entry of the Bar Order Should be Denied or Modified to Exclude the Objecting Merchants' Claims Because it is Not Fair and Equitable with Respect to Those Claims

Even were the Bar Order not overbroad and contrary to the holdings of the Supreme Court and the Eleventh Circuit, the Court should nevertheless deny or modify the bar because it does not meet the second part of the test needed for approval.  Specifically, the Bar Order is not fair or equitable when scrutinized through the four factors used to determine fairness.  As explained more fully below, the claims being barred are: 1) not interrelated, 2) likely to prevail, 3) not overly complex, and 4) will not deplete the resources of the Receivership at all.  For the reasons, approval of the Bar Order should be denied for these independent reasons.  Because the Bar Order fails to meet the standard for fair and equitable, its approval should be denied. *See In re GunnAllen Fin.,*

*Inc.*, 443 B.R. 908, 916 (Bankr. M.D. Fla. 2011) ("The bar order here extinguishes independent causes of actions against nondebtors that could possibly make the Securities Claimants whole, and instead, forces them to accept, at best, a distribution of less than 25 percent from the insurance. The true beneficiaries under the settlement are not the Securities Claimants, but rather, the numerous individuals accused of causing their substantial losses through improper conduct.").

### a. The Claims are not interrelated.

As explained above, the claims of the Objecting Merchants are not interrelated with the claims being settled by the Settlement Agreement. The claims of the investors against the Eckert Seamans deal with the misrepresentations made to the settling investors while the claims of the Objecting Merchants address Eckert Seamans' knowing role in funding the usurious loans by which the merchants were damaged. The Receivership Entities could not bring the same claims against Eckert Seamans and the relief sought by the Objecting Merchants does not come from nor will it be provided to the Receivership Entities.

### b. The Objecting Merchants' claims against Eckert Seamans are likely to prevail.

Though the *B & T Supplies* litigation is in its early stages, the claims are against Eckert Seamans are likely to prevail for a number of reasons. First, as courts have consistently held, MCA agreements such as the ones for which Eckert Seamans was a knowing party in marketing and soliciting funds are, in actuality, loans with usurious interest rates.[3] Further, Eckert Seamans

---

[3] *See, e.g., Lateral Recovery LLC v. Funderz.Net, LLC*, 2024 U.S. Dist. LEXIS 10134, *1 (S.D.N.Y. Jan. 19, 2024) (upholding RICO claims alleging similar conduct and agreements as CBSG); *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 70 (E.D.N.Y. 2022) (finding similar MCA agreements to those of CBSG to be loans as a matter of law); *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp.*, 374 F. Supp. 3d 361 (2019) (same); Fleetwood Servs., LLC, 2023 U.S. App. LEXIS 14241, *1 (2d Cir. June 8, 2023) (affirming summary judgment on RICO claims based on similar MCA agreements to those of CBSG); *Lateral Recovery LLC v. Queen Funding LLC*, 2022 U.S. Dist. LEXIS 129032, *12-13 (S.D.N.Y. July 20, 2022); *Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022); *New Y-Capp v. Arch Cap. Funding LLC*, 2022 U.S. Dist LEXIS 180309, *13 (S.D.N.Y. Sept. 30, 2022); *Haymount Urgent Care PC v. GoFund Advance*, LLC, 609 F. Supp. 3d 237 (S.D.N.Y. 2022); *Crystal Springs Capital Inc. v. Big Thicket Coin*, LLC, 2023 N.Y. App. Div. LEXIS 5083 (2d Dep't Oct. 11, 2023); *People v. Richmond Capital Group LLC*, 2023 NYLJ LEXIS 2487 (Sup. Ct. Sept. 20, 2023); *Davis v. Richmond Capital Group*,

knew the loans were usurious as they attended and participated in marketing and solicitation presentations which detailed how desperate small businesses would pay usurious rates on these opportunistic business loans.

Second, the July 7, 2022, SEC order instituting public administrative and cease-and-desist proceedings against Defendant Pauciulo, to which Pauciulo consented, establishes much of the actionable conduct against Eckert Seamans.  This includes their role in marketing and soliciting the money that funded the usurious loans to the Objecting Merchants.

Third, as detailed above, Eckert Seamans advised the Defendant Investors to fund and participate in the RICO Enterprise with full knowledge of LaForte's extensive criminal background and its purpose to fund criminally usurious loans.  Given the weight of the evidence and the benefits of discovery, the likelihood that the Objecting Merchants would recover damages from Eckert Seamans is very high.

Fourth, CBSG and certain Enterprise Members have been criminally indicted for collection on an extension of credit by extortionate means.  *See* (ECF 1569); *see also generally United States v. LaForte, et al.*, 23-cr-198 (E.D. Pa.) (detailing how CBSG and the Enterprise Members enforced the MCAs as absolutely repayable loans through extortion and other means).

### c.  The Claims being barred are not overly complex.

The barred claims are not overly complex as the factual record establishing Eckert Seamans conduct and the legal predicate for the Objecting Merchants has been well established through the SEC order, the other litigations involving Eckert Seamans, and the present SEC enforcement action.

---

194 A.D.3d 516, 517 (1st Dep't 2021); *LG Funding, LLC v. United Senior Properties of Olathe*, LLC, 181 A.D.3d 664, 666 (2d Dep't 2020).

**d.  The continuation of the *B & T Supplies* litigation will not deplete any of the resources of the Receivership.**

As detailed above, the *B & T Supplies* litigation will not involve the Receivership in any capacity and thus none of the Receivership resources will be depleted as a result.  This is vitally important as the policy driving the entry of bar orders stems from "[p]ublic policy strongly favor[ing] pretrial settlement" in complex cases, which "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Quiros*, 966 F.3d at 1200.  Here, the policy behind allowing the disfavored and unfair entry of a bar to the Objecting Merchants' independent claims would not be served by approval.  The conclusion of the SEC Enforcement and the Receivership's role would not be affected by allowing the *B & T Supplies* litigation to continue.  The Receivership Entities would still be able to obtain relief and none of the resources of the parties would be depleted.

## NOTICE OF INTENT TO APPEAR

The undersigned counsel for the Objecting Merchants intends to appear at the in-person Final Approval Hearing scheduled for August 13, 2024, and if necessary, request leave to do so.

## CONCLUSION

In light of the foregoing, the Objecting Merchants respectfully request this Court to deny the entry of the proposed bar order or to modify it to permit claims by the Objecting Merchants to continue now and in the future.


Dated:  July 15, 2024

Respectfully Submitted,

ALMEIDA LAW GROUP LLC

s/ Matthew J. Langley_____

-12-

Matthew J. Langley, Esq.
David S. Almeida, Esq.
849 W. Webster Avenue
Chicago, Illinois 60614.
(312) 576-3024
david@almeidalawgroup.com
matt@almeidalawgroup.com

Shane R. Heskin, Esq.
Alex D. Corey, Esq.
**WHITE & WILLIAMS LLP**
1650 Market Street, Suite 1800
Philadelphia, PA 19103
215-864-6329
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com

*Counsel for the Merchant Victims*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 15, 2024, I electronically served the foregoing on all counsel of record via the Court's CM/ECF system.

/s/ Matthew J. Langley
Matthew J. Langley