UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81205-RAR

**SECURITIES AND EXCHANGE COMMISSION**,

    Plaintiff,

v.

**COMPLETE BUSINESS SOLUTIONS GROUP, INC.** *d/b/a* **PAR FUNDING**, *et al.*,

    Defendants.

_____/

**ORDER GRANTING RECEIVER'S MOTION FOR AMENDED ORDER APPROVING RECEIVER'S SALE OF REAL PROPERTY LOCATED AT 107 QUAYSIDE DRIVE, JUPITER, FLORIDA 33477**

**THIS CAUSE** comes before the Court upon Ryan K. Stumphauzer, Esq., Court-Appointed Receiver's ("Receiver") Motion for Amended Order Approving Sale of Real Property Located at 107 Quayside Drive, Jupiter, Florida 33477 ("Motion"), [ECF No. 2124], filed on March 14, 2025. The Court permitted any interested party to file a response to the Motion on or before March 21, 2025. *See* [ECF No. 2125]. Defendant Lisa McElhone filed a response in support of the Motion on March 21, 2025. *See* [ECF No. 2128]. No interested party filed any response in opposition to the Motion. The Court has reviewed the Motion and the record in this matter, and is otherwise fully advised. The Receiver has made a sufficient and proper showing in support of the relief requested in the Motion. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Motion, [ECF No. 2124], is **GRANTED**.

2. The Order Approving Receiver's Sale of Real Property Located at 107 Quayside Drive, Jupiter, Florida 33477 ("Order Approving Sale"), [ECF No. 1645], is hereby **MODIFIED**, as follows.

A.  **Tax Lien**

3.  The Receiver has advised the Court that the Department of the Treasury – Internal Revenue Service ("IRS") recorded a Federal Tax Lien in the Official Records of Palm Beach County, Florida, at Book Number 30887, Page 1300 ("Tax Lien"), which is operating as a lien on the real property located at 107 Quayside Drive, Jupiter, Florida 33477 ("Quayside Property"). The Tax Lien reflects that Lisa M. McElhone, the owner of record of the Quayside Property, owed to the IRS an unpaid assessment in the amount of $279,778.26 in connection with her Form-1040 individual income tax return for the tax period ending December 31, 2017 ("Assessment").

4.  The Tax Lien is interfering with the Receiver's ability to sell the Quayside Property pursuant to the Order Approving Sale. Specifically, the Receiver has been unable to obtain a title insurance policy insuring the Receiver's transfer of the title to the Quayside Property to the proposed buyer under the Order Approving Sale, unless the Tax Lien is discharged, satisfied, or otherwise addressed.

5.  To address these issues related to the Tax Lien, the following modified procedures for the Receiver's sale of the Quayside Property are hereby **APPROVED**:

    a.  An amount equal to 150% of the Assessment will be retained in escrow by the title insurance company selected by the Receiver from the proceeds of the sale of the Quayside Property ("Escrowed Funds").

    b.  The Escrowed Funds will remain in escrow for a period of six (6) months, or such additional time as the title insurance company and its title insurer agrees to extend the escrow period ("Escrow Period").

    c.  During the Escrow Period, the Receiver will attempt to deal directly with the IRS to seek a discharge or cancellation of the Tax Lien as a lien on the Quayside Property.

    d. The Receiver must include the attorney for Lisa McElhone on all communications with the IRS regarding these efforts to resolve the Tax Lien.

    e. Lisa McElhone must provide the Receiver's agents with a limited power of attorney in the form attached to the Motion as Exhibit 3, *see* [ECF No. 2124-3], solely for the purpose of allowing the Receiver to deal with the IRS in an effort to obtain the discharge or cancellation of the Tax Lien as a lien on the Quayside Property, or to obtain a payoff amount and discharge or cancellation of the Tax Lien, if it becomes necessary.

    f. The title insurance company may, in its sole and absolute discretion or at the direction of its title insurer, using the Escrowed Funds, pay the amount needed in order to obtain the release of the Tax Lien in the event: (i) the Receiver cannot obtain the discharge or cancellation of the Tax Lien within the Escrow Period; (ii) it or its title insurer is otherwise called upon by any of its insureds to pay the Tax Lien in order to remove any cloud on title created by the Tax Lien; or (iii) it or its title insurer determines that its insured's interests are at risk as a result of the Tax Lien.

    g. In the event the title insurance company, the title insurer, or its insureds become involved in litigation resulting from the escrow of the Escrowed Funds, the attorneys' fees and costs necessary for defense of that claim can be disbursed from the Escrowed Funds, and the parties to the escrow will hold the title insurance company, the title insurer, and its insureds harmless from any claim resulting from the escrow of the Escrowed Funds.

    h. If the Escrowed Funds prove insufficient to meet all obligations detailed above, the Receiver will, upon written notice from the title insurance company or the

title insurer, provide any additional funds necessary from the proceeds of the sale of the Quayside Property.

    i. Any remaining Escrowed Funds, following the discharge or cancellation of the Tax Lien, will be disbursed to the Receiver.

6. The Receiver is hereby **AUTHORIZED** to prepare and execute such additional documents in connection with the sale of the Quayside Property as may be necessary to carry out these additional procedures regarding the Tax Lien, and any other person or entity is **AUTHORIZED** to execute such documents if so requested by the Receiver.

    B. **Order Disclaiming McElhone and LaForte's Purported Homestead Interests**

7. The Receiver indicated that Lisa McElhone's and Joseph LaForte's appeal ("Appeal") of the Court's Order Granting Motion to Expand Receivership Estate ("Expansion Order"), [ECF No. 436], as well as the title insurer's concerns regarding any potential homestead rights McElhone might have in the Quayside Property, or spousal rights LaForte might have if it were determined to be a homesteaded property, were interfering with the Receiver's sale of the Quayside Property.

8. Because the Eleventh Circuit has now affirmed the Expansion Order and issued the Mandate in the Appeal, *see Sec. and Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 23-10228, 2024 WL 4100564 (11th Cir. Sept. 6, 2024), the Appeal is no longer an impediment to the Receiver's sale of the Quayside Property.

9. With respect to the title insurer's concerns related to any homestead rights McElhone might have in the Quayside Property, or spousal rights LaForte might have with respect to any potential homestead rights related to the Quayside Property, the Court declares the following:

    a. Neither McElhone nor LaForte have a homestead interest in the Quayside Property because neither occupied or used the property as their permanent home from the time McElhone purchased the Quayside Property in 2019 through the present.

    b. Because McElhone, the title owner of the Quayside Property, does not have a homestead interest in the Quayside Property, LaForte, as the spouse of the owner of the property, does not maintain any spousal rights pursuant to FLA. CONST., art. X, § 4(a)(1) that would require his joinder or consent to, or that would permit him to block, any sale or alienation of the Quayside Property.

    c. Accordingly, the Receiver is **AUTHORIZED** to sell the Quayside Property free and clear of any liens, claims, and interests that McElhone or LaForte could potentially assert.

10. The Receiver is hereby **AUTHORIZED** to prepare and execute such additional documents in connection with the sale of the Quayside Property as may be necessary to carry out these additional procedures regarding any purported homestead rights McElhone or LaForte could potentially assert, and any other person or entity is **AUTHORIZED** to execute such documents if so requested by the Receiver.

11. The Court is not taking any action or issuing any rulings at this time regarding whether the net proceeds from the sale of the Quayside Property should be credited against the judgment entered in this case against McElhone, as that issue is not currently before the Court.

    C. **Substitution of Contract with ECM and CEM**

12. In the Order Approving Sale, the Court authorized the Receiver to sell the Quayside Property to the R.W. Revocable Trust Agreement pursuant to the terms of a contingent As Is

Residential Contract for Sale and Purchase for the sale of the Quayside Property ("Original Contract").

13. As requested in the Motion, the contingent As Is Residential Contract for Sale and Purchase for the sale of the Quayside Property ("Substitute Contract"), a copy of which is attached to the Motion as Exhibit 1, [ECF No. 2124-1], by and between the Receiver, on the one hand, and ECM and CEM ("Substitute Buyer"),[1] is hereby **SUBSTITUTED** in place of the Original Contract.

14. As such, the terms of the Substitute Contract are **APPROVED**.

15. The Court ratifies the Receiver's execution of the Substitute Contract and authorizes the Receiver to perform all of his obligations under the Substitute Contract.

16. The Receiver is authorized to sell the Quayside Property to the Substitute Buyer or the Substitute Buyer's designee, as contemplated in the Substitute Contract, in exchange for the aggregate sum of $12,200,000.00, subject to the applicable terms of this Order.

17. The Receiver is further authorized to pay any commissions provided for in the Substitute Contract and in connection with the consummation of his sale of the Quayside Property.

18. In accordance with the terms of the Substitute Contract, and without limiting those terms, Substitute Buyer or Substitute Buyer's designee shall purchase the Quayside Property on an "as-is / where-is" basis, without any representations or warranties whatsoever by the Receiver and his agents and/or attorneys including, without limitation, any representations or warranties as to the condition of the Quayside Property, except as expressly set forth in the Substitute Contract. Substitute Buyer or its designee is responsible for all due diligence, including but not limited to,

---

[1] For security purposes, the Substitute Buyer's identity has been redacted.

inspection of the condition of and title to the Property, and is not relying on any representation or warranty of the Receiver, except as expressly set forth in the Substitute Contract.

19. In the performance of his obligations pursuant to this Order, the Receiver's liability in connection with the Substitute Contract and the sale of the Quayside Property to the Substitute Buyer shall be limited to the assets of the Receivership Estate ("Estate"). Neither the Receiver nor his professionals shall have any personal liability for claims arising out of or relating to the performance of any actions necessary to complete the sale of the Quayside Property as provided for herein.

20. Provided Substitute Buyer or Substitute Buyer's designee consents, in writing, the Receiver is hereby authorized to amend or otherwise modify the Substitute Contract, in writing, as necessary to complete the sale of the Quayside Property in the event that the Receiver determines, in his reasonable business judgment, that such amendment or modification is reasonable and necessary, will benefit the Estate, avoid the imposition of any liability upon the Estate, or is required pursuant to the terms of the Substitute Contract or any other amendment or modification thereto, provided that any such amendment or modification does not change the material terms of the Substitute Contract, including the parties to the Substitute Contract and the purchase price for the Quayside Property.

21. The Receiver is hereby authorized to take all actions and execute all documents necessary to consummate and otherwise effectuate the sale of the Quayside Property to Substitute Buyer or Substitute Buyer's designee, including, but not limited to, the Substitute Contract itself, any other documents required to be executed pursuant to the Substitute Contract, and any related documentation, escrow instructions, or conveyance documents consistent with selling and conveying title to the Quayside Property to Substitute Buyer or Substitute Buyer's designee. The Receiver shall execute all documents necessary to consummate and otherwise effectuate the sale

of the Quayside Property as "Ryan K. Stumphauzer, Court-Appointed Receiver" or any reasonable variation thereof which clearly identifies the Receiver as a Court-appointed receiver.

22.  The Receiver is hereby authorized to execute and acknowledge a Receiver's Deed, or similar instrument, conveying title to the Quayside Property to Substitute Buyer or Substitute Buyer's designee ("Receiver's Deed") to effectuate the conveyance, and cause the Receiver's Deed to be recorded on the date on which close of escrow occurs pursuant to the terms of the Substitute Contract, or as determined by and between the Receiver and Substitute Buyer or Substitute Buyer's designee.

23.  Any licensed title insurer may rely on this Order as authorizing the Receiver to transfer title to the Quayside Property as provided in the Substitute Contract and as authorized herein.

24.  This Court shall retain jurisdiction over any dispute involving the Receiver in connection with the sale of the Quayside Property.

25.  The Receiver shall provide Substitute Buyer or Substitute Buyer's designee with a certified copy of this Order, as entered by the Court, directly or through escrow, prior to the close of escrow, or as provided for in the Contract, and Substitute Buyer or Substitute Buyer's designee shall acknowledge receipt of a copy of this Order, in writing.  A certified copy of this Order may be recorded concurrently with the Receiver's Deed, or at any time before the close of escrow, provided, however, that failure to record this Order shall not affect the enforceability of this Order, the enforceability and viability of the Substitute Contract, or the validity of the Receiver's Deed.

**DONE AND ORDERED** in Miami, Florida, this 24th day of March, 2025.

RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of record