# Exhibit "11"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81205-RAR

**SECURITIES & EXCHANGE COMMISSION**,

    Plaintiff,

v.

**COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING**, *et al.*,

    Defendants.

_____/

## [PROPOSED] ORDER GRANTING RECEIVER'S MOTION TO APPROVE SECOND INTERIM DISTRIBUTION

**THIS CAUSE** comes before the Court on the Receiver's Motion to Approve Second Interim Distribution ("Second Distribution Motion"), [ECF No. _____].[1] In an Order dated November ____, 2025, [ECF No. _____], the Court solicited responses or objections to the Second Distribution Motion, which is now fully briefed. The Receiver has made a sufficient and proper showing in support of the relief requested. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Second Distribution Motion is **GRANTED**. The Court finds that the second interim distribution as set forth in the Second Distribution Motion and in its Exhibits is fair and reasonable and consistent with the distribution plan and first interim distribution plan previously approved by this Court.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Receiver's Motion to (1) Approve Plan of Distribution and (2) Authorize First Interim Distribution Motion ("First Distribution Motion"), [ECF No. 2014].

A. **Holdbacks / Cash Reserves**

As of October 30, 2025, the bank accounts of the Receivership Entities contained a total of approximately $110 million. The Receiver shall distribute as much of these funds as possible, provided that sufficient funds are held back for ongoing costs and expenses and other pending issues, as follows:

- The Receiver shall hold back $1,750,000 from the cash of ABFP Multi-Strategy Investment Fund L.P. and $500,000 from the cash of ABFP Multi-Strategy Investment Fund 2 L.P., which amounts suffice to pay premiums for two years on the life insurance policies those funds continue to own; and

- The Receiver shall hold back $11 million for the anticipated additional costs and expenses of administering the Receivership Estate, and other pending claims and issues that may arise in the future.

After accounting for those holdbacks, a total of $96,871,261.28 is available for the Receiver to distribute to Claimants.

B. **Enhancement to Parker Plaintiffs**

As part of the Eckert Seamans Settlement, the Receiver entered into a Settlement Agreement with the "Parker Plaintiffs," which are certain Non-Receivership Entity Agent Funds that engaged Eckert Seamans to set up their agent funds and prepare the private placement memorandum and other related materials.  As part of that settlement, the Receiver agreed to pay the Parker Plaintiffs an "Enhancement" of $2,000,000 from the Eckert Seamans settlement proceeds. The Enhancement is to be allocated to each of the agent funds comprising the Parker Plaintiffs (and, consequently, to their individual investors) on a pro rata basis.  Importantly, however, none of those agent funds may receive more than 100% of their net investment through the distribution process, and the Enhancement was considered in the calculation of the second

distribution to ensure that these agent funds do not receive more than 100% of their Allowed Claim Amounts. Accodingly, the Receiver is **AUTHORIZED** to distribute the $2,000,000 Enhancement from CBSG to the agent funds comprising the Parker Plaintiffs, as reflected on **Exhibit 2** to the Second Distribution Motion.

### C.   Distributions from CBSG

Next, CBSG is **AUTHORIZED** to distribute $90,991,034.33 million to Class 3 Claimants with Allowed Claims against CBSG, as reflected on the attached **Exhibit 3**.[2] Remarkably, when combined with the first distribution, this second distribution will result in a total pro rata payment from CBSG of approximately ***98.35%*** of the Net Investment Amount for these Class 3 Claimants. Moreover, the addition of the $2 million Enhancement will result in a total pro rata payment of ***100%*** of the Net Investment Amounts for the Parker Plaintiffs. As with the first interim distribution, some of those payments will be issued to direct investors in CBSG. For the non-Receivership Entity Agent Funds, certain payments will be delivered to the agent fund, and other payments will bypass the agent fund and be delivered directly to the end investors in those funds.

### D.   Distributions from CBSG to Non-Receivership Entity Agent Funds

Upon the respective Non-Receivership Entity Agent Fund manager's execution of the Declarations attached to the Second Distribution Motion as **Composite Exhibit 5**, the Receiver is **AUTHORIZED** to issue first interim distribution payments to the non-Receivership Entity Agent Funds, in accordance with the schedules attached to the Second Distribution Motion as **Exhibits 4A** through **4CCC**, which detail the payments that will be made from each Non-Receivership Entity Agent Fund to the individual investors in those funds. Consistent with the first interim

---

[2] For privacy purposes, Claimants are identified by Claim ID number rather than name on Exhibits 3, 4, 6, 7, and 8 to the Second Distribution Motion.

distribution, upon execution of the Declarations attached to the Second Distribution Motion as **Composite Exhibit 5**, the Receiver shall issue distribution payments to the following three non-Receivership Entity Agent Funds, which will then be required to distribute those funds among their individual investors in accordance with these agreed-upon distribution schedule: (1) Mariner MCA Income Fund LLC, (2) STFG Income Fund LLC, and (3) Titan Holdings LLC. The Receiver shall bypass the agent funds and make direct distributions to the individual investors in the remaining Non-Receivership Entity Agent Funds.

      E.      **Distributions from Receivership Entity Agent Funds to Individual Investors**

Certain payments have been allocated for distribution from CBSG to Receivership Entity Agent Funds (*i.e.*, the ABFP Income Funds, Fidelis Financial Planning, and Retirement Evolution Funds). Because the Receiver controls these Receivership Entity Agent Funds, the Receiver shall record an internal accounting transaction to reflect the distribution payments from CBSG to the appropriate Receivership Entity Agent Fund. The Receiver is **AUTHORIZED to** issue payments from the appropriate Receivership Entity Agent Fund to the individual investors within those Agent Funds, consistent with the schedules attached to the Second Distribution Motion as **Exhibit 6** (ABFP Income Funds), **Exhibit 7** (Fidelis Financial Planning), and **Exhibit 8** (Retirement Evolution Funds).

      F.      **Distributions from Fast Advance Funding LLC**

In the same manner as the distributions from CBSG, the Receiver is **AUTHORIZED** to distribute similar pro rata payments from Fast Advance Funding LLC ("FAF"), totaling $3,717,186,59, to its two Class 3 Claimants—ABFP Multi-Strategy Investment Fund LP ("MSIF") and ABFP Multi-Strategy Fund 2 LP ("MSIF II") (collectively the "Multi-Strategy Funds"). The Multi-Strategy Funds invested in a combination of life settlements and the merchant cash advance

business (through FAF). This second distribution payment from FAF to the two Multi-Strategy Funds will be issued in a manner so that they receive the same total pro rata percentage CBSG will be paying out to its direct investors as a result of the second interim distribution. In other words, the second interim distribution will achieve a total pro rata payment of approximately 98.25% of the Multi-Strategy Funds' net investment in FAF, as reflected on the attached **Exhibit 9**.

      G.      **Distributions from Multi-Strategy Funds to Individual Investors**

The Receiver is **AUTHORIZED** to issue payments from the appropriate Multi-Strategy Fund to the individual investors within those Multi-Strategy Funds, consistent with the schedules attached hereto as **Exhibit 6**. Because a significant percentage of the Multi-Strategy Funds' investments were in life settlements, and many of those insurance policies have not yet matured, the total recovery for the individual investors in those two funds, including the second interim distribution, will be 46.2% and 64.8%, respectively, of the individual investors' Net Investment Amount. The Receiver is **INSTRUCTED** to provide a recommendation in its next Quarterly Status Report, which is due to be filed on January 31, 2026, regarding how the remaining policies should be handled (*i.e.*, the Receiver continuing to pay premiums and distributing policy proceeds, transferring the policies to a third-party administrator for further administration of the policies, or selling the policies and distributing the cash proceeds from the sale to investors).

      H.      **Reasonableness of the First Interim Distribution**

This Second Interim Distribution of $96,871,261.28 is reasonable, will provide a significant amount of money to Claimants, while reserving adequate funds to cover the ongoing expenses of administering the Receivership Estate, for unresolved claims, and for other pending issues. The Receiver shall distribute the reserved funds and any additional funds he recovers in a future distribution, as appropriate, depending on the outcome of these other pending matters.

**CONCLUSION**

For the reasons set forth above, the Court hereby approves the Receiver's proposed Distribution Plan and authorizes the Receiver to make the Second Interim Distribution from the Receivership Estate in conformity with this Order.

DONE AND ORDERED in Miami, Florida, this __ day of December, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Copies to:   Counsel of Record